D7GPKRIC(3905)

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     J. KRISS, ET AL.,
 3
                  Plaintiffs,
 4          v.                              13 CV 3905 (LGS)

 5   BAYROCK GROUP, LLC, ET AL.,

 6                Defendants.
     ------------------------------x
 7                                      New York, N.Y.
                                        July 16, 2013
 8                                      10:52 a.m.
     Before:
 9              HON. LORNA G. SCHOFIELD,

10                                      District Judge
                        APPEARANCES
11   MUNDIE LAW FIRM
          Attorneys for Plaintiffs
12   BY:  FREDERICK M. OBERLANDER, ESQ.
               and
13   THE LAW OFFICE OF RICHARD E. LERNER, P.C.
     BY:  RICHARD E. LERNER, ESQ.
14
     BEYS, STEIN & MOBARGHA, LLP
15        Attorneys for Defendant Felix Sater
     BY:  JOSHUA D. LISTON, ESQ.
16        NADER MOBARGHA, ESQ.

17   SATTERLEE, STEPHENS, BURKE & BURKE, LLP
          Attorneys for Defendants in 2010 case, BayRock LLC,
18   BayRock Spring Street LLC, BayRock Whitestone LLC, BayRock
     Camelback LLC, and BayRock Merrimac LLC
19   BY:  WALTER A. SAURACK, ESQ.
          ZOE E. JASPER, ESQ.
20
     MORGAN, LEWIS AND BOCKIUS, for Morgan, Lewis and Bockius and
21   Kelly Moore
          Appearing as Friend of the Court
22   BY:  JOHN T. ROVER, ESQ.

23   ALSTON AND BIRD, for National Union Fire Insurance Co. of
     Pittsburgh, Pennsylvania
24        Appearing as Friend of the Court
     BY:  ALEXANDER S. LORENZO, ESQ.
25
```

D7GPKRIC(3905)

1                    (In open court)

2                    (Case called)

3                    MR. OBERLANDER:  Frederick Oberlander for all

4      plaintiffs.

5                    MR. LERNER:  Co-counsel, Richard E. Lerner for

6      plaintiffs.

7                    THE COURT:  Good morning.

8                    MR. LISTON:  Good morning, your Honor.  Joshua Liston

9      for defendant, Felix Sater.

10                    MR. MOBARGHA:  Nader Mobargha for defendant, Felix

11      Sater.

12                    THE COURT:  Good morning.  Okay.  Let me have just a

13      minute to get set up, but I'll also start out with a few ground

14      rules.  The first thing is, we are in open court here, and I

15      don't know if necessarily there are any strangers to these

16      actions here, but I would ask counsel to refrain from

17      disclosing any privileged or sealed or otherwise confidential

18      information in their remarks to the Court.  I don't think that

19      that will be necessary.  If for some reason you think it is,

20      please let me know so that we can handle it appropriately.

21                    Second, please stand to speak, and do not interrupt

22      each other, and do not stand while someone else is speaking.

23      And when someone else is done speaking, please wait until

24      you're called on to speak.

25                    I don't know exactly who's in the courtroom and on

D7GPKRIC(3905)

1   behalf of what parties, but as you know, there are three

2   related actions that are on for this time.  I know counsel have

3   not appeared in some actions, but I invite you to participate

4   as friends of the Court.  And I invite you to sit at counsel

5   table as friends of the Court, if you have a client who is

6   named in any action.

7           I also would like counsel, and I can't order you but I

8   will invite you, I will ask counsel to stay for any proceeding

9   in which your client is named as a party and will handle all

10  three proceedings here.

11          There are a couple more things I wanted to mention.  I

12  have individual rules and procedures.  I understand

13  Mr. Oberlander had wanted to bring a computer into court.

14  That, unfortunately, still requires a lot of bureaucratic

15  maneuvering here in the courthouse.  If you look at my rules

16  and procedures, you will see you have to apply ten days in

17  advance.  It's not just to be a burden.  It's because it takes

18  them ten days to approve it.  So I urge all counsel to take a

19  look at my individual rules.

20          One of the things my individual rules say is if you

21  want to communicate with the Court, the way to do that is with

22  a letter attached to an e-mail to my chamber's e-mail account,

23  attached in a PDF format.  And there should be nothing of

24  substance in the covering e-mail.  It should all be in the

25  letter.  There are page limits on letters, depending on what

D7GPKRIC(3905)

1   the nature of the letter is.

2          I know that people are anxious to communicate many

3   thoughts to the Court, but I ask you to adhere to the page

4   limits.  Also, I beg you please to stick to a 12-point font

5   because I literally cannot read things if they get too small.

6   So 12-point font with at least single spacing, full single

7   spacing, at least one inch margins; so that I can read it.  No

8   italics, please, unless the Blue Book or Strunk and White say

9   you can put things in italics.  No shading, please.  It makes

10  it more difficult to read everything once it's printed it out,

11  and I do want the benefit of your thoughts.  So thank you for

12  that.

13         So give me one second here to get this on.  Okay.  So

14  I decided to take these matters out of order, not necessarily

15  arbitrarily, but I thought perhaps in the order starting with

16  the easiest first.  I notice there is some counsel who have

17  just come to counsel table; so if I could just know who you are

18  and note your appearances, and the court reporter will do that

19  as well.

20         MR. ROVER:  Thank you, your Honor.  My name is John T.

21  Rover.  I'm with Morgan, Lewis and Bockius, and I'm happy to

22  appear as a friend of the Court.

23         THE COURT:  And who is your client?

24         MR. ROVER:  Morgan, Lewis and Bockius, the law firm.

25         THE COURT:  Oh, Morgan, Lewis.

D7GPKRIC(3905)

1           MR. ROVER:  Yes.  And I am a litigation partner in

2    Morgan, Lewis.

3           THE COURT:  I'm trying to find you on this long list.

4    Okay.  And tell me your name one more time.

5           MR. ROVER:  John T. Rover, R-o-v-e-r.

6           THE COURT:  Thank you and welcome, Mr. Rover.

7           MR. ROVER:  Thank you.  Also representing Kelly Moore.

8           THE COURT:  Okay.

9           MR. ROVER:  We have not been served.

10          THE COURT:  Okay.  I have that.  Thank you very much.

11          MR. ROVER:  Thank you.

12          MR. LORENZO:  Good morning, your Honor.  Alex Lorenzo

13   from Alston and Bird.  Alston and Bird represents National

14   Union Fire Insurance Co. of Pittsburgh, Pennsylvania.  We also

15   have not been served, and just to be clear, your Honor, this is

16   not an official appearance.  We are neither waiving service nor

17   any jurisdiction.

18          THE COURT:  I understand that.  I appreciate your

19   being here.  Would you tell me your name one more time.

20          MR. LORENZO:  Sure.  Alex Lorenzo, and the law firm is

21   Alston and Bird.

22          THE COURT:  Thank you very much.  And it's not

23   necessary for any other counsel to reserve your rights.  None

24   of us will impute this as an appearance for purposes of this

25   action, and I assume you're here all as friends of the Court,

D7GPKRIC(3905)

1   if you haven't been served.

2           MR. SAURACK:  Walter Saurack, on behalf of BayRock

3   LLC, BayRock Spring Street LLC, BayRock Whitestone LLC, BayRock

4   Camelback LLC, and BayRock Merrimac LLC, appearing on the 2010

5   action, per your Honor's order, and appearing as a friend of

6   the Court with respect to other matters.

7           THE COURT:  Okay.  Thank you.  And would you mind

8   telling me your name again?

9           MR. SAURACK:  It's Walter Saurack, S-a-u-r-a-k, and I

10  also have my colleague, Zoe Jasper, also from my firm of

11  Satterlee, Stephens, Burke & Burke.

12          THE COURT:  Good morning.  Thank you for appearing.

13          MS. JASPER:  Good morning, your Honor.

14          THE COURT:  Okay.  I think that takes care of all of

15  us that are here.  So with respect now to the action, which is

16  Kriss versus BayRock, 13 CV 3905, I understand that the

17  procedural posture of this case, I understand that this case

18  was removed from state court.  But my first question, which is

19  typically my first question to counsel in any case, is, what is

20  this case about?

21          So, Mr. Oberlander, if you could just tell me briefly

22  what this case is about, I would appreciate that

23          MR. OBERLANDER:  All right.  The case is about the

24  alleged liability of persons who collaborated together in

25  sufficient form that they're vicariously liable whether, under

D7GPKRIC(3905)

1    state law it's called civil conspiracy or some other legal

2    theory of vicarious liability.  It was brought under state law,

3    and the basis of liability is the collusion to commit fraud,

4    misrepresentation or wrongful concealment on various third

5    parties.

6            The particular material fact common to all such

7    concealments is the existence but wrongful concealment of the

8    conviction of Mr. Sater in connections with offerings and other

9    transactions where substantive law required the affirmative

10   disclosure.  It was brought in state court because the primary

11   persons responsible are professional firms, mostly law firms

12   but one accounting firm, that are licensed by the State, and

13   without regard to whether they could or couldn't be

14   supplemental claims if the case stayed here.

15           Nevertheless, the State courts are uniquely well

16   suited to handle civil litigation concerning the alleged

17   misconduct of their licensed professionals.  So essentially

18   that's it.  The case is about those people.

19           If I had to pick one thing, if you gave me one

20   paragraph of a hundred words to sum it up, it's essentially

21   related around common law 487 fraud in and out of litigation as

22   to professionals who knew what the truth was and colluded to

23   hide it to support what their clients were to doing, which was

24   to commit fraud.

25           The only other important fact that I mention is it is

D7GPKRIC(3905)

1       a derivative action in State court, and I assume it will still

2       be one here, in that Mr. Kriss and Mr. Ejekam are claiming to

3       derivatively represent those equity owning members of certain

4       BayRock companies, the companies themselves derivatively, and

5       moreover, as creditors of those companies, along with the

6       Gottdiener plaintiffs, who are also creditors by reason of tort

7       claims against them under New York law.

8               They allege that some or all of the BayRock entities

9       are in insolvent and, therefore, they have under the trust fund

10      doctrine, the equivalent derivative standing.  Therefore, it's

11      essentially not Jodi Kriss suing for harm to him.  It's Jodi

12      Kriss acting on behalf of, and the Gottdieners or their estates

13      and others acting on behalf of the entities that they speak for

14      to vindicate the rights of all the constituents, meaning in

15      this case all the persons with claims, all the creditors, all

16      the defrauded banks and so on.

17              THE COURT:  Okay.  Thanks so much.  That's helpful.

18      One other question, just to put this in context for me.  You

19      said the defendants are primarily licensed professionals, but

20      if I'm correct, it looked to me like the defendants are very

21      much the same as the defendants in the 2010 action, and that

22      there are many types of parties, not just professionals.

23              MR. OBERLANDER:  Understood.  And if you're asking,

24      the explanation is that, as a matter of style over the years in

25      doing corporate litigation like this, it has tended to always

D7GPKRIC(3905)

1    come up somebody tends to object that there's a failure to join

2    a party, who may be indispensable or necessary.  And the

3    reality is, I didn't want to run the risk of basically suing a

4    law firm saying you helped that person do this and the law firm

5    saying, well, you can't sue me if you don't join my claim.

6           I'm oversimplifying, but because it's derivative, if

7    those complex rules apply under 160, this is a complex case.

8    I'm doing the best I can to simplify.

9           THE COURT:  No, no, no.  I appreciate it.

10          MR. OBERLANDER:  One last comment and I promise to

11   shut up.

12          THE COURT:  No, that's okay.

13          MR. OBERLANDER:  What precipitated the case was the

14   termination of proceedings in front of Judge Glasser to unseal

15   things resulted in various revelations of documents that all

16   got unsealed on or about the last week of March.  March 22 is

17   the latest date.  That's what precipitated the action in state

18   court.  There would have been no such action without the

19   revelations that it's based on.  All right?  So if you're

20   asking why did it show up now and why wasn't it brought in in

21   2010, nobody knew any of that until March 2013.

22          THE COURT:  Okay.  So I guess my next question is a

23   related one.  How is it different from the 2010 action, and why

24   shouldn't it just be merged with the 2010 action?

25          MR. OBERLANDER:  If you're asking me straight out, as

D7GPKRIC(3905)

1    an officer of the court, whether the claims I intend to bring

2    would very likely be considered supplemental if it stayed here

3    on removal, the answer is yes, of course.  It would be silly to

4    argue otherwise.  And if you're asking me, therefore, if

5    they're supplemental, couldn't everything be merged?

6    Absolutely, of course.  It would be silly to argue otherwise.

7            However, it was brought in state court by the choice

8    of plaintiffs under, as your Honor is well aware, the

9    voluntary, involuntary doctrine, and we believe it should be

10   there at least until there's a pleading with claims or somebody

11   can say that's why it should be here or that's why it

12   shouldn't.  Because we, and I don't -- I'm sorry, do you want

13   me to stop?

14           THE COURT:  You can certainly finish your paragraph or

15   your sentence.

16           MR. OBERLANDER:  Okay.  I don't deny the right of

17   Mr. Sater or anyone to come in and remove under 1442 and claim

18   I'm a federal officer with a colorable defense.  I claim the

19   right to examine that, and to request evidentiary, you know,

20   accelerated hearings on that, but I don't question his right to

21   allege it.  I merely question his right to allege it with

22   respect to claims that I haven't made, and that's essentially

23   what the fight right now is about.

24           THE COURT:  All right.  Let's stop there because I was

25   just trying to get some background about what the case is

D7GPKRIC(3905)

1    about.  So as I understand it, there is one motion before me

2    that I think is ripe, and that is plaintiff's motion for

3    reconsideration or, in the alternative, to remand regarding the

4    Kaminsky removal.  And one question -- I don't believe I have

5    received any opposition to that.  Is there any opposition to

6    it?  Does anyone want to be heard with respect to the Kaminsky

7    removal?

8            Okay.  I don't see any objection.  The second question

9    I have is, does anyone, including plaintiff's counsel, have any

10   reason to believe that the discontinuance of Mr. Kaminsky,

11   which was filed on June 5th, 2013, was ineffective?

12           MR. OBERLANDER:  May I?

13           THE COURT:  Yes, you may.

14           MR. OBERLANDER:  Not that it was ineffective, but it

15   should be part of the record.  Technically, it is because it's

16   in some of their papers, but if we could make it part of the

17   transcript.  On May 31 --

18           THE COURT:  Also, just so you understand, there are a

19   lot of papers.  So don't feel free to say something that's

20   already in the papers.  I've looked at them, but I haven't

21   memorized them.

22           MR. OBERLANDER:  On May 31, before we discontinued as

23   to Mr. Kaminsky, we discontinued as to the individual

24   defendant, Donald Trump Senior and as to Ivanka Trump, Trump

25   Enterprise Does, and a real estate investor named CIM.  They

D7GPKRIC(3905)

1    were named only as declaratory defendants to establish

2    liability to them, but we discontinued in exactly the same

3    method.

4           So I would plea with the Court, to avoid problems with

5    them too, who will want to know exactly why they're not

6    discontinued, if we can establish as law of the case that this

7    dis- -- we don't claim Mr. Sater's removal was ineffective.  We

8    believe he removed on June 21 and it's here.

9           THE COURT:  Let's forget, again, about Mr. Sater for

10   just a minute.  I want to focus on Mr. Kaminsky.  So let's

11   finish with Mr. Kaminsky, and then we'll deal with the Trump

12   defendants.

13          With respect to Mr. Kaminsky, it appears that a notice

14   of discontinuance was filed on June 5th.  It further appears

15   that a notice of removal was filed by Kaminsky on June 7th,

16   which, of course, is after June 5th.  The jurisdiction of the

17   court with respect to removal was judged at the time of

18   removal.  It appears that Mr. Kaminsky was no longer a party to

19   the action and, therefore, it appears that the removal was

20   ineffective.

21          So with respect to Mr. Kaminsky, just so it's clear, I

22   did dismiss Mr. Kaminsky because no one seemed to want him in

23   the action, including Mr. Kaminsky.  Although, it appears on

24   closer inspection that Mr. Kaminsky was never before this court

25   and, therefore, that the removal by Mr. Kaminsky was

D7GPKRIC(3905)

1    ineffective.  So I hope that answers your question,

2    Mr. Oberlander.

3              MR. OBERLANDER:  Yes.  Thank you, your Honor.

4              THE COURT:  Okay.  Now, that leaves us then, let's

5    talk about the Trump defendants because you addressed them.  On

6    May 31st, before removal, plaintiffs filed a notice of partial

7    discontinuance as to defendants Donald Trump, Ivanka Trump and

8    Trump Does 1 through 100, as well as CIM Group; is that

9    correct, Mr. Oberlander?

10             MR. OBERLANDER:  That is, yes.

11             THE COURT:  They are still reflected on the docket; so

12   I am, unless there's any objection, going to dismiss those

13   defendants.

14             MR. OBERLANDER:  No, thank you.  They shouldn't be

15   here.

16             THE COURT:  Okay.  So we've dealt with Mr. Kaminsky,

17   and we've dealt with the Trump defendants, as well as CIM

18   Group.  That leaves us with the motion -- the contemplated

19   motion to remand based on the Sater removal.  And let me ask,

20   we have counsel for Mr. Sater here, do you intend to oppose

21   that motion?

22             MR. LISTON:  Yes, your Honor.

23             THE COURT:  Okay.  So I will take papers on it.  I'll

24   set a briefing schedule, but I would like to briefly hear from

25   both parties with respect to the motion.  So why don't I hear,

1    first, for counsel from Sater very briefly what the basis of

2    removal was, and then I'll hear from the plaintiff about the

3    basis for the remand argument.

4         MR. LISTON:  Thank you, your Honor.  Joshua Liston for

5    Mr. Sater.  We removed the case under 28 U.S.C. 1442(a)(1), the

6    federal officer removal statute.  To us, it seems readily

7    ascertainable from the face, with the summons of notice that

8    the basis for the claims against Mr. Sater is the fact of his

9    conviction and cooperation with the government.

10        In our view, because of various orders of prior courts

11   and also directives from agents of the federal government, that

12   that raises in our mind colorable federal defenses to those

13   claims and, thus, it's appropriate to remove under the federal

14   officer removal statute.

15        THE COURT:  Okay.  Thank you.  I'll hear from

16   Mr. Oberlander, if you'd like to speak.

17        MR. OBERLANDER:  As a matter of substantive and

18   procedural, I agree with my colleague.  Here is the issue.  If

19   that were a AUSA who, representing Mr. Kaminsky explaining

20   removal, we would have -- hypothetically, we would have an AUSA

21   clearly being sued for things that facially likely happened in

22   the context of litigation.  Nobody would question that he was a

23   federal officer.  The only question would be whether he has a

24   colorable defense.

25        This is not an immunity issue.  The immunity issue

D7GPKRIC(3905)

1    would run to whether or not he would be liable, but in terms of

2    removal the question would be, did he act in the scope of

3    office?  And that's a very broad test, and it's very hard to

4    win that.  And then the next question would be, does he have a

5    colorable defense?

6            When you are dealing with somebody who doesn't walk

7    around with the halo of officership, for example, with the

8    government contractor, which is the way you typically see

9    these, and somebody comes in, for want of a better term, I'm a

10   de facto federal officer because I was drafted into service by

11   contract or something or some other deal whereby I was legally

12   required to follow extraordinarily direct, precise

13   instructions, then there's a federal issue of is that even

14   true.

15           I don't mean are they suborning, perjuring and lying

16   on facts.  I mean, is it even true that there was such a

17   relationship and that he wasn't free to do as he wished.  The

18   reason I use the government contractor issue is that, on the

19   issue of cooperators at the federal Appellate level, in my

20   research to date I found exactly one case.  It's out in the

21   midwest.  They don't have webbed feet there.  It's not a Second

22   Circuit case.

23           THE COURT:  Just say that again.  The acoustics are

24   bad.  You found one case and it's --

25           MR. OBERLANDER:  I said the reason that I'm

D7GPKRIC(3905)

1    analogizing this to a federal contract issue --

2              THE COURT:  I understand.  Is that you found one case

3    involving a cooperator.

4              MR. OBERLANDER:  Is there's exactly one case reported

5    in modern times on the federal officer defense of a cooperator

6    who ever -- who got himself sued civilly, and it got to

7    Appellate case and it says the same thing I'm saying --

8              THE COURT:  What court is it?

9              MR. OBERLANDER:  The Eighth.

10             THE COURT:  Eighth Circuit?

11             MR. OBERLANDER:  Yes, but the Eighth Circuit decision

12   is one word.  It says affirmed.  It's the District Court where

13   the reasoning is, and what the District Court was faced with

14   was basically somebody who got swept up in a sting operation

15   and the Feds had said to their cooperator, go wear a wire and

16   try to get all of these people to buy drugs, or whatever the

17   predicate offense was.  And somebody was caught in that, and

18   sued the cooperator, claiming that he had no right to implicate

19   them, and that it was malicious and so on and so forth.

20             And what the District Court said, highly summarized,

21   is that when a federal officer lawfully is controlling an

22   informant or cooperator and has them wearing a wire to set up a

23   sting, then for that purpose, they may very well be federal

24   officers.  Nobody's questioning that direct control of a

25   cooperator or an informant can make you a federal officer.

D7GPKRIC(3905)

1          The question is then, if that's the case, what's the

2    scope of the duty?  What were you told to do?  And so to go

3    back -- because that didn't come up in that case, to go back to

4    the contractor cases, for some reason -- am I going too fast

5    for you?

6          THE REPORTER:  No, you're fine.

7          MR. OBERLANDER:  Okay.  For some reason the Second

8    Circuit attracts the bulk, even more than the Ninth, of all of

9    the contractor cases probably because of World War II and the

10   shipyards and in all of those cases they keep coming up with

11   asbestos.  In all of those cases, they tend to circle around to

12   some plaintiff suing the contractor claiming you did something,

13   manufactured something, it hurt me, and you should have warned

14   me.  And under state law, there was a duty to warn.

15          That, we believe, is reasonably analogous to if

16   Mr. Sater sells an investment to somebody in his company as a

17   security, under state and federal law, he has an affirmative

18   duty to disclose the prior conviction.  It's similar to an

19   affirmative duty to warn about a dangerous product.  And in

20   every single one of those cases in the Second Circuit, which is

21   notoriously strict, in order for the defendant, that is the

22   removing contractor, to claim 1442 successfully, they must

23   establish that the government exercised such direct control

24   over the content, time, place and manner of the warning, that

25   they had absolutely no discretion in the matter.

D7GPKRIC(3905)

1          So to summarize all of this, if the government had

2     said to Mr. Sater, hypothetically, because I really don't know

3     what he did as a cooperator, I haven't ever asked anybody what

4     he did, but if the government said to Mr. Sater, would you

5     please wear a wire and gather evidence on these people, pretty

6     much what he would have done doing that, we don't disagree, is

7     within the purview of 1442.

8          If the government said in its cooperation agreement,

9     which it did, Mr. Sater, you are not to disclose the existence

10    of your cooperation without our permission.  And if somebody

11    argued that meant he shouldn't disclose the conviction, okay,

12    even given all of that, nobody said he should go out and sell

13    securities or take a job where he is put in a position where he

14    has to affirmatively disclose what he's been told not to

15    disclose.

16         The example I gave was that, in 2003, Mr. Sater leased

17    a house from a woman named Elizabeth Theriot.  This is all

18    public.  It's in litigation papers out there when he didn't pay

19    the rent, and I have no reason to believe that Elizabeth

20    Theriot, and we can call and ask, bothered to ask him on a

21    lease application, do you happen to have any hidden convictions

22    we want to know about.  I don't think he had a duty to disclose

23    anything to her and, therefore, that would be a perfect example

24    of a transaction in which this case isn't implicated.

25         But within a day of that lease he also sold her a

D7GPKRIC(3905)

million dollars' worth of investments and membership interests

in BayRock Ocean Club, one of the BayRock companies.  And when

he did so, pursuant to a private placing memorandum -- and his

signature is all over this stuff, along with Tevfik Arif's --

that triggered an obligation to disclose the prior conviction.

That's a wrongful concealment.

Concealing it from Theriott as his landlady wasn't

wrongful.  Concealing it from her as his investor was.

Concealing it from banks was.  He knows that, himself, because

his sentencing transcript, which is now public, has him

allocuting and saying, I did a pretty good job at things at

BayRock, built it up with my own two hands until New York Times

outed me, and once everybody knew that I had a connection to

organized crime the banks would never lend any money.

There's really no question about this.  So for

Mr. Sater to claim, A, federal officer status and, B, duty and,

C, defense particularly sovereign immunity, what he has to do

is take the claims that we haven't written yet and say, okay,

when I sold that stock to Elizabeth Theriott, I was under

orders not only not to disclose my conviction but to not

disclose it in that transaction.  Because nobody told him go

out there and sell stock.  Unless he wants to bring an FBI

handler in here to say, we told Mr. Sater to go out and sell

securities.  We told him to own 68 percent of a company that he

admits he built with his own two hands --

D7GPKRIC(3905)

1           THE COURT:  Okay.  I'm going to interrupt you right

2   there for just a moment.  So I get the gist of what your

3   argument is.  And I guess I have a little --

4           MR. OBERLANDER:  Prematurity, the argument is

5   prematurity.

6           THE COURT:  Well, the argument is prematurity?

7           MR. OBERLANDER:  No.  Until we write claims, how can

8   he possibly prove he's a federal officer even at a

9   preponderance level to make the removal colorable?  And then

10  once we write claims, we're positive he can't do it.  But right

11  now, it would be intellectually dishonest to say anything other

12  than that.  We haven't claimed anything.  I'm not trying to be

13  funny.  We wrote a summons with notice to be able to serve a

14  place --

15          THE COURT:  I understand.  There's no complaint.

16          MR. OBERLANDER:  Yes.

17          THE COURT:  So what -- I'm just curious, what is your

18  plan with regard to the complaint?

19          MR. OBERLANDER:  Well, what we would recommend is that

20  the Court -- we would be perfectly happy to waive any requested

21  attorney's fees and concede the removal was in good faith.  And

22  if the Court remanded, we would stipulate to produce a

23  complaint in the State court action within 20, 30 days, I

24  assume.

25          It's not going to be very difficult.  And at that

D7GPKRIC(3905)

1  point, Mr. Sater is free to remove and bring the argument when

2  he can intelligently say -- and I say intelligently, as in

3  intelligently ascertain, hot to impugn anybody, that's the

4  standard -- you see, with respect to that claim here's my

5  defense, on this day, this guy and this government told me go

6  do that and, therefore, I have a defense.  We're requesting a

7  removal.

8           THE COURT:  Okay.  I got it.  I got it.  So let me

9  just talk to Mr. Liston for a minute.  It's Mr. Liston, right?

10          MR. LISTON:  Yes, your Honor.

11          THE COURT:  So we've all been sitting here hearing

12  what Mr. Oberlander says, and is often the case, when you hear

13  one side, it sounds reasonable.  So he's arguing that the case

14  should be remanded because without a complaint, it's very

15  difficult to assess all sorts of things, like one large thing

16  is just the existence of a federal question.  There conceivably

17  could be a federal question, but the other has to do with the

18  role of your client with respect to various transactions.

19          I must say that, even though I just got this case, I'm

20  very frustrated that it seems very hard to move forward, and it

21  seems to me if we have a round of briefing on the remand

22  motion, where he makes what seems a logical argument that it

23  would be premature, it just kind of prolongs the inevitable,

24  which is the ultimate filing of a complaint, and then another

25  removal, and then another argument on remand.  So what are your

D7GPKRIC(3905)

1    thoughts about that?

2            MR. LISTON:  Sure, your Honor.  Thank you.  Just a

3    couple of points.  First, on whether it's premature.  I think

4    both sides recognize that for purposes of removal, a summons

5    with notice is a document that is capable of leading to

6    removal.

7            So the real question is under the Second Circuit

8    standard, Whitacre and other cases, is this document one where

9    one can readily ascertain the factual basis for removal.  And

10   many times a summons with notice will give the absolute bear

11   minimum, will name, you know, a type of claim that one may

12   bring, and the defendant is to piece it together and have some

13   idea of what the case will be like.

14           The summons and notice is not nearly as vague as

15   Mr. Oberlander suggests.  There's quite a bit of detail here.

16   There's, obviously, as we talked about in the citations to

17   Mr. Sater's conviction, there is reference to certain federal

18   litigations, docket numbers in which they're saying that there

19   is wrongdoing to occur.

20           So there is much more there than they suggest, and it

21   may be that now that we have removed the case, they are

22   thinking better of whether it was wise to put in sufficient

23   information, but because they did give us, in our view, a basis

24   to remove the case, that's -- that means that would need to be

25   adjudicated.  We need to deal with the pleading that they've

D7GPKRIC(3905)

1    actually put out there.

2         THE COURT:  Or the paper that is actually out there.

3         MR. LISTON:  Sure.  But we agree, as a procedural

4    matter, that if this case were to stay here, that they are -- I

5    mean, we can work this out.  The timing, to the extent that I

6    could hear because of the acoustics, seemed okay.  We certainly

7    have no objection to their taking the remaining time that they

8    would have under the state court rules to file a complaint.

9         But federal officer removal statute is different than

10   most removal statutes because the courts have made very clear

11   that, unlike most removal provisions, this one is to be

12   interpreted broadly because of the important stakes at issue.

13        THE COURT:  Okay.  So let me ask Mr. Oberlander.  Why

14   not file a complaint so that we can fully address the remand

15   issue once, and if it belongs in state court, let it go to

16   state court?

17        MR. OBERLANDER:  We're operating in an area now where

18   we are, all of us, with respect even including the Court, are

19   kind of charting our own way, and to the extent it's

20   reasonable, I represent my clients reasonably.  If I can

21   briefly take a minute, I'm going to kind of agree, as long as

22   we can agree on something to protect my clients.

23        THE COURT:  Okay.

24        MR. OBERLANDER:  With one exception, it is absolutely

25   black letter certainty that it is -- and I'm sorry, but that's

1    the correct word.  It is improper for a court to look at

2    anything subsequent to the document in existence at the time of

3    removal.

4            Now, that doesn't mean that we all can't agree to do

5    it, I suppose, but the exception doesn't apply here.  The

6    exception is where somebody commits a fraudulent joinder to

7    defeat diversity.  All right?  Otherwise, we're stuck with what

8    I wrote.  And if there's a way to agree that works procedurally

9    and doesn't forfeit or waive any of my client's rights and gets

10   us all to move the case forward, I would agree.

11           But I have a question, since you're the one with the

12   robe, if you'll forgive me -- What?  Okay.  My colleague wants

13   me to point out that there are 25 other defendants capable of

14   also making individual removals, and that another reason to

15   remand, let the complaint get filed and serve everybody is so

16   that that way the moment -- and I promise I can serve everybody

17   in two days.  That way, we're dealing with the last served, in

18   terms of timing.

19           If the Court is concerned about timing, an immediate

20   remand, the stipulated complaint, stipulated immediate service

21   of it would eliminate the possibility of, we're done, it goes

22   back, and then another defendant comes in.  It seems to me

23   efficiency would be served by remanding back there and serving

24   and letting everybody remove or not within the same 30-day time

25   frame, but I'm sorry if I confused the Court.  I didn't mean to

1   get off that tangent.

2           Everything Mr. Sater said, through counsel, is correct

3   with one exception.  Federal officer removal is construed

4   broadly as to the colorability of the defense that he claims,

5   and it's construed broadly to a degree as to his claim that he

6   did whatever he did in the scope of duty.  There's no case that

7   holds it's construed broadly to determine whether he's a

8   federal officer, and it couldn't be because, otherwise,

9   everybody and his brother could simply say, the government told

10  me to do this.  In other words, common reason would have to

11  hold that while if Mr. Sater can establish that he --

12          THE COURT:  I'm sorry, I'm just going to interrupt

13  because I felt like we might be talking about how to make

14  progress, and now, I feel like we're not talking about that

15  anymore.

16          MR. OBERLANDER:  The progress would be if I write a

17  complaint, which I can do within 20 days no matter what court

18  it's in, although there are different pleading standards, and

19  the complaint makes no claims against Mr. Sater for which he

20  would have a federal officer defense, I'm perfectly happy to do

21  that, as long as the Court can advise what the procedure will

22  be after that.

23          Because would the Court then say that this makes clear

24  that under the interests of justice, I'll be remanding even if

25  they're -- in other words, how would the Court proceed?  I just

 1    don't want to agree to do something and have my client get mad

 2    at me that we forfeited the right to request removal.

 3         THE COURT:  It's very hard for me to tell you in the

 4    abstract how I would rule.  I think I understand what you're

 5    asking, which is whether I would try to exercise supplemental

 6    jurisdiction over these claims, and the answer is, I'm not

 7    sure.  On the one hand, it seems like it would be efficient to

 8    litigate all of this together.

 9         On the other hand, I must also say there's nothing

10    particularly inviting about these cases that I've just

11    inherited.  So I can only tell you that -- well, this is

12    perhaps a non sequitur, perhaps not, but if there is no federal

13    jurisdiction, I will be the first to say that I don't want the

14    case in front of me because I agree with the statement in one

15    of your letters that's it's grossly inefficient.  Whatever I do

16    about jurisdiction is a nullity, and jurisdiction is one of the

17    things I care about first and foremast.

18         MR. OBERLANDER:  Then perhaps a stipulation unless of

19    a complaint that there will be no claims alleged on remand that

20    say anything other than the following.  Why don't I just write

21    the claims against Mr. Sater and stipulate into Court that no

22    other claims than these will be raised on remand?  Wouldn't

23    that do it?

24         THE COURT:  I don't know.  Maybe it would.  I'm going

25    to hear from other counsel.  Thank you.

D7GPKRIC(3905)

1             MR. SAURACK:  Your Honor, as a friend of the Court, as

2       far as efficiency, there's another issue here.  That is, our

3       allegation is that our privileged documents were taken and used

4       in the 2010 case.  The allegations in this new complaint sound

5       awful familiar.  My concern is that state court case is based

6       upon the same documents that were taken will have an

7       inefficiency.  We'll have a case before the state court and

8       sealing litigating the exact same thing on a dual track; so

9       that's the concern that we have here, your Honor.

10            MR. OBERLANDER:  Which is a fair concern that's

11      addressed by the doctrine of abstention, which directs that in

12      such -- not only does it happen all the time that the court of

13      limited jurisdiction, would abstain until the state court

14      disposes of it.  But if there's a definition of prematurity,

15      this would be it, to have a summons with notice and have

16      counsel argue that somehow we violated property laws of the

17      State of New York by introducing stolen trade secrets into

18      claims that don't exist yet, I think, would be the definition

19      of premature.

20            THE COURT:  I think what we're all trying to do is

21      just -- I hope what we're all trying to do is find a way

22      forward here rather than being mired in what we seem to have

23      been mired in for years.  So I am open to all suggestions about

24      how to get the case moving so we don't just have multiple

25      rounds of motion practice and cases on a dual track.

D7GPKRIC(3905)

1            Mr. Liston, do you have any views on this?

2            MR. LISTON:  Your Honor, I mean, you know, I think

3     where we come out is I think the best way to achieve those

4     goals is to have Mr. Oberlander file the remand motion and

5     decide that.  Because I think -- and I share the Court's

6     concern of having multiplicity of cases and different

7     pleadings, but I do think under the rules here, the most

8     straightforward way is to deal with this.

9            Because even if we have properly removed the case,

10    then what happens subsequently will not affect the Court's

11    power to adjudicate because we are working off the pleading

12    that they crafted and put there.  Now, maybe they didn't mean

13    to include so much so that we could remove under the federal

14    officer removal statute but, obviously, in our view, that's

15    where we are.

16            THE COURT:  Well, and sooner or later plaintiffs have

17    to file their claims.

18            MR. OBERLANDER:  Sure.

19            THE COURT:  And then, at some point, it will be

20    evident whether or not there's a federal jurisdiction.  So,

21    Mr. Oberlander, I'll give you the last word and then I'm about

22    to proceed in the way that Mr. Liston suggested.

23            MR. OBERLANDER:  The last word is that the removal

24    statute is exquisitely clear, which is, that the federal

25    officer to whom the claim is directed may remove.  Okay?

D7GPKRIC(3905)

1          Now, I wrote those, and with respect to my colleague,

2   I don't kind of accidentally say more than I meant to say.  I

3   meant to say what I said, and what I said in there is that we

4   intend to pursue direct and vicarious liability.  As a very

5   simple example, we can prove what we will be alleging either

6   way, that people at BayRock, who are not Mr. Sater but who knew

7   about the concealment, took advantage of it to defraud people

8   of millions of dollars.

9          That's a lawsuit against those people, like Julius

10  Schwartz, and he's not represented by anybody in here based on

11  their identification.  So this is only an allegation, but the

12  point is, a lawsuit against Julius Schwartz claiming that he

13  took advantage of the concealment of Sater's conviction to

14  defraud people by using BayRock to borrow billions of dollars

15  and not disclose it, does not implicate a federal defense

16  because the federal defense is personal to the federal officer.

17         Mr. Schwartz can come in and argue, you know what, I

18  was a federal officer, somebody ordered me to go in and defraud

19  the banks, but unless he does, Mr. Sater cannot remove because

20  I sue Mr. Schwartz.  So when he says it says in there vicarious

21  indirect liability, absolutely it does.  And vicariously, it

22  means that if, in the context of the litigation in the last

23  several years one of Mr. Sater's lawyers, for argument's sake

24  let's say it's Kelly Moore, because it was Kelly Moore who

25  wrote to Judge Glasser in a document that's now public, and

D7GPKRIC(3905)

1    said, don't worry, we've contacted all the counsels that have a

2    copy of Mr. Oberlander's complaint and they've agreed to

3    destroy all the records of it so no one will know this existed,

4    and we wish to sue her, and Mr. Sater becomes vicariously

5    liable.  She doesn't have a federal officer defense and neither

6    does he in a vicarious liability.

7            Sure, I wrote those statements because they're crafted

8    to say direct and vicarious liability against those

9    responsible.  There's not one sentence with a noun and a verb

10   hat says we're going to sue Mr. Sater for this.  That's why

11   it's premature and can't be adjudicated.

12           THE COURT:  Okay.  So I am going to set a briefing

13   schedule.  So the remand motion, how soon can you file that?

14           MR. OBERLANDER:  Could you give me two seconds?

15           THE COURT:  Sure.

16           MR. OBERLANDER:  My colleague here points out, I

17   believe, on removal here, the 120 days -- it's Rule 40 that has

18   the 120 days; isn't it?

19           THE COURT:  Oh, you only have about a week left to

20   file.

21           MR. OBERLANDER:  No, it was May 10th.  It would run

22   until September 10th.

23           THE COURT:  Okay.

24           MR. OBERLANDER:  I filed that case on May 10th in

25   state Supreme Court.  It should keep the same filing date on

D7GPKRIC(3905)

1   removal.  So let's do it relatively quickly.  Why don't we have

2   removal -- I can be done in two weeks.

3               THE COURT:  Okay.  So that is July 30th.

4               MR. OBERLANDER:  Sure.

5               THE COURT:  And two weeks for the response?

6               MR. LISTON:  Yes, your Honor.

7               THE COURT:  So that would be August 13th.  Reply about

8   a week later, August 20th.

9               MR. OBERLANDER:  Sure.

10              THE COURT:  Okay.  All right.  So is there anything

11  else that we need to deal with?  So the motion for

12  reconsideration, or to remand, I'm simply going to deny, but I

13  will clarify.  I have clarified my order on the record and --

14  Yes?

15              MR. OBERLANDER:  I apologize, but just to keep the

16  record clear, the only motion in front of you to remand was as

17  to Mr. Kaminsky.

18              THE COURT:  Yes, yes.

19              MR. OBERLANDER:  And that one you didn't deny -- I'm

20  sorry, you're denying as to the remand, but you're ruling --

21              THE COURT:  I'm denying as to the remand because it's

22  moot.

23              MR. OBERLANDER:  But you're ruling as to law of the

24  case that he was never here.

25              THE COURT:  That is my observation, and I'm going to

D7GPKRIC(3905)

deny -- I have to grant or deny these motions or they stay on

the docket sheet forever.  So I'm denying the motion for

reconsideration, but I will clarify.

MR. OBERLANDER:  May I ask a simple question --

THE COURT:  Yes.

MR. OBERLANDER:  -- on the coming motion?  So we don't

waste time on the motion practice, it is our position --

THE COURT:  This is the Sater motion?

MR. OBERLANDER:  Yeah, the one that we just did the

schedule to.  It's our position that Mr. Sater must introduce

evidence to establish the federal officer defense other than

legal allegations of his counsel.

Now, it would seem an awful waste of time if he didn't

do it, and then we said, well, now you can't grant it.  There's

no evidence, and then he got a do over.  And we're not

questioning his good faith or bad faith.  Could the Court

possibly considering ruling in advance that he would have to

produce some type of evidence to be able to have a threshold

showing of officer.  Otherwise, how would we ever get anywhere?

THE COURT:  I mean, I can't do that without knowing

what he would give me and whether it would be adequate.  I

would simply urge Mr. Liston to do whatever you're going to do

in the way that looks like it would be efficient.

I did see in Mr. Oberlander's letter certain questions

about taking discovery and trying to get more information about

1    Mr. Sater, which seems to be a recurring theme here.  So to the

2    extent that you can put in whatever is necessary from an

3    evidentiary or other point of view, that would be appreciated.

4    Okay?  All right.

5              So is there anything else we need to deal with in 13

6    CV 3905?

7              MR. OBERLANDER:  I'm sorry.

8              THE COURT:  Yes, Mr. Oberlander.

9              MR. OBERLANDER:  Your local rules on motion practice

10   have caused disagreement among counsels.  I have a question for

11   clarification.

12             THE COURT:  Okay.  I'm happy to address it.

13             MR. OBERLANDER:  Are the -- Is that test program for

14   complex cases, did it naturally a month ago?  It was supposed

15   to be for 18 months.  I can't find any information.

16             THE COURT:  I think it's still alive.

17             MR. OBERLANDER:  Okay.

18             THE COURT:  But I'm not positive either.

19             MR. OBERLANDER:  The reason I ask is that, according

20   to -- cases get assigned to it or not based on the ECF code.

21             THE COURT:  Correct.

22             MR. OBERLANDER:  So there's only room for one ECF code

23   on the cover sheet; so when you bring a derivative action in

24   RICO and you write down RICO, it doesn't become complex, but if

25   you write down derivative, then it does.

D7GPKRIC(3905)

1              In the rules for the complex procedures, the rule for

2     pre-motion conferencing and letters is a syllable accurate

3     duplicate of your Honor's rules.  However, there's an extra

4     rule in there that says, notwithstanding the preceding

5     paragraphs, I'm going from memory, in the event that a deadline

6     for making a motion is prescribed by rule or statute, such as

7     Rule 59, Rule 60, then the above requirements don't apply.

8              I'm asking your Honor for clarification because it has

9     come up in arguments with counsel that where we have, for

10    example, by law, by statute non-extent, a 30-day deadline to do

11    this or 20-day to do that, if we go ahead in good faith and try

12    to comply with the pre-motion conferencing letters, it

13    foreshortens that period immensely to the point where we can't

14    even formulate all our arguments and they get mad later saying,

15    oh, that's a new argument.

16             THE COURT:  Well, one of the things you'll notice is

17    there are certain kinds of motions that are exempt from

18    pre-motion letters and pre-motion conference.  Motions to

19    remand, as I recall, are one of them.  So if that's the

20    particular one you're worried about, then don't worry about it.

21    And besides which, we're having this conference right here and

22    now.

23             If there is something else that is unclear, rather

24    than guess or try to, you know, play a game of gotcha, which I

25    think is not good for any of us, best to write just a very

D7GPKRIC(3905)

1    short, simple letter, perhaps one paragraph, to the Court

2    saying, should the rule be interpreted this way or that way?

3    And that way none of us is surprised.  I don't want to be

4    surprised either.

5         MR. OBERLANDER:  It was just a general question

6    because there are so many rules, rules that you would never

7    know that say you can't attach an affidavit.  When Mr. Saurack

8    over there just filed a motion for opposition to a motion to

9    reconsider, which according to the local rules, actually your

10   rules --

11        THE COURT:  My rules say it's not necessary, but

12   actually, I appreciated having that particular one.  So if

13   there's a question about a rule, just ask.  I think that's

14   maybe the simplest thing, and I will always docket the letter

15   with the question and whatever the clarification is, usually

16   will be an endorsement on the letter.  That way, everyone will

17   know what it is.  Okay.  So let's move onto the next case and

18   why don't we take the oldest case now.  Why don't we take 10

19   sieve 3959.  Okay.

20             (Adjourned)

21

22

23

24

25