```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/29/14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

J.L. KRISS and MICHAEL "CHUDI"
EJEKAM, et al.,

                       Plaintiffs,

      -against-

BAYROCK GROUP LLC, et al.,

                      Defendants.

-----------------------------------------------------------x

**MEMORANDUM
DECISION AND ORDER**

10 Civ. 3959 (LGS) (FM)

**FRANK MAAS,** United States Magistrate Judge.

       This case arises out of internecine warfare among persons related to the

Bayrock Group ("Bayrock"), an entity based in New York City comprised of numerous

real estate limited liability companies.  Plaintiffs Jody L. Kriss and Michael Ejekam

("Plaintiffs"), suing both in their individual capacities and derivatively, allege that rather

than constituting a legitimate business, Bayrock is, in fact, a RICO enterprise.

       Judge Lorna G. Schofield has referred the case to me for general pretrial

supervision.  Two cross-motions presently are pending before me pursuant to that

reference.  Bayrock seeks the dismissal, or, alternatively, substantial redactions of,

Plaintiffs' first amended verified complaint ("FAC"), which currently is filed under seal.

Bayrock also seeks the disqualification of Plaintiffs' counsel and the striking of certain

allegations in the FAC if it is not dismissed.[1]  Plaintiffs seek the disqualification of

Bayrock's counsel, the firm of Saterlee Stephens Burke & Burke LLC ("Saterlee").  For

the reasons set forth below, the Court will reserve decision regarding the motion directed

to the FAC in order to permit Plaintiffs to comply with its prior directives.  Both

applications for disqualification are denied without prejudice.

I.      Factual and Procedural Background

        The following facts are accepted as true for present purposes:

        Bayrock is a real estate company.  Operating through a series of subsidiary

limited liability companies, Bayrock has developed numerous projects, some of which are

associated with the Trump Organization.  Among the persons who have been involved in

Bayrock's operations are defendants Tevrik Arif ("Arif"), Felix Satter, a/k/a Felix Sater

("Satter"), and Julius Schwarz ("Schwarz").  Arif is Bayrock's Chairman; Satter is its

Chief Operating Officer or Managing Director; Schwarz, its Executive Vice President and

General Counsel, considers himself Bayrock's de facto chief executive officer.  Plaintiff

Kriss served as Bayrock's Director of Finance and considers himself a "member" of

Bayrock and five of its subsidiaries.  Plaintiff Ejekam considers himself a member of two

of the four principal subsidiaries.

        In 1998, prior to his involvement with Bayrock, Satter pleaded guilty before

Judge I. Leo Glasser in the United States District Court for the Eastern District of New

_____

[1]      For reasons that will become apparent, at my instruction, the parties' motion
papers have been not yet been filed.  (See ECF Nos. 60, 64).

2

York to a one-count criminal information charging him with a RICO violation arising out of securities fraud and money laundering at an unrelated brokerage firm.  (See United States v. Sater, No. 98 Cr. 1101 ("EDNY Case"), ECF Nos. 2, 18, 92).  Satter's sentencing thereafter was delayed because he was cooperating with the Government.  (See id., ECF No. 34); Kriss v. Bayrock Grp. LLC, No. 13 Civ. 3905 (LGS), 2014 WL 715660, at *1 (S.D.N.Y. Feb. 25, 2014) ("Kriss I").  Eventually, in 2009, Judge Glasser sentenced Satter.  Satter was not imprisoned or subjected to a term of probation, and was fined only $25,000.  (EDNY Case, ECF Nos. 34, 35).  That sentence reflected the extent of Satter's cooperation, which the Government has characterized as "extraordinary." Kriss I, at *1.  For many years, because of that cooperation, all of the papers related to the criminal case against Satter remained sealed.  (See id.).

In this action, Plaintiffs seek to bring derivative claims against Bayrock on behalf of the Bayrock subsidiaries and persons and entities having an interest in them. They further claim to be creditors of Bayrock entitled to bring direct claims against Bayrock and the other defendants (collectively, "Defendants") on fraudulent conveyance and other theories.  The FAC is 164 pages long and contains 778 paragraphs.  The attorneys representing Plaintiffs in their effort to prosecute the claims in the FAC are Richard E. Lerner, Esq., and Frederick M. Oberlander, Esq. ("Oberlander").

Plaintiffs filed their initial complaint in this action on May 10, 2010.  (ECF No. 1).  Shortly thereafter, on May 14, 2010, the Honorable Naomi Reice Buchwald, to whom the case then was assigned, directed that there be no further distribution of the

complaint (and the exhibits thereto) because the complaint attached and made reference to documents that had been sealed in the EDNY Case.  (ECF No. 2).  A few days later, on May 18, 2010, Judge Glasser temporarily restrained Oberlander from disseminating any sealed materials concerning Satter.  (EDNY Case, ECF No. 52).  Judge Glasser subsequently made that order permanent.  Kriss I, at *1.

The manner in which Plaintiffs and their counsel came to possess the sealed criminal case materials and other allegedly privileged information is described in the affidavit of Joseph Bernstein ("Bernstein"), a former Bayrock employee, tendered in connection with the settlement of a prior lawsuit, John Doe v. Bernstein, No. 10 Civ. 9658 (NRB), instituted by Satter.  In that lawsuit, Satter contended that Bernstein had misappropriated from Bayrock confidential information concerning Satter's guilty plea and subsequent cooperation with federal authorities.  In a companion lawsuit, Bayrock v. Bernstein, No. 10 Civ. 6338 (NRB), Bayrock similarly contended that Bernstein had misappropriated Bayrock's confidential information, including certain privileged attorney-client communications.[2]

In his affidavit, Bernstein explains that while he was a Bayrock employee, Satter instructed him to keep a backup copy of all of the company's files.  (Decl. of Walter Saurack, Esq., dated Oct. 18, 2013 ("Saurack Decl."), Ex. 3 (Aff. of Joseph Bernstein, sworn to on Sept. 19, 2011 ("Bernstein Aff.")), ¶¶ 3-4).  Bernstein then copied

---

[2]     In 2010, Judge Buchwald referred the Bayrock suit against Bernstein to me for settlement purposes.  I subsequently assisted in the settlement of both of the suits against Bernstein.

onto an external hard drive (and later other media) data that included Satter's cooperation agreement, his personal financial statement, and the presentence report prepared for Judge Glasser. Bernstein also copied communications between Satter and his counsel and Bayrock and its counsel. (Id. ¶¶ 4-6).

After Bernstein ceased to be a Bayrock employee, both the company and Satter sought the return of their confidential information, which request Bernstein rejected, reasoning that he was entitled to retain the information because "Bayrock and [Satter] had failed after numerous requests to reimburse all of [his] outstanding business expenses." (Id. ¶¶ 7-8). Bernstein also filed his own lawsuit in Supreme Court, Westchester County, seeking reimbursement of those expenses and unpaid wages and bonuses. (Id. ¶ 9).

At some point, Bernstein learned that Oberlander was representing Kriss in a suit against Bayrock in state court in Delaware, which raised claims similar to those asserted in this action. (See id. ¶ 12; Pls.' Mem., Ex. D (Delaware complaint)). Bernstein then informed Kriss that he had the backup hard drive and other Bayrock materials. According to Bernstein, Oberlander advised him that the "documents on the hard drive were not stolen and that as a legal matter [he] had every right to possess the . . . hard drive." (Bernstein Aff. ¶ 13).

After apprising Bernstein that Kriss and Bernstein shared a "common interest," Oberlander furnished Bernstein with a retainer agreement, pursuant to which he agreed to represent Bernstein in the Westchester action, but only to the extent of deposing

Schwarz.  (Id. ¶¶ 14-16 & Ex. 4).  In return, Bernstein provided Oberlander with access to the information stored on the backup hard drive as well as some paper documents. During a visit to Bernstein's apartment, Oberlander spent several hours reviewing the files on the hard drive, printing some and emailing others (perhaps to his personal email account).  Among the search terms that Oberlander employed were "Roberts & Holland," "Duval & Stachenfeld," and "Nixon Peabody," which were the names of three firms that had served as Bayrock's outside counsel.  (Id. ¶¶ 21-22).  Oberlander assured Bernstein that the materials on the hard drive were not privileged or confidential "because of the 'crime fraud exception.'"  (Id. ¶ 23).  Oberlander also opined that Kriss was entitled to all of the documents because he was a "member of Bayrock."  (Id.).

Oberlander largely agrees with Bernstein's recollection of the events leading to Plaintiffs' possession of copies of the sealed documents and other materials on the hard drive.  Oberlander notes, however, that he directed Bernstein to use "filters" to narrow the search to "only pick up emails through the time [Bernstein] himself had been at the firm" that were "likely to be relevant and crime fraud excepted[]."  (Decl. of Frederick M. Oberlander, Esq., dated Nov. 20 & 21, 2013 ("Oberlander Decl."), ¶ 8).[3] Oberlander further observes that while he ran the searches, Bernstein generally was present, "watching what [Oberlander] was doing and running the screens himself or watching and making sure [he] did it right."  (Id. ¶ 9).

---

[3]     After preparing his original declaration on November 20, Oberlander made certain corrections and added an exhibit the following day.

After hearing testimony from Oberlander regarding these events, Judge
Glasser eventually found that Oberlander knew that the documents concerning Satter's
criminal case had been sealed before Plaintiffs filed this action, and that those documents
had been "wrongfully taken" by Bernstein, who had "no legal right to those documents."
See Roe v. United States, 428 F. App'x 60, 64 (2d Cir. 2011).  Although Oberlander
appealed this decision, his appeal was unsuccessful.  Id. at 68.

Subsequently, after the United States Attorney's Office for the Eastern
District of New York disclosed Satter's conviction in a press release, the Government
agreed to the release of certain documents and docket entries in the EDNY Case that did
not refer to his cooperation.  Id. at 65.  Judge Glasser, in turn, made certain aspects of the
criminal case against Satter publicly available.  (See EDNY Case, ECF No. 220).
Nevertheless, the documents relating to Satter's cooperation remained sealed.  (See id.).

While the Eastern District and Second Circuit proceedings were underway,
Judge Buchwald suggested, by letter dated December 16, 2010, that Oberlander submit
for her review a proposed new complaint that specifically cited public sources for any
allegations that "generally" would be treated as sealed or privileged.  (Saurack Decl. Ex.
6).  That did not occur.  Thereafter, by order dated May 31, 2013, Judge Schofield, to
whom the case had been reassigned, granted Plaintiffs leave to file their FAC under seal.
(ECF No. 38).  On July 23, 2013, Judge Schofield then referred the case to me for general
pretrial purposes, including "resolution of the issues that are the basis for [Bayrock's]
objections to the public filing of the FAC."  (ECF Nos. 52, 53).

7

The objections to which Judge Schofield referred are set forth in a letter dated May 9, 2013.  (See Saurack Decl. Ex. 9 ("May 9 Letter")).  In that letter, Bayrock complained that the FAC (a) "include[d] on its face and [was] otherwise derived from misappropriated Bayrock attorney-client privileged communications, attorney work product materials, [and] confidential and proprietary Bayrock information, and [b] fail[ed] to comply with [the] Court's prior urging that the FAC be based on referenced public information."  (Id. at 1 (emphasis added)).  Included with the May 9 Letter was a chart, Exhibit A, reflecting paragraphs of the FAC that Bayrock thought likely were "derived from [Bayrock's] privileged and confidential information."  (Id. at 2 n.2).  Bayrock urged the Court to disallow the filing of the FAC or, at a minimum, to require Plaintiffs to "clearly cite public sources of information utilized in drafting the FAC" and verify that these "sources did not gain such information as a result of [P]laintiffs' own misconduct."  (Id. at 2).  Bayrock also sought to strike certain portions of the FAC, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, as "immaterial, impertinent, or scandalous."  (Id. at 14).  Finally, Bayrock sought to disqualify Oberlander and his co-counsel based upon their allegedly improper access to Bayrock's privileged information.  (Id. at 15).

After meeting with counsel on September 11, 2013, I directed that Plaintiffs serve an annotated version of Exhibit A to the Bayrock May 9 Letter "detailing any sources of information other than . . . Bernstein for the allegations in the referenced paragraphs of the [FAC]."  (ECF No. 60 ¶ 2 (emphasis added)).  I further indicated that

any motions that the parties wished to make concerning the disqualification of Plaintiffs'

counsel or the "propriety of using in the [FAC] information obtained from . . . Bernstein

or otherwise alleged to be privileged, work product, or trade secret information" be

served, but not filed, by October 18, 2013.  (Id. ¶ 3).  Opposition and reply papers

similarly were to be served (but not filed) by November 15 and December 6, 2013,

respectively.  (Id. ¶¶ 4-5).  Certain of these dates subsequently were extended.  (ECF Nos.

63-66).

   By letter dated September 30, 2013, Plaintiffs produced an annotated

version of the FAC that purported to set forth the sources of information for the

allegations included in the paragraphs cited by Bayrock in Exhibit A to the May 9 Letter.

However, rather than specifically identifying public sources, as Judge Buchwald

previously had requested and I had directed, Plaintiffs simply color-coded those

paragraphs using a single color for each paragraph.  Plaintiffs' counsel explained their

color-coding as follows:

> YELLOW [is] material sourced only from Bernstein in emails
> provided to us or the 6 physical documents provided to us.
>
> GREEN is the same, but some or all of it is also all or
> partially sourceable from public records or similar.
>
> NO HIGHLIGHT is material sourced other than from
> Bernstein.  We do not waive privilege either attorney client or
> work product, and will not disclose where, how, when, why
> etc. the allegations made it into the complaint.  (In other
> words, non-Bernstein YELLOW).

> BLUE [is] material sourced other than from Bernstein, where some or all of it is also all or partially sourceable from public records.  (In other words, non-Bernstein GREEN)[.]
>
> GRAY is sourced to both Bernstein and others[.]
>
> ORANGE is sourced to both Bernstein and others and is also [all] or partially sourceable to public records.
>
> PINK (there are only two) are either YELLOW or GRAY but we cannot yet tell reliably until we finish a database redo. That is we cannot at this time recall whether such came from only Bernstein, or from Bernstein and public documents.

In their email transmitting the annotated FAC to Bayrock's counsel, Plaintiffs' counsel suggested that "what you're looking for is yellow or orange."  (Id. (block capitalization omitted)).  Plaintiffs' counsel further indicated in the email that they had "ignored arguments as to material objected to" pursuant to Rule 12(f) of the Federal Rules of Civil Procedure because those arguments allegedly were "frivolous, sanctionable, and by definition not dependent on provenance."  (Id. (internal quotation marks omitted)).

II.     Plaintiffs' Failure to Comply with Court Orders

The purpose of requiring Plaintiffs to identify source materials for each contested allegation identified in Exhibit A to the Bayrock May 9 Letter was so that the Court could determine whether any of those allegations were based solely on information obtained from Bernstein.  In that regard, several of the color-coded categories that Plaintiffs have created verge on the incomprehensible.  Even if they did not suffer from that infirmity, it is clear that Plaintiffs have flouted my directive and Judge Buchwald's prior request.  The colloquy with Plaintiffs' counsel during our September 2013

conference, as well as my subsequent order, made it perfectly clear what Plaintiffs were

being required to provide and why.  Despite having been directed to provide <u>specific</u>

factual sources for the information set forth in the challenged paragraphs of the FAC,

Plaintiffs simply have indicated whether there allegedly are public sources for some or all

of the allegations set forth therein.  There has, however, been extensive press coverage of

this and the related lawsuits.  (<u>See, e.g.</u>, Jamie Schram, <u>Suit hits rip-off snitches</u>, N.Y.

Post, Apr. 1, 2013; Neal Colgrass, <u>Wall Street Scammer Ducks Prison by Working for</u>

<u>CIA</u>, newser.com, Sept. 9, 2012).  Accordingly, merely noting that a particular factual

assertion can be partially or wholly corroborated from a public source says virtually

nothing about its actual provenance.

       In short, despite Plaintiffs' effort to make it appear as if they have complied

with my directives, what they actually have produced is virtually useless and does not

comply with the Court's instructions.  Faced with such noncompliance, the Court has the

inherent power to impose a number of different sanctions, including dismissal of the

entire action or particular claims.  Fed. R. Civ. P. 41(b); <u>Lewis v. Rawson</u>, 564 F.3d 569,

575 (2d Cir. 2009); <u>Mickle v. Morin</u>, 297 F.3d 114, 125 (2d Cir. 2002).  Whether to take

such steps is a matter committed to the Court's discretion.  <u>Mitchell v. Lyons Prof'l</u>

<u>Servs., Inc.</u>, 708 F.3d 463, 467 (2d Cir. 2013).  Nevertheless, before an action may be

dismissed, the Court must ensure that the party to be sanctioned has had notice of the

conduct that might lead to that result and the standard by which its conduct will be

assessed, and the party must be afforded an opportunity to be heard.  <u>Id.</u> (citing <u>Mickle</u>,

297 F.3d at 126).  Even when these due process concerns have been satisfied, dismissal

should be considered only in cases involving "willfulness, bad faith, or reasonably serious

fault."  Id. (quoting Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271

F.3d 374, 386 (2d Cir. 2001)).

   Ultimately, to determine whether the FAC impermissibly relies on

privileged or confidential information, including documents that were sealed by Judge

Glasser, the Court must know the specific source of each of the allegations challenged by

the Defendants.  Only in this manner will the Court be able to determine whether the

public sources upon which Plaintiffs allegedly rely acquired the information

impermissibly, through Plaintiffs' leaks of information from the Bernstein hard drive, or

legitimately through other means.  As the matter now stands, the Court cannot determine

the extent of their improper reliance on purloined documents, if any, and whether the

FAC should be dismissed or other sanctions should be imposed.

   In these circumstances, I will afford Plaintiffs and their counsel one last

opportunity to comply with the directive that they cite the specific sources of each of the

allegations to which the Defendants have objected in Exhibit A on privilege, work

product, or confidentiality grounds.  Plaintiffs are directed to provide a chart containing

this detailed information by June 12, 2014.  On the chart, the factual source for each

contested allegation is to be identified with sufficient specificity that the Court and

opposing counsel can determine whether documents that arguably are privileged or work

product or sealed were relied upon as the basis for the allegation.

So that there will be no ambiguity, Plaintiffs are cautioned that if they fail to comply with this directive, I will recommend that the proposed FAC and all prior pleadings be dismissed with prejudice.  In that regard, the Court expects to receive a chart, not further argument concerning the propriety of the FAC, from Plaintiffs' counsel. Assuming that Plaintiffs timely comply, the Court will then hold a further conference to determine how to resolve any issues that remain with respect to Plaintiffs' entitlement to proceed with their various claims against Defendants.

III.   <u>Return of Bayrock's Documents</u>

In its motion, Bayrock requests that the Court order the Plaintiffs to return their privileged and confidential documents.  (Def.'s Mem. at 23).  The Plaintiffs counter that the Court cannot properly entertain such a motion at this pre-answer stage of the litigation because it is a "request for the specific enforcement of [a] contract" or a motion for declaratory judgment.  (Pls.' Opp. at 1-2).

The Court has "the inherent equitable power over [its] own process 'to prevent abuses, oppression and injustices.'"  <u>Fayemi v. Hambrecht and Quist, Inc.</u>, 174 F.R.D. 319, 324 (S.D.N.Y. 1997) (quoting <u>Gumbel v. Pitkin</u>, 124 U.S. 131, 144 (1888)). This power includes the ability to seal court filings and documents produced in discovery, to issue confidentiality orders, and to impose sanctions.  <u>See</u> <u>Hunt v. Enzo Biochem, Inc.</u>, 904 F. Supp. 2d 337, 343 (S.D.N.Y. 2012).  Judge Glasser already has ordered the return of the presentence report in the EDNY Case.  (EDNY Case, ECF No. 67).  Because the Court reserves decision as to the impropriety of the Plaintiffs' acquisition of the

13

documents until such time as the Plaintiffs comply with the Court's order as described above, the Court also declines to rule on this motion at this time.  The Plaintiffs are, however, directed not to disseminate further the contested information.

IV.	Motion to Disqualify Plaintiffs' Counsel

The Defendants move to disqualify Plaintiffs' counsel for their improper behavior and also because they have viewed and retained privileged information, which the Defendants claim can only "taint the litigation."  (Def.'s Mem. at 21).  Because the issue of what privileged documents actually make up the FAC remains unresolved, it is premature to consider a motion to disqualify Plaintiffs' counsel on these grounds.  The Defendants' motion therefore is denied without prejudice to its renewal upon the submission by Plaintiffs of an updated chart as described above.

V.	Motion to Disqualify Satterlee

The Plaintiffs move to disqualify Satterlee as counsel in this matter on two theories.  First, the Plaintiffs allege that Satterlee may not represent Bayrock because the case presents irreconcilable conflicts for the firm.  Second, the Plaintiffs assert that Satterlee attorney Walter Saurack ("Saurack") is a necessary witness in this action and therefore must be disqualified in accordance with the attorney-as-witness rule.  Each contention will be dealt with in turn.

A.      Conflicts

1.      Derivative Action

The Plaintiffs contend that Satterlee must be disqualified due to conflicts of interest between Bayrock and its subsidiaries, as well as between Bayrock and Schwarz. The first contention, that a non-waivable conflict exists between Bayrock and its subsidiaries, relies on the theory that the Plaintiffs' derivative claims on behalf of the subsidiaries place Satterlee in the impossible position of concurrently representing parties whose interests are materially adverse to one another.

As the Second Circuit has noted, disqualification motions interfere with the parties' ability to choose their own counsel, often are employed for tactical reasons, and, even in the best of circumstances, cause delay.  Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979); Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978).  Accordingly, a party moving for disqualification carries a "heavy burden," Evans v. Artek Sys. Corp., 715 F.2d 788, 794 (2d Cir. 1983), and must satisfy a "high standard of proof."  Gov't of India, 569 F.2d at 739.  Although the conclusion in any particular case "can be reached only after painstaking analysis of the facts and precise application of precedent," United States v. Standard Oil Co., 136 F. Supp. 345, 367 (S.D.N.Y. 1955), the question ultimately is one of preserving the public's trust in the "scrupulous administration of justice and in the integrity of the bar."  Hull v. Celanese Corp., 513 F.2d 568, 572 (2d Cir. 1975).  For that reason, any lingering doubt must be resolved in favor of disqualification.  Id. at 571.

Absent consent, an attorney ordinarily may not simultaneously represent parties whose interests are materially adverse.  GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C., 618 F.3d 204, 209 (2d Cir. 2010); Kittay v. Kornstein, 230 F.3d 531, 537 (2d Cir. 2000); Cinerama 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1387 (2d Cir. 1976).  There is an exception to this rule when counsel is able to show that both clients can be furnished competent and diligent representation, the representation is not prohibited by law, the representation "does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation," and each affected client gives its informed consent in writing.  N.Y. Rules of Prof'l Conduct 1.7(b). Because of these requirements, an attorney only "rarely" can show that there is no conflict.  Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 749 (2d Cir. 1981) (applying the formerly-applicable Canon 5 of the N.Y. Code of Professional Responsibility).  In the corporate setting, however, there is no conflict when circumstances establish that a parent or subsidiary that is adverse to a client is not itself a client of the attorney.  GSI Commerce, 618 F.3d at 210.

Here, Defendants do not appear to dispute that Bayrock and its subsidiaries should be considered a single enterprise for purposes of analyzing the risk of a conflict. Accordingly, if the Bayrock subsidiaries are adverse to Bayrock – as they plainly would be if the subsidiaries had sued their parent – Saterlee cannot represent Bayrock in the lawsuit.  See, e.g., Fox v. Idea Sphere, Inc., No. 12 Civ. 1342 (CM), 2013 WL 1191743, at *22 (S.D.N.Y. Mar. 21, 2013) ("There is thought to be an 'inherent conflict' between a

16

corporation and its shareholders, officers, or directors in a derivative action, because, in essence, the plaintiff alleges that those shareholders, officers, or directors harmed the corporation, and thus the corporation's interests are directly opposed to its codefendants' [interests].").  The question thus presented is whether this truly is a derivative lawsuit.

In their papers, Plaintiffs apparently contend that Bayrock and Schwarz concealed the true amount of Bayrock's earnings, thereby causing the LLC to report less pass-through income to the Internal Revenue Service for each of its partners than it should have.  Conversely, Plaintiffs also maintain that Bayrock treated certain of its employees as partners so that it would not have to withhold monies from their wages and remit them to the Government.  Plaintiffs further allege that Bayrock improperly gave employees unfunded promises of future payments which subsequently vested and therefore should have been treated as employee income.

In their original complaint and FAC, however, Plaintiffs name as defendants every member of Bayrock other than themselves.  (See Def.'s Opp. Mem. at 9 n.7).  It thus is by no means clear that they have in fact asserted derivative claims brought on behalf of Bayrock or its subsidiaries, rather than simply bringing a direct suit on behalf of disgruntled shareholders.  While the Court cannot rule out the possibility that the Plaintiffs' claims are derivative, if parties were able to disqualify their adversaries' long-time corporate counsel simply by pleading that they were suing derivatively, few entities would be immune from the disqualification of their attorneys.

17

Admittedly, certain cases cited by Plaintiffs do suggest that disqualification should be virtually automatic when derivative claims are brought.  See Natomas Gardens Inv. Grp. LLC v. Sinadinos, No. Civ. S-08-2308 (FCD) (KJM), 2009 WL 3055213, at *5 (E.D. Cal. Sept. 4, 2009) (stating that court should look to face of pleading, not the "underlying merits," to "ascertain whether an actual conflict of interest was created by [the] assertion of shareholder derivative claims"); Lewis v. Shaffer Stores Co., 218 F. Supp. 238, 240 (S.D.N.Y. 1963) ("Under all the circumstances, including the nature of the charges, and the vigor with which they are apparently being pressed and defended, . . . it would be wise for the corporation to retain independent counsel . . . to advise it as to the position which it should take in this controversy.").  Here, however, because it is unclear what representations, if any, Plaintiffs ultimately will be able to make regarding Defendants' allegedly fraudulent activities, it would be premature to disqualify Satterlee simply because Plaintiffs have styled their claims as derivative.

2.  Schwarz and Bayrock

Plaintiffs also seek to disqualify Satterlee based on that firm's prior representation of Schwarz.  Reasoning that Schwarz has now been accused of "causing Bayrock to rape the Subs[idiaries] as their sole manager," the Plaintiffs seem to assert that Satterlee cannot ethically represent both Schwarz and Bayrock.  (Pl.'s Mem. at 8). Schwarz, however, has not even been formally served with the summons and complaint (or the FAC) in this action.  Accordingly, even if Plaintiffs consider it likely, there is no

basis for the Court to conclude at this juncture that Satterlee will seek to enter an appearance in this action on Schwarz's behalf if and when he is served with process.

Additionally, if it is premature to consider Plaintiffs' motion to disqualify Satterlee from representing Bayrock, it is equally premature to consider disqualifying the firm from representing Schwarz.

B.     Attorney-As-Witness

Plaintiffs also seek to disqualify Satterlee, and attorney Saurack in particular, under what they term the "Attorney Witness Rule."  (Pls.' Mem. at 5).  They allege only that Mr. Saurack "may be compelled to testify" in such a way as to "incriminate his own client."  (Pls.' Mem. at 21).

To succeed on a motion to disqualify an attorney under the "Attorney Witness Rule," a movant must show that the adverse attorney's testimony is both necessary and substantially likely to be prejudicial to the attorney's client.  A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 160 F. Supp. 2d 657, 664 (S.D.N.Y. 2001); Paramount Commc'ns, Inc. v. Donaghy, 858 F. Supp. 391, 394 (S.D.N.Y. 1994).  In determining the necessity for an adverse attorney's testimony, the Court must weigh a number of factors, including the significance of the matters as to which the attorney's testimony is sought, "the weight of the testimony, and the availability of other evidence." Donaghy, 858 F. Supp. at 394.  "Testimony may be relevant and even highly useful but still not strictly necessary." Id.  Thus, if the attorney's testimony merely corroborates the testimony of others, it is not a proper basis for disqualification.  Sec. Ins. Co. of Hartford

19

v. Mendon Leasing Corp., No. 01 Civ. 9054 (VM) (JCF), 2002 WL 31387484, at *3
(S.D.N.Y. Oct. 22, 2002).

   Even where the proposed testimony has been shown to be "necessary," a
party seeking to disqualify adverse counsel still must establish that the testimony will be
prejudicial, in other words, "sufficiently adverse to the factual assertions or account of
events offered on behalf of the client, such that the client might have an interest in . . .
discrediting that testimony." Donaghy, 858 F. Supp. at 395. "The movant bears the
burden of demonstrating how and as to what issues in the case the prejudice may occur
and that the likelihood of prejudice occurring is substantial." Id. (citing Parke-Hayden,
Inc. v. Loews Theatre Mgmt., 794 F. Supp. 525, 527 (S.D.N.Y. 1992)).

   Here, Plaintiffs have not made the requisite showing. As they readily
admit, their arguments are based solely on conjecture. (Pls.' Mem. at 20-21 ("[w]e
cannot say what Mr. Saurack knows and does not at this time;" "there is a serious
possibility all this is as we say"); see also id. at 9 ("we are arguing possibility not fact.")).
Indeed, the only specific matters about which Plaintiffs allege Mr. Saurack may be called
to testify are "the amount, facts, and circumstances of his fees." (Id. at 21) They have
not shown why that testimony would be "strictly necessary," or why Mr. Saurack would
be the only available source for such information. Accordingly, Plaintiffs' motion to
disqualify Defendants' counsel on this ground is denied.

III.     Redaction of Motion Papers

        Pursuant to my order dated September 12, 2013, the parties have suggested redactions to the papers submitted in connection with this motion.  Because the Plaintiffs have failed to otherwise comply with that order by providing a detailed annotation of the sources of the challenged portions of the FAC, the Court cannot assess the viability of the parties' arguments regarding redaction.  Accordingly, the Court will reserve decision regarding the redaction and public filing of these motion papers until it rules on the remaining issues involving the challenged portions of the FAC.

IV.     Issue Raised in Related Proceeding

        On May 13, 2014, Judge Schofield referred the matter of Kriss v. Bayrock, No. 13 Civ. 3905, to me to resolve a dispute raised in Bayrock's letter dated May 12, 2014.  (13 Civ. 3905, ECF No. 63).  That dispute is the same as the dispute here:  the Bayrock defendants have asked the Court to remove the complaint in that action from the ECF system and to strike all references to privileged and confidential material therein. (Id., ECF No. 64 at 2).  Because the issues in this motion remain unresolved, the Clerk of the Court will be directed, in a separate order, to seal the complaint in 13 Civ. 3905.[4]

V.     Conclusion

        For the reasons stated above, the Plaintiffs are directed to submit to the Court by June 12, 2014 an updated chart identifying in detail the source(s) of each

---

[4]     Judge Schofield also has referred that case to me to resolve the issues raised by the Plaintiffs' letter dated May 22, 2014.  This sealing order will resolve those issues as well.

contested paragraph of the FAC.  The Plaintiffs further are cautioned that failure to comply with this directive will result in a recommendation that the proposed FAC and all prior pleadings be dismissed with prejudice.  Additionally, both parties' motions to disqualify opposing counsel are denied without prejudice.


                    SO ORDERED.

Dated:          New York, New York
                May 29, 2014


                                            _____
                                            FRANK MAAS
                                            United States Magistrate Judge


Copies to all counsel via ECF