**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| J. KRISS et al.<br>*Plaintiffs*<br><br>vs.<br><br>BAYROCK GROUP LLC et al.<br>*Defendants* | 10-CV-3959 (LGS-FM)<br><br>**PLAINTIFFS' MOTION FOR RELIEF FROM MAGISTRATES NON-DISPOSITIVE PRE-TRIAL ORDER**<br><br>**EXPEDITED SCHEDULING REQUESTED** |
| J. KRISS et al.<br>*Plaintiffs*<br><br>vs.<br><br>BAYROCK GROUP LLC et al.<br>*Defendants* | 13-CV-3905 (LGS-FM)<br><br>**PLAINTIFFS' MOTION FOR RELIEF FROM MAGISTRATES NON-DISPOSITIVE PRE-TRIAL ORDER** |

# PLAINTIFFS' MOTION FOR RELIEF FROM CERTAIN ASPECTS OF MAGISTRATE'S NON-DISPOSITIVE PRE-TRIAL ORDERS

---

**ORAL ARGUMENT WILL BE REQUESTED BY ECF LETTER**

---

**FRCP §§7, 72**
**26 U.S.C. 636**
**U.S.CONST. AMENDMENTS I, V**

**FREDERICK M. OBERLANDER**
**LAW OFFICE OF FREDERICK M. OBERLANDER, PC**
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Telephone: (212) 826-0357
Facsimile: (212) 202-7624
Email: fred55@aol.com

*Counsel for Plaintiffs*

**RICHARD E. LERNER**
**LAW OFFICE OF RICHARD E. LERNER, PC**
501 Fifth Avenue, Suite 300
New York, NY 10017
Telephone: (917) 584-4864

Email: richardlerner@msn.com

*Co-Counsel for Plaintiffs*

# TABLE OF CONTENTS

BASIS FOR PARTIAL EMERGENCY EXPEDITED RELIEF ........ 1

JURISDICTION ........ 2

STANDARD OF REVIEW ........ 2

RELIEF REQUESTED ........ 3

**As to That Part of the Order Running to *Kriss I*** ........ 3

With Respect to the "Injunction" ........ 3

With Respect to the Findings or Characterizations of "Flouting" ........ 3

With Respect to Certain other Portions of the Order ........ 3

**As to That Part of the Order Running to Kriss II** ........ 3

THE PRIOR RESTRAINT IS ILLEGAL AND TRANSPARENTLY INVALID ........ 4

**The Prior Restraint** ........ 4

***Bridge CAT Scan* Controls** ........ 5

***Bridge CAT Scan* Applied to This Case** ........ 9

**Does It Purport or Appear to Be an Injunction?** ........ 10

**Other Constitutional Considerations** ........ 10

NEED FOR EMERGENCY RELIEF ........ 12

REMAINING ISSUES ........ 12

**The Magistrate Erred in Failing to Address the Issues that Would, if there Were a Ruling in Plaintiffs' Favor, Traverse the Inquiry into the Provenance of the Documents** ........ 12

**The Magistrate Erred in Slurring Plaintiffs with Accusations of "Flouting" Orders** ........ 15

**The Magistrate Erred in Placing and Maintaining Documents under Total Seal** ........ 15

# TABLE OF AUTHORITIES

## Cases

*Bose Corp v. Consumers Union*, 466 U.S. 485 (1984) ....................2
*Bridge CAT Scan v. Technicare*, 710 F.2d 940 (2d Cir. 1983) ....................1
*Carroll v. Princess Anne*, 393 U.S. 175 (1968) ....................10
*Charmer Industries*, 711 F.2d 1164 (2d Cir. 1983) ....................11
*Gambale v. Deutsche Bank*, 377 F.3d 133 (2d Cir. 2004) ....................15
*Goodman v. Genworth Financial,* 881 F.Supp.2d 347 (EDNY 2012) ....................13
*In re Zyprexa Injunction*, 474 F.Supp.2d 385 (EDNY 2007) ....................11
*Lugosch v. Pyramid Co. of Onondaga Co.*, 435 F.3d 110 (2d Cir. 2006) ....................15
*Mosallem v. Berenson*, 905 N.Y.S.2d 575 (1st Dep't 2010) ....................14
*People v. Golb,* May 13, 2014 ....................13
*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ....................2
*U.S. v. Sater*, 98-CR-1101 (EDNY), Tr. June 21, 2010, ECF 49 pgs. 88, 92 ....................11

## Statutes

26 U.S.C. 636(b)(1)(A) ....................1

## Rules

FRCP §65 ....................1
FRCP §72 ....................2

## Treatises

8 *Wigmore on Evidence*, Sec. 2183 (McNaughton rev. 1961) ....................14

## Basis for Partial Emergency Expedited Relief

Action 10-CV-3959 ("*Kriss I*") was referred to the magistrate for general non-dispositive pre-trial matters pursuant to 26 U.S.C. 636(b)(1)(A), which, *inter alia*, explicitly prohibits a magistrate from, let alone determining and entering, motions for injunctive relief.

Nevertheless, certain defendants (the "Bayrock Defendants") moved before the magistrate for an injunction preventing plaintiffs from disseminating allegedly misappropriated privileged and confidential information – including details of the racketeering crimes defendants Sater, Schwarz, Arif, and others committed at Bayrock – which was obtained prior to litigation from extra-judicial sources.

Astonishingly, despite the absolute lack of authority to do so – more accurately, despite the absolute Congressional prohibition against doing so – the magistrate granted the motion.

The fact that it was *ultra vires* is itself enough to justify expedited relief, but, in addition to not requiring security or bond, the order (the "Order") granting the motion states that the magistrate made *no* findings of provenance, privilege, confidentiality, or anything else that *could* justify an injunction, and so fails to comply with FRCP 65 (governing the issuance of TROs and injunctions).

Moreover, the Order is facially a prior restraint, so could not lawfully issue without plenary, fully adversarial First Amendment due process, including evidentiary hearings. Yet there were none.

Now, it appears that the court meant the Order to be not an injunction, but a non-dispositive pre-trial order issued pursuant to its inherent power to prevent injustice. Even if that were so (it's not), the Order would still be *ultra vires*, not only in excess of, but in the absence of, the jurisdiction to issue it, as the Second Circuit has held repeatedly for 50 years, most recently in *Bridge CAT Scan*, 710 F2d. 940 (1983), firmly on all fours, which held that **no court has the authority under "inherent powers" (or FRCP 26) to issue such an order at this (pre-answer) stage because it unlawfully restrains the extra-judicial dissemination of information obtained without the use of court process.**

To alleviate this *per se* constitutional insult growing worse daily, and *a fortiori* as they must make immediate use of the information in *sub judice* state court litigation, plaintiffs request emergency expedited scheduling so this matter may be thereafter quickly brought up by mandamus if necessary.

## JURISDICTION

Relief is sought pursuant to FRCP §72, which provides in pertinent part:

> (a) **Nondispositive Matters**. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

## STANDARD OF REVIEW

A district judge may modify or set aside a non-dispositive magistrate's order only if it is "clearly erroneous or contrary to law." 28 U.S.C. §636(b)(1)(A)[1]. But, that does not apply here with respect to the prior restraint, *infra*. The standard of review for prior restraints (or anything infringing on First Amendment rights) is *de novo*, as to fact and law. *Bose Corp v. Consumers Union*, 466 U.S. 485 (1984). This should never come up. Typical non-dispositive pre-trial orders that impact First Amendment rights are FRCP 26 protective orders, and while the propriety of such an order *does* require First Amendment analysis, the Supreme Court has held that the "good cause" standard in the rule sets a relatively low hurdle to clear to meet constitutional requirement. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984).

But here we have a full-blown prior restraint, which ordinarily would be in the form of an injunction, so not issued by a magistrate unless by consent referral, in which case it would be reviewed directly by an appellate court. But this prior restraint obviously purports to be embedded in, and part of, a scheduling order under "inherent powers," so if it could lawfully be issued as such, thus by a magistrate, it must be reviewable by this court de novo. Of course, this court won't reach the question, for the order is illegal, that is void, for want of jurisdiction, so not reviewable at all in terms of prior restraint analysis, any more than would a prior restraint issued by a magistrate whose term had expired.

All argument herein was preserved below.

[1] "A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."

## Relief Requested

### As to Part of the Order Running to *Kriss I*

*With Respect to the "Injunction"*

For reasons summarized and further detailed *infra*, plaintiffs seek (1) a ruling that such decretal part of the Oder, whether or not injunctive *de jure*, is illegal, void for lack of authority; (2) a ruling that said part is transparently invalid, as no court could properly expect it to be obeyed; (3) vacatur.

*With Respect to the Findings or Characterizations of "Flouting"*

That insofar as such is based on the "request" of Judge Buchwald, that the court order it be stricken upon its finding that it is baseless and misrepresents the record; and that insofar as such is based on the September 13, 2014 magistrate's order, ECF 60, it is unsupported and unsupportable.

*With Respect to the Refusal to Stay or Enlarge Time*

That it is an abuse of discretion for good cause has been shown and there can be, and was not shown or even alleged, prejudice to any person

*With Respect to Certain other Portions of the Order*

As set forth herein, *passim*.

### As to that Part of the Order Running to *Kriss II*

At the letter request of the Bayrock Defendants, the Order seals the complaint in 13-CV-3905 ("*Kriss II*"). As there is a qualified First Amendment right of access to civil complaints, and this sealing occurred without hearing and notice, finding of irreparable harm, and use of least restrictive means (such as redaction; even the Bayrock Defendants only complain of 2 of the complaint's 100 paragraphs), and as courts opine that parties are enjoined from disseminating information in sealed documents to the extent it's attributed to such documents, so their speech is restrained even if for good cause, plaiintiffs seek vacatur and remand for proceedings consistent with the First Amendment.

## THE PRIOR RESTRAINT IS ILLEGAL AND TRANSPARENTLY INVALID

### The Prior Restraint

Plaintiffs refer to that decretal portion of the order which, as contained provides [bracketed information and emphasis added] (Order at 13):

> In its motion, Bayrock requests that the Court order the Plaintiffs to return their privileged and confidential documents [**and asks the court to enjoin [sic] them from disseminating allegedly privileged and confidential information**]. (Def.'s Mem. at 23). The Plaintiffs counter that the Court cannot properly entertain such a motion at this pre-answer stage of the litigation because it is a "request for the specific enforcement of [a] contract" or a motion for declaratory judgment. (Pls.' Opp. at 1-2).
>
> The Court has "the inherent equitable power over [its] own process 'to prevent abuses, oppression and injustices.'" *Fayemi v. Hambrecht and Quist, Inc.,* 174 F.R.D. 319, 324 (S.D.N.Y. 1997) (quoting *Gumbel v. Pitkin*, 124 U.S. 131, 144 (1888)). This power includes the ability to seal court filings and documents produced in discovery, to issue confidentiality orders, and to impose sanctions. See *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 343 (S.D.N.Y. 2012). Judge Glasser already has ordered the return of the presentence report in the EDNY Case. (EDNY Case, ECF No. 67). Because the Court reserves decision as to the impropriety of the Plaintiffs' acquisition of the documents until such time as the Plaintiffs comply with the Court's order as described above, **the Court also declines to rule on this motion at this time**. **The Plaintiffs are, however, directed not to disseminate further the contested information**.

The information in dispute includes that which is contained in or reflected by 65% of the FAC, including information about defendant Bayrock's ownership and business and financial affairs, including details of the racketeering crimes defendants Sater, Schwarz, Arif, and others committed at the firm, in Sater's case crimes he committed while a cooperator supposedly under the supervision of probation services pursuant to a cooperation agreement subject to revocation if he committed crime..

All parties and the magistrate agree that whatever its provenance and form, and without regard to the lawfulness of its collection, however obtained, this information was obtained prior to litigation, from non-judicial sources, without use of judicial process, e.g. without compelled production.

And significantly, the Bayrock Defendants have not answered (thus have not counterclaimed for misappropriation or the like), have not separately sued plaintiffs in a plenary action for such, in fact continue to insist that they will not because, they say, this court lacks jurisdiction to hear the case.

***Bridge CAT Scan* Controls**

Binding appellate authority exists, and is astonishingly closely on all fours. The case is *Bridge CAT Scan v. Technicare*, 710 F.2d 940 (2d Cir. 1983). As it is dispositive, we quote [Emph. Add.]:

> Plaintiff Bridge C.A.T. Scan Associates ("Bridge") appeals from an order…prohibiting Bridge from disclosing information contained in an exhibit to its amended complaint on the ground that the information consists of proprietary data and trade secrets (the "trade data") belonging to defendants Technicare …Construing the prohibition as an injunction, Bridge challenges it in this appeal…on the ground that the order improperly abridges its rights under the First Amendment… Technicare, in addition to opposing Bridge's challenge on its merits, contends that the order is not appealable...we treat the appeal from the prohibition on disclosure as a petition for a writ of mandamus and grant the writ.
>
> The present action was commenced by Bridge on behalf of itself and others…as purchasers or lessees of computerized axial tomograph ("CAT") scanners designed and manufactured by Technicare. The amended complaint asserts claims of breach of contract, breach of warranty, and negligent design of various models of Technicare's CAT scanners. Exhibit "A" to the amended complaint purports to list Technicare's customers for CAT scanners, and to indicate the models of the machine acquired, the dates of installation, and the acquisition prices. The data in Exhibit A were collected by Bridge's counsel prior to the commencement of the action.
>
> Technicare, taking the position that the information in Exhibit A is trade secret information which it has taken great pains to maintain as confidential, moved for a protective order, pursuant to the general equity jurisdiction of the district court, **enjoining Bridge** from using the trade data for any business or other purpose and **from disclosing the data to any person not already a named party to the action**,…After hearing argument from both sides, the court entered a temporary restraining order…enjoining Bridge from disclosing the information in Exhibit A, pending…hearing on Technicare's motion for an injunction.
>
> At…hearing, Technicare supplemented its…arguments…in support of a protective order…suggesting…the information in Exhibit A had been obtained by Bridge from Technicare by improper means. It argued that dissemination…would irreparably injure it…Technicare requested discovery into Bridge's source for Exhibit A…
>
> Bridge opposed the injunction motion, arguing principally (1) that the trade data were not really secret…and (2) **that because the information in Exhibit A had been compiled by Bridge's counsel prior to institution of the lawsuit and not as part of discovery proceedings in the lawsuit, the requested protective order would violate Bridge's First Amendment rights.** Technicare argued that trade secrets are a…category of information to which the First Amendment does not apply.
>
> [T]he court…granted Technicare's motion for an order prohibiting disclosure of the information in Exhibit A, relying on its authority under Fed.R.Civ.P. 26(c) to issue protective orders. Although recognizing that "[t]he information was not obtained from defendants or any of its [sic] agents within the context of pre-trial discovery," …it had authority under Rule 26(c)(7) to order the nondisclosure of Technicare's trade secrets.

The court rejected Bridge's First Amendment argument on the ground that…authorities relied on by Bridge involved freedom of the press…and…construed *International Products Corp. v. Koons*, 325 F.2d 403 (2d Cir.1963), also relied on by Bridge, as holding "that a prior restraint on information in a case not involving journalists was perfectly appropriate and more importantly for our purposes today, Constitutional."

Bridge instituted…appeal…

As a general matter we have interpreted Sec. 1292(a)(1) to authorize an appeal only from an injunctive order that gives, or aids in giving, substantive relief sought in the lawsuit in order to preserve the status quo pending trial…We have held nonappealable…orders that were unrelated to the substantive issues of the litigation and that instead regulated…such matters as pretrial discovery and disclosure.

In *Koons*, we considered an appeal from an order prohibiting disclosure of (1) deposition testimony, (2) affidavits submitted on a motion to compel answers to deposition questions, and **(3) documents marked as exhibits at the deposition**. Although, as discussed…in Part B below, we viewed one part of the order as authorized by Fed.R.Civ.P. 30(b)--the forerunner of the present Rule 26(c)--another part as within the court's inherent equity powers, **and the third part as entirely unauthorized, we found no part of the order appealable**. 325 F.2d at 406-07.

We see no significant difference between the *Koons* order barring disclosure of the deposition exhibits and the…Order in the present case. The…Order did not purport to grant any of the relief sought in the action, nor to deal with any substantive issue in the case. Rather, invoking Rule 26(c), the court sought to regulate disclosures by Bridge during…the litigation. We conclude that the…Order is not appealable.

Nonetheless, here, as in *Koons*, **"[i]t does not follow...that an order purportedly made under [Rule 26(c) ] which exceeds the power there given to a district court is altogether beyond appellate scrutiny. The normal remedy for action taken in excess of jurisdiction is mandamus.**"…Accordingly, we treat the present appeal as a petition for a writ of mandamus vacating the district court's Order.

It is beyond cavil that mandamus is an extraordinary writ, issued only in exceptional circumstances. It "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " **Entry of an order that would constitute a prior restraint on speech is an appropriate subject for a mandamus petition**, e.g., *Rodgers v. United States Steel Corp.*, 536 F.2d 1001 (3d Cir.1976); *International Products Corp. v. Koons*, supra, **and since we conclude that the April 11 Order was beyond the court's authority, we conclude that the writ should issue**.

The district court believed…it was empowered to enter its …Order prohibiting plaintiff from disclosing…Exhibit A…by the authority…under Fed.R.Civ.P. 26(c)(7). Rule 26, however, is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable…but…a power to impose conditions on discovery…to prevent injury, harassment, or abuse of the court's processes…

In *Koons* we considered an order of the district court that prohibited the defendants from disclosing,..deposition testimony and documents marked as exhibits at the deposition. We concluded that although the order barring disclosure of the deposition was authorized by then-Rule 30(b) [now Rule 26(c) ] **the rules did not authorize the prohibition on the disclosure of the documents obtained prior to discovery**:

> The portion of the order which seals the deposition…and limits defendants…use of information obtained therefrom was…authorized by…30(b), and we entertain no doubt as to the constitutionality of a rule allowing a federal court to forbid the publicizing, in advance of trial, of information obtained by one party from another by use of the court's processes. Whether or not the Rule itself authorizes so much of the order as also seals all affidavits submitted by defendants on various motions, we have no question as to the court's jurisdiction to do this under the inherent "equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices,"…or as to the propriety of the exercise of discretion here…
>
> What causes concern here is that the order went further and curtailed disclosure of information and writings which defendants and their counsel possessed before they sought to take…deposition. We fail to see how the use of such documents or information in arguing motions can justify an order preventing defendants and their counsel from exercising their First Amendment rights to disclose such documents and information free of governmental restraint.325 F.2d at 407-08

**We concluded that the prohibition on disclosure of the prediscovery documents constituted a prior restraint…and was not authorized by the discovery rules**.

**In the present case, since Exhibit A [was] not information obtained by…discovery but had been compiled by Bridge's counsel prior to…the lawsuit, Rule 26(c) did not give the court authority to prohibit disclosure...**

**In *Koons* we also ruled that the provision barring the disclosure of documents acquired prior to discovery was not within the court's inherent power to prevent abuses and injustice**. Although we found this inherent power sufficient to authorize an order sealing affidavits used in arguing a discovery motion, on the ground that the quasi-official appearance of an affidavit might result in the affidavit's being given unwarranted weight and publication**, we found no such power with respect to the documents possessed by the defendants prior to the deposition**…Accordingly, we recommended that the district court modify its order of nondisclosure to exclude the documents, and we indicated that in the absence of such a modification, a mandamus petition would be viewed favorably.

In *Parker v. Columbia Broadcasting System*, 320 F.2d 937 (2d Cir.), we similarly recognized the district court's inherent power to enjoin the plaintiff from disclosing to others a memorandum she had filed with the court. Id. at 938. **But we ruled that the court could not, consistent with the plaintiff's First Amendment rights or with historic principles of equity, enjoin her from disclosing the information contained in the memorandum.** Id. at 939.

**The principles to be gleaned from *Koons* and *Parker* pertinent to the merits of this appeal are that the court has inherent equitable power to prohibit a party from abusing the judicial process by disseminating information or representations clothed in an official-looking document on file with the court; but, in light of First Amendment considerations, the court generally has no such power to prohibit dissemination of the information itself, stripped of its judicial garb, if that information has been gathered independently of judicial processes…since**

**the information reflected in Exhibit A was gained by Bridge independently of any judicial processes…the [O]rder infringed Bridge's First Amendment rights and was contrary to historic principles of equity**.

The district court's rejection of Bridge's First Amendment contention rested on the observation that this case does not involve considerations of journalism. This, however, was too restrictive a view of the First Amendment, which, in addition to freedom of the press, also guarantees freedom of speech. The district court correctly recognized that Koons, like the present case, did not involve freedom of the press; but it failed to note that ***Koons*** **held squarely that the prior restraint on the defendants' First Amendment right to disseminate documents obtained outside the discovery process was beyond the court's power.**

**The fact that the order at issue here involves trade secrets does not diminish the precedential effect of *Koons* in the present posture of this case**. It is of course true that in appropriate circumstances a person may, by invoking the court's equity powers, obtain an injunction against use or disclosure of his trade secrets, as where a party has obtained them by breaching its confidential relationship with the owner…

**The district court in the present case, however, was in no position to grant an injunction against disclosure of the trade data pursuant to its** equity powers… **Technicare had not filed a counterclaim against Bridge for misappropriation of information, so any issue as to trade secrets was completely collateral to the underlying dispute, and the court had no basis for granting such relief as an incident to any rights asserted in the action**. Further, although Technicare suggested obliquely at oral argument on April 4 that Bridge's possession of the trade data was wrongful, it presented no evidence that Bridge had come by the information by other than legitimate means. At oral argument of this appeal, Bridge's counsel stated that counsel had obtained the information from a person who, although an ex-employee of Technicare, had been given the information by Technicare after termination of his employment, with no promises exacted as to confidentiality, because he was a potential customer for Technicare's CAT scanners. Technicare's counsel, on the other hand, stated that although Bridge had purported to reveal in response to interrogatories the source of its information, the person identified had denied, on deposition, that he was the source.

The record before the district court when it made its ruling was quite undeveloped. No discovery had been conducted, and no evidence was presented as to any culpability on Bridge's part in the acquisition of the information. The court was poorly situated to make any findings...**These are among the appropriate matters for the court's consideration if Technicare should file an appropriate counterclaim against Bridge and move for a preliminary injunction.**

## *Bridge CAT Scan* Applied to This Case

The parallel is astonishing, except for the detail that the issuing judge was a magistrate, which makes it all the more clear that this isn't an injunction because it can't be – that is, if it *is* an injunction its *per se* void and illegal (so we should probably say, "that is, if it *purports* to be an injunction"), and if it's not it's void and illegal pursuant to *Bridge*: Just as *Bridge* sued Technicare, Plaintiffs sued Bayrock (as nominal defendants, derivatively) and those running it. Just like Technicare, Bayrock decided that the complaint contained their confidential information. And just like Technicare, Bayrock didn't bring a plenary action and sue plaintiffs for misappropriation, and therein seek substantive injunctive relief, and Bayrock didn't answer **this** action, counterclaim for misappropriation, and herein seek substantive relief. Instead, just like Technicare, Bayrock simply moved for an injunction prohibiting dissemination.

Therefore, just like Technicare, Bayrock must be denied the relief it seeks because the court lacks the equity jurisdiction[2] to award it unless and until Bayrock counterclaims – whether for specific enforcement of an alleged contract of confidentiality allegedly breached, or for a permanent injunction as relief for misappropriation, or similar, and **then, and only then,** moves for a preliminary injunction.

(Certainly Bayrock has had ample opportunity. They've sat mute for four years when they could have sued at any time; they can even sue tomorrow. Or answer and counterclaim. Of course that would require them to go through preliminary injunction hearings and be exposed to that marvelous engine of truth called cross-examination, which we suggest is probably as appealing to them as a wooden stake adorned with silver and garlic might be to a vampire.)

The prior restraint is void. It is illegal. It was issued in the absence of, and certainly in the excess of, any plausible authority on the part of the magistrate.

---

[2] Equity jurisdiction is a term of art regrettably fallen into disuse. As Professor Langdell would have understood it, it refers to the Article III power of a court to award certain relief, and is a subset of subject matter jurisdiction. For example, the Norris LaGuardia Act was said by contemporaneous commentators to have limited the equity jurisdiction of the federal district courts by eliminating no-strike injunctions, though the courts could still hear strike cases and still accepted removal jurisdiction. For purposes of modern legal writing "authority" is a reasonable substitute. Both mean a court that acts in excess thereof has acted ultra vires, in excess or absence of jurisdiction, and its actions are void.

***Does*** **It Purport or Appear to Be an Injunction?**

Cleaning up the loose ends, we presume from the form and face of it the prior restraint does not purport to be an injunction, thus it is void and illegal pursuant to *Bridge*. But for clarification, assuming Bayrock were to actually sue, say tomorrow, the order would not be "fixed" (void orders don't get fixed, as they don't exist *ab initio*), because then, as *Bridge* noted, the preliminary injunction they'd be requesting would be an injunction not only in name but in form, because it would be seeking substantive relief or relief in aid of ultimate substantive relief, and in any event would then be something a magistrate could not address.

In other words, and we apologize for the epistemological confusion, if Bayrock sues (or had sued) for injunctive (substantive) relief, the magistrate couldn't (have) issue(d) the order because it would be an injunction and by definition *ultra vires* and if he issued it anyway as part of his "inherent powers" it would still be an injunction as it would be substantive relief and void for that reason, before we even get to *Bridge* analysis (which only applies where there was no claim for substantive relief).

In other words, with respect to extra-judicial dissemination, either Bayrock sues and asks for an injunction and subjects itself to fact-finding under oath and only Judge Schofield can issue it (though she can refer for report), or it does not and nothing the magistrate does can operate to enjoin.

**Other Constitutional Considerations**

Of course, any such attempt at a preliminary injunction would have to satisfy First Amendment plenary due process procedural standards, including full adversarial hearings, see *Carroll v. Princess Anne*, 393 U.S. 175 (1968) and clear and convincing findings of the near certainty of imminent grave harm and no other less restrictive means to avoid it, and so on (even if trade secret analysis applied, the factual findings of trade secret which could justify use of other than strict scrutiny or intermediate scrutiny would themselves have to be at clear and convincing standard, something that will be hard for Bayrock given that the information in question indicts its control persons for racketeering).

Thus we note in closing this section that no such due process was present here, there were no evidentiary hearings, and conspicuously no findings. So, even if the prior restraint were not void and illegal for lack of authority, it would be transparently invalid, in other words not only unconstitutional but glaringly so (we note in passing that the prior-restraint is self-evidently not content neutral so there could be no refuge in lower than strict scrutiny, because it's the content of the information that caused the magistrate to issue the order (if not, how could he have said he was issuing it to prevent injustice.

Finally, the magistrate mentioned that "Judge Glasser ordered the return of the PSR" as if it were a totemic validation of his prior restraint. That is hard to understand as the record reflects that Judge Glasser first issued a permanent injunction *contra mundum* on the further dissemination of the PSR and then, and only then, ordered its return. Ordering the return of a document the dissemination of which has been (putatively) lawfully enjoined is a whole different matter than doing so without the satisfaction of the constitutional issues…the argument appears to be, well, that person over there was tried and convicted by a jury of murder, then sentenced to death, so over here in magistrate reference I can just sentence this guy to death without a trial because that guy was so sentenced with a trial. But it goes beyond that, because the record also reflects that Judge Glasser specifically based this, the injunction and return, on *Charmer Industries*, 711 F.2d 1164 (2d Cir. 1983), see Glasser transcript of June 21, 2010, 98-CR-1101 (EDNY), ECF 49 pgs. 88, 92 holding, where a state prosecutor had been sent a PSR "by mistake," the prosecutor could be ordered to return it, apparently because PSR's are special (the reasoning doesn't say) – though it's worth mentioning that the Arizona prosecutor could not assert First Amendment rights in behalf of a state or state agency, so that issue was not addressed.

Whatever the reasoning of *Charmer*, the fact remains that *Charmer* was a case where a sealed court document "got loose" and was ordered back, and just as in *In re Zyprexa Injunction*, 474 F.Supp.2d 385 (EDNY 2007), where protected discovery documents "got loose" and were ordered back, the "dignity" of the court's sealing and protective orders were at least arguably at stake. Not so in this case, where the court has no interest, pursuant to *Bridge*, in vindicating the rights of private litigation Bayrock who won't step up to the plate.

## NEED FOR EMERGENCY RELIEF

Although transparent invalidity is a defense to contempt if the aggrieved person at least first exhausts or attempts to exhaust all reasonably available avenues of appeal, plaintiffs here, though well aware that the order is void and illegal and *so pro tanto brutum fulmen*, nevertheless wish to the maximum degree possible to follow normal procedures to set aside the order by judicial decree thereof.

Accordingly, as plaintiff Kriss has been sued in state court in a complaint alleging that he and his father, a partner at Stroock, secretly owned Bayrock and operated it as a front for the Russian Mafia, and must defend himself there, including by revealing what really went on, and is currently besieged by press releases from the same plaintiffs describing him as a mobster who secretly ran Bayrock through crime, his property interests are implicated and he asserts the right to defend *immediately*.

## REMAINING ISSUES

**The Magistrate Erred in Failing to Address the Issues that Would, if there Were a Ruling in Plaintiffs' Favor, Traverse the Inquiry into the Provenance of the Documents.**

The magistrate failed to address the following issues: (a) That the documents on the Bernstein hard drive could properly be reviewed by Oberlander, because Oberlander was counsel for a member of the Bayrock firm, who, by virtue of his membership interest, had an ownership interest in the intellectual property of Bayrock, and as a matter of state law both the plenary agency authority to receive that disk or its contents in behalf of the company and the plenary statutory right to access any and all information of the company, and thus the information on that hard drive; (b) Oberlander was given access to the hard drive by Bernstein, and thus there was no improper access; (c) the documents at issue evidence crime, and thus could not be deemed "confidential" or privileged; (d) the well-settled common-law rule that in civil cases, evidence that is alleged to have been "stolen" is nonetheless admissible; (e) Bayrock's general counsel Julius Schwarz waived any alleged claim of privilege or work-product protection, when he forwarded the original complaint to most of the other named defendants; (f) the objections to the allegations in the complaint were

not supported by a proper privilege/work-product/trade-secret log, proffered by someone with knowledge of the means employed to protect same, and instead such objections were proffered via a bookkeeper's affidavit; (g) the objections were so overbroad, and manifestly unfounded as to constitute a waiver of a right to raise such objections, as noted in *Goodman v. Genworth Financial,* 881 F.Supp.2d 347 (EDNY 2012).[3]

The foregoing points were all addressed in motion papers below, which are under seal, and are incorporated by reference herein. We make the following additional points, to supplement the points previously raised.

There has been argument that when Mr. Bernstein provided Oberlander (in his capacity as his attorney, as well as in his capacity as attorney for Bayrock member Jody Kriss) access to a hard drive of Bayrock documents which Bernstein maintained in his home office, such access was "illegal." In the post-submission decision *People v. Golb,* May 13, 2014,[4] the New York Court of Appeals made clear that such arguments are invalid.

> Defendant asserts that he had permission to access the NYU computers as an alumnus who joined the "Friends of Bobst Library Program." The People argue that using the computer to commit a crime cannot be an authorized use. However, the definitions and wording of the statute and the legislative history indicate that the statute is intended to reach a person who accesses a computer system without permission (i.e., a hacker) and the language does not appear to encompass defendant's conduct here.

There has been no allegation that Oberlander hacked into the Bayrock computer. Rather, all of the evidence submitted confirms that Oberlander was lawfully given access to the hard drive. Especially because he represented a Bayrock member at the time, and had an absolute right to review – in his behalf – every document on that hard drive, since it was Bayrock property.

---

[3] The overbreadth of the claims is made most manifest where Bayrock's counsel objected to the allegation containing no more than the letters "Q.E.D." pursuant to FRCP 12(f).

[4] Available at https://www.nycourts.gov/ctapps/Decisions/2014/May14/72opn14-Decision.pdf.

A final point. This canard about "stolen" evidence has been bandied about by Mr. Sater's counsel, the government, and Bayrock's counsel for almost four years, yet none ever stopped to think about it. Wigmore has thought about it:

> **Documents, chattels and testimony obtained by illegal search or removal; General principle. Does the illegal source of a piece of evidence taint it so as to exclude it, when offered by the party who has shared in the illegality?**
>
> As a general rule, our legal system does not attempt to do justice incidentally and to enforce penalties by indirect means. A judge does not attempt, in the course of a specific litigation, to investigate and punish all offenses which incidentally cross the path of that litigation. Such a practice would offend our system of law in several ways. (1) It amounts to trying a violation of law without the proper complaint and process which are essential for its correct investigation. (2) ***Determination of incidental violations jeopardizes the primary litigation by delaying, interrupting, confusing and sometimes frustrating it.*** (3) It does all this unnecessarily and gratuitously; the persons harmed by the supposed incidental violations have direct means of redress available and should not be allowed to attend to their complaints in this indirect and possibly tardy manner. (4) The judicial rules of evidence were never meant to be used as an indirect method of punishment. To punish the incidental violation by rendering evidence obtained thereby inadmissible in the primary litigation is to enlarge improperly the fixed penalty of the law, that of fine or imprisonment, by adding to it the forfeiture of some civil right through loss of the means of proving it. The incidental illegality is by no means condoned. It is merely ignored in this litigation.
>
> For these reasons, it has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has obtained the evidence.

8 *Wigmore on Evidence*, Sec. 2183 (McNaughton rev. 1961) (emphasis added).[5]

Wigmore hit the nail on the head. Were Wigmore to look at the past four years of litigation, he would see that it has been "frustrated" by immaterial allegations that "stolen" evidence was given by Bernstein to Oberlander. Such immaterial arguments have been made without any challenge of the above-stated principal of law, much less any challenge to the fact that Kriss, as an owner of Bayrock Group LLC, had a right to the documents in Bernstein's possession.

[5] This is the law of New York, of course. See *Mosallem v. Berenson*, 905 N.Y.S.2d 575 (1st Dep't 2010).

**The Magistrate Erred in Slurring Plaintiffs with Accusations of "Flouting" Orders**

As for Judge Maas's statement that the undersigned, "have flouted [his] directive and Judge Buchwald's prior request [that public sources for allegations in the complaint be identified]," we submit that the use of the word "flouting" is manifestly unwarranted, intended *in terrorem*, and to create a record of unfounded records of defiance of court orders.

First, a "request" by a judge that is objected to and disagreed with, and not reduced to a formal order, cannot be said to have been "flouted."

Second, Judge Maas's own order of September 13, 2013, which was issued after the court conference on September 11, 2013, was reasonably interpreted, we submit, to not require the disclosure of privileged communications and work product, but only required that the plaintiffs identify what allegations were sourceable to Joshua Bernstein, and what allegations were sourceable to "others"; i.e., non-Bernstein information.

**The Magistrate Erred in Placing and Maintaining Documents under Total Seal**

All of the motion papers in *Kriss 1* that were before Judge Maas should be immediately placed on the public docket, save for those few portions as to which Bayrock has requested redactions. There is no objection to 90% of the documents, yet Judge Maas has maintained them under seal in their entirety. Pursuant to *Lugosch v. Pyramid Co. of Onondaga Co*., 435 F.3d 110 (2d Cir. 2006), they must be placed on the public docket. If there are to be any redactions, the court is required to make record findings capable of appellate review that support such redactions.

Additionally, the complaint in *Kriss 2* must be unsealed immediately because it is publicly available. It was publicly available on the docket until it was sealed by Judge Maas. However, before Judge Maas sealed it, it was apparently uploaded to the public "RecapTheLaw.com" website. (As the court may be aware, RecapTheLaw.com is a tool used by journalists when accessing court files. When they access a document from Pacer through the RecapTheLaw.com plug-in, it becomes archived to the website, thus becoming available to other journalists without charge.) See *Gambale v. Deutsche Bank*, 377 F.3d 133 (2d Cir. 2004) ("The genie is out of the bottle….

[W]e have not the means to put it back.") Moreover, even Bayrock, movant to seal, only objects to 2 of 100 paragraphs so there is no basis to seal the entire document.

*****

Wherefore, Plaintiffs ask for all relief previously requested, including modification of or equivalent vacatur as to all objections beyond that of the prior restraint, remand or directed unsealing as to the sealed documents, plus all other relief as the court deems just and proper.

Dated June 12, 2014

**THE LAW OFFICE OF FREDERICK M. OBERLANDER P.C.**

/s/ Frederick M. Oberlander
*Attorneys for Plaintiffs*

Post Office Box 1870
28 Sycamore Lane
Montauk, NY 11954
212.826.0357 Tel.
212.202.7624 Fax.
fred55@aol.com

**THE LAW OFFICE OF RICHARD E. LENER P.C.**

/s/ Richard E. Lerner
*Of Counsel*