**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NY**

| | |
|---|---|
| JODY KRISS and MICHAEL EJEKAM, directly and derivatively in Behalf of BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; and BAYROCK WHITESTONE LLC; Plaintiffs/Petitioners, <br><br> v. <br><br> BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ; FELIX SATER; BRIAN HALBERG; SALVATORE LAURIA; ALEX SALOMON; JERRY WEINRICH; SALOMON & COMPANY PC; AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN; DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-1000; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC; BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.; and NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.; Defendants <br><br> (BAYROCK GROUP LLC; BAYROCK SPRING STREET LLC; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC BAYROCK MERRIMAC LLC opposing as Respondents) <br><br> and <br><br> BAYROCK GROUP LLC; BAYROCK SPRING STREET LLC; and BAYROCK WHITESTONE LLC, Nominal Defendants (Derivative Plaintiffs). | 10-CV-3959(LGS)(FAM) |

**REPLY TO DEFENDANTS' OPPOSITION TO APPEAL FROM JUNE 12, 2014 DENIAL BY MAGISTRATE, ECF 71, OF ENLARGEMENT OF TIME *SINE DIE* TO CONFERENCE ON ETHICS ISSUES RAISED BY AND RESPOND TO ORDER ECF 68 DIRECTING DISCLOSURE OF INFORMATION RELIED ON BY PLAINTIFFS' COUNSEL IN PREPARATION OF THE FIRST AMENDED COMPLAINT.**

**ATTORNEY AFFIRMATION AND MEMORANDUM OF LAW**

Respectfully, the court should note that plaintiffs requested an abeyance, ECF 81, so that depending on the outcome of other related matters *sub judice* the need for this motion might vanish. It was not our intent to create work. Similarly, in our main petition for relief of June 12, 2014, while we did mention it was error for the magistrate to fail to enlarge time, as we had shown good cause, the error itself only occurred a few hours before submission of those papers. Accordingly, this motion sequence, timely filed, perfects that argument and includes new facts not available to anyone at the time, *infra*.

## PRELIMINARY STATEMENT

This affirmation and memorandum is submitted in reply to defendants' July 2, 2014 (ECF 90 and 92) opposition to plaintiffs' request for relief from Magistrate Maas's order of June 12, 2014, ECF 71, which denied plaintiffs' request for additional time to comply with the order of May 29, 2014, ECF 68, which *inter alia* required plaintiffs to identify "sources" "relied on" in the preparation of the FAC.

## SUMMARY

By that order of May 29, the magistrate directed plaintiffs to produce detailed information and documentary support for some *six hundred* allegations in the FAC objected to by defendants.

Despite the fact that some *five hundred* of those objections were unsupported by *anything* – not by affidavit, not by documentary submission, not even by sworn attorney affirmation – and so defendants presented no *prima facie* entitlement to relief at least as to them (and despite the fact that the hundred that were purportedly supported were "supported" by a facially incompetent affidavit), over plaintiffs' objections the magistrate required disclosure as to all six hundred[1].

This motion is limited to one point: Plaintiffs, who have made periodic submissions all along as they were able to, have now complied, having identified and collated 93% of the documents which, in the magistrate's words, could arguably be said to have been, or led to, a basis for the allegations.



But the time expended exceeds 300 hours, scores consumed by consults with ethics counsels who will confirm the necessity of the consults and the work required. The production is near 6,000 pages. It occupies *eight* binders the size of the first one, pictured here. It required review of over 5,000 files maintained for the case, or 100,000 pages. It could not be scaled or outsourced as only counsel responsible for the FAC could do it. It was *impossible* to comply in the time given. Denial of enlargement was error.

---

[1] Plaintiffs' objection to this is *sub judice* in their June 12, 2014 chief petition for relief.

# ARGUMENT

There is a singular fault here, and it isn't ours. Defendants made an error in assuming that the FAC was based on documents obtained from Bernstein. Putting aside the fact that it wouldn't have mattered as it would have been perfectly legal, the reality is that very little of the FAC was so based.

But because of their assumption, and their belief that if it were so they could evade reckoning, as the transcript of the September 11, 2013 conference shows, defendants insisted on knowing *who* – as in what *person* – was the source of the six hundred allegations they didn't like.

There is no doubt on this point. The initial order as issued September 13, 2013, confirms what the transcript reveals, that plaintiffs were to identify which of those allegations was sourced to Bernstein, and which to someone else (and, if any, from public sources). Tr @ 18-21, 27-30:

| | |
|---|---|
| THE COURT: | Bayrock has taken the position that although it can't know with complete certainty that which it thinks was gotten via Mr. Bernstein, it has some inkling of what those sections are and has provided someplace in these papers that I've received a chart of where that is…. |
| MR. OBERLANDER: | [I] certainly know what came from Mr. Bernstein and what didn't, and I will check with my client; but assuming my client has no objection, I will be delighted under affirmation to state what did and what didn't. |
| THE COURT: | Then I think one thing that needs to happen -- even though on your theory of all of this it may be surplusage or not required -- **is for you to indicate which of the factual averments came from material that Mr. Bernstein furnished rather than a public source. And, more specifically, for the paragraphs where the BayRock defendants say it's either a trade secret or privileged information or both, you need to provide a public source for that if there is one…you certainly can make your argument that none of this matters because the privilege has been waived.** |

* * *

| | |
|---|---|
| THE COURT: | **What I am going to require is that you indicate that which came from Bernstein; that, in particular, you address whether the paragraphs that the BayRock defendants say came from Bernstein and are confidential, privileged or work product, whether those came from Bernstein; but, further, that you indicated, because I think there is no harm in this, was there a public source also for the information? If you want to take that to the Supreme Court, the Second Circuit, be my guest, but that's my directive.** |
| MR. OBERLANDER: | You're ordering me to state whether or not there is a public source… |

| | |
|---|---|
| THE COURT: | A public source that you rely on. **If 99 percent of this information came from Mr. Kriss, it's not a heavy lift.** |
| MR. OBERLANDER: | I understand. That's what I was trying to say, is that it's going to be a very reasonably small list. The problem is I don't want to wind up being directed to violate work product privilege. And if you're asking me why would it implicate work product, it's because Mr. Kriss, like every other client, came and said, "This is what happened. Here are the facts." This brain, his brain, other people's brains, said, both. Well, here are the legal theories that we can use based on those facts to try to get you your money back. So, when you got a complaint, you have factual allegations and then you have -- they're all notice facts, but then there are facts that we wrote that we alleged based on that. For example, fraud. "He did this, he did this, he did this, and, therefore, he must have intended this result," and so on. So, the problem is that most of what's in that complaint, for example, there's a description of an elaborate tax fraud in that complaint or what we claim is tax fraud. The way it's presented and how it says that they disguised this as this type of transaction, when it really was this, and they violated this, that is coming based on work product analysis that went into a complaint of the facts our clients gave us. |
| THE COURT: | But if there is -- and there were issues, obviously, in terms of Rule 9(b) pleading fraud, **but if it's not based on Bernstein and it's not based on the factual representation to you by your client, then --** |
| MR. OBERLANDER: | Then it's an inferential fact. |
| THE COURT: | **-- it falls into the category of a blank space on this chart that you opened up.** |
| MR. OBERLANDER: | That's all I wanted was permission to say there are inferential facts that -- |
| THE COURT: | **You don't have to say that. There is either -- either the source is Bernstein or the source is Kriss or the source is some public document or fact of which you were aware at the time you were drafting it.** |

Two days later, on September 13, ECF 60, the magistrate issued a scheduling order, stating:

> By September 30, 2013, the Plaintiff shall serve via email an annotated version of Exhibit A to the Bayrock Defendants' May 9, 2013 letter, detailing any sources of information other than Joseph Bernstein for the allegations in the referenced paragraphs of the First Amended Complaint.

So, counsel understood there was no order directing plaintiffs to do anything that would, or could, be such a violation, and understood there was no order directing plaintiffs to identify specific documents relied upon in drafting any allegation. Rather, counsel understood the order to mean that plaintiffs were to identify what allegations were predicated upon information that solely came from Bernstein, and what did not, and so came from Kriss or from some independent or public source.

The word "document" doesn't appear anywhere in that transcript or in that original order. Only in the May 29, 2014 order, ECF 68, did the issue of document identification first appear[2]. And the only reason it got there was that, as the record also shows[3], when defendants received our first production in September 2013 and saw almost 90% was not sourced to Bernstein at all, they wrote to the magistrate and admitted that they had assumed all along it was all from Bernstein, and now that they saw it wasn't and that most was sourced to Kriss, they then – and only then – demanded to know exactly what *documents* were involved, as opposed to *who* was involved.

Presumably, that's what triggered the May 29, 2014 order, (again, for the first time) directing that *documents* be specified or identified or produced[4].

---

[2] There is no distinction between producing documents and producing a list, but as the parties haven't exchanged documents or stipulated to a joint binder, there is no way, outside things like tax returns for a specific year, to identify documents without ambiguity, so plaintiffs produced them in kind.

[3] Except the record *doesn't* properly show it; their letter of October 4, 2014 is, without lawful reason, not docketed, just as our response of October 7, 2014 is not. We quote defendants' letter:

> The Bayrock Entities currently are only aware…that Bernstein was a source of the privileged and confidential information used in the FAC, but Plaintiffs' submission plainly indicates that other similarly provided this information. The Bayrock Entites are entitled to know who these individuals are so they may pursue appropriate action, including, but not limited to, seeking the dismissal of the FAC.

[4] To the extent the decretal language is clear. Respectfully, it isn't, which is why we sought clarification:

> [I] will afford Plaintiffs and their counsel one last opportunity to comply with the directive that they cite the specific sources of each of the allegations to which the Defendants have objected in Exhibit A on privilege, work product, or confidentiality grounds. Plaintiffs are directed to provide a chart containing this detailed information by June 12, 2014. On the chart, **the factual source for each contested allegation is to be identified with sufficient specificity that the Court and opposing counsel can determine whether documents that arguably are privileged or work product or sealed were relied upon as the basis for the allegation**. [Emph. Add.]

And that leaves only two possibilities. One, that plaintiffs have *over*produced[5], because they misinterpreted the order; or two, that plaintiffs very well interpreted the order, in which case they were given two weeks to do what provably couldn't have been done in over a month of doing nothing else.

Why could we not get clarification? In opposition to this motion for relief, Bayrock's counsel admits that our June 9th email indicated that we had sought clarification from Magistrate Maas as to the May 29, 2014 order, and does not deny that he advised that he could not participate in a conference call during "the next few days." Clarification of Magistrate Maas's order was needed, but the request was denied, to determine whether the magistrate actually intended to implicate issues of privileged and work product protection and actually intended such a massive production to come.

And we think it likely that any attorney presented, as we were, with a "If you don't comply I'll recommend the case be stricken" warning would err on the side of overproduction, *a fortissimi* if denied the opportunity for clarification both by opposing counsel and the magistrate.

Accordingly, after consulting with ethics counsel (Pery Krinsky, Esq.), by letter dated June 11, 2014, we advised the magistrate of such issues, and requested an enlargement of time so that, after further consultations with ethics counsel, we could address the issue of how to ethically comply with the May 29, 2014 order – i.e., without breaching the attorney-client privilege and disclosing work product – and how much time would be needed to fully and ethically comply with the order. And we were concerned that the contours of the May 29th order, if it did enlarge the September 13, 2013 order, are not well defined, for it states that the plaintiffs must provide sufficient detail such that the opposing counsel could determine whether documents that arguably are privileged or work product or sealed were relied upon as the basis for the allegation. This means compliance would be judged by an impossible subjective standard of whether opposing counsel can make such determination.

---

[5] Disclosing with "too much" specificity what an attorney relied upon in drafting a complaint is to disclose the attorney's thought. *Sporck v. Peil*, 759 F. 2d 312 (3d Cir. 1985) (disclosure of culled documents and facts can violate work product). And if an attorney discloses an allegation is based on a specific statement of a client or document provided by same he discloses privileged communications.

*****

In drafting the original complaint, and the FAC, which took *two years* of full time work (Mr. Oberlander was retained in April 2008; the initiating complaint, on which the FAC is based, was completed in May 2010), Mr. Oberlander reviewed untold thousands of pages and prepared from them untold thousands more. In most instances, he can't say – nor could anyone – what particular page of a particular document formed the basis for a particular allegation in the FAC, and it would take extraordinary time to recreate that review if necessary to prevent inadvertent disclosures. This isn't because of obstinacy; rather it's because the totality of the documents synthesized through years of expert analysis produced most of the FAC, and attempting to link to one line on one page for the most part other than specific dollar values, for example, is pointless and impossible.

*****

In any event, after the magistrate denied the June 11, 2014 request for an enlargement on June 12t, we submitted later that day a chart of responses to hundreds of paragraphs of the FAC objected to by Bayrock, noting we would continue to update the chart, and that we expected to provide a complete chart shortly, providing information up to the line, but not crossing the line, of ethical duty.

That is, we prepared the chart to the best of our abilities, within our ethical constraints, and noted that we would supplement the chart on an immediate ongoing basis, as completion never could have been done within the two weeks ordered by the magistrate, particularly since the May 29th order was so very different from what was ordered during the proceedings on September 11, 2013.

*****

In opposition to this motion, Bayrock's counsel argues that Judge Buchwald had "requested" this information in December 2010. First of all, she did no such thing. Period. Call it a regrettable error by learned counsel if you like, but **while Judge Buchwald "suggested" we provide public**

**sources for allegations "commonly thought of as" privileged, which is what the magistrate himself ordered in September, she never "suggested" document identification or production**.

And of course, a "request" or "suggestion" by a judge, which is not reduced to a formal order, is not an "order," and Judge Buchwald reassigned this case over three years ago anyway and it's impossible to understand how a judge's "suggestion" outlives the judge. Thus, we need not spend any time on the argument that we had years to comply with Judge Buchwald's "suggestion."

### SUMMARY

It is respectfully submitted that, because of the expansion of the scope of the disclosure order, from the limited order of September 13, 2013, the complexity and gravity of the issues raised by the expanded order of May 29, 2014, the amount of time needed to review 5,000 files and 100,000 pages of records, the magistrate erred in denying, without explanation and without any findings, plaintiffs' counsel's request for an enlargement of time to comply with the May 29, 2014 order.

Such facts as are stated above are, to the best of our knowledge or belief, true and correct, under penalty of perjury pursuant to 28 U.S.C. §1746, this 9th day of July, 2014.


/s/ Frederick M. Oberlander, Counsel for Plaintiffs
**THE LAW OFFICE OF FREDERICK M. OBERLANDER**
28 Sycamore Lane, Box 1870
Montauk, New York 11954
212.826.0357   Tel
212.202.7624   Fax
fred55@aol.com

/s/ Richard E. Lerner, Co-Counsel
**THE LAW OFFICE OF RICHARD E. LERNER, P.C.**
501 Fifth Avenue, Suite 300
New York, New York 10017
917.584.4864   Tel
richardlerner@msn.com