USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/14/2015__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

J.L. KRISS and MICHAEL "CHUDI"          :
EJEKAM, et al.,

                                        :          **REPORT AND**
                         Plaintiffs,               **RECOMMENDATION**
                                        :          **TO THE HONORABLE**
         -against-                                 **LORNA G. SCHOFIELD**
                                        :
BAYROCK GROUP LLC, et al.,                         10cv3959-LGS-FM
                                        :
                         Defendants.
--------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

       Although this case has been pending for more than four years, astonishingly little progress has been made. Some of the reasons for this extensive delay are set forth in my Memorandum Decision and Order dated May 29, 2014 (ECF No. 68) ("2014 Order"), familiarity with which is presumed. In the 2014 Order, I afforded plaintiffs Jody L. Kriss and Michael Ejekam ("Plaintiffs") one final opportunity to identify specific public sources of information for certain allegations in their First Amended Verified Complaint ("FAC") that had been challenged by defendant Bayrock Group ("Bayrock" or "Defendants"). Bayrock contended that these allegations were based on information Plaintiffs' counsel had obtain unlawfully from Joseph Bernstein ("Bernstein"), a former Bayrock employee.

Plaintiffs repeatedly have failed to comply with the 2014 Order and prior directives to the same effect. (See ECF No. 60) ("2013 Order").[1] It therefore is clear that the Plaintiffs must be sanctioned. I initially threatened to strike the FAC and all the Plaintiffs' prior pleadings if the Plaintiffs and their counsel continued to flout my Orders. (See 2014 Order at 13). Upon further reflection, however, for the reasons explained below, I recommend that Your Honor strike from the FAC each paragraph that Bayrock has objected to on privilege, work product, or confidentiality grounds.[2]

I.    Background

The Plaintiffs purport to bring this RICO case against Bayrock and others individually and derivatively. They seek damages in an unspecified (but presumably very large) amount, as well as equitable and declaratory relief.

One unusual aspect of the suit is that certain allegations in the original complaint made reference to documents that had been sealed by Judge I. Leo Glasser in United States v. Sater, No. 98 Cr. 1101, a criminal case brought in the United States

---

[1]    The 2013 Order and 2014 Order are hereinafter referred to, collectively, as the "Orders."

[2]    There is some uncertainty in this Circuit concerning a Magistrate Judge's authority to sanction a litigant pursuant to the Court's inherent powers. Compare Gelicity UK Ltd. v. Jell-E-Bath, Inc., 10 CV 5677 (ILG) (RLM), 2014 WL 1330938, at *1 n.1 (E.D.N.Y. April 1, 2014) (suggesting there is an issue), with Hamilton v. United States, No. 10 CV 3367 (ILG), 2013 WL 5128447, at *5 (E.D.N.Y. Sept. 12, 2013) ("Although I do not conceive it my duty to do so, I would venture to believe the oft-cited case of Chambers v. Nasco, Inc., 501 U.S. 32, 43-44 (1991), would make a finding of such power to be vested in a Magistrate Judge to be compelling."); see also Kiobel v. Millson, 592 F.3d 78, 84-105 (2d Cir. 2010) (in which a Second Circuit panel sharply disagreed as to whether such authority exists under Rule 11 of the Federal Rules of Civil Procedures). Accordingly, I am submitting this Report and Recommendation rather than issuing a decision.

District Court for the Eastern District of New York against one of the individual

defendants in this matter ("EDNY Case"). (See ECF No. 2). The Plaintiffs' counsel,

Frederick M. Oberlander ("Mr. Oberlander"), evidently obtained those documents (the

"Bernstein Information") from Bernstein after Bernstein left Bayrock's employ.

Bernstein previously had been instructed to maintain a backup copy of Bayrock's

electronic files for safekeeping. Mr. Oberlander assured Bernstein that "the documents

on the hard drive were not stolen and that as a legal matter [he] had every right to possess

the . . . hard drive." (2014 Order at 5 (quoting Bernstein Aff., sworn to on Sept. 19, 2011,

¶ 13)). Mr. Oberlander similarly opined that the contents of the hard drive were not

privileged or confidential "because of the crime fraud exception." (Id. at 6 (quoting

Bernstein Aff. ¶ 23)) (internal quotation marks omitted). The Defendants, on the other

hand, contend that certain of the documents that Mr. Oberlander obtained from Bernstein

are attorney-client or work-product documents. (See id. at 7).

This action initially was assigned to Judge Naomi Reice Buchwald. Suffice

it to say, Judges Glasser and Buchwald both disagreed with Mr. Oberlander's conclusion

that the materials on the hard drive could be copied and used by him without restriction

because they were subject to the crime fraud exception. Indeed, Judge Glasser found that

Bernstein had "no legal right" to the documents that previously had been sealed in the

EDNY Case. See Roe v. United States, 428 F. App'x 60, 64 (2d Cir. 2011). Judge

Buchwald similarly instructed the Plaintiffs to make no further distribution of the original

complaint because it attached and made reference to certain documents sealed in the EDNY Case. (See ECF No. 2).[3]

By letter dated December 16, 2010, Judge Buchwald suggested (but did not order) that Mr. Oberlander "submit for her review a proposed new complaint that specifically cited public sources for any allegations that 'generally' would be treated as sealed or privileged." (2014 Order at 7). That did not occur. Following the reassignment of this case to Your Honor, however, the Plaintiffs did file their FAC under seal.

By letter dated May 9, 2013 ("May 9 Letter"), Bayrock objected to any public filing of the FAC, which remains under seal, on the grounds that the FAC "include[d] on its face and [was] otherwise derived from misappropriated Bayrock attorney-client privileged communications, attorney work product materials, [and] confidential and proprietary Bayrock information." (See 2014 Order at 8). Included with the May 9 Letter was a chart identified as "Exhibit A" ("Exhibit A"), listing the paragraphs of the FAC that Bayrock alleged were "derived from [Bayrock's] privileged and confidential information." (Id.). Bayrock requested that the Plaintiffs be required to "clearly cite public sources of information utilized in drafting the FAC," in order to demonstrate that the paragraphs identified in Exhibit A were based on sources other than those obtained "as a result of [P]laintiffs' own misconduct." (Id.).[4]

---

[3]     Judge Glasser later unsealed some, but not all, of those documents after the Government disclosed information about the EDNY Case in a press release.

[4]     Bayrock also sought to strike certain paragraphs of the FAC pursuant to Rule
(continued...)

On July 23, 2013, Your Honor referred this case to me for general pretrial supervision, expressly noting that the scope of the referral extended to "resolution of the issues that are the basis for [Bayrock's] objections to the public filings of the FAC." (ECF Nos. 52, 53). Accordingly, on September 11, 2013, I held a conference to address these issues. During that conference, I found that there was a need for the Plaintiffs to indicate which portions of the FAC were derived from the Bernstein Information and which could be independently sourced. (See ECF No. 61 (Tr. of Pretrial Conference on Sept. 11, 2013 ("Tr.")), at 26-27). I therefore instructed the Plaintiffs to "address whether the paragraphs that the Bayrock defendants say came from Bernstein and are confidential, privileged or work product" in fact came from Bernstein, by indicating whether "there [was also] a public source . . . for the information" set forth therein. (Id. at 28).

Although this was a verbal instruction, there could not have been any ambiguity as to what the Plaintiffs had been directed to do. Indeed, Mr. Oberlander was expressly advised that the Court was not asking for any argument as to why the Plaintiffs allegedly had a "right" to aver as they did in the contested paragraphs of the FAC, but, rather, that they identify specific sources for the information stated in those paragraphs:

> MR. OBERLANDER:     In other words, this is their paragraph.
>                     They're saying "[w]e don't like this;
>                     we don't like this" and I'm saying, "I
>                     don't care; we have a right."

---

[4](...continued)
12(f) of the Federal Rules of Civil Procedure, as "immaterial, impertinent, or scandalous." (May 9 Letter at 14). As Bayrock's Rule 12(f) objections were not the subject of either of my Orders, I have not addressed them in this Report and Recommendation.

| | |
|---|---|
| THE COURT: | No, you are not saying, 'we have a right," you are giving me – |
| MR. OBERLANDER: | Why we think we have a right. |
| THE COURT: | No, no. You're giving me a source. |
| MR. OBERLANDER: | Only where it came from? |
| THE COURT: | The source. |

(Id. at 32-33). To further memorialize this directive, I issued the 2013 Order, which

required that, "[b]y September 30, 2013, the Plaintiff[s] shall serve . . . an annotated

version of Exhibit A to the Bayrock Defendants' [May 9 Letter], detailing  any sources of

information other than . . . Bernstein for the allegations in the referenced paragraphs of

the [FAC]." (2013 Order ¶ 2) (emphasis added).

On September 30, 2013, the Plaintiffs furnished me with a color-coded

copy of the FAC in which each paragraph challenged by Bayrock was highlighted in a

color corresponding to the following explanation:

> YELLOW [is] material sourced only from Bernstein in emails
> provided to us or the 6 physical documents provided to us.
>
> GREEN is the same, but some or all of it is also all or
> partially sourceable from public records or similar.
>
> NO HIGHLIGHT is material sourced other than from
> Bernstein. We do not waive privilege either attorney client or
> work product, and will not disclose where, how, when, why
> etc. the allegations made it into the complaint. (In other
> words, non-Bernstein YELLOW).

BLUE [is] material sourced other than from Bernstein, where some or all of it is also all or partially sourceable from public records. (In other words, non-Bernstein GREEN)[.]

GRAY is sourced to both Bernstein and others[.]

ORANGE is sourced to both Bernstein and others and is also [all] or partially sourceable to public records.

PINK (there are only two) are either YELLOW or GRAY but we cannot yet tell reliably until we finish a database redo. That is we cannot at this time recall whether such came from only Bernstein, or from Bernstein and public documents.

(See 2014 Order 8-9).

This submission, while feigning adherence to the 2013 Order, clearly failed to provide the Court with even a scintilla of the information necessary to determine whether any of the contested allegations were improperly based solely on the Bernstein Information. Thus, rather than indicating what public sources allegedly had been relied upon, the Plaintiffs opted instead simply to inform the Court that public sources corroborating the contested allegations supposedly existed. There had, however, been "extensive press coverage of this and related lawsuits." (Id. at 11). Accordingly, as I stated in the 2014 Order, "merely noting that a particular factual assertion [could] be partially or wholly corroborated from a public source [said] virtually nothing about its actual provenance." (Id.). As I further explained in the 2014 Order:

[T]o determine whether the FAC impermissibly relie[d] on privileged or confidential information, including documents that were sealed by Judge Glasser, the Court [had to] know the specific source of each of the allegations challenged by the Defendants. Only in this manner [would] the Court be

7

able to determine whether the public sources upon which
Plaintiffs allegedly rel[ied] acquired the information
impermissibly through Plaintiffs' leaks of information from
the Bernstein hard drive or legitimately through other means.

(Id. at 12).

For this reason, the 2014 Order presented the Plaintiffs with a clear

ultimatum. As I explained in the Order, the Plaintiffs would be afforded "one last

opportunity to comply with the directive that they cite the specific sources of each of the

allegations to which the Defendants [had] objected in Exhibit A on privilege, work

product, or confidentiality grounds." (Id.) (emphasis added). The Plaintiffs were

"directed to provide a chart containing this detailed information by June 12, 2014." (Id.).

The Plaintiffs further were cautioned that if they failed to comply with the Court's

instructions, I would recommend to Judge Schofield that the FAC be dismissed with

prejudice. (Id. at 13).[5]

On June 11, 2014, just one day before the June 12 deadline established by

the 2014 Order, the Plaintiffs' counsel requested a five-day "urgent stay or abeyance" to

permit the Plaintiffs to retain an "independent ethics counsel" to opine with respect to

---

[5]     The 2014 Order also addressed (a) Bayrock's request that the Court order the
return of Bayrock's allegedly privileged and confidential documents; (b) Bayrock's motion to
disqualify the Plaintiffs' counsel; (c) the Plaintiffs' motion to disqualify Bayrock's counsel; (d)
the potential redaction and public filing of the motion papers submitted in connection with the
various applications before the Court; and (e) Bayrock's request to remove from the ECF
system, and strike all references to, privileged and confidential material set forth in the
complaint filed by the Plaintiffs in a related action, Kriss v. Bayrock, 13cv3905-LGS-FM. Each
of these applications required the Court to resolve issues raised in the May 9 Letter.
Accordingly, I reserved decision with respect to each of these applications until the issues
relating to the FAC were resolved.

what they characterized as the "grave ethics and privilege issues raised" by what might potentially be a "huge disclosure."  (ECF No. 69).  I denied that request the following day.  (ECF No. 71).

On the night of June 12, 2014, the Plaintiffs submitted by email an annotated chart with responses corresponding to each paragraph of the FAC objected to by Bayrock.  (See email from Mr. Oberlander to the Court dated June 12, 2014).  In a cover letter attached to that email the Plaintiffs claimed that the chart provided the "best possible" information given the "ethic[al] and temporal time document review constraints" to which they were subjected, but indicated that they planned on "constantly updating and transmitting through [Monday]."  (Letter from Mr. Oberlander to the Court dated June 12, 2014 ("June 12 Letter") at 3).

Although the form of the Plaintiffs' chart arguably was consistent with what the 2013 and 2014 Orders had required, the substance was as unresponsive as the September 30 color-coded submission.  Indeed, the chart failed to list so much as a single specific source for the averments in the challenged paragraphs of the FAC.  With almost comic disregard for both prior Orders, counsel for the Plaintiffs suggested that their submission had been prepared in the belief that "there was no order directing us to identify specific documents relied upon by counsel in drafting any particular allegation."  (Id. at 1).

On the night of June 13, 2014, Mr. Oberlander submitted by email an updated chart, which he took care to note was "not yet quite complete," (Email from Mr.

Oberlander to the Court dated June 13, 2014), and on June 16, 2014, Mr. Oberlander

submitted by email what he described as the "complete chart." (Email from Mr.

Oberlander to the Court dated June 16, 2014). Like its predecessors, the final chart,

submitted four days after the Court's deadline, utterly fails to comply with the

requirements of the Orders. Although the chart does contain references to such sources as

"FL Transaction Documents," "Bayrock Financial Documents," and "Bayrock

Partnership and Subscription Documents," these broad descriptions obviously are of no

assistance to the Court in resolving the fundamental question of whether the Plaintiffs'

allegations are based on the Bernstein Information. The final chart also contains certain

even more puzzling entries, such as "additional provenance check NEC" and "Self

Documenting Email," which are nowhere explained.

       The Plaintiffs were not yet done, however, and intensified their efforts to

pay lip service to – but not actually comply with – my prior Orders. In a letter to the

Court dated July 1, 2014, the Plaintiffs indicated that they had "undertaken to segregate

into category binders" documents that were relied upon in preparation of the FAC."

(ECF No. 88 (Letter from Mr. Oberlander to the Court dated July 1, 2014)) (internal

quotation marks omitted). On or about that date, they also delivered to my Chambers

what they identified as "Binder 5," consisting of approximately 700 pages of unindexed

documents allegedly "prepared for and then submitted into prior litigation in Delaware."

(Id.). It appears that a copy of Binder 5 also was furnished to Bayrock's counsel. (Id.).

Mr. Oberlander represented that none of the documents in Binder 5 came from Bernstein,

but he did not specify the relationship, if any, between the documents and any of the paragraphs of the FAC challenged by the Defendants.  The closest the Plaintiffs came was to note:

> We very much ***did*** rely on those documents rather than "reinvent the wheel," and we ***did*** use them as points of departure.  In short, they ***are*** public sources we relied on, exactly as defined in the [2014 O]rder.

(Id.) (emphasis in original).

On July 9, 2014, the Plaintiffs notified the Court that they were submitting "the next three sets of binders," (actually eight binders in total), stating that their submission, as supplemented, consisted of "300 documents," totaling "5,000 pages, and constituted "about 93%" of the documents in their possession responsive to the Court's Orders.  (See ECF No. 94 (Letter from Mr. Oberlander to the Court dated July 9, 2014 ("July 9 Letter")) at 2).[6]  This time, however, the Plaintiffs did not furnish Bayrock's counsel with copies of the binders.  (Id.).  The Plaintiffs represented that this sizable production was necessary because "it [is] simply not the case that any significant number of allegations can be sourced to one document, let alone one page in one document, and a production intended to so assemble fails before it starts."  (Id. at 1).  Mr. Oberlander further stated (this time under penalty of perjury) that none of the documents produced

---

[6]    The Plaintiffs never produced the remaining 7% of the documents upon which they relied, which they say relate to "Bayrock co-venturer Michael Samuel and Bayrock minority partner Elizabeth Thieriot."  (July 9 Letter at 2).  The ostensible reason for this omission is that these additional documents are "buried inside a haystack of files that are very time consuming to search through."  (Id.).

were "sourced to . . . Bernstein." (Id. at 2). Curiously, however, just days earlier, Mr.

Oberlander had indicated in a letter dated June 30, 2014, that the Court would soon be

able to see that "almost none of the documents in any binder came from [Bernstein]."

(Letter from Mr. Oberlander to the Court dated June 30, 2014 ("June 30 Letter") at 2)

(emphasis added).

In short, since 2010, the Court has been asking – and later directing – the

Plaintiffs to specify public sources for any allegations in the FAC that would "generally

be treated as sealed or privileged." (2014 Order at 7 (quoting letter from Judge Buchwald

to Mr. Oberlander dated December 16, 2010)). This has proved necessary because prior

to filing the Plaintiffs' original complaint, Mr. Oberlander combed through Bayrock's

confidential files as some sort of self-appointed inspector general. Nevertheless, in clear

defiance of the Orders, the Plaintiffs have yet to specify a source for any of the averments

in the FAC that Bayrock contends are based on the purloined documents. Instead, the

Plaintiffs and their counsel have simply burdened the Court with nine binders of

documents, none of which are Bates-stamped, evidently believing that, by virtue of this

act, Bayrock or the Court now must prove that the Plaintiffs improperly relied on

confidential Bayrock documents as the basis for the challenged averments of the FAC.

II.      Discussion

In Fayemi v. Hambrecht and Quist, Inc., 174 F.R.D. 319 (S.D.N.Y. 1997), a

Title VII suit, Magistrate Judge Francis addressed "whether a federal court has the power

to sanction a party for obtaining evidence improperly outside of the litigation process."

Id. at 321.  The question arose because the plaintiff had entered his supervisor's office without permission and had printed proprietary corporate information concerning other employees' bonuses stored on a corporate computer drive or disk.  After the theft occurred, however, the defendant employer allowed the original bonus information to be destroyed, even though it plainly would have been discoverable.  Despite its own misconduct, the employer sought an order dismissing the complaint, or, alternatively, precluding the plaintiff from utilizing the stolen information to support his claims.

As Judge Francis observed, "courts necessarily have the inherent equitable power over their own process 'to prevent abuses, oppression and injustices.'"  Id. at 324 (quoting Gumbel v. Pitkin, 124 U.S. 131, 144 (1888)).  More recently, Judge Gardephe similarly has concluded that, "[i]n addition to the sanctions authorized under the [Federal Rules of Civil Procedure], federal courts have the inherent power to sanction a party for conduct that constitutes an abuse of the judicial process."  Wilson v. Pasquale's DaMarino's, Inc., No. 10 Civ. 2709 (PGG), 2013 WL 1195603, at *5 (S.D.N.Y. Mar. 25, 2013) (citing Chambers, 501 U.S. at 43).

The Supreme Court nonetheless has cautioned district courts to use "restraint and discretion" when exercising their inherent power to sanction a party. Chambers, 501 U.S. at 43-44.  Thus, when the Federal Rules of Civil Procedure provide a means to address wrongful conduct, a district court ordinarily should rely on the Rules, rather than its inherent power.  Id. at 50.  Here, Rule 37 of the Federal Rules does not provide a basis to address the Plaintiffs' misconduct because they have not disobeyed a

discovery order.  Indeed, the parties are far from the discovery stage since the FAC has yet to be served on most of the parties named as defendants.[7]  Rule 11 of the Federal Rules is similarly inapplicable because the question here is not whether the Plaintiffs' claims have – or are likely to have – evidentiary support, but whether it is permissible for them to rely on evidence that their counsel improperly obtained.  See Lehman Bros. Commercial Corp. v. China Int'l United Petroleum & Chemicals Co., No. 94 Civ. 8304 (JFK), 1995 WL 380106, at *2 (S.D.N.Y. June 26, 1995) ("If the evidence to be offered in support of the allegation would be inadmissible at trial, then the motion to strike that allegation should be granted.") (citing Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976)).  If the Plaintiffs are to be sanctioned, the Court therefore must rely on its inherent power to oversee the cases on its docket.

There seem to be only three alternatives the Court could pursue at this juncture to address the Plaintiffs' failure to comply with the Orders.  First, as the Plaintiffs previously were warned, the FAC could simply be dismissed in light of the Plaintiffs' continued intransigence.  (See 2014 Order at 11-13).  Second, the paragraphs of the FAC that Bayrock suggests are based on the Bernstein Information, rather than independent sources, could be stricken.  Finally, the Plaintiffs could be afforded a further

---

[7]        At my instruction, the FAC has not been served on any of the Defendants other than Bayrock.  (See 2014 Order at 21).  Accordingly, to date, only Bayrock has been in a position to challenge any of the allegations in the FAC.  (See Kriss v. Bayrock, 13cv3905-LGS-FM, ECF No. 101 (Letter from Robert S. Wolf to the Court dated December 4, 2014)).

opportunity to correlate the materials contained in the binders with the contested allegations of the FAC.

The Second Circuit "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits," and that dismissal be deployed as a remedy "only in extreme situations." Marfia v. T.C. Ziraat Bankasi, New York Branch, 100 F.3d 243, 249 (2d Cir. 1996) (collecting cases). Here, it is entirely possible that the Plaintiffs were wronged, have viable claims for relief, and also have a good-faith basis for asserting those claims, wholly apart from any information that Mr. Oberlander appropriated from the Bernstein hard drive. Accordingly, an outright dismissal of the FAC is not warranted.

Another alternative would, of course, be to give the Plaintiffs and their counsel yet another chance to cite specific sources, other than the Bernstein Information, for each of the contested allegations in the FAC. The Plaintiffs' counsel have previously declared, however, that they are incapable of performing this task. They cite at least two reasons why this allegedly is so. First, the Plaintiffs assert that "it's not possible to tie each allegation to a specific line or paragraph in a specific page of a specific document" because "[t]hat is not how the story was put together." (June 30 Letter at 1). They further contend that "[m]ost if not almost all of the allegations in question derive their existence from many sources, including many documents," and that any attempt to match specific allegations to particular documents "fails before it starts." (July 9 Letter at 1). Second, the Plaintiffs maintain that following the Court's prior directives "would violate work-

product protection, as it would become a road-map to counsel's inferences." (June 30 Letter at 1). Indeed, they contend that "even aligning one document . . . would – certainly arguably – be enough to violate work product." (Id.).

The first of these objections is not well taken. At the outset, although the FAC is 766 paragraphs long, the fact that the Plaintiffs have chosen to file a prolix (and, at times, frankly incomprehensible) complaint is scarcely a reason why they should be exempted from establishing that their allegations do not derive from a tainted source. Moreover, there is nothing extraordinary about the task that they were directed to undertake. By way of example, although Local Civil Rule 33.3(a) generally proscribes the service of contention interrogatories at the outset of a case, it is not unusual to require a party to describe the facts underlying the material allegations of a complaint at a later stage. See Local Civil Rule 33.3(a) (limiting the use of interrogatories at the outset of a case); Clean Earth Remediation and Const. Servs., Inc. v. Am. Intern. Group, Inc., 245 F.R.D. 137, 141 (S.D.N.Y. 2007) (noting that interrogatories seeking "identification of each fact supporting an allegation," although generally disfavored, have been permitted by some courts); Wilson v. Thompson/Center Arms Co., No. 05-6493-KDE-SS, 2006 WL 3524250, at *1 (E.D. La. Dec. 5, 2006) (directing defendants to respond "fully" at a later date to interrogatories seeking "each fact, exhibit and witness relied upon" as the basis for various defenses). While the Plaintiffs understandably might not have been able to supply every item of evidence that supported the contested assertions at this early stage, that is not what the Court required. Rather, the Court simply required the Plaintiffs to

identify at least one untainted source for each of the contested assertions in the FAC. Given the manner in which their counsel obtained the Bernstein Information, that requirement was not unreasonable.

Turning to the Plaintiffs' second line of defense, the work product doctrine, originally articulated by the Supreme Court in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. That rule excludes from discovery "materials prepared 'in anticipation of litigation' by a party or the party's representative, absent a showing of substantial need." <u>United States v. Adlman,</u> 68 F.3d 1495, 1501 (2d Cir. 1995) (quoting Fed. R. Civ. P. 26(b)(3)). The protection afforded by the work product rule provides a "zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." <u>United States v. Adlman</u>, 134 F.3d 1194, 1196 (2d Cir. 1998) ("Adlman II") (quoting <u>Hickman</u>, 329 U.S. at 511).

To avail itself of work product protection, a party must demonstrate that the material at issue is "(1) a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." <u>Gucci Am., Inc. v. Guess?, Inc.,</u> 271 F.R.D. 58, 73-74 (S.D.N.Y. 2010) (quoting <u>In re Omeprazole Patent Litigation</u>, No. M-21-81 (BSJ), 2005 WL 818821, at *8 (S.D.N.Y. Feb. 18, 2005)). However, the work product rule is not absolute. <u>United States v. Nobles</u>, 422 U.S. 225, 239 (1975); <u>In re Initial Pub. Offering Sec. Litig.,</u> 249 F.R.D. 457, 459 (S.D.N.Y. 2008). Thus, even if a document qualifies as work product within the

meaning of Rule 26(b)(3), a party may obtain its disclosure by showing that it has a "substantial need" for the document and cannot obtain the "substantial equivalent" through other means without "undue hardship." Fed. R. Civ. P. 26(b)(3)(A)(ii). Rule 26 further distinguishes between "factual" work product – such as materials obtained through independent factual investigation – which requires a showing of "substantial need," and "opinion" work product – materials containing an attorney's mental impressions, conclusions, opinions, or legal theories – which receives special protection and is not discoverable absent a "highly persuasive" showing of need. Adlman II, 134 F.3d at 1199, 1204 (citations omitted).

There is, of course, no suggestion that any of the documents in the Plaintiffs' binders were prepared by them in anticipation of litigation. Quite to the contrary, it appears that the binders consist of various documents prepared by the Defendants and others before any lawsuit reasonably could have been contemplated. Furthermore, even if certain of those documents could be considered attorney work product, Bayrock certainly has established a substantial need for them to be identified so that the Court can consider (potentially with the Defendants' involvement) whether they confirm that the Plaintiffs' FAC is improperly based on the Bernstein Information.

The Plaintiffs, of course, further contend that they cannot be compelled to explain which allegations of the FAC are based on particular documents that they have produced because that would require them to reveal opinion work product. The principal authority they cite for this proposition is Sporck v. Piel, 759 F.2d 312 (3d Cir. 1985).

18

(See June 12 Letter at 3). In that landmark case, the Third Circuit considered whether a deposition question requiring the defendant to identify the documents he had been shown by his counsel in preparation for the deposition would invade the protection for opinion work product. A divided panel held that it would. As the court explained, by identifying the subset of the entire document production that he had been asked to review, the defendant would have revealed his counsel's "mental impressions and legal opinions as to how the evidence in the documents relates to the issues and defenses in the litigation." Id. at 315. Since all of the documents had been made available to opposing counsel, there obviously was no substantial – much less highly persuasive – need for the documents to be identified. Indeed, the only purpose for such a request would be to "disclose, indirectly, the mental impressions of the attorney who selected the documents to review with the witness." See F.D.I.C. v. Wachovia Ins. Services, Inc., 241 F.R.D. 104, 107 (D. Conn. 2007) (quoting Nutramax Lab., Inc. v. Twin Lab. Inc., 183 F.R.D. 458 (D. Md. 1998)).

The Second Circuit has "repeatedly characterized" Sporck as a "'narrow exception' to the general rule that third-party documents in the possession of an attorney do not merit work product protection." In re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002, 318 F.3d 379, 386 (2d Cir. 2003) (quoting Gould, Inc. v. Mitsui Mining & Smelting Co., 825 F.2d 676, 680 (2d Cir. 1987)). The Second Circuit further has emphasized that Sporck does not create an absolute bar to the production of documents potentially reflecting an attorney's analysis of a case. Thus, notwithstanding

Sporck, in an appropriate case the "equities" might favor production of documents "culled by [counsel] [that] were not otherwise available to [the party seeking them]," or where, as here, a substantial need for the production of the documents exists. In re Grand Jury Subpoenas dated Oct. 22, 1991 and Nov. 1, 1991, 959 F.2d 1158, 1167 (2d Cir. 1992) (quoting Gould, 825 F.2d at 680); see Wachovia Ins. Services, 241 F.R.D. at 106-108.

In this case, the Court has been presented with unrefuted evidence that the Plaintiffs' counsel improperly obtained sealed documents and, in all likelihood, other confidential materials, including copies of Bayrock's attorney-client communications, prior to commencing suit. It further appears beyond dispute that the Plaintiffs have used at least some of those materials to craft the FAC. Indeed, notwithstanding their present position that none of the documents in the binders is sourced to Bernstein, their earlier color coded submission shows that there are numerous paragraphs of the FAC which can be sourced to Bernstein and other unidentified sources. As Judge Buchwald recognized more than four years ago, without an indication of what those other sources are, it is impossible to conduct an inquiry to determine whether the FAC is so tainted by Mr. Oberlander's decision to forage through the Bernstein Information as to preclude the further prosecution of this suit.

In sum, despite four years of effort, the Court remains unable to determine the extent to which the Plaintiffs' allegations are improperly based on purloined information. In these circumstances, the equities suggest that the only viable course of

action is to strike from the FAC the factual assertions in Exhibit A whose provenance has

been challenged by Bayrock. I recognize that this may leave significant factual gaps in

the FAC. However, had there been compliance with my Orders, the effect of this remedy

might have been more limited, as I would have been able to consider, on a paragraph by

paragraph basis, whether Bayrock's challenges were warranted. The fact that the Court is

unable to do so is a direct consequence of the Plaintiffs' refusal to comply with the

Orders. Ultimately, at this late stage, there does not appear to be any other means to

ensure that the Plaintiffs are not impermissibly relying on sealed and other confidential

information that Mr. Oberlander improperly obtained from Bernstein.

III.    Conclusion

      For the foregoing reasons I recommend that Your Honor strike from the

FAC each paragraph to which Bayrock has objected on privilege, work product, or

confidentiality grounds.[8]

IV.    Notice of Procedure for Filing Objections to this Report and Recommendation

      The parties shall have fourteen (14) days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

---

[8]    These include paragraphs 12-13, 19-20, 27, 29, 61, 66, 84-85, 87-90, 92, 102-103, 108-118, 120, 122, 125, 127, 130-33, 135-38, 140-46, 167, 201, 220, 224-25, 228, 230-39, 243-47, 252-91, 293-96, 298, 301-08, 310-11, 316, 327, 330, 339, 343, 347, 349, 350-51, 353-54, 358, 361, 365, 373, 375-76, 378-79, 382, 384-90, 393, 396-97, 404-25, 427-28, 430, 432-37, 442-47, 452-53, 456-57, 460-63, 465-76, 483-84, 486-88, 490, 494-99, 501-03, 505-34, 545-56, 567-71, 573-74, 578-90, 593, 597-601, 603-07, 612-22, 624-26, 629, 631-33, 636-39, 641-42, 644, 647-63, 665-66, 669-76, 680-81, 687-89, 692-99, 702-704, 706-13, 729-33, 735, 740, 743-58, and 761-66, as well as footnotes 2, 4, 9-10, 13-16, 18, 23, 25, 28, 30-31, 36, 38-40, 42-44, 45, and Exhibits 2 and 3.

to the chambers of the Honorable Lorna G. Schofield and to my chambers at the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Schofield. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

SO ORDERED.

Dated:     New York, New York
           January 14, 2015

FRANK MAAS
United States Magistrate Judge

Copies to All Counsel via ECF