IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JODY KRISS ET AL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-CR-3959 (LGS/FAM) |
| | ) | |
| BAYROCK GROUP LLC ET AL, | ) | |
| | ) | **ORAL ARGUMENT** |
| Defendants | ) | **REQUESTED** |

REPLY TO THE BAYROCK DEFENDANTS'
OBJECTION TO MAGISTRATE'S REPORT AND RECOMMEDATION
TO STRIKE CERTAIN PARAGRAPHS FROM
THE FIRST AMENDED COMPLAINT

Plaintiffs Jody Kriss, Michael Ejekam, and, through them, the hundreds of banks, customers, and other creditor victims of the Bayrock defendants' ("Bayrock's") criminal frauds, whom they represent as derivative plaintiffs, reply to the Bayrock defendants' objections to the Magistrate's report and recommendation (the "Recommendation").

*****

Bayrock's Objections should not be considered and the Court should further respond to this objection, in concert with the prior pending motion, ECF 69, for relief from the Magistrate's May 29, 2014 order, ECF 68, by itself conducting further process, including evidentiary hearing, as set forth below, or by recalling the reference and reissuing a reference to a new Magistrate to conduct the same. The arguments made in ECF 69, as well as in ECF 107, plaintiffs' objections to the Recommendation, are incorporated by reference herein, along with all of the underlying motion papers.

Without notice or hearing, Bayrock asks your honor to civilly convict Jody Kriss of bribery, ruining his reputation solely on the suborned, perjured affidavit of their ex-employee Joshua Bernstein, *which they paid for, though they knew it was false,* at the same time they paid for his silence about millions of dollars of bank fraud he admitted participating in at the firm during the tenure of defendant Felix Sater, who admitted at his sentencing that he had run the firm by a pattern of that same predicate crime.[1] Bayrock filed no answer and counterclaim. It filed no plenary action, and no arbitration. It gave no discovery. It has no lawful management and no capacity to appear.[2] It has not joined issue. Yet it asks your honor to summarily issue a finding at clear-and-convincing level that Kriss committed a felony.[3]

1. **Bayrock would have your honor continue the Magistrate's structural due process violations**. Your honor knows no such process can lawfully ensue against Kriss, who has had no notice of the charge, or opportunity to defend against it. But due process ceased to exist here: Bernstein's affidavit is unusable to prove his state of mind;[4] we've impeached it by showing it is perjured;[5] and Kriss's affidavit denies intent,[6] creating a factual dispute entitling us to an evidentiary hearing to cross-examine him.[7] To continue:

2. **There was no violation of any order**. This was triggered by the Magistrate's finding that we violated his May 29, 2014 order. But we didn't. We had to identify but one public, untainted source, a*nd we did*:[8]

> (1) For allegations sourced to public records, or where claim of privilege or confidentiality was otherwise frivolous, we set the provenance in charts we gave the Magistrate and Bayrock:
> → Allegations sourced to information in county clerk offices, public libraries, and so on.
> → Allegations sourced entirely to the Internal Revenue Code
> → Allegations of Sater's frauds on Probation Office which even Sater doesn't object to
> → Allegations which say, simply "Bayrock committed a $250M tax fraud."[9]

---

[1] *U.S. v. Sater*, EDNY Docket No. 98-cr-1101, docket entry 202, pp.17-18.
[2] See Nov. 19, 2013 Aff. of Jody Kriss, submitted below in opposition to Bayrock's motion to strike.
[3] Bayrock contends, on Aff. of Joshua Bernstein ¶11, that Kriss was a knowing participant.
[4] *Conrad v. Delta Airlines*, 494 F.2d 914 (CA7 1974); *Slavin v. Curry*, 574 F.2d 1256, (CA5 1978).
[5] Oberlander Aff, 11/21/13, Ex. H, Bates pp.113 *et seq., passim*; Kriss Aff of November 19, 2013, ¶53.
[6] *Id.*
[7] See, e.g., *Conrad, supra*; *Slavin, supra*.
[8] I afforded plaintiffs…opportunity to identify specific **public sources**…for certain allegations… The Court simply required [them] to identify…**one untainted source** for [the] allegations…(ECF 97, *passim*).
[9] 12, 19, 20, 29, 66, 85, 88, 102, 103, 112, 113, 114, 115, 116, 125, 167, 362, 363, 364, 365, 366, 372, 373, 374, 375, 376, 377, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401,

(2) For allegations sourced to documents on the public record in Delaware for years, many put there by Bayrock itself, for which claim of privilege and confidentiality was in bad faith, we put every filing there in a labeled, tabbed binder with proof of filing dates, linked each allegation to the documents in the binder, and gave copies to the Magistrate and to Bayrock.

(3) Though it's clear that (1) and (2) was all he required, we voluntarily responded to all of the other allegations, identifying *every* source, for nearly *every* allegation[10], in a 6,000 page production of *every document* used to write them, in 8 additional category binders with the same level of specificity as would be appropriate in response to a contention interrogatory.

As we asked guidance on privilege and work product, we sent these binders to the Magistrate only, awaiting word if he would bother with them, and if so how to resolve these issues.[11]

All this has briefed in objection, and we use it now to explain our claim of lack of due process:

Bernstein learned that Oberlander was representing Kriss in a suit against Bayrock in state court in Delaware, which raised claims similar to those asserted in this action…Bernstein then informed Kriss that he had the backup hard drive and other Bayrock materials.

The Magistrate wrote that when he issued the 2014 Order. He *knew* that the filings in Delaware predated Bernstein, *knew* that the claims in Delaware were similar to the claims here, and *knew* that our affidavit to the submission in which we swore that not one page came from Bernstein was true as far as parts (1) and (2). Thus he *knew* the 100 allegations in the complaint we sourced to Delaware were very likely to be truly from Delaware and thus that we very likely had complied with all that he required.

Then why did he recommend sanctions that require a finding of bad faith (though he never made any such finding, let alone with highly detailed, explicit findings), for not giving any source and defying his order(s), recommending to strike allegations he knew in large part to be either Bernstein-free or facially ludicrous as to claims of privilege or confidentiality?

The Magistrate refused to acknowledge, as well, that for Bayrock to leave unchallenged – let alone itself have filed in the first place – the Delaware documents they now say are privileged must mean that the scope of their waiver they caused by not objecting in Delaware vitiates any objections to the FAC.

---

402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 431, 432, 433, 434, 435, 436, 437, 439, 442, 443, 444, 446, 447, 452, 456, 494, 501, 509, 510, 512, 513, 514, 515, 516, 518,

[10] We were unable to find in time documents corresponding to about 23 allegations, but most of those we conceded were based at least in part on information from Bernstein and in fact self-document this because the quote the information with source.

[11] Besides our uncontested affidavit that none of these came from Bernstein[11], every one is in a digital lock box held by a third party showing it was not modified since May 2009, six months before Bernstein first contacted Oberlander, which the Magistrate would have known had he held a sanctions hearing.

We continue. It's a matter of record that Mr. Oberlander used "Bernstein documents" in Bernstein's New York Supreme Court case against Bayrock. (See Oberlander declaration of 11/21/13, Ex. H, Bates pp.113 *et seq.*) What would have been added to the record at the hearing denied, is that Bayrock then sought a protective order from the presiding judge who peremptorily rejected the application. So, as far as New York is concerned, Kriss by his common-interest agreement with Bernstein, is free to use those exhibits and anything derived therefrom. But now your honor has a sanctions recommendation because of legal advice that a New York court had no problem with. Mr. Oberlander had told Mr. Bernstein that the documents were, in sum, fair game. Yet Magistrate Maas apparently disapproves of the fact that Mr. Oberlander gave correct legal advice about the use and admissibility of the documents. Moreover, the deposition transcripts in that case show multiple, complete waivers of privilege by Bayrock.

Finally, the record reflects that Bayrock itself broadcast the initiating complaint,[12] which is virtually identical to the FAC, to some 15 unrelated persons, not all of them attorneys, yet the Magisrate refused to consider that to have been a waiver of privilege and confidentiality.

In sum: The Magistrate (1) had no basis to charge us with violating, let alone defying, his order to, but did; (2) refused to consider that Bayrock had waived privilege and confidentiality many times, and (3) gave no opportunity of a hearing to show what we had done was entirely lawful. Now consider:

3. <u>There is no rule that even illegally and unethically obtained evidence is precluded</u>. Observe:

> [D]isciplinary rules [are] not statutes. The Second Circuit …has ruled that a court is not obligated to exclude evidence even if it finds that counsel obtained the evidence by violating ethical rules…New York…courts will admit evidence procured by unethical or unlawful means…In [ ] the court admitted testimony allegedly obtained in violation of a DR, finding:
> [E]ven if the matters to which the investigator testified were unethically obtained, they nevertheless would be admissible at trial. New York follows the common law rule that the admissibility of evidence is not affected by the means through which it is obtained…absent… constitutional, statutory, or decisional authority mandating suppression of otherwise valid evidence, such evidence will be admissible even if procured by unethical or unlawful means.

Yet the Magistrate said that authority to strike allegations based on "improperly obtained" evidence comes from authority to strike when supporting evidence is inadmissible, as privileged material would be (ECF 97 at 14), and this is wrong, since "improperly obtained" evidence is admissible. Here's the key:

---

[12] See exhibit "C" to Oberlander Decl.; Bates pp.150-151.

4

The Magistrate *did* find, albeit without support, that we violated his production order. But he *did not* find that we had "improperly" obtained "privileged and confidential" information [Emph. add.]:

> [T]he Court reserves decision as to…impropriety of the Plaintiffs' acquisition of the documents…the Court cannot determine the extent of their improper reliance on purloined documents, if any. (ECF 68 at 12-13).
>
> [T]he Court has been presented with unrefuted evidence that the Plaintiffs' counsel improperly obtained sealed documents and, **in all likelihood**, other confidential materials, including copies of Bayrock's attorney-client communications, (Jan. 14, 2015 Order ECF 97 at 20).

First, "In all likelihood," cannot support a finding of bad faith conduct, as it is mere speculation.

Here's what happened: To be sanctioned for improperly obtaining and using privileged and confidential documents, their privileged and confidential nature must be established by clear and convincing evidence as that is an element of the quasi-crime, just as conviction for grand larceny requires proof beyond a reasonable doubt that the goods were in fact worth $10,000, as that's an element of the crime. But no one wants their privileged and confidential nature adjudicated; waivers control, and if not, the Magistrate will have to use crime-fraud, ruling that the bank fraud committed by Sater at Bayrock when he was a cooperator, known by Probation and the government, were crimes, a most inconvenient fact.[13]

But, if we're found to have "defied" the production order, the hope is that the "dirt" that is thrown around but that isn't *finding*, such as the repeated meme that documents were privileged, or we "didn't observe" Judge Buchwald's "suggestion," become sanctionable *de facto* if your honor will use them to justify an outrageous remedy like striking. An attempt to punish for things you don't want to adjudicate by issuing an intentionally defective order, finding it defied without adequate basis, then bootstrapping into the remedy determination all the allegations of privilege, improper access, and so on without proper hearings, findings, and so on, like some kind of sentencing hearing accepting hearsay and incompetent evidence of other, uncharged crimes.

---

[13] Bayrock argues that we're not entitled to have the "privileged and confidential" nature established before we're sanctioned for access to or use of "privileged and confidential" documents, daring us to find a case that says we are. In *Surgical Design v. Correa*, 21 A.D.3d 409 (2005), the 2nd Department held that even with respect to stolen letters, those that were crime fraud would not be precluded because they were not privileged.

4. **The remainder of Bayrock's objections also cannot pass constitutional muster** so must be rejected.

(1) **Inadequate or no notice**. Imposition of sanctions requires notice of the potential sanction to be imposed, which must include a statement of basis (Rule 11, §1927, inherent powers). None was given here. *Mantell v.Chassman*, 11-4799 (L) (CA2 2013).

(2) **No findings of bad faith**. Imposition of sanctions of this severity requires highly specified, clear and convincing findings of bad faith, which means that what was done was devoid of merit and solely for improper purpose. *Revson v. Cinque & Cinque*, 221 F.3d 71 (CA2 2000).

(3) **No sanctions hearing** at which we could have introduced evidence of lack of bad faith, such as our seeking ethics advice, seeking court rulings, and so on.

(4) **The Magistrate and Bayrock misstated the record**. Bayrock says the Magistrate wrote that Mr. Oberlander wrongfully "combed through" their files. The Magistrate never said wrongfully. He never addressed our 80 pages of argument on our right to do as we did. In fact as we objected, no one has ever said what we did wrong, only that we acted "improperly." Simply to list cases as Bayrock did where, for example, mere employees broke into offices to steal documents, or a client stole documents from opposing counsel's papers, then say, "You see! You have to sanction Plaintiffs for acting just as egregiously!" without explaining what it is that we did wrong when exercising Mr. Kriss's plenary authority to take the documents.

(5) **Imposition of the proposed remedies would violate the 5th and 8th Amendments, Article III, and the rule of parsimony**. Sanctions remedies are supposed to be the minimum severity necessary to "do the job." But more significant: All non-trivial monetary sanctions payable to court are by definition penal and require full criminal due process. Similarly, any sanctions payable to opposing parties are limited to the actual cost incurred or they, too, are penal. We believe that to cause the forfeiture de facto or de jure of claims worth miions of dollars to innocent third parties represented derivatively by plaintiff Kriss for what at best is the violation of a production order that is easily remedied is an unconstitutional violation of Fifth Amendment due process, Eight Amendment punishment, and violates inherent powers whether sourced generally to Article III or to "necessary and proper."

Besides those objections, the court simply lacks the authority to override FRCP 15. The rule provides for free and liberal amendment and cannot be overridden as a sanction because Congress has fully occupied the space in derogation of any federal common law of sanctions.

Finally, as to taint and disqualification, besides not justified on any evidence or findings here, the problem is, we already knew almost everything that is in the FAC from our work in the New York State Bernstein case, which was clearly entirely legal, as well as in Delaware, and of course again we have the lockbox to prove the time we acquired this knowledge is before Bernstein for all but a couple of dozen allegations, so there can be no serious taint.

WHEREFORE, we ask the objections be denied, or at least and especially as to Kriss that immediate expedited discovery be ordered so that we may establish the impeachment of Bernstein and the subornation and perjury discussed above. We otherwise ratify all requests made before in our objection.

New York, New York

Montauk, New York

March 4, 2015

/s/ Frederick M. Oberlander

/s/ Richard E. Lerner