BEYS LISTON MOBARGHA & BERLAND LLP

Michael P. Beys
646.755.3605 (Direct)
mbeys@beysstein.com

March 13, 2015

**By ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

   Re: *Kriss et al. v. Bayrock Group LLC et al.*, 10 Civ. 03959 (LGS)
      <u>Judge Maas's Report and Recommendation, dated January 14, 2015</u>

Dear Judge Schofield:

  We are co-counsel to defendant Felix Sater in the above-captioned action and write with respect to Magistrate Judge Maas's Report and Recommendation to Your Honor, dated January 14, 2015 (ECF No. 97) (the "Report"). In the Report, Judge Maas finds that plaintiffs and their counsel have failed to comply with his May 29, 2014 Order (ECF No. 68) (the "May 29 Order") and recommends that Your Honor strike from their First Amended Verified Complaint ("FAC") those paragraphs to which the Bayrock defendants (collectively, "Bayrock") have objected "on privilege, work product, or confidentiality grounds." (<u>See</u> May 29 Order at 21). Although Mr. Sater agrees generally with Judge Maas that sanctions are appropriate, he joins in Bayrock's position that outright dismissal of the FAC is the appropriate sanction, for the additional reasons set forth below.

  <u>First</u>, in their Objection to the Report, dated February 20, 2015 (ECF No. 107) (the "February 20 Objection"), plaintiffs' counsel repeatedly attack Judge Maas and claim he acted improperly. Their contempt of court generally, and toward Judge Maas specifically, ought to be a separate basis for outright dismissal of the FAC. In their February 20 Objection, for example, they write:

> There's nothing comical about a federal judge, even if only a magistrate, adjudicating by insult, not by reason. Let's be clear here; respect for the court does not turn its officers into whipping boys, mere punching bags for the court's displeasure, deserved or not.

(February 20 Objection at 20).

  Despite their stated reference to 'respect for the court," plaintiffs' counsel have

shown none to Judge Maas. To the contrary, throughout their February 20 Objection and other submissions, counsel insinuate, and at times state outright, that *Judge Maas* has acted improperly – a tactic they typically employ with judges that rule against them. They write, "as vehemently as [they] can," that Judge Maas's actions were "vastly inappropriate;" that he "bl[ew] this out of proportion;" and that his imposition of sanctions "is *per se* abuse of discretion." (February 20 Objection at 10). They refer to the May 29 Order and the Report as "a constant flip-flop between language that makes no sense." (Id. at 11). They flippantly describe Judge Maas's reasoning in these writings as follows:

> So the Magistrate says, well, I never ordered any such thing. OK, I said "the source" which plaintiffs took to mean "all sources," but I can't own that, so let me see if I can get away with saying, no, I never wanted all the sources, I only wanted one, and only if it was untainted.

(Id. at 18). They go on to state that,

> When a magistrate repeatedly issues what is supposedly the same order in constantly decretal form, and his statements of what he wanted are inconsistent, one after the other – in other words, where compliance is a moving target only he can see – we've moved from mere error to structural, a violation of due process.
>
> Due process violations abound. Refusing to clarify or rule on ethics issues and then play "gotcha!" by eight months later saying we guessed wrong and moreover were engaged in fraud on the court ("feigning compliance"), never mind that our ethics counsel himself pleaded for telephonic or in person conference, not just us, is just the start.

(Id. at 21).

Plaintiffs' repeated attacks on Judge Maas, typical throughout the course of five years of litigation, are completely inappropriate, should not be allowed to continue, and constitute a separate basis for outright dismissal of plaintiffs' FAC.

Second, plaintiffs' pattern of attacking judges that disagree with them, and their brazen contempt of court, is nothing new. It is standard operating procedure for plaintiffs' counsel.

In 2010, in related proceedings in the Eastern District of New York, Judge Glasser conducted hearings and made findings that first triggered counsel's manic attacks on him. The judge described counsel's underlying conduct in this matter as "despicable," finding that "something bad was done, something very bad." (Transcript ("Tr.") of 7/20/10 Hearing in 98-CR-1101 ("7/20/10 Hearing"), at 19:12-20:23). He referred to their endless requests for adjournments and clarifications as "nothing more than stalling," and their other nonsensical arguments as "specious." (Tr. of 6/11/10 Hearing

Page 3 of 8

in 98-CR-1101 ("6/11/10 Hearing"), at 8:19-25). Of the sealed documents at issue in this case, Judge Glasser said that, "[t[here's no doubt Mr. Oberlander was aware [they] were sealed." He also found that that they were stolen, namely that Joshua Bernstein ("Bernstein") had "wrongfully taken" them and had "no legal right to those documents." (Tr. of 7/20/10 Hearing, at 19:9-18). Of counsel's public filing of these sealed, stolen documents, Judge Glasser found unequivocally that counsel "knowingly and intentionally flouted a court order." (March 23, 2011 Order of Judge Glasser in 98-CR-1101).

Predictably, in response to these damning findings by Judge Glasser, and his injunction against dissemination of Mr. Sater's Pre-Sentence Report ("PSR"), Messrs. Oberlander and Lerner unleashed all form and manner of insult and abuse on him. They referred to the Court as a "star chamber" that issued "a patently unconstitutional prior restraint TRO,"and "covertly maintained" a "super sealed" case. (Declaration of Frederick M. Oberlander, dated July 16, 2010, ¶¶ 1-3). They accused the Court of "unconstitutionally concealing the docket and surreptitiously dispensing whatever justice, or lack thereof, as the court sees fit." *Id.*, ¶¶ 1-3. They concluded by asking Judge Glasser, in language borrowed almost verbatim from the Army-McCarthy hearings, "*You have done enough. Have you no sense of decency sir, at long last? Have you no sense of decency?*" *Id.*, ¶ 20 (emphasis in original).

In effect, they had initiated what would turn out to be an extended pattern of insulting judges who ruled against them. For example, when Judge Buchwald ordered the initial complaint in this case to be sealed and sanitized, Oberlander brazenly claimed the orders were "unsupportable in law and facially unconstitutional." (Letter of F. Oberlander to Judge Buchwald, dated December 13, 2010, at 4, ¶ 5). They have since insulted not only federal district judges, but even the judges of the Court of Appeals, which has warned and rebuked plaintiffs' counsel several times since 2011, enjoined them from disseminating the documents at issue here, and even ordered the appointment of a separate judge, the Honorable Brian M. Cogan in the Eastern District of New York, to oversee and monitor their conduct and compliance with court orders.

Indeed, in a 2012 submission, Messrs. Oberlander and Lerner wrote that the Second Circuit's orders evidence "lawlessness" and "sedition" by the Court; that the Circuit Court has "falsifi[ed] judicial records;" that Judge Cogan's orders were "illegal and unlawful;" that the judge "maint[ains] an inaccurate docket" and should recuse himself "from further involvement" in the case; and that the Eastern District of New York has taken "unlawful and unethical measures to cover up … illegal sentencing schemes." (Memorandum of Law in Support of Motion to Quash, dated February 17, 2012, at 3-4, 8).

One week earlier – in the same court, before a different judge – they accused Judge Glasser of "willful[ly] … defrauding" their clients, "in active concert" with the government:

Regardless of what you say you are doing, you are contemplating

>continuing a prior restraint against my client with the specific intent of precluding him from informing the public of this court's willful failure, in active concert with the Department of Justice, to notify crime victims of their right to restitution and the concomitant imposition of a sentence illegal by its failure to comply with the MVRA. … [S]uch acts constitute the willful deprivation of (and indeed the defrauding of) Mr. Doe's crime victims of their property rights, giving rise to claims under both the due process and takings provisions of the Fifth Amendment …

(Letter of R. Lerner to Judge Glasser, dated February 10, 2012, at 1-2). Arguably, Judge Maas is in very good company.

Furthermore, Oberlander and Lerner's attacks are not just limited to the federal judges of this Circuit. They have attacked federal prosecutors who oppose them as well. For instance, in the related case of *Kriss et al. v. Bayrock Group LLC et al., 13 Civ. 03905 (LGS) ("Kriss II")*, which they initially tried to bring in New York State court until Your Honor ordered its removal to federal court, they named as a defendant Assistant U.S. Attorney Todd Kaminsky, the very prosecutor that had handled the appellate litigation before the Second Circuit and proceedings before Judge Glasser.

More recently, they attacked U.S. Attorney Loretta Lynch herself, attempting to derail her confirmation as U.S. Attorney General by publishing articles in online media about this case on the day her confirmation hearings began. *See, e.g., Questions for Loretta Lynch on secret dockets, by Frederick M. Oberlander and Richard E. Lerner*, dated *January 28, 2015, in TheHill.com*. In the article, counsel write that, "As U.S. Attorney in the Eastern District of New York, Lynch perpetuated the concealment of criminal cases to protect fraudsters who promised cooperation against other criminals." They cite this case as the singular example of such concealment, perpetuate numerous false narratives about the case, and complain that several former Assistants in Ms. Lynch's Office have gone on to careers at the U.S. Department of Justice, all purportedly as a means to question Ms. Lynch's qualifications to be the next Attorney General.[1]

In sum, Oberlander and Lerner's longstanding practice of attacking federal judges who rule against them, as well as federal prosecutors who oppose them, is improper, and the Court should consider dismissing the FAC as a sanction on this basis as well.

<u>Third</u>, plaintiffs' counsel have already been given – and ignored – numerous warnings about their improper conduct. At the very outset of this case, Judge Buchwald first chided Mr. Oberlander for his illegal disclosure of the sealed, stolen documents at issue here, prompting her to draw his "attention to an article that recently appeared in United States Law Week, titled *Model Rule 1.15: the Elegant Solution to the*

---

[1] As Your Honor is no doubt aware, on February 27, 2012 Judge Cogan referred Oberlander and

*Problem of Purloined Documents"* – an obvious reference to the documents that Bernstein stole from Bayrock's hard drive and gave to Mr. Oberlander. *(*Letter from Judge Buchwald to F. Oberlander, dated December 16, 2010, fn. 1).

Months later, on a similar issue as the one presented here, Judge Cogan warned plaintiffs' counsel that, "extrapolation from sealed documents would not be permitted because it could easily be combined with and thereby tainted by [counsel's] knowledge of non-public sealed information." (May 13, 2011 Order of Judge Cogan in 98-CR-1101, at 2). Expressing similar frustration to that shown by Judge Maas in the Report, Judge Cogan went on to note that, "[i]t seems obvious that [counsel] is seeking to fatally undermine the purpose of the [Second Circuit's] injunctions by publicizing information that would render them ineffective." (Id. at 4).

Another month later, the Court of Appeals "warn[ed] [counsel] that the Court's patience has been exhausted by [their] filing of six separate notices of appeal regarding the same principle legal dispute … and that any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions … and monetary penalties." (Summary Order of the Court of Appeals, dated June 29, 2011, at 3).

Lastly, in proceedings before Judge Glasser, the judge threatened counsel with sanctions, for flooding the court with a "vexatious" and "oppressive" 742-page "documentary stew" that had "no relevance to the very discrete issue pending before [it]." (Order of Judge Glasser, dated November 11, 2012, in 12-MC-150, at 3, 4).[2]

Despite so many warnings by the courts – and even a pending criminal contempt investigation initiated by Judge Cogan, see *supra*, fn 1 – plaintiffs' counsel have continued their improper, contemptuous conduct, unabated and undeterred. Accordingly, the Court should consider these many unheeded warnings in deciding whether to dismiss the FAC as a sanction.

Fourth, plaintiffs' improper litigation tactics in these various matters involving Mr. Sater have all been part of a scheme to extort the defendants in this case, yet another factor the Court should consider in determining the appropriate sanction. Among the

---

[2]   In response, counsel moved to recuse Judge Glasser from the case, asserting that the Judge was part of a conspiracy, along with the U.S. government and Mr. Sater's counsel, to conceal Mr. Sater's conviction:

> [Y]our honor presides over this and related matters in violation of 28 U.S.C. § 455(a) and (b)(1), having failed to disqualify yourself despite Congressional mandate you do so because of, respectively, your appearance of bias and lack of impartiality, palpably obvious to, let alone reasonably questioned by, an objective, informed observer … **that observer cannot rationally conclude but that your honor appears to be in criminal conspiracy with *at least* [ ] Sater's lawyers, to deprive us and our clients of our rights**.

(Omnibus Motion dated November 19, 2012, at 2) (emphasis in original).

nineteen defendants named in this case, their main target all along have been the ones with "deep pockets," including four law firms, namely, Nixon Peabody LLP, Roberts & Holland LLP, Duval & Stachenfeld LLP, and Ackerman Senterfitt LLP, which had all done work for Bayrock, and even an insurance carrier, National Union Fire Insurance Co. of Pittsburg, PA. Their scheme all along has been to threaten dissemination of Mr. Sater's sealed (and stolen) documents as a means to extract a huge, multi-million dollar settlement from these defendants.

Remarkably, plaintiffs' counsel put their extortion scheme in writing. In one letter, they made a written "demand for the payment of $105,000,000," or later, "one billion dimes," but added that they would "favorably consider settling the entirety of all claims known and unknown for their actual damages of $35,000,000… the least amount [they] would be willing to accept for a quick settlement that avoids the dissemination" of Mr. Sater's sealed documents. (Letter of F. Oberlander to B. Herman, dated October 18, 2010 letter to Herman, at 1, 6 & fn 3) (emphasis added).

In another letter, counsel explicitly told Mr. Sater to "get out of the way" so they could reach a settlement with the other defendants; otherwise there would be "worldwide dissemination of this Complaint and every document attached thereto." As counsel wrote in November 2010:

> If you wish Sater's activities lawfully kept quiet … stand still, stop filing motions and get out of the way so Plaintiffs can try to resolve the case before everything … goes public. The only way to prevent worldwide notoriety will be … a global settlement… I can with confidence predict from the settlement discussions I've had that all the defendants will be delighted to keep this quiet … If this case is not settled quickly, it will surely go viral. If you obstruct the settlement instead of helping get there, everything will go public with clockwork inevitability … No power on earth will much longer prevent as much lawful and legal worldwide dissemination of this Complaint and every document attached thereto or referenced therein as the public and press doing the dissemination think its value justifies … Only a sealed confidential settlement agreement Plaintiffs find acceptable, executed very soon, can stop that… Always remember, if I can't settle this in time now, you will have brought this about by your decisions, taking the tactical nuclear device I filed in SDNY and enhancing it beyond what even I could have, magnifying its yield to that of a strategic thermonuclear weapon by dragging in EDNY and that disaster… I see legal ways out for your client which are in my clients' interests to facilitate. You won't see them. You need my help. Take it. Fast. Or Judge Buchwald will be presiding over World War III with coverage likely on the front page of the New York Law Journal.

(Letter of F. Oberlander to B. Herman, dated November 9, 2010, at 1-2).

Respectfully, the Court should not ignore what this case is really about – a

scheme to extort the defendants in this case by using Mr. Sater's sealed (and stolen) documents. To the contrary, it should consider plaintiffs' underlying, improper motives in deciding whether or not to dismiss the FAC as a sanction.

<u>Fifth</u>, as a final basis to consider outright dismissal of the FAC as a sanction, Messrs. Oberlander and Lerner may not even represent the named plaintiffs anymore. In fact, they may well be misleading the Court about the status of their representation of plaintiffs.

In the February 20 Objection, they claim to represent "Plaintiffs Jody Kriss, Michael Ejekam, and, through them, the hundreds of banks, customers, and other creditor victims of [Bayrock's] criminal frauds, [] as derivative plaintiffs." (February 20 Objection at 1). But this is obviously untrue. Other than plaintiffs Kriss and Ejekam, there is no indication or proof – and never has been at any point, on any docket sheet in any of the related cases described here, or elsewhere – that plaintiffs' counsel represent a single bank, Bayrock customer or other so-called "creditor victim" of Bayrock. They have simply made it up and have stated it enough times, before enough courts, that they may have started to believe it. But it is simply not true.

As for plaintiffs Kriss and Ejekam, there is good reason to believe that they wish to withdraw from this case and other related cases, and to abandon Oberlander and Lerner's disastrous extortion scheme. For instance, in the *Kriss II* "Class Action Complaint," filed under seal on April 23, 2014, counsel admit that, "Individual plaintiffs Kriss and Ejekam make no claims pursuant to their forthcoming FRCP 41 voluntary dismissals." (Class Action Complaint, filed under seal April 23, 2014, ECF No. 51, 13-CV-3905).

This statement is consistent with other writings by plantiffs' counsel indicating that Kriss and Ejekam no longer wish to pursue the case, at least not with Oberlander and Lerner as their counsel. When asked by our co-counsel whether they represent the plaintiffs, they stated: (1) that they had "no authority to accept anything" on behalf of Ejekam (R. Lerner Email to R. Wolf, dated December 31, 2014 at 4:29 pm); (2) that they "[did] not now have any authority to accept any service for" Kriss (F. Oberlander Email to R. Wolf, dated January 13, 2015 at 11:36 pm); but (3) in their typical confusing fashion, they were unclear as to whether or not they still in fact represented plaintiffs (F. Oberlander Email to R. Wolf, dated January 13, 2015 at 11:09 pm).

<u>Conclusion</u>

In conclusion, the Court should consider dismissing plaintiffs' FAC as a sanction for many reasons. Their counsel have "vehemently" attacked Judge Maas and virtually every federal judge and prosecutor that has presided over, or been involved in, these related cases. They have made a mockery of the courts for the last five years, shown contempt and disrespect, and accused the courts of illegal activity and "sedition." They have ignored countless warnings about their improper behavior and litigation tactics – at the heart of which is a transparent scheme to extort millions of dollars from law firms

Page 8 of 8

and other defendants by threatening to publicize court-sealed documents which they knew to be stolen. And to make matters worse, they may not even represent the very plaintiffs on whose behalf they have supposedly brought this outrageous, 5-year-long extortion campaign.

It is hard to imagine what more plaintiffs' counsel could do to warrant dismissal of the FAC as a sanction.

Respectfully submitted,

/s/ Michael P. Beys

_____

Michael P. Beys
*Counsel for Defendant Felix Sater*

cc.   Robert S. Wolf, Esq. (via ECF)
      Frederic M. Oberlander, Esq. (via ECF)
      Richard E. Lerner, Esq. (via ECF)