F4egkric

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    JODY KRISS and MICHAEL "CHUDI"
3   EJEKAM, et al.,

4                  Plaintiffs,

5          v.                        10 CV 3959(LGS)(FM)

6   BAYROCK GROUP LLC, et al.,

7                  Defendants.
    ------------------------------x
8   JODY KRISS, et al.,

9                  Plaintiffs,

10         v.                        13 CV 3905(LGS)(FM)

11  BAYROCK GROUP LLC, et al.,

12                 Defendants.
    ------------------------------x
13                                   New York, N.Y.
                                     April 14, 2015
14                                   11:45 a.m.

15  Before:

16
                           HON. FRANK MAAS,
17
                                      Magistrate Judge
18
                             APPEARANCES
19

20  FREDERICK M. OBERLANDER
         Prior Attorneys for Plaintiffs Kriss and Ejekam
21           -and-
    RICHARD E. LERNER
22
    SIMON & PARTNERS, LLP
23       Attorney for Plaintiffs Kriss and Ejekam
    BRADLEY D. SIMON
24

25                                   (Continued)


                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

F4egkric

1                                  APPEARANCES

2

BEYS LISTON MOBARGHA & BERLAND, LLP
3       Attorneys for Defendants Felix Sater and Salvatore Lauria
MICHAEL P. BEYS
4  NADER MOBARGHA

5  SATTERLEE STEPHENS BURKE & BURKE, LLP
        Attorney for Defendants Bayrock Group LLC, Bayrock Spring
6       Street LLC, Bayrock Whitestone LLC, Bayrock Camelback LLC,
        and Bayrock Merrimac LLC
7  WALTER SAURACK

8  MOSES & SINGER
        Attorney for Defendant Felix Sater
9  ROBERT WOLF

10  ALSO PRESENT:  FELIX SATER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

F4egkric

1          (Case called)

2          MR. SIMON:  Good morning, your Honor.  Bradley Simon,

3     and I'm replacement counsel for Kriss and Ejekam.

4          MR. OBERLANDER:  Good morning, your Honor.  Frederick

5     Oberlander, prior counsel until somebody signs an order of

6     replacement.

7          MR. LERNER:  Of-counsel to Mr. Oberlander, I'm Richard

8     Lerner.

9          MR. SAURACK:  Walt Saurack on behalf of defendant

10    Bayrock.

11         MR. BEYS:  Michael Beys on behalf of defendant Felix

12    Sater, on behalf of defendant Sal Lauria; and as to Kriss II,

13    13 CV 3905, counsel for myself individually, for my partner

14    Nader Mobargha, who is also with me as counsel for all

15    defendants, and for our firm, which was, at the time of Kriss

16    II, named Beys Stein & Mobargha.

17         MR. WOLF:  Good morning, your Honor.  Robert Wolf

18    representing Felix Sater.  I'd like to indicate that my client

19    Mr. Sater is present in court sitting behind Mr. Beys.

20         THE COURT:  Let me start with the issue that was

21    raised in some of the letters which is focusing first on the

22    2010 action.  You indicated, Mr. Simon, that you're replacement

23    counsel.  Is that for all purposes in the 2010 action?  The

24    letter Mr. Oberlander sent had an ambiguity in it.

25         MR. SIMON:  For all purposes with respect to Mr. Kriss

F4egkric

1    and Mr. Ejekam.  Mr. Oberlander indicated he has some perhaps

2    derivative clients, so I'm not quite sure.

3              THE COURT:  Yes.  That's what I was trying to get to.

4              MR. SIMON:  Right.

5              THE COURT:  It seems to me you can't have -- let me

6    ask Mr. Oberlander.

7              MR. OBERLANDER:  To be honest, this is a gray area,

8    and I just wanted to protect everyone's interests.  I have

9    signed the substitution form ten days ago to substitute

10   Mr. Simon for myself consensually.  It didn't get filed I think

11   because of your order that came down that said don't file

12   anymore papers.  But in consultation with all the other lawyers

13   on this, there's a great body of law, most of it in the Second

14   Circuit, that goes back decades having to do with in the class

15   action area under 23 what's required to replace counsel.

16             THE COURT:  The 2010 case isn't the class action.

17             MR. OBERLANDER:  I understand that, but there is very

18   little law on what's required to replace counsel of a

19   derivative one.  All I wanted to do was make certain that the

20   Court approves my withdrawal and nobody winds up later in that

21   group of people, whatever you call the group that's

22   derivatively represented equitably in a derivative matter, I

23   don't want any of them to say you didn't get leave of Court to

24   withdraw it.  I just put it there so that I assumed that the

25   Court would be happy to issue an order that I'm substituted for

F4egkric

1    all purposes.  It was merely to protect them; that's all.

2              THE COURT:  We have talked about you individually, but

3    are you and Mr. Lerner a package in terms of that?

4              MR. OBERLANDER:  I speak for him, yes.  We're a

5    package.  I didn't mean to interrupt you.

6              THE COURT:  That's okay.

7              MR. OBERLANDER:  To save time, since we did all the

8    research, the issue on a class matter is that prior to

9    certification, it appears that substitution can be done at the

10   request and consent of counsel and lead plaintiff.  I didn't

11   mean to throw sand in the wheels.  We could have handled this

12   by letter except that you said don't file anymore papers.

13             THE COURT:  As far as I'm concerned, you and

14   Mr. Lerner are relieved for all purposes in the 2010 action,

15   and I will enter a written order to that effect.

16             MR. OBERLANDER:  Thank you, your Honor.

17             MR. BEYS:  We would ask you to note our objection, I

18   can make a fuller record on that, but I don't think they should

19   be allowed out given the five-year procedural history of this

20   case and given whatever liability they may have incurred both

21   as attorneys and on behalf of Messrs. Kriss and Ejekam.

22             THE COURT:  But that's I think a separate issue.  To

23   the extent that Mr. Kriss or Mr. Ejekam have incurred some

24   liability, I suppose that could be the subject matter of some

25   other suit; to the extent that Mr. Lerner or Mr. Oberlander

F4egkric

1   have exposed themselves to some liability, I think the same

2   pertains or perhaps there would be some grievance or

3   disciplinary committee action.  But I don't know that that's a

4   basis for me turning to Mr. Kriss and Mr. Ejekam who wish to

5   substitute counsel at a stage where we don't even have a final

6   pleading, much less discovery underway.  It seems to me I'm not

7   precluding relief by saying that Mr. Simon is the new sheriff.

8           MR. BEYS:  Including under Rule 11, your Honor?

9           THE COURT:  Well, for things that occurred heretofore,

10   I certainly haven't researched that, but I'd be surprised if

11   under Rule 11 or the Court's inherent authority I couldn't deal

12   with matters that occurred before Mr. Oberlander was relieved.

13   That would make no sense.  Any lawyer who was in trouble in a

14   case could then bail out of the case and put himself or herself

15   beyond the jurisdiction of the Court in the context of the

16   case.

17           Mr. Oberlander.

18           MR. OBERLANDER:  Without commenting on inherent

19   powers, Rule 11 is bifurcated.  Generally, it's used at the

20   request of one of the parties by serving notice, and then

21   there's a 21-day cure period.  A court can activate it *sua*

22   *sponte*, but when it does, since there's no cure period, it

23   becomes quasi criminal with substantial due process.

24           My point is, as to the Rule 11, whatever can be done,

25   it can't be done by a party once we're out because we wouldn't

F4egkric

1   have the right to withdraw anything within 21 days.

2           THE COURT:  I think you may be agreeing with me.

3   Certainly the Court, if it felt that it was appropriate, could

4   impose sanctions, notwithstanding the fact that you have

5   withdrawn from the case if it were appropriate.

6           MR. OBERLANDER:  My concern is not with what the

7   Court's powers are.  They are awesome.  My concern is what

8   theirs are, which are zero once we're out, because, otherwise,

9   we wouldn't have the ability to withdraw the offending paper.

10  Rule 11 specifically refers to a paper in the secure period.

11          THE COURT:  We needn't resolve that issue today.  As

12  far as I'm concerned, I will enter an order indicating that

13  Messrs. Oberlander and Lerner are no longer counsel to Kriss

14  and Ejekam in the 2010 matter, and Mr. Simon is.

15          MR. OBERLANDER:  Thank you.

16          MR. SAURACK:  If I could speak.  I know you relieved

17  counsel with conditions to be imposed, and we have an

18  application still pending before the Court for the return of

19  our documents.

20          THE COURT:  Let's deal with that a little later on.

21          MR. SAURACK:  No problem.  My only point was, we'd

22  like counsel to remain under the Court's jurisdiction while

23  that aspect of the case is resolved.

24          THE COURT:  Counsel are Officers of the Court, and I

25  don't see that as an issue.  I want to address the documents,

F4egkric

1   but before I do that, I want to get some understanding of who,

2   if anybody, purports to represent somebody in the 2013 case.

3          MR. WOLF:  Your Honor, if I may be heard on the order

4   you're issuing now.

5          THE COURT:  Yes, Mr. Wolf.

6          MR. WOLF:  Our only issue with the substitution of

7   counsel, one set of counsel being relieved and another attorney

8   coming in, is that it be conditional at this point on the new

9   counsel coming in not seeking extensions of time that otherwise

10  would never be granted; in particular, as he indicates in his

11  letter, he mentions a second amended complaint.  The amended

12  complaint process, in most cases you can say it's been years

13  and it's a figure of speech.  It's not a figure of speech.

14  It's been a torturous reality to my client Mr. Sater whose name

15  has been dragged in the mud for five years on this case.  And

16  they have deliberately not even served ten or more defendants

17  just to keep a case pending so that it can be used as a vehicle

18  of abuse.

19         My only concern is that whatever's been filed and

20  whatever needs to be sanitized per the Court's order, that's

21  the operative complaint going forward and there will not be any

22  other amendments or applications from them.

23         THE COURT:  When I turn to Mr. Simon, I'll see what he

24  has in mind; then, frankly, I'll hear you and decide whether

25  what he suggests makes sense.  But let me please first turn to

F4egkric

the 2013 action and first understand, Mr. Simon, whether you

have any role in that case.

          MR. SIMON:  Are you referring, your Honor, to the case

that's commonly known as the Kriss II litigation?

          THE COURT:  Yes.

          MR. SIMON:  Mr. Kriss and Mr. Ejekam have conveyed to

me that they wish to dismiss that action with respect to

themselves.  I understand Mr. Oberlander has other parties that

he represents, but they don't wish to proceed with that case

any longer.

          THE COURT:  And 2013 is a putative class action,

correct, Mr. Oberlander?

          MR. OBERLANDER:  Yes, but one of my clients remains

alive; one is an entity; and the other two have recently passed

and speak through their estate attorneys and the

administrators.  And I have to check with them to see whether

they wish to continue on as a representative as opposed to in

an individual capacity, all right?  So I understand the

question, I certainly do, which is, is the case continuing with

them; and, if so, solely individually or will they attempt to

be representatives under Rule 23?

          I asked for a short period, given it's also just the

end of Passover and the surviving client is a rabbi in Israel,

I'm going to need about a week to resolve that and answer the

Court.

F4egkric

| | |
|---|---|
| 1 | THE COURT:  I don't have a problem with that.  I just |
| 2 | want to make sure I understand this.  There's one breathing |
| 3 | plaintiff, who potentially is still in the case, but I thought |
| 4 | I heard you say you also represent the entity.  Maybe I |
| 5 | misunderstood you. |
| 6 | MR. OBERLANDER:  No, you didn't, and I apologize for |
| 7 | confusing you.  What happened is, I had three clients, two of |
| 8 | them passed within the past couple of years, and the case is |
| 9 | written in the names of their estates.  As to the two deceased |
| 10 | people, the estates will continue as personal representatives. |
| 11 | The third one remains alive, he lives in Israel but is |
| 12 | certainly capable of doing things.  And the fourth one is an |
| 13 | entity. |
| 14 | I have never discussed with them, to be honest with |
| 15 | the Court, whether or not they would consider and wish to |
| 16 | attempt to be class representatives.  So I'm asking the Court |
| 17 | for a little time so that I may intelligently correspond with |
| 18 | them and say what would you like to do here. |
| 19 | May I just have another minute. |
| 20 | THE COURT:  Let me just ask one thing:  Is it correct |
| 21 | that the 2013 complaint seeks monetary relief under the Crime |
| 22 | Victims Compensation Act? |
| 23 | Is that the gist of it? |
| 24 | MR. OBERLANDER:  I really apologize.  I know that it |
| 25 | appears to be a simple question.  It's not.  I'll make it as |

F4egkric

simple as I can, all right?

          The CVRA itself is inherently ambiguous as to venue
and what's proper when a case is closed; it just is.
Therefore, whether it does nominally or not, it does seek
damages -- I'm going to explain it, believe me, it's extremely
painless, but I'm thinking on my feet, all right?

          Kriss I was filed in 2010, and by definition, it can't
make claims for anything that happened after the day it was
filed.  I mean, that's obvious.  Kriss II, with respect to my
former clients, was simply bifurcated chronologically.  When we
met in conference with Judge Schofield, I explained that for
tortious acts that they can sue for that occurred after 2010,
they chose, through legitimate tactical reasons, to bring a
second action in state court for everything that happened in
time after that.

          THE COURT:  Which initiated with a summons without
complaint, correct?

          MR. OBERLANDER:  With a summons with notice, that's
correct, although it was a rather long notice.  The gist of the
allegations is that the defendants – not all of them by any
means – but that the defendants participated in a scheme
whereby people who were victims of Mr. Sater and Mr. Lauria
back many years ago were deprived of choses in action that they
would have had had their cases not been concealed; and that
some of the defendants, the corporate entities, Bayrock, were

F4egkric

involved in facilitating the concealment of those assets by

various improper means.

       This is already on the record before Judge Schofield,

so I'm going to be very brief if that's all right:  My former

clients made clear to me in April a year ago when the first

complaint was due to be filed because it was moved here without

a complaint and then it took a year to settle the issue of

remand, they made clear to me that they did not wish to pursue

any personal claims in the matter and only would pursue

derivative claims in the matter on the theory that the people

running Bayrock, who were responsible for subjecting it to

liability to all of the victims who were deprived of their

choses, have liability.  That's gone because they no longer are

suing; they're going to file under Rule 41 and as of right,

that's presumably gone as soon as my colleague gets to do it.

       I hope that explains what's going on, but I just need

one more minute.  There's every chance this will be the last

time I'm in here anyway because I don't know what they're going

to want to do in terms of class or what, but left by itself,

that case theoretically – there's solid Second Circuit

precedent on it – has to be consolidated into the one that was

brought against Mr. Sater and Mr. Lauria that's currently in

the Second Circuit, because technically if that case in the

Second Circuit is re-enlivened and remanded back, then you're

going to have two somewhat similar cases.  They're not similar

enough that *res judicata*/collateral estoppel would apply under

any circumstances, but there's a colorable argument.

THE COURT:  The case in the Second Circuit --

MR. OBERLANDER:  In the Second Circuit, the victims,

my clients are suing in RICO for what was stolen from them in

1996 and '97 by the original --

THE COURT:  Who was that case before, the district

court judge?

MR. OBERLANDER:  Judge Schofield.  All I'm doing as a

courtesy to the Court, and I don't mean to confuse anybody, but

I'm alerting the Court to the possibility that it may require

by precedent, and I will be letting the Second Circuit know

immediately now that my clients have withdrawn, that there's a

mandatory -- not sure, the one that starts with a "C," my mind

just froze, not when there's a joinder -- that consolidation

may be mandatory.

THE COURT:  The short is answer is, I don't have to

worry about that today.

MR. OBERLANDER:  You don't have to worry with two days

ex Passover and then another one coming up, so I promise you,

this will all be dealt with in expedient time.

THE COURT:  Yes.

MR. BEYS:  Respectfully, you might have to worry about

it today because there is a way to simplify this.  And to

unconfuse the matter, and this is deliberate obfuscation by

1    counsel, there have been three matters brought between 2010 and

2    2013.  There's Kriss I; there is this matter that

3    Mr. Oberlander refuses to name, the Gottdiener action, which

4    was brought in the name of deceased plaintiffs about facts that

5    are alleged to have happened 21 years ago and more, okay, that

6    are clearly time-barred, that Judge Schofield has dismissed and

7    denied reconsideration that is now pending before the Second

8    Circuit, and if I may be so bold, isn't coming back, okay; and

9    Kriss II, which was an amalgamation of those two, of Kriss I

10   and Gottdiener.  With the Kriss I plaintiffs leaving Kriss II

11   and Gottdiener having been dismissed, there is no Kriss II.  We

12   can save everyone a lot of time and aggravation and my client

13   some words stronger than aggravation.

14        THE COURT:  I think you're probably right, but I'm

15   going to await Mr. Oberlander's letter in a week or so that

16   tells me his position on Kriss II.

17        Gottdiener, if it's going to die in the Second Circuit

18   as you predict, then becomes a nonissue it seems to me in terms

19   of consolidating with anything.

20        MR. WOLF:  For clarity, because you asked

21   Mr. Oberlander who his clients are, he didn't give one name to

22   your answer.  The docket sheet on Kriss II indicates, beyond

23   Jody Kriss and Ejekam, one, two, three, four, five, six, seven,

24   eight different names:  Bayrock Group LLC, Bayrock Spring

25   Street LLC, Bayrock Whitestone LLC, Bayrock Camelback LLC,

F4egkric

Estate of Ernest Gottdiener, the Estate of Judit Gottdiener,

Ervin Tausky and Suan Investments.

        Who are the clients he's talking about?  Let him give

their names so we can dismiss the others today, and let's at

least know.  Talking about obfuscation?  He didn't name one

person in answer to your question.

        THE COURT:  Assuming that somebody has standing to

bring -- there has to be a client for Mr. Oberlander to

proceed, and the client has to be somebody who has standing to

bring a derivative claim.  It can't be somebody who once

strolled by Bayrock.

        And the fact that there are various Bayrock entities,

Mr. Oberlander, that are plaintiffs without somebody who has a

sufficient interest as a shareholder or how ever to bring a

derivative action, it seems to me you may be out of Kriss II as

well.  I will await your letter, but I do expect that the

letter will identify specifically who you purport to represent

and in what capacity.

        Yes, Mr. Oberlander.

        MR. OBERLANDER:  Somewhere around page three of Judge

Schofield's reconsideration and her opinion on the Gottdiener

case, and I apologize for this, but I counted three times in

the three -- I don't sit quiet.  The Gottdiener case was

dismissed on failure-to-state-a-claim grounds on grounds that

aren't really relevant here.  There never was a reference.

F4egkric

1    However, one of the grounds on which it was dismissed was that

2    with respect to Mr. Lauria, and only Mr. Lauria, time had run

3    out; and without going into the legal argument, when I moved to

4    reconsider, Judge Schofield said, if I may be casual, you know,

5    you're right, I got that one wrong, sorry, I revoke or whatever

6    the language is.

7         THE COURT:  Let me interrupt you for a second because

8    I have two observations.  First, Gottdiener, for some reason,

9    was never referred to me as far as I know.  I think you just

10   said that.  Secondly, it's up in the Second Circuit, so I don't

11   think there's much point in debating Gottdiener until we see

12   what the Second Circuit does, and there's no point in debating

13   it with me unless Judge Schofield refers it to me.

14        MR. OBERLANDER:  I apologize.  I'm not debating it.

15   I'm asking for the record that his remarks be stricken and he

16   be orally reprimanded for mischaracterizing that it is not out

17   of time, and Judge Schofield held it timely as to Mr. Sater and

18   not untimely pending factual development as to Mr. Lauria.

19        I would also like to point out for the record to save

20   everybody time, I was long ago retained in a very complicated,

21   written, long multiparty engagement letter with conflicts

22   waivers and so on by the Estate of Ernest Gottdiener, the

23   Estate of Judit Gottdiener, by Rabbi Ervin Tausky and by Suan

24   Investments, and I have never maintained otherwise.

25        Finally, when Kriss II was captioned, it's captioned

F4egkric

1    the way it is because it is the custom and practice that when a

2    derivative action is brought, that the nominal entities for

3    whom the relief is sought get listed as nominal plaintiffs as

4    well as defendants.  So any idea that I don't know, care or

5    whatever is just typical *ad hominum* -- you know what I'm

6    saying, and I would appreciate --

7            THE COURT:  I appreciate what you're spreading on the

8    record, but it doesn't really move the ball forward.  And to

9    the extent that there was a request to strike part of the

10   record, that request is denied.

11           I think we're at a stage now, Mr. Simon, where I need

12   to turn back to you.

13           MR. SIMON:  Sure.

14           THE COURT:  We're many years into this collective

15   venture and we don't yet have a complaint that can be judged if

16   I grant the relief you request, which is to file yet another

17   complaint, which also raises the issue that counsel on the

18   other side have talked about in terms of the so-called

19   purloined documents.

20           MR. SIMON:  Right.  Let me address first the request

21   for an amended complaint.  Judge, I sent a letter to Judge

22   Schofield when I was retained letting her know, and letting you

23   know as well, your Honor, that I represented that my clients

24   really want to move forward in a new direction, and they

25   understood that there was a lot that took place that caused the

F4egkric

1    displeasure of both Courts.  So I have been retained really for

2    that purpose, to really pledge to the Court that my clients

3    want to move this in an honorable fashion expeditiously.

4            When I made the request for the amended complaint, I

5    was somewhat surprised by the reaction because I can assure

6    defendants that it's not being made to get some sort of

7    tactical advantage; it's really just to simplify things.

8            THE COURT:  I confess, individual paragraphs I

9    understand; portions I understand, but I certainly don't claim

10   to ever have fully understood Mr. Oberlander's complaint.

11           MR. SIMON:  That's exactly what I was going to say

12   next, your Honor.  I've read it, too, and with no disrespect to

13   Mr. Oberlander, I don't understand 80 percent of it.  So I

14   know, and this is in consultation with my clients, that our

15   intent is simply to eliminate a vast portion of that complaint

16   to -- there are defendants in here that we believe, my clients

17   and I believe, shouldn't be in there, and we want to streamline

18   this.  And it's not for getting at some sort of tactical

19   advantage.

20           I think everybody will be pleased if we have some time

21   to put together a streamlined, short, concise, clear complaint

22   that sets forth the allegations in a clear, understandable

23   fashion.  We also have Judge Schofield's order to undertake

24   major redactions, which my clients have no objection to and are

25   in favor of, but I just want to emphasize --

F4egkric

```
1          THE COURT:  When you say "major redactions," you're

2     referring to not using the documents that Mr. Oberlander

3     obtained from Mr. Bernstein?

4          MR. SIMON:  Correct.

5          THE COURT:  Implicit in that is that you've never seen

6     those.

7          MR. SIMON:  No, no, I have not.

8          I just want to impress upon the Court and all parties

9     that we're simply trying to clean things up, to offer a clear,

10    concise document that will expeditiously allow everyone to move

11    forward, because the complaint in its current fashion I don't

12    think really helps anyone.  So, that's all we're intending to

13    do, your Honor.

14         THE COURT:  Without prejudice to what ultimately it

15    might say, can you give me and defense counsel a preview of

16    what the basic claims would be?  Obviously, you've been

17    retained to prosecute some theory.  Just in a nutshell, if you

18    can give me what the theory is.

19         MR. SIMON:  Your Honor, when you take out a lot of the

20    narrative in that complaint, it's really a case -- you know,

21    I'm still trying to get my arms around it, so I don't want to

22    say too much, your Honor, but there's just a lot that should be

23    simplified is what I should say.  We're not trying to add new

24    things or prejudice the parties in any way.  I actually see

25    this as a beneficial thing, so I'm sort of surprised by the
```

F4egkric

1   reaction.

2              THE COURT:  Mr. Saurack.

3              MR. SAURACK:  Your Honor knows the history of this

4   case.  Unfortunately, as Judge Schofield said, there was

5   vexatious defiance of court orders that my client had to

6   litigate for five years as a result of these purloined

7   documents being in the complaint.

8              Our concern is that new counsel just can't just walk

9   in and erase what happened, especially because the complaint

10  was based upon these materials.  Just to give us a complaint

11  that says the same thing in a conclusory fashion doesn't really

12  fix it, especially in light of what your Honor said in your

13  order, which was I recognize striking the paragraphs

14  quote/unquote may leave significant factual gaps in the FAC,

15  the first amended complaint.  So we have a real concern about

16  that.

17             I think that the appropriate step would be for them to

18  file the amended complaint with redactions.  If they wanted to

19  make an application to file a simplified amended complaint,

20  they can just do so, and we can decide at that point whether we

21  consented to it or not, but at this point, I may have a

22  problem.  I will say also it's encouraging that counsel is

23  representing he's not looked at the purloined information

24  because that was another concern of mine, because then we wind

25  up with a situation where we may have to seek disqualification

F4egkric

1     again.

2                One thing that ties into all of this, and I suggest

3     counsel take a look at, there's a complaint that was filed in

4     Delaware Chancery Court back five years ago before Judge

5     Strine.  I think that's the complaint that probably he intends

6     to submit now, a streamlined version of the complaint that now

7     has all the privilege allegations in it.

8                For the Court's convenience and counsel's convenience,

9     I have a transcript of what was argued before Judge Strine.

10    And what was argued was that this case should be arbitrated, a

11    case that, in all likelihood, now is before the Court in what

12    he's talking about.  It's our view that we think we probably

13    would argue collateral estoppel that this case should be

14    arbitrated as to arbitrability and also --

15                THE COURT:  Arbitrated because it makes business sense

16    or because someplace there's an arbitration clause?

17                MR. SAURACK:  There's an arbitration clause in

18    Mr. Kriss' agreement.  In this case, it was a derivative --

19                THE COURT:  You said Mr. Kriss' agreement?

20                MR. SAURACK:  Right.

21                MR. WOLF:  It was an employment case.  The Court

22    viewed it as an employment case.

23                THE COURT:  Okay.

24                MR. SAURACK:  I have a copy of the transcript.

25    There's an arbitration provision in Mr. Kriss' agreement with

1    the company.  Mr. Oberlander was before the Chancery Court

2    before Judge Strine.  Bayrock moved to compel arbitration.  The

3    Delaware court dismissed without prejudice and said go

4    arbitrate; Judge Strine says it multiple times.  And then the

5    case took on a life of its own in the Southern District with

6    the inclusion of all these materials that we say were

7    purloined, and now we're kind of back again where we were

8    before.  And this case should be arbitrated, at least as to

9    arbitrability is what Judge Strine said.  And I think Judge

10   Strine also would find, and we would argue, there is no

11   derivative case because their clients have no standing to make

12   a derivative case; that they're not members.  That would be our

13   position.

14            THE COURT:  There are a couple of thoughts there.

15   First, just from your facial expressions, I have a sense that

16   perhaps you're not fully familiar with the Delaware Chancery

17   Court proceeding, Mr. Simon.

18            MR. SIMON:  No.  This is the first I've heard of it,

19   your Honor.

20            THE COURT:  Okay.  I think what makes sense here is

21   for, Mr. Simon, if he wishes, to draft a second amended

22   complaint, I think you should furnish him or point him in the

23   direction of the materials that relate to the Delaware Chancery

24   Court's rulings; and presumably if he's convinced that the

25   ultimate result is going to be an order that dismisses so that

F4egkric

an arbitral panel can decide whether this is something that

should be arbitrated or some other possibility along those

lines, he'll let us know that.

          To the extent that he disagrees that this should be

arbitrated and wishes to pursue the complaint, I don't disagree

with you that matter which he's learned from the face of the

second amended, I guess it was, complaint may raise issues, but

I think the logical starting point is to look at Mr. Simon's

pleading and then see what, if anything, needs to be stricken

based upon the ruling and recommendation that I made that Judge

Schofield has adopted.

          MR. SAURACK:  We would be willing to do that

informally if Mr. Simon presents us --

          THE COURT:  Yes.  I was about to say that I would hope

the two sides would have discussions about that before it

actually comes to court.

          MR. SAURACK:  Then if we have a problem with it, we

might resort to motion practice, but, again, I'll hand him

right now a copy of the transcript from Delaware.

          There's one other item that dovetails here, and

hopefully it's a sign of good faith, especially since counsel

said he hasn't reviewed the purloined materials, one of the

last pieces here is we want those materials back.  In your

Honor's order, your Honor said that the Court had inherent

powers – and we've made this application already – to order the

F4egkric

1    return of those documents.  And I think as a sign of good

2    faith, if they would return those documents to us, we'll

3    certainly hold onto them and maintain them during the course of

4    any litigation.  That would move the ball forward as well, and

5    then we don't have to litigate that issue of the return of the

6    documents.  Although, I think it's already *sub judice* because

7    we briefed it before the Court and your Honor withheld decision

8    until you decided essentially what wound up being the sanctions

9    order.

10            MR. SIMON:  Your Honor, I don't know anything about

11    the purloined documents.  Perhaps counsel can tell me what they

12    are and where they are because I don't have them.

13            MR. SAURACK:  I think predecessor counsel, who I'm

14    sure will cooperate in giving him the files, I'm assuming

15    there's no lien, he'll give him the materials.  And I would ask

16    that they be provided to us.  I'll represent that we'll hold

17    them in escrow or hold them as attorneys during the case.  But

18    given that those allegations are stricken, they really don't

19    have relevance anymore to what's going on in either case.

20            THE COURT:  Mr. Simon doesn't have a dog in that

21    fight.  He hasn't seen them.

22            MR. SAURACK:  Right.

23            THE COURT:  Mr. Oberlander.

24            MR. OBERLANDER:  If I can speak as *amicus* on the

25    point.  I've been relieved.

F4egkric

1          THE COURT:  I don't know that you're *amicus* on this

2     point.  You're the custodian.

3          MR. OBERLANDER:  No.  On the related point.

4          THE COURT:  Let me just first make sure.  To the

5     extent that documents were downloaded from the Bernstein hard

6     drive or the handful of paper documents he had, I'm assuming

7     that you're the person who has those these days.

8          MR. OBERLANDER:  I can't speak to whoever else has

9     them.  I have them and I know who got part of them from me, but

10    the bigger point is, he's one of them, my colleague here,

11    because I made clear in my responses to the Court during the

12    past year that there were some 23 paragraphs or roughly seven

13    percent of that complaint that contained what I described as

14    documents that were sourced only to Bernstein and were

15    self-authenticating because they're emails that say who wrote

16    them and when they wrote them.  I'm saying to you that the

17    Court is not correctly informed.  The complaint has substantial

18    numbers of documents from Bernstein embedded in it.

19         THE COURT:  We're now in the odd circumstance where

20    you're making part of Mr. Saurack's and Mr. Beys' argument, but

21    hear me out for a second.

22         Did you provide copies of any of the Bernstein

23    documents, so-called, to Kriss or Ejekam?

24         MR. OBERLANDER:  I seriously doubt that I did.  But

25    going back five years, I seriously doubt that I gave any to

F4egkric

Mr. Ejekam for the simple reason that he took a much lower

profile.  As to Mr. Kriss, I need to correct a misapprehension;

it's a very simple one.  What you refer to as purloined

documents were not merely, I presume, documents that were

copied off that disk.  There's a set of documents, which maybe

came from the disk, frankly, I don't know, in which he sent me,

Mr. Bernstein, and copied his lawyer and various other lawyers

of five or six weeks every other day before I went anywhere

near that disk.  Therefore, in the interest of fair play, I

want the Court to understand that in the set of all documents I

got from Mr. Bernstein, quite a number of them came in as email

attachments from him.  And I will certainly be able to check

and see, but I would not be surprised if some of them were sent

to Mr. Kriss with a note that said you ought to take a look at

this and so on.

     The short version is yes, there's no question

Mr. Kriss saw some of them; obviously, not all of them by any

means.  But, again, I apologize, the purloined documents, if

you will, although I don't agree that they're purloined, --

     THE COURT:  Let's call them the Bernstein documents.

     MR. OBERLANDER:  The Bernstein documents I would say,

if I had to guess, Kriss saw maybe 50, of which 25 are the ones

embedded right into the complaint, which he obviously saw

because he signed it and verified it; and 25 probably went to

him by email in January 2010.  That's the best I can tell right

F4egkric

1   now.

2          THE COURT:  Those that are in the complaint, there's

3   not much I can do about that.

4          MR. OBERLANDER:  They're color-coded orange and

5   yellow.

6          THE COURT:  But Mr. Simon, to the extent that

7   Mr. Kriss or Mr. Ejekam have documents that came from

8   Bernstein, I'm going to direct that you return them to

9   Mr. Saurack, obviously without reviewing them.

10         MR. SIMON:  That's fine, your Honor.  I'll make that

11  inquiry.

12         THE COURT:  Then we get to the documents that are in

13  your possession, Mr. Oberlander.  What's your position on that?

14         MR. OBERLANDER:  My position is that while the matter

15  is *sub judice* and our serious concerns with it, I have no

16  problem in agreeing to with whatever certification is

17  necessary, 1001, 1746, whatever, making a complete set of the

18  universe that I have.  I don't have anything physical anymore.

19  I never keep physical copies pretty much, but everything I have

20  is electronic.

21         I will certainly turn over a complete documented set

22  of everything he gave me.  I think I can do it in exactly the

23  format because I made a little copy at the time and I think

24  it's preserved in Cloud storage, so I will turn them over to my

25  colleague.

F4egkric

1          THE COURT:  They're not asking for a courtesy copy.

2     They want, in effect, the originals.  I understand that they're

3     in electronic format, and perhaps in the Cloud, but more

4     pointedly, correct me if I'm wrong, Mr. Saurack, they don't

5     want you to have a copy.

6          MR. OBERLANDER:  Well, I don't mean this even

7     remotely, please don't take this as flippant, it's not flippant

8     answer, but Mr. Saurack is absolutely free at any time to bring

9     a plenary action and sue.  I'm not being difficult.  I haven't

10    disseminated them throughout this entire point.  I'm simply

11    saying that if Mr. Saurack wants them back, I understand --

12    you've got to forgive me because we're dealing with ethical

13    issues about clients, and I don't want to make an argument off

14    the top of my head and be hung with it.

15         THE COURT:  Let me interrupt you for a second and tell

16    you what I think is probably appropriate, which is that in

17    electronic form, in a format that's capable of doing what I'm

18    about to say, they be provided to the Court and that the Court

19    place them under seal, so that if there are avenues you wish to

20    pursue, and while we still have ambiguities about Kriss II or

21    whatever else may be there at the periphery, that which you

22    have doesn't disappear, but it resolves defense counsel's

23    concerns.

24         MR. OBERLANDER:  I'm perfectly happy to be

25    cooperative, but the reason that this is a problem to stand

F4egkric

1   here and do this is it's unfair to colleagues because Mr. Simon

2   probably doesn't know, and he can't know everything in a month,

3   that the engagement letter I have with Mr. Kriss and Mr. Ejekam

4   who were my clients and all of them, everybody separately

5   represented, provides the complete rights to mutual disclosure

6   and use of everybody's work product, including all those

7   documents.  So it's not a matter of just, gee, I'd like to hang

8   onto them; it's a matter of Mr. Kriss and my other client

9   Mr. Ejekam having expressly consented two years ago to transfer

10  whatever rights of use of the documents they have and share it

11  with the Gottdieners because of the joint litigation privilege.

12  I'm happy to turn them in.

13          THE COURT:  A while ago you told me you seriously

14  doubted -- I thought you said -- well, as to Mr. Ejekam, you

15  said you seriously doubt that you gave the copies of these

16  documents.

17          Did I misunderstand?

18          MR. OBERLANDER:  No, and I'm sorry if I confused the

19  Court.

20          To the best of my recollection, Mr. Ejekam would not

21  have seen more than one or two, other than the ones embedded in

22  the complaint.  Mr. Kriss has probably seen --

23          THE COURT:  And that I dealt with by directing

24  Mr. Simon to return them.

25          MR. OBERLANDER:  Right.  And Mr. Kriss has probably

F4egkric

1    seen 20 or 30.

2             THE COURT:  I understand you have mutual sharing

3    arrangements or whatever.

4             MR. OBERLANDER:  That's all I'm saying:  I'd be

5    delighted to turn the documents in to the Court and represent

6    that this is it, the whole set.  And if the Court issues an

7    order placing them under seal, as long as I'm allowed to be

8    heard on that, even if it's perfunctory, it's well within the

9    Court's inherent powers to place things under seal, assuming

10   the requirements of process are served.

11            I'm not being difficult about that at all; I'm just

12   not going to trounce my current clients' rights to the extent

13   they're cognizable by destroying them, but I will certainly

14   turn them in to the Court.

15            THE COURT:  Did you two need to confer for a second?

16            MR. OBERLANDER:  No.  When I appear before your Honor,

17   frankly, it's difficult.  I do speak a lot.  I don't want to

18   get into legal argument and citation, but the matter is under

19   review.  I'm just explaining --

20            THE COURT:  Wait.  Let's just try to focus this

21   discussion for a second.

22            What I'm going to do is direct that you produce to the

23   Court by a date certain in electronic form, if that's the only

24   form in which it exists, all of the material that you obtained

25   from Mr. Bernstein or his counsel and, obviously, any written

1    materials that came from Bernstein, with that material to be

2    placed under seal by the Court and that you retain no copies of

3    any such information.

4              MR. BEYS:  Judge --

5              THE COURT:  Time out.

6              Understood?  And that's without prejudice to whatever

7    it is you may wish to pursue in that area.

8              MR. OBERLANDER:  If that's an order, then I have

9    nothing to say; however, I must record an objection.  May I do

10   that or do you want an informal written paper or what?  I'd

11   like the right to be heard on that.  I don't want to take up

12   the Court's time in chambers or in court if I can do it in --

13             THE COURT:  I'm going to enter that order.

14             Yes.

15             MR. BEYS:  I really need to be heard.  This is beyond

16   a dishonest misrepresentation.

17             For five years, this is what we've been litigating in

18   the Eastern District of New York.  It is not *sub judice*.  Judge

19   Glasser in 2010 ordered the return of the documents.  The

20   Second Circuit in 2011 affirmed.  The Second Circuit appointed

21   Judge Cogan to ensure compliance.  On April 1, 2011, Judge

22   Cogan ordered Mr. Oberlander to return hard copies and

23   electronic copies on pain of spending a weekend in jail.  They

24   took it up to the Supreme Court.  The Supreme Court denied

25   cert.  Then they appealed another order of Judge Glasser on

 1    these very issues.  The Second Circuit affirmed.  The Supreme

 2    Court denied cert.  If your Honor issues that order,

 3    respectfully, you will extend this circus of a litigation,

 4    which is what Mr. Oberlander wants, for another five years.

 5    There is nothing to return anymore.

 6         And just so Mr. Simon, who is a former Eastern

 7    District prosecutor, knows what's at stake because he is coming

 8    in as a white knight and he could short-circuit this process,

 9    the documents at issue are a cooperation agreement, two proffer

10    agreements, and a presentence report of one of the defendants

11    in this case, okay, somebody who cooperated with the government

12    for a period of 11 years so that he could be killed, okay, and

13    they publicly filed them in Kriss I.  The whole point is, this

14    the reason why Mr. Oberlander and Mr. Lerner are under criminal

15    investigation.

16         THE COURT:  Time out.  That's not, as I understand it,

17    the universe of documents.  That's the universe of documents

18    that concerns Mr. Sater.  But Mr. Saurack – and that was the

19    whole point of the exercise that we went through that led to my

20    report and recommendation – contended that there were numerous

21    other documents that were Bayrock's attorney-client privilege

22    documents.  And it seems to me neither Bayrock nor Mr. Sater is

23    prejudiced by my directive that these documents be placed under

24    seal.  Mr. Oberlander said he also wants to be heard about

25    this.

F4egkric

1              I don't know that there's anything at this juncture,

2      Mr. Oberlander, that merits further discussion for the reasons

3      that Mr. Beys was outlining.

4              MR. OBERLANDER:  I'm sorry.

5              THE COURT:  Time out.

6              I'm not going to do the work of Judge Cogan or Judge

7      Glasser or anybody else in the Eastern District, but I don't

8      think that what I'm directing really is an affront to what they

9      have directed, although, I understand it's somewhat

10     inconsistent, but I think step one is to ensure that

11     Mr. Oberlander doesn't have the documents.  And I heard him

12     consent to turning those documents over to the Court, so I am

13     going to so direct within two weeks, Mr. Oberlander.

14             MR. OBERLANDER:  Respectfully, I consented to turning

15     them over; I don't consent to destroying them.  I am

16     obviously -- well, not obviously --

17             THE COURT:  Wait.  Let me make clear what I was

18     ordering, which was that you are not to retain a copy in any

19     form.

20             MR. OBERLANDER:  And I understand that, and I'm

21     requesting that I understand why I may not be heard on what, to

22     be respectful, is something beyond your authority, inherent or

23     otherwise.  There is solid Second Circuit precedent on that.

24     I'm respectfully telling you I have no intention of violating

25     your orders, but I'd like to be heard.

F4egkric

1          THE COURT:  I'm going to so order.  And within that

2    same two-week period, you may make a written submission to me

3    as to why you believe the material should not be maintained

4    under seal or why my order is erroneous, and I will consider

5    that.  I will not require the defendants to submit any papers

6    with respect to that until I have had an opportunity to

7    consider what Mr. Oberlander says.

8          MR. OBERLANDER:  I have a question, though, and the

9    last time I didn't ask a question, I got in trouble.

10          THE COURT:  Yes.

11          MR. OBERLANDER:  You were just told that four

12    different judges ruled that they be returned.  It should be

13    obvious that not one judge ruled anything about Bayrock's

14    documents as opposed to the --

15          THE COURT:  -- Sater documents.

16          But just to be clear, I'm directing that the Bernstein

17    documents --

18          MR. OBERLANDER:  I understand your Honor's order.  I

19    also understand that you've just heard an absolute fraud, and

20    I'm entitled --

21          THE COURT:  I don't want to get into a debate about

22    that.  If there are issues you wish to raise, you can do that

23    in writing.

24          MR. OBERLANDER:  To be clear, you're not accepting as

25    the law of any case that there ever was such an order?  I just

F4egkric

1    need to be clear on that.

2              THE COURT:  Look, there either was or wasn't.  This is

3    not the forum or certainly not the time to discuss that.

4              Mr. Simon, how long do you need for the proposed

5    second amended complaint?

6              MR. SIMON:  Your Honor, can I just address that for a

7    minute.  As I understood your ruling, you wanted me to front it

8    first with the defense before submitting it to the Court?

9              THE COURT:  Well, there is the issue of what the

10   defendant said, which is that your clients should not benefit

11   from a new attorney coming in in the sense of perhaps

12   inadvertently using material that should not be part of the

13   complaint.  Numerous paragraphs have been stricken from the

14   complaint.  And I think you and Mr. Saurack need to have a

15   discussion.  Once you get to the stage of a proposed amended

16   complaint, I think it would be useful for the two of you to

17   talk about that proposed amended complaint before it's filed

18   with the Court.  That's all I'm saying.

19             MR. SIMON:  Right.  Obviously, I have to study your

20   order and Judge Schofield's order as to what has to be

21   redacted.  To that extent, I have to look at matters that

22   counsel claims I shouldn't be looking at.  So, if I understand

23   what they're talking about --

24             THE COURT:  Yes, and that's a difficult issue that you

25   have to confront.

F4egkric

 1          MR. SIMON:  Right.  It's already in the body of the

 2    current complaint, so in order to eliminate those sections, I

 3    have to review them.

 4          THE COURT:  I think that's right.

 5          MR. SIMON:  Right.

 6          THE COURT:  But I think you and Mr. Saurack, perhaps

 7    after this conference, should sit down and talk about that.

 8          MR. SIMON:  Right.  I certainly will have discussions

 9    with Mr. Saurack, but I would prefer to submit my proposed

10    complaint to the Court and then we can have a discussion,

11    because from what I gather, counsel is opposed to any kind of

12    new complaint.  I think I'm going to get resistance.

13          THE COURT:  He is, but there were several letters

14    saying, well, the solution here is not just to redact the

15    complaint; the solution is to dismiss the complaint.  And

16    neither I, nor, to my knowledge, Judge Schofield has accepted

17    that, so that argument is a nonstarter.

18          MR. SIMON:  Right.

19          THE COURT:  If you had not come into the case, what

20    would happen next is a redacted version of the complaint

21    presumably would be the subject of a motion to dismiss.  And

22    since we don't know what content your complaint will have, I

23    think you should draft it -- I'm not going to direct, just to

24    make matters easier, that you provide it to Mr. Saurack.  I

25    think what I'll do is, tell me how long you need to prepare

1   that complaint.  And then what I'll do is I'll schedule either

2   an in-person conference or a phone conference so we can discuss

3   how to proceed next.

4           MR. SIMON:  I'm not looking to delay things, but as

5   I've sat down and reviewed this matter, it's far more

6   complicated than I imagined when I first wrote to Judge

7   Schofield.  I really am working hard to try to get my arms

8   around this.  But I would ask the Court for 60 days to enable

9   me to really sort all this out.  As I said, there are a

10  multitude of defendants that, in my view, don't even belong in

11  the case; and I just learned from counsel before the proceeding

12  today that there are other defendants who have been served who

13  aren't even listed in the complaint, if that's correct.

14          No, that's not what you're saying?

15          MR. BEYS:  I never served anything.

16          MR. SIMON:  Then I stand corrected, but there are a

17  host of defendants who, in my view and I believe my client's

18  view, shouldn't be in the case.  It's kind of a huge

19  undertaking.  And I need to sort it all out and get my arms

20  around it and come up with a document that really is workable

21  that everyone will be satisfied with that will be a clear

22  statement of the allegations, and we can move forward

23  expeditiously.  I'd ask the Court for 60 days.

24          MR. WOLF:  Your Honor, I'd like to say two things:

25  One is, while I appreciate Mr. Simon's candor, in his letter of

F4egkric

1   March 27 to Judge Schofield, he indicated that he was

2   requesting until tomorrow to file the second amended complaint.

3        Whatever he is going to submit to the Court, and

4   apparently counsel again is not going to be able to see it, it

5   shouldn't be in 60 days or frankly even six days.  He said he

6   could do it by tomorrow.  Let him do it by tomorrow or give him

7   another week but 60 days?  That's one thing.

8        Two is, in light of your ruling, which Judge Schofield

9   has adopted and affirmed, we're entitled to a record that once

10  the paragraphs are stricken and removed in accordance with your

11  order, whether that's a complaint or not that Mr. Simon can

12  sign under Rule 11 that would otherwise be nonfrivolous, we're

13  entitled to know whether that effectively results in a

14  dismissal or not that we can move on it and say, okay, once,

15  after years and years of litigating, they lost, they forfeited

16  the right to amend yet again, okay, because that wasn't an

17  amended pleading, therefore, the case should be dismissed.

18  We're entitled to be able to make that motion on the record,

19  not to just pretend that they get a new counsel in and then

20  none of that matters.

21        THE COURT:  You can make that motion.  I will permit

22  you to make that motion as part of your opposition to the

23  pleading that we're apparently going to get to at some point.

24        Mr. Saurack.

25        MR. SAURACK:  I'd like to say a couple of things:  One

F4egkric

1    is, one of the reasons why we want to see the complaint as well

2    as we're considering it is to see if there is any of that

3    information that could be considered purloined or privileged,

4    so I think it does make sense for him to confer with us.

5           Alternatively, I suppose he could file under seal and

6    make a motion to amend.  But we'll listen to him and if it has

7    no privileging materials in it, that's something we'd like to

8    know during that period.  That's why I think it makes sense for

9    him to present a copy to us of what he intends to file, what he

10   intends to move to file, through motion practice.

11          THE COURT:  I think probably, Mr. Simon, it makes

12   sense to file under seal and provide to Mr. Saurack and to

13   Mr. Sater as the defendant and Mr. Sater's counsel the proposed

14   version of the complaint.

15          MR. SIMON:  Sure.

16          MR. SAURACK:  I'm happy to do that.  I just had a

17   couple of points.  We can have a conference after that step has

18   taken place.  I would just ask that with respect to the order

19   concerning the production of documents to the Court and the

20   destruction, that that order encompass destruction of

21   derivative products.  If they have photocopied it or put it in

22   a Word document, that that also be part of the order.  And if

23   their clients present any documents that were given to them, to

24   Mr. Oberlander, that those be part of the order as well, just

25   so that there's no leakage in the order.

F4egkric

1             THE COURT:  Yes, it will be.

2             MR. OBERLANDER:  May I --

3             THE COURT:  Just a minute.  I'll give you until

4    May 15, Mr. Simon.

5             MR. SIMON:  Your Honor, it's --

6             THE COURT:  I understand it's a daunting task, but

7    there was a representation that it would be filed forthwith.

8             MR. SIMON:  Judge, if I can just address that.

9             THE COURT:  Yes.

10            MR. SIMON:  That was three weeks ago, and at that

11   time, the clients had just asked me to undertake this, and I

12   had no idea really what I was dealing with.  After looking at

13   this, I understood what a daunting task this is.  I certainly

14   will work expeditiously, but that only gives me four weeks.

15   Quite frankly, I don't really, at this juncture as I sit here,

16   understand the case.  I really need to get my arms around it.

17   I would implore the Court for a little more time than that.

18            THE COURT:  June 5.

19            MR. SIMON:  All right.  Thank you.

20            MR. OBERLANDER:  Your Honor, in view of I believe you

21   intend to modify the order that you're going to place on the

22   docket, I just have a couple of housekeeping things I want to

23   be clear about.

24            THE COURT:  Yes.

25            MR. OBERLANDER:  My cocounsel is concerned that we

1    have made clear that we have never stipulated anything was

2    purloined, and that's why you said we'll call it the Bernstein

3    documents, okay?  I didn't want to accidently get estopped from

4    doing something.

5           The second thing is that it is correct, or I'm not

6    mistaken, that your Honor has not ruled on privilege or

7    confidentiality issues as to any of the documents that are

8    Bernstein documents or otherwise brought in issue.  I mean, I'm

9    just putting that on the record and requesting confirmation

10   that nothing has ever been ruled to have been privileged or

11   not.

12          THE COURT:  I don't believe I ever ruled on that

13   issue.  The gist of my order striking paragraphs from the

14   complaint was that you didn't follow my instructions.

15          MR. OBERLANDER:  I understand, and that's what Judge

16   Schofield said, too, which is that there was no resolution of

17   the issue because the sanction was based on a failure to follow

18   orders and not use or privilege or not privileged documents.  I

19   mention that simply because so I can have clarification.

20   Unless I misexplained it, Mr. Kriss and Mr. Ejekam gave my

21   other joint clients full -- whatever rights they had in those

22   documents to use them as part of the joint defense agreement or

23   joint prosecution agreement that they signed.  I promise, it's

24   very simple.  I'm trying to understand.

25          THE COURT:  Let me try to understand or make this

F4egkric

1    clear:  I understand what you said about the agreements,

2    although I fail to understand the relevance of it, but if I

3    find out that between now and the date that they're to be

4    turned over to the Court to be placed under seal that, relying

5    on those agreements, you have turned over copies of those

6    documents to your other clients, I will most assuredly see that

7    an arrest warrant is issued for you and you will remain in jail

8    until those documents are clawed back.

9         Do we understand each other?

10        MR. OBERLANDER:  We do.

11        Now, may I please understand under what legal theory

12   you're ordering me a return and destruction since there has

13   been no ruling that they're improper, purloined or privileged?

14   You ordered me to destroy all my copies.  How do I represent my

15   clients?  And you've ordered derivative products --

16        THE COURT:  Sir, I didn't order you to destroy

17   anything.  I ordered you to submit it to the Court to be placed

18   under seal.  I presume that you may have, for example,

19   annotated a document electronically.  The annotated copy, not

20   just the original, is to be turned over.  Obviously, once you

21   have created an electronic copy to be tendered to the Court,

22   you will have to destroy it, the original, so to speak, that's

23   on your hard drive or in the Cloud, but all of this is being

24   preserved in electronic form.  Nothing is being destroyed.

25        MR. OBERLANDER:  But you're ordering me to destroy my

F4egkric

1    copies eliminating my right to use them, and I'm asking you on

2    what legal basis.

3             THE COURT:  The legal basis is that I'm a judge of

4    this court and I've just so directed.  And if you disagree with

5    that, you have your remedies, sir.

6             MR. OBERLANDER:  So there's been no finding of fact?

7             MR. SAURACK:  Let me interrupt.  The Court has already

8    found in its decision that it has inherent powers to do what it

9    is doing.  It's in your written decision.

10            THE COURT:  I'm not going to debate the point.  It is

11   accurate, however, to say that the basis for redaction in my

12   report and recommendation was not a finding with respect to

13   privilege or work product; it was based upon expedience of my

14   directives for failure to comply with my directives, which is

15   not to say that a finding that all or some of the materials are

16   privilege or work product or otherwise proprietary.  It's not a

17   finding that somebody could make.  Obviously, there have been

18   directives issued by judges in the Eastern District.

19            MR. WOLF:  For these proceedings, since Mr. Simon now

20   represents Mr. Kriss and Mr. Ejekam, that order is extended,

21   and I'm sure he will assure compliance, that Mr. Kriss and

22   Ejekam themselves, if they do possess any of those documents in

23   any form, that they will of course comply as the Court has

24   directed.

25            MR. SIMON:  I have already indicated that I'm going to

F4egkric

1    make an inquiry to them.

2              THE COURT:  Thank you, all.

3              MR. WOLF:  Two other things, please.

4              THE COURT:  I gave Mr. Simon until June 5.

5              MR. WOLF:  We ask for no further extensions either

6    with that June 5 date.

7              THE COURT:  What's the point of asking for no further

8    extensions when there hasn't been a request for any extension?

9              MR. WOLF:  Fine.  It sits on counsel's mind when the

10   Court says no further extensions.

11             THE COURT:  I'm not going to deal with issues that are

12   not before me, although this case seems to invite such

13   discussions.

14             We will have a phone conference June 8 at 2:00 p.m.

15   Actually, that's probably a little sooner since you'll need

16   some time to review the pleading.  We'll make it June 15 at

17   3:00 p.m.

18             MR. SAURACK:  One note.  I'm assuming it's the case

19   they're not going to do this, but, obviously, until they have

20   taken the steps to provide the materials to the Court and

21   destroy materials, that there would be nondissemination.  Your

22   Honor previously ordered nondissemination.  And it goes without

23   saying that --

24             THE COURT:  Did you miss the part where I talked about

25   an arrest warrant and jail?

F4egkric

1          MR. SAURACK:  Right.  I got it.

2          MR. WOLF:  I want to address now the proceedings or

3   the procedure going forward in the Kriss II 2013 matter that we

4   haven't addressed today.

5          THE COURT:  Mr. Oberlander is going to send me a

6   letter within a week --

7          MR. OBERLANDER:  May I please have two weeks.

8          THE COURT:  -- within two weeks and set forth his

9   position as to who, if anyone, he represents in Kriss II; and

10   based upon what he says, I'll do something, but since I don't

11   know what he's going to say, I don't know what I'm going to do.

12          MR. WOLF:  Understood.

13          THE COURT:  I certainly would welcome letters from you

14   in response to his letter suggesting courses of action.

15          MR. WOLF:  My point is, of course, as the Court is

16   aware, there's an amended complaint under seal that we have

17   never seen in Kriss II and albeit I assume it contains Kriss I

18   material that should be redacted, and it should be, but that

19   was per Judge Schofield's order.  This is your one and only

20   amended complaint in this case.  Either file it or stand on

21   your first complaint.  Whatever may be left of that relics or

22   perhaps there won't be a case and it's all moot, I certainly

23   hope.

24          THE COURT:  As I said, I don't want to deal with

25   issues in the abstract.  Until I get Mr. Oberlander's letter,

F4egkric

1    I'm not going to worry about that.

2              MR. WOLF:  Thank you.

3              THE COURT:  Thank you, all.

4              (Adjourned)