UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KRISS, et al.

                    Plaintiffs,                                               **SDNY Docket Nos.:**
       v.                                                          10-cv-3959
                                                                          13-cv-3905

BAYROCK GROUP LLC, et al.,

                    Defendants.
------------------------------------------------------------------------X

**Non-Party Respondent Richard E. Lerner's Objection to
Magistrate Frank Maas's Order of April 30, 2015.**

                                                                                            **THE LAW OFFICE OF RICHARD E. LERNER, P.C.**
                                                                                              1375 Broadway, 3rd Floor
                                                                                               New York, New York 10018
                                                                                               (917) 584-4864

May 14, 2015

I submit this memorandum in objection to the April 30, 2015 order of Magistrate Maas, specifically those aspects of it that purport to require me to deliver to the magistrate the so-called "Bernstein" documents" (all documents obtained from Bernstein and all work-product derived therefrom), to destroy all copies thereof, and not to disseminate their content.

To avoid repetition, I incorporate by reference and adopt all argument in the brief of non-party Frederick Oberlander, where appropriate as if denominated in my own behalf, and add the following, as to which I attest that I make all factual assertions herein under penalty of perjury, pursuant to 28 U.S.C. § 1746, based upon, and to the best of my, personal knowledge.

**Standard of Review**

As Mr. Oberlander notes, the magistrate has issued an order which facially infringes on our First and Fifth Amendment rights of, respectively, (1) speech and petition, and (2) property. Mr. Oberlander then argues, citing *Bose Corp. v. Consumers Untion*, 466 U.S. 485, (1984), that the normal standard of review set forth in Rule 72 must be unconstitutional as applied here, and so plenary *de novo* review as to law and fact both is required, though again the magistrate expressly stated that he made no findings in support of the order thus there is only legal review.

I concur, but add that this must be so because, as the *Bose* court noted, the Constitution requires (presumably absent the consent of the parties otherwise) that an Article III judge determine consitutional facts [Emph add.]:

> The requirement of independent appellate review reiterated in *New York Times Co. v. Sullivan* is a rule of federal constitutional law. It emerged from the exigency of deciding concrete cases; it is law in its purest form under our common-law heritage. It reflects a deeply held conviction that ***judges*** … must exercise such review in order to preserve the precious liberties established and ordained by the Constitution. …

**The Order Lacks Authority, so Is *Ultra Vires***

The order, had it been issued by a court of competent jurisdiction in response to a proper invocation of the court's Article III remedial authority, would have been an *injunction*. Because

the magistrate did not have injunctive authority, which can only occur by a consent referral, 28 U.S.C. §636, and I never gave such consent, the order was unquestionably *ultra vires*.

### That It Is *Ultra Vires* Is Law of the Case

Moreover, the court may recall that on March 23, 2015, ECF 127, it issued an order denying plaintiffs' prior objections to a similar *ultra vires* prior restraint the magistrate had issued on May 29, 2014, holding that the issue of its lack of authority was moot because it would be vacated on May 30, 2015 unless anyone filed for injunctive relief by that time.

As the record reflects, no one did, so the prior order was vacated. But the point is, the court must have recognized that a formal motion for injunctive relief was required (and as Mr. Oberlander argues, and through him I do as well, such a motion for presumably provisional injunctive relief could only be made along with, or after, a formal pleading requesting permanent injunctive relief), and had to be made to the court. Thus it became law of the case that restraint injunctions, however styled, are without the magistrate's authority.

### Additional Remarks on the First Amendment Infringement
-- *Impossibility*

The magistrate's order cannot possibly be complied with, for it is overbroad. I believe that I have many, many thousands of files on my computer related to the Felix Sater case, and I cannot conceive of a word search that would filter out "Bernstein" documents, let alone work product derived from them. A search for "Bernstein" would result in a relatively small number of hits, since they are not referred to as "Bernstein" documents in most of the files. Moreover, many documents are not even in an OCR word-searchable format, so, for example, a search for "Sater" and "cooperation agreement" likely wouldn't result in very many hits on such PDF documents. Also, many emails have attachments that cannot be searched.

And, many hits that might result from a word search would be of documents long in the public domain. For example, were I to run a search for "PSR," the search would capture briefs that I filed in the United States Supreme Court, which briefs *that* Court made public.

**--    *Overbreadth***

Indeed, that illustrates another fatal flaw in the order, if it were not already ultra vires: it is overbraod. Under the order, apparently anything that mentions Sater's previously secret conviction is to be turned over and destroyed, as it's apparently derivative work product of long-public documents in Sater's case that Bernstein first gave us. Even briefs that I filed in the U.S. Supreme Court must be destroyed, as they discusses information contained in the PSR, a document that Mr. Bernstein gave, even though *that Court* allowed me to make such public. Many similar "Bernstein" documents are already public,[1] and what is public cannot be enjoined – not even the plans for a hydrogen bomb.

**--    *Futility***

Thus the order is also fatally flawed for futility, for whatever harm it is meant to avert cannot be averted when so much of what it would enjoin is already public or in the hands of those under no restraint to keep it from being public. And it futher violates my rights to represent Mr. Oberlander, as has already been litigated before and resolved by Judge Glasser.[2]

---

[1] They are public on Felix Sater's EDNY 98-cr-1101 docket. They are also public on the docket of the lawsuit filed in New York Supreme Court by Sater's partner in crime, Salvatore Lauria, in his case against plaintiff Jody Kriss, New York Supreme Court Index No. 152324/2014.

[2] Felix Sater's criminal information is publicly docketed on his EDNY 98-cr-1101 docket; it was made public on March 13, 2013. Yet because Bernstein gave a copy of it to Mr. Oberlander (who gave a copy to me, along with Sater's PSR, and the proffer agreement, etc., all of which Judge Glasser authorized Mr. Oberlander to give me), the magistrate apparently believes he can order me to give it to him, and purge my copies. This is contrary to Judge Glasser's on-the-record directive that Mr. Oberlander could share with me any document he wished: "Nothing in my order which would even hint at precluding Mr. Oberlander, or anybody else to whom that order to show cause was addressed, from conferring with his lawyer [viz. Lerner].… I don't know whether there would have been any doubt about whether Mr. Oberlander can consult with you and show you whatever it is that was relevant to the order to show cause …." (Transcript of proceedings, EDNY Docket 98-cr-1101, June 14, 2010, pp. 4-5). If it is Sater's or

- *Interference with my Representation of Mr. Oberlander et al.*

The petition for certiorari that I filed with the U.S. Supreme Court regarding the Sater/Doe case was ordered public by the U.S. Supreme Court, pursuant to my unopposed motion which requested, *inter alia*, leave to make public certain information from Felix Sater's PSR (which PSR was obtained from Bernstein), so that I could contact various media organizations and victims rights organizations, *etc.*, and garner amicus support and media attention. That is, there is information from Sater's PSR which the U.S. Supreme Court allowed me to make public. But according to Magistrate Maas's order of April 30th, I am now required to deliver unto him my electronic copy of the petition and the motion for leave to make public certain facts from Sater's PSR. I am to do this even though it's public? I am to destroy my hard copies? And all my drafts, all because it originated with the knowledge I learned from the documents that Sater was hiding his conviction? Presumably, I would be ordered to destroy all drafts. I would have to search through all emails containing the draft Supreme Court petition to and from my client, and then provide drafts to Magistrate Maas. This isn't just work product. It's attorney-client privileged communications. And I am to do this without there having been any finding that I did anything unlawful; moreover, there is nothing in the history of American law allowing a court to order dispossession of public documents that have become public lawfully or by laches for any reason, penal, punitive, or otherwise.

---

Bayrock's, or – for that matter – the magistrate's position that Judge Glasser erred in holding that Mr. Oberlander could give the documents to me, that would be a matter to be taken up with Judge Glasser. I prepared many hundreds of pages of submissions based upon such documents, and I cannot be ordered by anyone other than Judge Glasser to destroy submissions made to him, for they are based on documents that he held I could review in preparing same

And how could my use of information from the PSR be deemed unlawful, when the U.S. Supreme Court held that I could use it, and publicize it, in my publicly filed petition for a writ of certiorari, and contact the media and public interest groups?

The magistrate's order could also be read to deprive me of possession (and require turnover of) privileged communications between me and my criminal defense attorneys, if and to the extent that such communications contain derivative information based on Bernstein documents. Sater has instituted contempt proceedings in the Eastern District of New York, and the work-product documents and other "Bernstein materials" that he asks me to relinquish are needed in that proceeding to defend myself.

Also, I am counsel of record in a New York State Supreme Court proceeding initiated by defendant here (plaintiff there) Salvatore Lauria, who has brought into issue (indeed in his complaint quoting with attribution to the still sealed complaint in *Kriss I*) the crimes at Bayrock, asserting that Mr. Kriss committed those crimes himself.[3] Mr. Kriss is entitled to every possible defense, counterclaim, and other procedures known to that court, and, respectfully, pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283, neither the magistrate nor your honor may enjoin it.

Yet that is what the order would do, *de facto*, as it would prohibit our use of the information without the right or interest necessary to trigger inherent powers, which cannot include concern for the proceedings of state courts, which are fully able to protect themselves.

Documents admitted therein include some of the so-called "Bernstein" documents. They are publicly docketed. There is no authority for the idea that a federal court may order the destruction of evidence needed for the defense of a state court action. Indeed, as previously noted numerous times (though the magistrate and this court failed to address it), New York law is clear

---

[3] *Lauria v. Kriss*, NY County Index No. 152324/2014.

that provenance of documents is irrelevant to admissibility, at least in a civil case, like the case at bar.[4] That is, as Mr. Oberlander stated years ago, and has been bandied as some kind of admission rather than a statement of black-letter law, the Bernstein documents, even if "stolen" (which they were not) are admissible in evidence in New York State courts. For the edification of the court, I provide the following statement of the very well-established common-law rule, again reminding the court that this is not a concession that the documents were illegally obtained, but only to point out that it makes not a bit of difference in a court of law:

> **Documents, chattels and testimony obtained by illegal search or removal; General principle. Does the illegal source of a piece of evidence taint it so as to exclude it, when offered by the party who has shared in the illegality?**
>
> As a general rule, our legal system does not attempt to do justice incidentally and to enforce penalties by indirect means. A judge does not attempt, in the course of a specific litigation, to investigate and punish all offenses which incidentally cross the path of that litigation. Such a practice would offend our system of law in several ways. (1) It amounts to trying a violation of law without the proper complaint and process which are essential for its correct investigation. (2) Determination of incidental violations jeopardizes the primary litigation by delaying, interrupting, confusing and sometimes frustrating it. (3) It does all this unnecessarily and gratuitously; the persons harmed by the supposed incidental violations have direct means of redress available and should not be allowed to attend to their complaints in this indirect and possibly tardy manner. (4) The judicial rules of evidence were never meant to be used as an indirect method of punishment. To punish the incidental violation by rendering evidence obtained thereby inadmissible in the primary litigation is to enlarge improperly the fixed penalty of the law, that of fine or imprisonment, by adding to it the forfeiture of some civil right through loss of the means of proving it. The incidental illegality is by no means condoned. It is merely ignored in this litigation. For these reasons, it has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has obtained the evidence.

8 *Wigmore on Evidence*, Sec. 2183 (McNaughton rev. 1961) (emphasis added).

---

[4] This court will recall that, when faced with actual obstruction of justice by Sater, viz. his threats against Kriss and Ejekem that he'd destroy them if they did not drop their claims in the *Kriss II* action, this court stated in its order, 13-cv-3905, Docket Entry 62, that it had no obligation to concern itself with alleged misconduct that predates the trial process. Based upon such reasoning, one would expect that this court will, to at least be consistent, hold that any alleged misconduct with respect to how Mr. Oberlander came into possession of the "Bernstein" documents is of no concern to this court.

This is the law of New York (see *Mosallem v. Berenson*, 76 A.D.3d 345, 905 N.Y.S.2d 575 (1st Dep't 2010)). ***It is also the law of the Second Circuit.*** (See *US v. Knoll*, 16 F. 3d 1313, 1319 (2d Cir. 1994)).[5] I raise these points in behalf of Mr. Kriss as my client in the *Lauria v. Kriss* matter, in his behalf here, notwithstanding that I do not represent him here. As his attorney in *Lauria v. Kriss*, I am or should be automatically *jus tertii* for and in his benefit here.

The magistrate has ordered me to part with my intellectual property – *i.e.*, my work product – without any due process whatsoever. The documents I possess, and my work product, are not merely protected by the First Amendment, but also by the Fifth Amendment. I have a property interest in my intellectual property. It cannot be interfered with by the government without due process. And it is inherently extremely valuable; the court may well imagine the cost of replicating it *de novo*. It is five years' worth of work; it cannot be taken from me, particularly where there is no finding that I did anything wrong.

-- ***Failure to Comply with Rule 65***

The magistrate failed to comply with FRCP 65. The magistrate failed to require Sater and Bayrock to post bonds (Rule 65(c)), failed to make the requisite findings supportive of an injunction (Rule 65(d)), and failed to conduct a trial of the disputed issues (Rule 65(a)), rendering the order void. *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 443 & Fn.17 (1974). Indeed, the magistrate's order fails for yet another reason. The magistrate placed the burden upon me to prove my right to possess and use the "Bernstein" documents as I wish. The U.S. Supreme Court holds such to be contrary to law: "Rule 65 (b) does not place upon the party

---

[5] "[T]he district court properly found stolen documents turned over to AUSA Bruce had already been searched by private parties and that a search warrant therefore was not required to read them.… There was thus no Fourth Amendment violation requiring suppression of the documents and papers taken from Knoll's office on that basis."

against whom a temporary restraining order has issued the burden of coming forward and presenting its case against a preliminary injunction." *Granny Goose Foods*, at 442-443.

## Conclusion

The magistrate's order is ultra vires, and even if it were not is unconstitutional and thus invalid, indeed, as Mr. Oberlander argues, transparently so. I join with Mr. Oberlander in requesting that it be "set aside."


Dated: New York, New York
      May 14, 2015

_____
      Richard E. Lerner