UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J. L. KRISS and MICHAEL "CHUDI" EJEKAM, directly and derivatively on behalf of BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; and BAYROCK WHITESTONE LLC; <br><br> Plaintiffs, <br><br> v. <br><br> BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ; FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA; ALEX SALOMON; JERRY WEINRICH; SALOMON & COMPANY PC; AKERMAN SENTERFITT LLP; MARTIN DOM B; CRAIG BROWN; DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC: BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.; and NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.; <br><br> Defendants, <br> and <br><br> BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC, and BAYROCK WHITESTONE LLC <br><br> Nominal Defendants (Derivative Plaintiffs). | No. 10-CV-3959 |

# BAYROCK'S RESPONSE TO OBERLANDER AND LERNER'S OBJECTIONS TO AND MOTION TO SET ASIDE THE APRIL 30, 2015 ORDER

**TABLE OF CONTENTS**

                                                                                                               **Page**

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT .........................................................................................1

RELEVANT FACTS ...........................................................................................................1

      A.          The Bernstein Materials ...................................................................................2

      B.          The EDNY Action ............................................................................................3

      C.          The April 30, Order...........................................................................................3

ARGUMENT .......................................................................................................................5

      POINT I
      JUDGE MAAS PROPERLY ISSUED THE APRIL 30 ORDER DIRECTING
      THE SURRENDER OF THE BERNSTEIN MATERIALS ...............................................5

      A.          Judge Maas Had the Inherent Authority to Sanction Oberlander
                and Lerner by Ordering the Surrender of the Bernstein Materials ...............5

      B.          The April 30 Order Was Procedurally Proper. ..............................................8

      C.          Judge Maas Had the Authority to Issue the April 30 Order
                Pursuant to 28 U.S.C. § 636 and the Order of Reference. .........................11

      POINT II
      OBERLANDER AND LERNER HAVE NO RIGHTS TO THE BERNSTEIN
      MATERIALS ....................................................................................................................12

CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bridge C.A.T. Scan v. Technicare*,
   710 F.2d 940 (2d Cir. 1983) ................................................................................................ 7, 8

*Bronx Jewish Boys v. Uniglobe, Inc.*,
   166 Misc. 2d 347, 633 N.Y.S. 2d 711 (Sup. Ct. 1995) ............................................................ 12

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ................................................................................................................... 10

*Fayemi v. Hambrecht & Quist, Inc.*,
   174 F.R.D. 319 (S.D.N.Y. 1997) ....................................................................................... 5, 7, 8

*Gumbel v. Pitkin*,
   124 U.S. 131 (1888) .................................................................................................................. 5

*Herrera v. Clipper Grp., L.P.*,
   97-CIV-560 (SAS), 1998 WL 229499 (S.D.N.Y. May 6, 1998) ............................................... 8

*Hunt v. Enzo Biochem, Inc.*,
   904 F. Supp. 2d 337 (S.D.N.Y. 2012) ....................................................................................... 5

*In re Goldstein*,
   430 F.3d 106 (2d Cir. 2005) .................................................................................................... 10

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
   861 F. Supp. 2d 262 (S.D.N.Y. 2012) ..................................................................................... 10

*Pure Power Boot Camp*,
   587 F. Supp. 2d 548 (S.D.N.Y. 2008) ....................................................................................... 6

*Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn*,
   91 N.Y.2d 30 (1997) ............................................................................................................... 12

*Smith v. Armour Pharmaceutical Co.*, 838 F.Supp. 1573 (S.D. Fla. 1993) ................................ 7, 8

Defendants Bayrock Group LLC ("BG"), Bayrock Spring Street LLC, Bayrock Whitestone LLC, Bayrock Camelback LLC and Bayrock Merrimac LLC (individually and collectively, "Bayrock") submit this response to Frederick Oberlander and Richard Lerner's objections to and motion to set aside Magistrate Judge Maas's April 30, 2015 order ("April 30 Order").

## PRELIMINARY STATEMENT

Oberlander's and Lerner's objections to and motion to set aside that part of the April 30 Order directing them to surrender purloined documents is notable only for their audacity in suggesting that the Court has no authority to sanction them for their admitted misconduct in stealing privileged and confidential documents from defendants (the "Bernstein Materials") and attempting to use them in court filings. Such a sanction is well within a court's inherent authority over its own process. In addition, the April 30 Order which directed Oberlander and Lerner to surrender the Bernstein Materials was procedurally appropriate because Bayrock had made a motion for the return of the documents and there have already been findings – by this Court and by Judge Glasser in the Eastern District of New York – that Oberlander and Lerner have no right to the documents.

The Court has found and Oberlander and Lerner have admitted they are in possession of Bayrock's privileged and confidential materials misappropriated by Bernstein. As a result, the sanction of requiring them to surrender the Bernstein Materials is fully appropriate.

## RELEVANT FACTS

This case has a long and detailed history. Reference is made to the facts set forth in the May 29, 2014 Order ("May 29 Order", Dkt. No. 68), the January 14, 2015 Report and Recommendation ("R&R", Dkt. No. 98) and the March 23, 15 Order ("March 23 Order", Dkt. No. 126.)

1

A.  **The Bernstein Materials**

Joshua Bernstein was employed by Bayrock from November 2006 until his termination in September 2008. (Declaration of Maria Simonchyk in support of Bayrock's October 18, 2013 Motion for Relief ("Simonchyk Decl.") ¶ 5.) While employed by Bayrock, Bernstein absconded with a large quantity of converted documents (both hard copy and electronic). (*See* Bernstein Aff. ¶¶ 3-8, attached as Ex. 3 to the Declaration of Walter Saurack in support of Bayrock's October 18, 2013 Motion for Relief ("Saurack Decl.")). Bernstein's cache of what now is known to be around 175,000 documents apparently included the entire e-mail boxes of Julius Schwarz, Bayrock's General Counsel, and Felix Sater. (Saurack Decl. ¶ 9.) These contained privileged and highly sensitive, privileged, confidential and proprietary information of Bayrock and its employees, as well as highly confidential sealed documents used in a criminal case involving Felix Sater pending in the Eastern District of New York (the "Sater case").

After Bernstein's employment ended, Bayrock demanded that Bernstein return the materials, but Bernstein did not. (*See* Simonchyk Decl. ¶ 5).

Instead, upon learning that plaintiff Jody Kriss had filed a lawsuit against Bayrock in Delaware, Bernstein informed Kriss that he possessed Bayrock's hard drive. (Bernstein Affidavit ¶ 11.) Bernstein was then in communication with Kriss' counsel, Frederick Oberlander. Oberlander visited Bernstein and accessed the materials Bernstein had taken from Bayrock, specifically searching for privileged documents. Oberlander directly transferred an unknown number of documents to his personal email. Subsequently, Oberlander represented to Bernstein that he believed he could get a favorable disposition of Bernstein's own action against Bayrock, and offered to represent Bernstein for free. (*Id.* ¶¶ 15, 19, 23.) Thereafter,

2

Oberlander withdrew from representation of Bernstein, but retained the materials that Bernstein had shared with him (the "Bernstein Materials").

Bernstein eventually returned more than 175,000 misappropriated documents to Bayrock. (Saurack Decl. ¶ 9.) Bernstein also requested the return of the documents from Oberlander. (*See* Exhibit 8 to the Saurack Declaration) Oberlander, upon information and belief, never returned the documents to Bernstein. (Saurack Decl. ¶ 10.)

### B. **The EDNY Action**

Oberlander used the Bernstein Materials to draft the complaint in this matter. The first complaint referenced and quoted Bayrock's privileged and confidential information, as well as sealed material from the Sater case. It included sealed documents from the Sater case as exhibits, including a sealed pre-sentence report ("PSR"). Sater then brought an action against Oberlander in the federal court for the Eastern District of New York for his use of the sealed Sater case documents (the "EDNY Action"). That matter was assigned to Judge Leo Glasser.

Judge Glasser held several hearings on the matter. Oberlander testified at one hearing. Judge Glasser made factual findings, including that Oberlander knew the documents at issue were sealed prior to his public filing of those documents and that Bernstein had "wrongfully taken" and had "no legal right to those documents". (*See* Ex. 12 to the Saurack Declaration (the "Glasser Tr.") at 19.) Judge Glasser ordered Oberlander to return the PSR and Oberlander eventually complied.

### C. **The April 30, Order**

In this matter, Bayrock objected to the use of its privileged and confidential materials in the complaint and the first amended complaint ("FAC"). By order of reference, Judge Schofield referred to Magistrate Judge Maas "the issues that are the basis for the Bayrock Defendants' objections to the public filing of the FAC." (Dkt. No. 52.) Judge Maas ordered

3

plaintiffs to disclose the sources of the FAC so that he could determine which portions of the FAC were improperly based on the Bernstein Materials and which were not. (Dkt. No. 60.) Plaintiffs failed to comply. On October 18, 2013, Bayrock made a motion for relief, seeking, *inter alia*, the dismissal of the FAC for failure to comply with Judge Maas's order to disclose the sources of the allegations for each paragraph of the FAC and an order requiring plaintiffs to return the Bernstein Materials. On May 29, 2014, Judge Maas found that plaintiffs had failed to comply with his order to disclose the sources of the FAC, but gave plaintiffs one final chance to comply. In light of that final opportunity to comply, Judge Maas "decline[d] to rule" on Bayrock's motion for return of the Bernstein Materials pending plaintiffs' response. Also pending plaintiffs' response, Judge Maas directed plaintiffs "not to disseminate further the contested information." (*Id*. at 14.)

Plaintiffs and their counsel again failed to comply with the May 29 Order to disclose the sources of the FAC. On January 14, 2015, Judge Maas issued a Report and Recommendation ("R&R") finding so, and as a sanction, recommended that this Court strike all the paragraphs in the FAC to which Bayrock objected on the grounds that they were based on the Bernstein Materials. (Dkt. No. 97.) The R&R also made several findings, including that there was "unrefuted evidence" that plaintiffs and their counsel "improperly" obtained the Bernstein Materials and used at least some of that material in the FAC. (R&R at 20.) On March 23, 2015, this Court issued an Opinion and Order (the "March 23 Order") adopting the R&R in its entirety. (Dkt. No. 126.)

Shortly thereafter, Oberlander and Lerner advised the Court and the parties that Kriss and Ejekam had discharged them as counsel. (Dkt. No. 134.) Judge Maas then held a conference on April 14, 2013 (the "April 14 Conference"). At the conference, Bayrock's

4

2198890_3

counsel orally renewed its motion for Plaintiffs and their counsel to return the Bernstein Materials. Plaintiffs' new counsel orally agreed to do so, but Oberlander and Lerner objected. On April 30, 2015, Judge Maas issued a written order (the "April 30 Order") ordering Oberlander and Lerner to "surrender to the Court, to be placed under seal, all documents in their possession, custody or control, and any work product derived therefrom, that they obtained from Bernstein or his counsel, including but not limited to documents downloaded from the Bernstein hard drive. Messrs Oberlander and Lerner shall neither maintain a copy of, nor disseminate, any of these documents." (April 30 Order (Dkt. No. 142) at 2). Oberlander, who apparently retained his own counsel, objected by letter to Judge Schofield. Judge Schofield then ordered briefing on this issue.

## ARGUMENT

### POINT I

### JUDGE MAAS PROPERLY ISSUED THE APRIL 30 ORDER DIRECTING THE SURRENDER OF THE BERNSTEIN MATERIALS

A. **Judge Maas Had the Inherent Authority to Sanction Oberlander and Lerner by Ordering the Surrender of the Bernstein Materials**

Oberlander and Lerner first argue that the Judge Maas did not have the authority to order them to surrender the Bernstein Materials to the Court, claiming that the a court does not have the authority to regulate their use of documents obtained outside of the judicial process. (Oberlander Br. at 5.) Oberlander and Lerner are wrong.

As Judge Maas held in his May 29 Order,

> The Court has "the inherent equitable power over [its] own process 'to prevent abuses, oppression and injustices.'" *Fayemi v. Hambrecht and Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997) (quoting *Gumbel v. Pitkin*, 124 U.S. 131, 144 (1888)). This power includes the ability to seal court filings and documents produced in discovery, to issue confidentiality orders, and to impose sanctions. *See Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 343 (S.D.N.Y. 2012).

(May 29 Order at 13).

The April 30 Order requiring Oberlander and Lerner to surrender the Bernstein Materials was a sanction for their failure to comply with court orders. It was also made because Oberlander at April 14 Conference insinuated that, in violation of the Court's non-dissemination order, he may disseminate the materials to his purported other clients based on purported "joint prosecution agreements" that his clients signed. (April 14 Conference Tr. at 41-42, attached as Ex. B to the Miller Declaration (Dkt. No. 152)). The inherent power to impose sanctions includes the power to sanction parties and counsel to surrender documents they have obtained through misconduct. *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 566 (S.D.N.Y. 2008) (ordering plaintiffs to return or destroy all copies of an email obtained by plaintiff from defendant's email accounts without authorization); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 417 (E.D.N.Y. 2007), *aff'd* 617 F.3d 186 (2d Cir. 2010) (ordering the return of documents pursuant to the court's "inherent authority to enforce [its] orders."). Judge Maas recognized this when he noted in the May 29 Order that Judge Glasser had ordered Oberlander to return the PSR in the EDNY Action based on the same inherent authority. (May 29 Order at 13.) The Second Circuit later affirmed Judge Glasser's authority to order the return of the PSR. *Roe v. U.S.*, 428 Fed. Appx. 60 (2d Cir. 2011).

Contrary to Oberlander's claims (Oberlander Br. at 5), the fact that the Oberlander and Lerner obtained the Bernstein Materials before commencing this action is irrelevant. The court's inherent power to sanction includes the power to impose sanctions on the basis of related bad-faith conduct prior to the commencement of a litigation. *Pure Power Boot Camp*, 587 F. Supp. 2d at 571 (precluding for all uses but impeachment emails obtained by plaintiff from defendant's email accounts without authorization, prior to commencement of litigation).

6

Furthermore, the court is not trying to regulate behavior outside the courtroom that is completely unrelated to proceedings before it. Oberlander and Lerner made their possession and use the of the Bernstein Materials the Court's concern when they attempted to use the Bernstein Materials in court filings.

Oberlander cites *Bridge C.A.T. Scan v. Technicare*, 710 F.2d 940 (2d Cir. 1983) for the proposition that a court may not regulate a party's dissemination of materials it has acquired through extra-judicial process. However, a key foundation of the Second Circuit's holding in that case was that there was no evidence that plaintiff "had come by the information by other than legitimate means." *Id*. at 946. The same cannot be said here. Oberlander and Lerner have in fact admitted through their various filings that they used converted Bayrock privileged and confidential information in the FAC.

In fact, courts in this circuit have specifically recognized this limitation on *Bridge's* holding. *See Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997). In *Fayemi*, plaintiffs made this same argument that the court could not exercise control over information obtained outside the discovery process, citing *Bridge. Id*. at 324. The court held that it could, explaining,

> In [*Smith v. Armour Pharmaceutical Co.*, 838 F.Supp. 1573, 1578 (S.D. Fla. 1993)], the court posed a hypothetical situation that presents the issue starkly: "Suppose a plaintiff burglarized a defendant's premises and secured privileged documents. Could one seriously contend that a court could not prohibit the use of those documents in the proceeding before it simply because the documents were not obtained through the court's discovery process?" *Smith*, 838 F. Supp. at 1578. The facts alleged by the defendants in this case closely track the *Smith* hypothetical. And, as in that case, the court here has the inherent authority to sanction a party who attempts to use in litigation material improperly obtained outside the discovery process.
>
> *Id*. at 324 (citations omitted).

The *Fayemi* court concluded that *Bridge* did not apply because "the court in *Bridge* specifically found that the party seeking the protective order had presented no evidence that its adversary had obtained the information wrongfully." *Id.*; *see also Herrera v. Clipper Grp., L.P.,* 97-CIV-560 (SAS), 1998 WL 229499, at *2 (S.D.N.Y. May 6, 1998) ("The discovery process is not meant to be supplemented by the unlawful conversion of an adversary's proprietary information.") (holding that the court had inherent authority over party's use of stolen information and imposing sanctions).

Here, there is no dispute that the Bernstein Materials were obtained wrongfully. Joshua Bernstein admitted that he wrongfully took Bayrock's privileged and confidential information. Judge Glasser found that Bernstein was a converter and had no rights to the documents. (Glasser Tr. at 19.) Judge Glasser further found that Oberlander had no rights to the documents either. (Glasser Tr. at 19.) There is no dispute that Oberlander and Lerner engaged in misconduct in taking and using the Bernstein Materials. Furthermore, Oberlander has threatened to disseminate the materials to his other clients in violation of the Court's non-dissemination order. (April 14 Conference Tr. at 41-42.) When a party and/or its counsel has engaged in misconduct, the court, as established above, has the equitable power to sanction such conduct by issuing appropriate sanctions. *See Fayemi*, 174 F.R.D. at 324. Judge Maas's April 30 Order directing Oberlander and Lerner to surrender the Bernstein Materials was thus perfectly within his authority.

B. **The April 30 Order Was Procedurally Proper.**

Oberlander next argues that the order should be set aside because the issue was not properly before the court because no formal motion for the surrender of documents has been made and there has been no hearing on the issues and no legal and factual findings as to whether Oberlander and Lerner had a right to the documents. (Oberlander Br. at 5-9). Oberlander argues

8

that "critically, no pleading or claim or relief has been asserted by Defendants in this matter against any party, let alone, Oberlander, a non-party." (Oberlander Br. at 5.) Oberlander further argues that he is not a party in this action and the Court does not have jurisdiction over him. He is again wrong in all respects.

First, Bayrock did make a formal motion for Oberlander and Lerner to return the documents in its October 18, 20213 motion for relief submitted to Judge Maas. (See Bayrock's October 18, 2013 Motion for Relief at 23.) Judge Maas specifically addressed this part of Bayrock's motion in the May 29 Order. (May 29 Order at 13-14.) While recognizing that he had the power to order the return of the documents, Judge Maas declined to rule on the motion at the time as he was "[reserving] decision as to the impropriety of the Plaintiffs' acquisition of the documents until such time as the Plaintiffs comply with the Court's order [to specify the sources for the FAC]." (*Id*. at 13-14.) Judge Maas, however, "directed [Plaintiffs] not to disseminate further the contested information." (*Id*. at 14.). Now that the issue of Plaintiffs' compliance with the order to specify sources has been resolved (by the Court sanctioning Plaintiffs and their counsel for their repeated failure to comply), the issue was again properly before the Court at the April 14 Conference.

Second, contrary to Oberlander's claim that there have never been factual findings or a hearing on his right to the documents, Judge Glasser held a full hearing on the issue in the EDNY Action. Oberlander had the opportunity to testify about his acquisition of the documents and did so. The issue was fully briefed, the parties gave oral argument, and Judge Glasser made legal and factual findings. The findings made by Judge Glasser – *inter alia*, that Bernstein had wrongfully taken the Bernstein Materials and had "no legal right to those documents" and that Oberlander thus had no legal right to them either (Glasser Tr. at 19-20) are collateral estoppel

9
2198890_3

against Oberlander and Lerner's claims here. *Liberty Media Corp. v. Vivendi Universal*, S.A., 861 F. Supp. 2d 262, 270 (S.D.N.Y. 2012) ("Collateral estoppel bars re-litigation of an issue where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."). Accordingly, no further hearings are necessary.

This court has also made findings that Oberlander and Lerner's acquisition of the Bernstein Materials was improper. In the R&R, Judge Maas found that "the Court has been presented with unrefuted evidence that the Plaintiffs' counsel improperly obtained sealed documents and, in all likelihood, other confidential materials, including copies of Bayrock's attorney-client communications, prior to commencing suit. It further appears beyond dispute that the Plaintiffs have used at least some of those materials to craft the FAC." (R&R at 20.) This Court adopted the R&R's findings in the March 23 Order. Oberlander and Lerner have also admitted that they used the Bernstein Materials.

Third, the Court has authority over Oberlander and Lerner to order them to surrender the Bernstein Materials. Oberlander and Lerner are not innocent third-parties who have been dragged into court against their will. They are attorneys and officers of the court, who until last month, represented plaintiffs in this action. A court has ample authority to regulate the behavior of attorneys who appear before it. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (a federal court has the power to discipline attorneys who appear before it); *In re Goldstein,* 430 F.3d 106, 110 (2d Cir. 2005) (trial judges can "police the conduct of attorneys as officers of the court and to impose sanctions for attorney misconduct.") (quotations omitted). Oberlander and Lerner also cannot distance themselves from this action because they have

10

withdrawn as counsel. Indeed, as Judge Maas noted, "[It] would make no sense [if a]ny lawyer who was in trouble in a case could then bail out of the case and put himself or herself beyond the jurisdiction of the Court in the context of the case." (April 14 Conference Tr. at 6.)

C. **Judge Maas Had the Authority to Issue the April 30 Order Pursuant to 28 U.S.C. § 636 and the Order of Reference.**

Oberlander and Lerner argue that the April 30 Order was beyond Judge Maas's authority as a magistrate judge pursuant to 28 U.S.C. § 636 and the Order of Reference.[1] (Oberlander Br. at 11-12, Lerner Br. at 2-3.) First, the April 30 Order was not an injunction but a sanction against plaintiffs and their counsel for misconduct. Second, the Order of Reference gave Judge Maas broad authority over "the issues that are the basis for the Bayrock Defendants' objections to the public filing of the FAC." (Dkt. No. 52.) Bayrock's objections to the FAC were that the FAC referenced and incorporated its privileged and confidential materials. Bayrock's demand that its materials be returned fall well within the jurisdiction given by the Order of Reference. Oberlander and Lerner have also waived this objection. Bayrock made the motion for return of its materials in its October 18 motion for relief and Oberlander and Lerner failed to object to Judge Maas's consideration of it. Finally, should this Court find that the order was beyond Judge Maas's authority, the Court can easily remedy the situation by adopting the order itself.

---

[1] Lerner also argues that it is the law of the case that Judge Maas's prior non-dissemination order was *ultra vires* because Judge Schofield indicated that it would be vacated unless anyone filed for injunctive relief by March 30, 2015. (Lerner Br. at 3.) Lerner claims that the fact that the court required a motion indicates a finding that a formal motion was required. The court's order indicates no such finding. It states that the issue is now moot because "the matter is at an end (albeit with Plaintiffs non-compliance with the Courts order)" and thus the order to file a motion for injunctive relief was so that a party could notify the court that it believed the non-dissemination order is still necessary. (Dkt. No. 127.) Bayrock did respond to the court's order, requesting the court to extend the non-dissemination order while Bayrock renewed its motion for non-dissemination and return of the Bernstein Materials. (Dkt. No. 129.) Judge Schofield ordered plaintiffs to respond to the letter. (Dkt. No. 130.) Shortly thereafter, plaintiffs asked that all deadlines be adjourned *sine die* while they obtained new counsel. (Dkt. No. 134.)

11

**POINT II**

**OBERLANDER AND LERNER HAVE NO
RIGHTS TO THE BERNSTEIN MATERIALS**

Oberlander argues that he somehow has rights to the documents and that the Court is depriving him of his property rights in the documents.[2] Again, Oberlander is completely wrong on the law. First, as Judge Glasser found, Joshua Bernstein, who improperly acquired the documents, was a converter and thus had no rights to the documents. Judge Glasser further found that Oberlander, who obtained the documents from Bernstein, also had no rights to the documents. (Glasser Tr. at 19.) A converter has no rights to the property he has improperly taken. *Id*. Second, to the extent a party has possessory interests in documents, an attorney does not gain a possessory interest in them through his clients. *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn*, 91 N.Y.2d 30, 37 (1997) (Courts have "refused to recognize a property right of the attorney in the file superior to that of the client."). "The law is clear that the only interest an attorney has in his clients' documents is a lien on the client's file should the client not pay his fees." *Bronx Jewish Boys v. Uniglobe, Inc.*, 166 Misc. 2d 347, 350, 633 N.Y.S. 2d 711, 713 (Sup. Ct. 1995) "[A]n attorney has a general possessory retaining lien which allows an attorney to keep a client's file until his/her legal fee is paid. Implied in this is the rule that attorneys have no possessory rights in the client files other than to protect their fee. In other words, the file belongs to the client.") Thus Oberlander does not have a possessory interest in

---

[2] Oberlander also appears to argue that "individuals other than Oberlander" have rights to the documents. Assuming that Oberlander is asserting the argument he made at the conference that all of his clients have "rights" to the documents because his clients signed "mutual sharing agreements" that allowed each of his clients to share in documents provided by any other clients (April 14 Conference Tr. at 41-42), this argument also fails because Oberlander currently does not have any clients. Kriss and Ejekam have discharged him as their attorney. Oberlander has failed to indicate to the Court, as required by the April 30 Order, whether any of his other clients in *Kriss v. Bayrock Group, LLC, et al.*, 13-cv-3905 ("*Kriss II*") wished to continue with that action, but indicates in his brief that "upon information and belief, Kriss II will be imminently be discontinued." (Oberlander Br. at 3. n.3) Oberlander therefore has no rights to the Bernstein Materials through his other clients because he currently has no clients.

the Bernstein documents simply because Joshua Bernstein was at one point his client. Because Oberlander represented Bernstein for free, Oberlander cannot even argue he has a lien on Bernstein's file. Oberlander has no rights to the documents through Bernstein. In fact, Bernstein made a written request to Oberlander requesting that he return the documents, and Oberlander failed to comply.[3] (Saurack Decl. ¶ 10.)

Oberlander and Lerner also claim that the April 30 Order forces them to surrender their attorney work product – materials they created using the Bernstein Materials – in which they have a possessory interest.[4] (Oberlander Br. at 7, Lerner Br. at 5-8.) They have no right to product based on converted materials. They have known all along that they had no right to the Bernstein Materials, but apparently chose to use them in work product anyway. That the April 30 Order will deprive them of their work product is entirely their own doing. Furthermore, contrary to Lerner's claims that the order requires him to "destroy" his copies, the order merely requires him to turn over the materials to the custody of the Court. No documents will be destroyed. Pursuant to the order, Oberlander and Lerner will have an opportunity to explain "why the materials surrendered should be returned." (Dkt. No. 142.) The Court's custody of the documents is necessary because, as the transcript of the April 14 Conference demonstrates, Oberlander threatens to violate the non-dissemination order by disseminating the Bernstein Materials to other clients. (Tr. at 41-42.) It would eviscerate the sanction in the R&R and the March 23 Order if Oberlander and Lerner could simply use the Bernstein Materials in new cases based on the same alleged facts and circumstances.

---

[3] To the extent that he is claiming that he has an interest in the documents through his clients Kriss and Ejekam, they have willingly complied with Court's order to return the documents.
[4] To the extent that Oberlander is arguing that comply with the order will implicate attorney-client privilege between him and his clients, that concern is addressed by the fact that the Court will hold the documents in escrow. Neither defendants nor their counsel will see the documents.

13

Lerner's subsequent arguments that 1) it is impossible for him to separate out the Bernstein Materials from unrelated documents and that 2) the April 30 Order will force him to surrender materials that are now public are also unavailing. (Lerner Br. at 3.) The "impossibility" argument is simply pretextual. This Court should note that plaintiffs Jody Kriss and Michael Ejekam complied with the order to surrender the Bernstein Materials quite easily, somehow managing to find and return all the materials in their possession within 24 hours of Judge Maas's order. (Dkt. No. 145.) Lerner's claims that he will be forced to surrender materials that are public should also not be a bar to the order. As this court is well aware, for the last year and a half, Judge Maas has attempted to get Oberlander and Lerner to identify the public sources for the FAC, and Oberlander and Lerner repeatedly defied those orders. Oberlander and Lerner have demonstrated that they cannot be trusted to separate out what is private and what is public, and thus the April 30 Order requiring them to surrender all of the Bernstein Materials is necessary.

## **CONCLUSION**

Accordingly, Baymock respectfully requests that the Court deny Oberlander and Lerner's motion in its entirety.

Dated: New York, New York
May 29, 2015

                          SATTERLEE STEPHENS BURKE & BURKE LLP

                          By: _____
                          Walter A. Saurack
                          230 Park Avenue, Suite 1130
                          New York, New York 10169
                          212. 818.9200

                          *Attorneys for Bayrock*