UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                             :
JODY KRISS, et al.,                          :
                                             :
                 Plaintiffs,                 :
                                             :   10 Civ. 03959 (LGS) (FM)
        v.                                   :
                                             :
BAYROCK GROUP LLC, et al.,                   :
                                             :
                 Defendants.                 :
                                             :
_____:


FELIX SATER'S RESPONSE TO OBERLANDER AND LERNER'S OBJECTIONS
TO AND MOTION TO SET ASIDE THE APRIL 30, 2015 ORDER


                        Beys Liston Mobargha & Berland, LLP
                        Michael P. Beys, Esq.
                        Nader Mobargha, Esq.
                        825 Third Avenue, 2nd Floor
                        New York, New York 10022
                        (646) 755-3600

                        *Attorneys for Felix Sater*

Defendant Felix Sater, by and through his undersigned counsel, Beys Liston Mobargha & Berland LLP, respectfully submits this response to Frederick Oberlander and Richard Lerner's objections to and motions to set aside Magistrate Judge Maas's order of April 30, 2015.

Argument

In paragraph 6 of his order of April 30, 2015 (the "April 30th Order"), Judge Maas directed Oberlander and Lerner ("Respondents") as follows:

> Messrs Oberlander and Lerner shall surrender to the Court, to be placed under seal, all documents in their possession, custody, or control, and any work product derived therefrom, that they obtained from Bernstein or his counsel, including but not limited to documents downloaded from the Bernstein hard drive. Messrs Oberlander and Lerner shall neither maintain a copy of, nor disseminate, any of these documents.

(April 30th Order at 2).

The April 30th Order is hardly the first time Respondents have been ordered to surrender and not to disseminate the documents at issue here. Over the last five years of litigation – litigation specifically concerning Respondents' obligations to return and not disseminate these very documents – the courts have ordered Respondents to return the documents on numerous occasions. The courts have ordered Respondents not to disseminate the documents, or the information contained in them, on numerous occasions. The courts have heard and rejected Respondents' asserted rights to keep and use the documents, on numerous occasions.

We therefore submit this brief to ensure that the Court has a full and complete record of the proceedings relating to these very documents, particularly the proceedings in the Eastern District of New York and before the Second Circuit Court of Appeals over

1

the last five years, particularly concerning the Sater Documents.[1]

Respondents Obtained the Documents Improperly, And Used Them Improperly, For Improper Purposes

Preliminarily, the Court should be reminded of the sordid history of the documents at issue here. They were stolen from Bayrock, publicly disseminated in violation of a court sealing order, and used as a tool to extort, intimidate and harass, all by the Respondents and those acting in concert with them.

First, as the record clearly reflects, the documents at issue were stolen from Bayrock, and Respondent Oberlander knowingly participated in the theft. When Joshua Bernstein was fired from Bayrock in September 2008, he took with him – without permission – thousands of privileged and confidential documents from Bayrock's computer server, which he had transferred onto a hard drive, and refused to return them to Bayrock when requested.[2] In February 2010, Oberlander induced Bernstein to give him access to the hard drive, by offering to represent him for free in a lawsuit for unreimbursed expenses against Bayrock. Bernstein agreed, but only after Oberlander assured him that it was legal to use "stolen emails." (Bernstein Affidavit ¶ 13 & Exhibit 3). The rest, as they say, is history: Respondents have used Bayrock's privileged and

---

[1] We refer throughout this submission to the "Sater Documents," as that subset of documents Respondents "obtained from Bernstein or his counsel," which relate exclusively to Mr. Sater and his criminal history. As more fully described below, the Sater Documents were among the thousands of documents that Bernstein took from Bayrock when he was fired in 2008.

[2] Bernstein provided an affidavit, dated September 19, 2011, describing the circumstances in which he obtained the documents from Bayrock and gave them to Oberlander (the "Bernstein Affidavit"), as part of a settlement of the related case of Doe v. Bernstein, 10 Civ. 9658 (NRB), before Judge Buchwald.

confidential documents, particularly the "highly sensitive" Sater Documents,[3] as the centerpiece of their litigation strategy ever since.

The fact that the documents were stolen is, at this point, beyond dispute. After hearing testimony on the subject in July 2010, Judge Glasser found that "the documents were [] wrongfully taken by Bernstein," and referred to Bernstein and Oberlander as "converters" and their actions as "conversion." (July 20, 2010 Tr.[4] at 19-20). Judge Buchwald referred Oberlander to an article on *The Problem of Purloined Documents*. (Letter from Judge Buchwald to F. Oberlander, dated December 16, 2010, fn. 1). Bernstein himself, in an affidavit describing how he obtained the documents, virtually admitted that he stole the documents. (*See* Bernstein Affidavit ¶ 8). Even Oberlander's own writings demonstrate his knowledge that the documents were stolen. As he wrote to Bernstein in an email in March 2010, "as I said stolen emails are admissible, period. end of story." (Bernstein Affidavit, Exhibit 3).

Second, the Sater Documents at issue here were under seal, and Oberlander filed them on a public docket, knowingly and intentionally violating a court sealing order. As this Court knows, Oberlander filed this action on May 10, 2010 and annexed the Sater Documents to the complaint, namely, Mr. Sater's PSR, his Cooperation Agreement, and two proffer agreements. As Judge Glasser found, Oberlander knew that these documents

---

[3]   We presume the Court's familiarity with Mr. Sater's extensive criminal history and cooperation with the government, which involved matters of national security, and which spanned 11 years from even before his guilty plea in December 1998 until his sentencing in October 2009. However, upon request by the Court, we would offer to submit additional materials on this subject, on an ex parte basis, for the Court's review.

[4]   Except as otherwise indicated, all references to transcripts of proceedings before Judge Glasser, or orders issued by him, relate to docket number 98 CR 1101 (ILG) in the U.S. District Court for the Eastern District of New York.

3

were sealed, and that revealing them could put Mr. Sater's life in danger.  (June 14, 2010 Tr. at 4, 8).  Judge Glasser observed that:

> Those two documents, among others, which were sealed, were documents if divulged … may seriously jeopardize not only the life of the person who was the subject of those documents.  In this case it might also significantly affect matters of national interest.

(*Id*. at 4).  He later found that, "those documents contained information which is highly, highly sensitive and if disseminated it is [disseminated] to a person that should not get that information."  (July 20, 2010 Tr. at 26-27).  Judge Glasser found that, "There's no doubt that Mr. Oberlander was aware of the fact that these documents were sealed… It's obvious."  (June 14, 2010 Tr. at 8).  Indeed, Judge Glasser ultimately found that, "In unilaterally deciding … to publish that which was sealed, he knowingly and intentionally flouted a court order."  (March 23, 2011 Order in 98-CR-1101).

Third, Respondents have improperly used the documents here as part of a scheme to extort the defendants in this case, particularly the "deep pocket" defendant law firms and their insurance carriers.  Their scheme all along has been to threaten dissemination of Mr. Sater's sealed (and stolen) documents as a means to extract a huge, multi-million dollar settlement from these defendants.  Remarkably, Respondents put their extortionate settlement demands in writing, making a "demand for the payment of $105,000,000," or "one billion dimes," but stating that they would "favorably consider settling the entirety of all claims … [for] $35,000,000… the least amount [they] would be willing to accept for a quick settlement that avoids the dissemination" of the Sater Documents.  (Letter of F. Oberlander to B. Herman, dated October 18, 2010 letter to Herman, at 1, 6 & fn 3) (emphasis added).  In another writing, they explicitly told Mr. Sater to "stand still, stop filing motions and get out of the way" so they could reach a settlement with the other

4

defendants; otherwise there would be "worldwide dissemination of this Complaint and every document attached thereto," and "Judge Buchwald will be presiding over World War III with coverage likely on the front page of the New York Law Journal." (Letter of F. Oberlander to B. Herman, dated November 9, 2010, at 1-2).

Besides their *threats* to disseminate the Sater Documents, Respondents have also *actually* disseminated the Sater Documents. In one instance, as they admitted in writing, they forwarded the Sater Documents to Gerald Shargel, a reputed mob attorney, the very attorney who represented one of the very co-defendants against whom Mr. Sater cooperated in his underlying criminal case. (Letter of R. Lerner to Court of Appeals, dated February 11, 2011 at 3). They did not stop there. They have spoken to various news outlets and other media; they enlisted so-called "members of the public" to make unsealing motions; and members of their legal team have even testified before Congress about the Sater Documents – all as part of their relentless campaign to extort the defendants and draw attention to this case.[5]

Respondents' sinister – truly sinister – motives in using the stolen, sealed Sater Documents is well established. As Judge Glasser stated, "[S]omething bad was done, something very bad and perhaps despicable was done by the use of those documents annexed to a complaint in the Southern District, in a civil case." (July 20, 2010 Tr. at 19:12-20:23). And as the Second Circuit also observed, the Sater Documents were "of dubious utility [] except as a tool to intimidate and harass [Mr. Sater] by subjecting him

---

[5]   Once again, we presume the Court's familiarity with the ongoing contempt proceedings before Judge Cogan in the Eastern District of New York, docket number 12 MC 557 (BMC), and the above mentioned unsealing motions before Judge Glasser, docket number 12 MC 150 (ILG), but would be willing to supplement the record upon the Court's request.

to danger." (Summary Order of Court of Appeals, dated June 29, 2011, at 7).

Respectfully, the Court should not ignore what this case is really about – a scheme to extort the defendants in this case by using Mr. Sater's "highly sensitive," sealed documents, which had been stolen from Bayrock, and publicly filed in violation of a court sealing order. To the contrary, the Court should consider Respondents' numerous improprieties in denying their objections to the April 30th Order and ordering them to surrender the documents.

### The Courts Have Ordered Respondents To Return And Not To Disseminate The Documents On Numerous Occasions

Indeed, the courts have already ordered Respondents to return the documents at issue here, at least with respect to the Sater Documents, on numerous occasions.

First, over five years ago, Judge Glasser ordered the return of the PSR and enjoined Respondents for disseminating the Sater Documents. Specifically, on May 18, 2010, days after Oberlander filed *Kriss I* with the Sater Documents attached to it, Judge Glasser signed an order to show cause "requiring Jody Kriss, Michael Ejekam and Fred Oberlander and any other persons who have acquired the [Sater Documents] to immediately return [them] to Mr. Sater," and issued a temporary restraining order barring Respondents from disseminating the documents. (Order to Show Cause, dated May 18, 2010, at 1).

Second, one month later Judge Glasser again ordered the return of the PSR and enjoined dissemination of all the Sater Documents. On June 21, 2010, Judge Glasser heard testimony as to how Respondents acquired the Sater Documents, at the conclusion of which he issued a permanent injunction against dissemination of Mr. Sater's PSR and ordered the Respondents to return the PSR "immediately." (June 21, 2010 Tr. at 92). As

6

the Court stated, "With respect to the presentence report I have absolutely no hesitation in enjoining any further dissemination and I'll direct the presentence report to be returned. To the extent that you have that in your possession, return it immediately … to the United States Attorney's Office." (*Id*.).  With respect to the other Sater Documents, Judge Glasser extended the TRO and requested that the parties submit additional briefs on the matter.

Third, after another month of Respondents' noncompliance, Judge Glasser yet again ordered the return of the PSR.  This time he made clear that his orders applied to *copies* of the Sater Documents as well as *originals*, after Respondents took the ludicrous position that the orders only applied to originals. (July 20, 2010 Tr. at 26-27).  He also issued a further TRO as to the Sater Documents, based on his finding of "irreparable harm, which is imminent to Mr. [Sater]," and reasoned that "those documents contained information which is highly, highly sensitive and if disseminated it is [disseminated] to a person that should not get that information." (*Id*.).  Respondents again did not return their copies of the PSR on that occasion, or the other Sater Documents, but instead appealed Judge Glasser's order.

Fourth, the Court of Appeals also enjoined Respondents from disseminating the Sater Documents.  In the days leading up to oral argument before the Circuit Court, the Court issued a series of injunctions, including the following broadly-worded injunction on February 10, 2011, in direct response to Respondents' repeated threats to disseminate information in the documents:

> (4) All parties are TEMPORARILY ENJOINED from disseminating or distributing in any manner and in any court, proceeding or forum, any documents filed in this appeal … or in the related proceedings in the Eastern and Southern Districts of New York, or the contents thereof, to

7

> any member of the public or the media except to those persons directly involved in the parties' legal representation, who shall be bound by this order of confidentiality and sealing. The parties were <u>already informed</u> … that these dockets are temporarily under seal. To the extent [Oberlander] and his counsel [Lerner] "believe they have always been and always will be free to distribute the Court's orders and the filings in this appeal to Congress and the public[,] and the media," they are mistaken and have been on notice of the facts.

(Order of Court of Appeals, dated February 10, 2011, at 2)(emphasis in original; internal citations omitted).

<u>Fifth</u>, several days later, the Court of Appeals issued the same injunction against dissemination of the Sater Documents and even assigned a separate district judge to ensure Respondents' compliance with court orders. At oral argument on February 14, 2011, the Court issued both oral and written orders enjoining Respondents and "all who are in active concert or participation with them," from disseminating the documents or revealing their contents "in any way." (Summary Order of Court of Appeals, dated February 14, 2011, at 2). In fact, the Court also directed then-Chief Judge Dearie to assign a separate Eastern District judge to "implement[] and oversee[] compliance with [its] orders and the orders previously entered by Judge Glasser" regarding the documents. (*Id*. at 4-5). Shortly thereafter, Judge Cogan was assigned pursuant to that order.

<u>Sixth</u>, after being assigned to monitor Respondents' compliance, Judge Cogan again ordered the return of the Sater Documents – all of the Sater Documents, not just the PSR – both originals and copies, whether in physical or electronic form. Specifically, on April 1, 2011, the judge held a hearing in response to Oberlander's request to disseminate information contained in the Sater Documents, notwithstanding the Second Circuit's injunction. At the hearing, Judge Cogan learned that Oberlander had not yet destroyed or returned his copies of the documents, despite Judge Glasser's numerous orders to do so.

As a result, by oral and written orders on April 1 and April 4, 2011, respectively, Judge Cogan ordered Oberlander to destroy or return any remaining electronic or paper copies of the PSR and other Sater Documents, threatening to hold him in contempt otherwise. After Respondents again argued that the orders did not apply to *copies*, the judge stated, "it's absolutely clear on its face Judge Glasser intended you to destroy electronic copies and to return any photocopies. If that is not done by the end of Monday, I will hold your client in contempt." (April 1, 2011 Tr.[6] at 13-14). And as Judge Cogan wrote, "It was plainly the intent of Judge Glasser to have those documents destroyed or returned. There is no prejudice to [Oberlander] because in the event he prevails in having the sealing order overturned in the Circuit, he will again have access to those documents." (Order of Judge Cogan, dated April 4, 2011, at 1).

Seventh, the following month, Judge Cogan enjoined Respondents' dissemination of the Sater Documents. On May 13, 2011, the judge issued a written order denying Oberlander's previous request to disseminate the contents of the Sater Documents. After opining that information "available to the public" was not prohibited, Judge Cogan nevertheless ordered that Respondents could not "extrapolate from sealed documents … [which] could easily be combined with and thereby tainted by [their] knowledge of non-public sealed information." (Order of Judge Cogan, dated May 13, 2011, at 2). In fact, after reviewing the specific statements and information that Respondents intended to release, Judge Cogan further concluded that "[i]t seems obvious that Roe is seeking to fatally undermine the purpose of the injunctions by publicizing information that would

---

[6]   Except as otherwise indicated, all references to transcripts of proceedings before Judge Cogan, or orders issued by him, relate either to docket number 98 CR 1101 (ILG) or a specially designated docket relating to civil contempt proceedings against Respondents, docket number 12 MC 557 (BMC).

9

render them ineffective." (*Id.*, at 4).

Eight, on June 29, 2011, the Second Circuit decided the appeals brought by Respondents, ruling against them, and upholding the District Court, on every issue. (Summary Order of Court of Appeals, June 29, 2011, at 8). The Court upheld Judge Glasser's permanent injunction as to the PSR; it upheld Judge Glasser's TRO as to the other Sater Documents; it upheld Judge Cogan's order of May 13, 2011 and agreed that Respondents' proposed disclosures would have violated the Circuit Court's February 14, 2011 injunction; and it dismissed all of Respondents' appeals. (*Id.*). At the conclusion of its Summary Order, the Court issued a strongly-worded warning to Respondents, stating as follows:

> (11) Finally, it is ORDERED that [Oberlander] is hereby warned that the Court's patience has been exhausted by his filing of six separate notices of appeal regarding the same principal legal dispute … and that any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions, including the imposition of leave-to-file restrictions, requirements of notice to other federal courts, and monetary penalties.

(*Id*. at 9). Obviously, as the Court is painfully aware, the "same principal legal dispute" – which Respondents keep attempting to re-litigate, over and over for the last five years – is their obligation to return the very documents at issue here and not to disseminate "the contents thereof."

Ninth, even Bernstein, the original "converter," demanded that Oberlander return the documents to him. Specifically, on November 14, 2011 Bernstein sent an undated letter to Oberlander, return receipt requested, which stated as follows:

> During the course of my litigation with Bayrock Group and Felix Sater I provided you with documents to help pursue my case. I now need you to return or destroy all of the documents I provided to you during the course of the litigation… To the extent that documents are held in a form that

10

> cannot be physically returned (e.g. in electronic form), I hereby instruct you to delete, erase or otherwise destroy the documents and confirm same to me in writing at the above address.

(Letter of J. Bernstein To F. Oberlander, undated, at 1). Having ignored so many court orders to return the documents at issue here, it should come as no surprise that Oberlander ignored his so-called "client's" demand to return them.

<u>Tenth</u>, despite the Court of Appeals' warning not to re-litigate the "same principal legal dispute," Respondents have done just that time and time again, but have failed at every turn. In 2013 they appealed Judge Glasser's permanent injunction to the U.S. Supreme Court, claiming violations of their First Amendment rights, the public's right of access to court proceedings, and the rights of victims they have claimed to represent out of thin air. The Supreme Court denied their petition for a writ of certiorari. They did the same again in late 2014, concocting some basis to rehash the same tired arguments to the Supreme Court, and again the Court denied their certiorari petition.

<u>Conclusion</u>

For five years now, two judges of the Eastern District of New York have issued countless orders directing Respondents to do exactly what Magistrate Judge Maas has ordered them to do now: to return the documents which Bernstein stole from Bayrock and not to disseminate them or their contents. The Respondents have successfully managed to ignore these numerous orders by making countless, nonsensical arguments that the courts have consistently rejected one way or another. They have claimed that stolen documents are theirs to keep and use as they please; that sealing orders apply only to court personnel and not to attorneys; that they have a First Amendment right to

11

disseminate information that can get a federal cooperator killed; that court orders to return documents apply only to the originals of those documents, not to copies … and in the case of copies, only to photographic copies, but not to electronic copies … and as to photographic copies, not to a human being's photographic memory of a document, which can never be erased …

Although these arguments are laughable, the fact that after five years the courts of the Southern and Eastern Districts of New York are still trying to get "Messrs. Oberlander and Lerner" to return and not to disseminate the documents "that they obtained from Bernstein," is no laughing matter.

The Court should finally put an end to Respondents' five-year-long charade of a litigation, deny their objections, and affirm Judge Maas's April 30th Order to "surrender … all documents in their possession … and any work product derived therefrom … [and] neither maintain a copy of, nor disseminate, any of these documents."

Dated: New York, New York
        June 2, 2015

        Beys Liston Mobargha & Berland, LLP

        /s/ Michael P. Beys

        _____
        Michael P. Beys, Esq.
        Nader Mobargha, Esq.
        825 Third Avenue, 2nd Floor
        New York, New York 10022
        (646) 755-3600

        *Attorneys for Felix Sater*