sSUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x
SALVATORE LAURIA,

                Plaintiff,

      -against-

JODY KRISS,

                Defendant.
-------------------------------------------------------------------------x

Index No.
152324/2014

**Reply Affirmation of Richard E. Lerner in Support of Motion**

I, Richard E. Lerner, an attorney duly admitted to practice before the courts of the State of New York, affirm under penalty of perjury, pursuant to CPLR 2106, that the following statements are true, based upon my review of the files maintained for the defense of this action.

1. I am the principal of The Law Office of Richard E. Lerner, P.C., counsel for defendant Jody Kriss. I submit this affirmation in reply to plaintiff's opposition to defendant's defendant Kriss's motion for an order pursuant to CPLR 3126 dismissing the complaint in its entirety.

2. In opposition to this motion, plaintiff Lauria presents *ad hominem* argument, even though, by his failure to object to defendant's notice to admit (see exhibit "C" to original moving papers), he has conceded that his complaint is entirely meritless. He also acknowledges in opposition to this motion that he has not "aggressively prosecuted this case" (see plaintiff's memorandum of law in opposition, p.3), which is quite an understatement, and that he had promised to provide me with deposition dates, yet failed to do so. Yet plaintiff believes that *I* should have chased him for deposition dates, when it is *he* who promised to provide dates. As stated in *Sortino v. Fisher*, 20 A.D.2d 25, 28 (1st Dep't 1963) (Breitel, J.), "it is almost invariably true that neglected actions are of little or no merit….. [D]efendants are entitled to be free, after reasonable opportunity for plaintiffs to establish the contrary, of the burden of

defending actions which possess little or no merit, or even of defending actions of merit but too long delayed."

3. This case has been pending for over a year, and counsel has done absolutely nothing to move it along, yet suggests that I am in bad faith for moving to dismiss it. I submit that counsel's failure to provide deposition dates upon request demonstrates utter bad faith on plaintiff's part. Moreover, as to plaintiff's contention that it is the defendant who has failed to move the case forward, I would remind the court Judge Brietel's statement in *Sortino v. Fisher*:

> In considering the duty of plaintiff to prosecute an action, it is rare, if ever, that recrimination may suffice as an excuse for delay, namely, that defendant was himself neglectful or neglected to press plaintiff to prosecute. It is not in the nature of most defenses or defendants for defendants to press for prosecution. The duty of prosecuting the action rests on the one who brings it, not on the one who defends it. (Citations omitted).

*Sortino v. Fisher*, 20 A.D.2d at 30.

4. Plaintiff's counsel urges that his delays should be excused because there are criminal and civil contempt proceedings pending against defendant Kriss. This is utterly false, warranting the striking of his papers. ***There are NO contempt proceedings against Mr. Kriss, civil or criminal.*** I invite him to prove otherwise in sur-reply papers. He won't be able to, because the statement is a lie.

   --   *This is an Absurd Lawsuit*

5. In a nutshell, plaintiff Salvatore Lauria alleges that defendant Jody Kriss has filed frivolous lawsuits, improperly using "sealed" information in those lawsuits and employing mob-like tactics, thereby causing Mr. Lauria to sustain damages. He alleges four causes of action: intentional infliction of emotional distress; *prima facie* tort; and abuse of process; negligent infliction of emotional distress.

6. However, by virtue of his failure to deny any of the contentions made in defendant's February 25, 2015 notice to admit, it is absolutely irrefutable that his case is not just frivolous, but absurd, for he has admitted, *inter alia*:

- That he is a federally convicted RICO fraudster, who pled guilty in 1998 to defrauding investors out of $40 million, and because of that conviction was barred from brokering or selling real estate, securities, or anything else for which a license was required. Thus, his allegation that Mr. Kriss cheated him out of $1 million of a $2.5 million brokerage fee is frivolous, because he was not entitled to *any* commission, as a convicted felon.

- That there is no docketed sealing order in any case, much less any docketed sealing order that was *injunctively* binding upon defendant Kriss or his counsel, and thus there is no foundation for the allegations in the complaint that Kriss improperly used "sealed" information in any complaint against him or his cohorts.

- That Daniel Persico – who *allegedly* beat up Mr. Lauria in a restaurant in 2012 because Kriss had *allegedly* recently leaked "sealed" information to Persico's attorney Gerald Shargel – knew that Lauria was an informant many years earlier because such information was disclosed by the EDNY U.S. Attorney's Office no later than 2002 to Mr. Persico, who had a right, under the *Brady / Giglio / Jencks* doctrine,[1] to be informed of the witnesses who would testify against him at his trial.

- That in 2003 Mr. Lauria published a memoir ("The Scorpion and the Frog") and in it stated that he himself had told Mr. Persico that he was an informant against him.

- That at Lauria's federal sentencing in 2004, it was stated by his counsel that it was believed that threatening phone calls had been made by Persico, because they were traced to a phone near Persico's neighborhood, and because Persico had felt betrayed by Lauria. This is to say, the allegations in Mr. Lauria's current complaint that Persico beat up Lauria in a restaurant in 2012 because of information allegedly leaked to him by Kriss through Gerald Shargel in the 2010-2012 period is a sham. Indeed, it is perjurious.

- That when finally convicted in 2004 of the RICO fraud for which he pled guilty in 1998, a sentence of five years' probation was imposed, during which time Mr. Lauria could only work in a lawful occupation, and not associate with anyone convicted of a felony. However, Mr. Lauria alleges that he worked as a real estate broker, which was illegal. And, he has conceded that he worked with Felix Sater, a twice convicted felon.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. U.S.*, 405 U.S. 150 (1972); 18 U.S.C. 3500 ("The Jencks Act").

7.	In light of these admissions, the *ad hominem* attack upon me and my client should be disregarded. Indeed, a party who fails to timely reply to a notice to admit is deemed to have admitted it, pursuant to CPLR 3123. *Marine Midland Bank v. Custer*, 97 A.D.2d 974 (4th Dep't 1983), *aff'd Marine Midland Bank, NA v. Custer*, 62 N.Y.2d 732 (1984). Here, plaintiff was served with a notice to admit on February 25, 2015, with a demand that it be responded to by March 17, 2015. As plaintiff failed to timely respond, his failure was, as the *Marine Midland v. Custer* court stated, "at his peril." The allegations in the notice are deemed admitted.

8.	Moreover, the *Noerr-Pennington* doctrine[2] prohibits penalizing (civilly or criminally) anyone filing a petition for relief in an appropriate forum unless the entire petition is a sham or fraud. In order to prevail, therefore, Mr. Lauria would have to establish that a complaint filed against him was a complete sham or fraud. It is only a sham or fraud if it is utterly devoid of legal merit. In opposition to this motion, Mr. Lauria urges that his case has merit. But the undersigned counsel is fully cognizant of the dockets in the cases and petitions filed in behalf of Mr. Kriss, and has personal knowledge, based upon review of those dockets and the orders and decisions rendered therein, that no court has found any of the complaints to have been a sham or devoid of legal merit.

9.	Additionally, in *IG Second Generation Partners v. Reade*, 17 A.D.3d 206, 208 (1st Dep't 2005), the court stated:

> The filing of litigation falls within the protection of the *Noerr-Pennington* doctrine, which has been applied to bar claims of tortious interference predicated on the commencement of litigation. Plaintiffs have failed to allege sufficient facts from which it might be inferred that the prior action was a "sham" so as to overcome the bar posed by *Noerr-Pennington*. Indeed, the record demonstrates as a matter of law that the prior litigation was not objectively baseless…. (Citations omitted).

---

[2] *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965).

10. So despite plaintiff Lauria's argument that certain complaints and petitions filed in behalf of Kriss are frivolous, there is no argument that any complaint was deemed by any court to have been utterly devoid of merit. I have personally reviewed the dockets of the cases identified in plaintiff Lauria's complaint against defendant Kriss, and have found no court decision or order that holds that any of the complaints or petitions filed in Kriss's behalf were utterly devoid of merit. Accordingly, under the *Noerr-Pennington* doctrine, it is respectfully submitted that the *ad hominem* attacks against me and my client should be disregarded.[3]

11. Finally, the plaintiff acknowledges that he has done nothing to advance this case for the past year, yet appears to blame defendant for not having moved the case. If counsel believed that a general denial was insufficient, he could have moved for a default. He never did so. Therefore, his argument that the defendant has not advanced the case is frivolous.[4] *Sortino v. Fisher*, supra.

---

[3] Additionally, a corollary of the *Noerr-Pennington* doctrine is that if one may bring a lawsuit, one may *threaten* the target defendant that he will bring such a lawsuit, and warn that negative publicity may ensue. "*Noerr-Pennington* protection also shields from liability non-judicial acts incidental to litigation, such as a prelitigation 'threat letter.' *Primetime 24 Joint Venture v. National Broadcasting Company*, 219 F.3d 92, 100 (2d Cir. 2000); *Matsushita Electronics Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997). In addition, as required by agency principles, *Noerr-Pennington* protection shields the attorneys of the petitioning party. *Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101, 105-106 (2d Dept. 2000)." *Rapuzzi Palumbo & Rosenberger v. Government Empls. Ins.*, 2011 N.Y. Slip Op 31779 (Sup.Ct. Suffolk Co., Driscoll, J.). Thus, it is perfectly proper to threaten a lawsuit. That is, if an attorney has a proper motive for bringing a suit, and his complaint is not devoid of all merit, then the threat to that defendant that negative publicity will ensue upon the filing of the suit is perfectly proper. See *Sussman v. Bank of Israel*, 56 F.3d 450 (2d Cir. 1995), and *Revson v. Cinque & Cinque*, 221 F.3d 71 (2d Cir. 2000). Again, this is to just re-emphasize the inanity of plaintiff's lawsuit.

[4] Moroever, plaintiff has no damages. In *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993), the Court noted that it had never found viable any claim of intentional infliction of emotional *distress*. Nonetheless, it recited the elements that would have to be satisfied to state a claim, which have not been pled here. As the *Howell* Court stated:

> The tort has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. The first element — outrageous conduct — serves the dual function of filtering out petty and trivial

**--  *A Final Digression, as to the Claim that I am Under Criminal Contempt Investigation***

12. I apologize for what may appear to be a digression, but I feel impelled to do so to respond to the scurrilous (and irrelevant) allegations against me that I am charged with criminal contempt.

13. In point of fact the U.S. Attorney's Office for the Northern District of New York has fully investigated Mr. Mobargha's allegations of criminal contempt against me, which were made years ago, and has found nothing to prosecute. At least, no one has showed up at my door with an arrest warrant.

14. The allegations against me are quite silly, in fact. For example, Mr. Mobargha has charged that I publicly filed a petition for a writ of certiorari with the U.S. Supreme Court, from an order of the Second Circuit, and that instead I should have filed the petition for certiorari under seal. In point of fact, the petition for certiorari *was* filed under seal, and the U.S. Supreme Court made it public, upon my unopposed motion requesting that it do so. My unopposed motion and the petition for a writ of certiorari that was made public by the U.S. Supreme Court may be found at http://richard-roe.com/uploads/SCOTUS_package.pdf.

15. This is to say, Mr. Mobargha has contended that I am in contempt for having had the temerity to move to allow the public docketing of a petition for a writ of certiorari filed with the U.S. Supreme Court, even though he did not oppose the motion, and even though the motion was granted by the U.S. Supreme Court. Now that's chutzpah.

16. If the court will indulge a further digression – The public docketing of the petition for certiorari was an apparent embarrassment to the judges in the Second Circuit, for the

    complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine. In practice, courts have tended to focus on the outrageousness element, the one most susceptible to determination as a matter of law.

petition showed that for over ten years after Felix Sater and Salvatore Lauria had pled guilty in secret in 1998 to defrauding investors out of $40 million, the judges and the prosecutors of the Eastern District of New York had allowed Felix Sater and his co-fraudster Salvatore Lauria to continue committing hundreds of millions of dollars of crimes. It was apparently even more embarrassing to the judges and prosecutors when the U.S. Supreme Court requested that the Solicitor General and Mr. Mobargha (who represents both Sater and Lauria) respond to my allegations of prosecutorial and judicial misconduct. And it was an apparent embarrassment to the judges and prosecutors that amicus briefs were submitted by the National Association for Victim Assistance and the Reporters Committee for Freedom of the Press supporting my position that it is flatly illegal to hide a conviction and sentencing for fifteen years, which garnered nationwide media attention.

17. The upshot was that on or about March 14, 2013, only days before the U.S. Supreme Court was to conference my petition for a writ of certiorari on March 22, 2013, Judge I. Leo Glasser of the Eastern District of New York capitulated, and finally made public the hitherto illegally hidden case, and had that order which made public the case and the documents therein transmitted to the U.S. Supreme Court, thereby mooting much of the issue, so cert was denied.

18. This is to say, I won, because the illegally secret case was finally, after fifteen years in hiding, made public. And frankly, the federal judges have not been pleased that I have caused public scrutiny of their illegal practices, in derogation of the First Amendment, by hiding cases off of the public docket, threatening with contempt those who would reveal the illegal practices, and issuing gag orders without First Amendment due process, with record findings capable of appellate review, and an opportunity to be heard.

19. And it's apparently an embarrassment to the judges and prosecutors that Congress is currently investigating these judicial and prosecutorial shenanigans. In this regard, the court is respectfully asked to take judicial notice of the May 1, 2015 testimony before the House Judiciary Committee, Subcommittee on the Constitution of former Federal Judge Paul Cassell, who was asked by the subcommittee about the illegal hiding of cases – such as Sater's and Lauria's – in the Eastern District of New York.[5]

20. As for Mr. Mobargha's civil contempt charges against me, there has also been no finding against me, notwithstanding that he lodged the charges against me years ago. In sum, he has lodged charges, and nothing has come of them. Perhaps he plans to wait another few years, and will keep trotting out the *ad hominem* (and entirely empty) claim that there are charges pending against me, merely because the DOJ and the judge involved may never actually issue a piece of paper that says "Case Closed."

---

[5] See http://judiciary.house.gov/index.cfm/hearings?ID=B855D611-BAC2-4F83-9D95-29A2873851D9. Questioning about this matter begins at about the 31/32 minute mark. Judge Cassell's written testimony can be found here: http://judiciary.house.gov/_cache/files/678b1baa-2d63-4a18-9651-832780ff38f0/05012015-cassell-testimony.pdf. His testimony about this case begins at PDF page 60. The court's attention is most respectfully referred to footnote 431, wherein Judge Cassell acknowledges that but for the courageous work of two attorneys, the information regarding the court's and the Justice Department's blatant violations of the CVRA and MVRA would not have come to light. Moreover, as to the illegal practices of federal judges issuing disregarding the First Amendment, see, *e.g.*, http://reason.com/blog/2015/06/19/government-stifles-speech ; http://popehat.com/2015/06/22/dojs-gag-order-on-reason-has-been-lifted-but-the-real-story-is-more-outrageous-than-we-thought/ . The illegal gag order discussed at these websites was issued by one of the same judges (Magistrate Maas) involved in the federal proceedings concerning defendant Kriss and plaintiff Lauria. Just as with the gag order issued against Reason magazine, Magistrate Maas has issued transparently illegal and unconstitutional gag orders against the undersigned, without conducting any due process hearings, or making record findings capable of appellate review.

**Conclusion**

For all the foregoing reasons, it is respectfully submitted that the plaintiff's complaint should be dismissed, inasmuch as even he acknowledges that he has done nothing to advance this case over the past year.

Dated: New York, New York
June 22, 2015

                                 Yours, etc.
THE LAW OFFICE OF RICHARD E. LERNER, P.C.

By:_____
Richard E. Lerner
Counsel for defendant Jody Kriss
1375 Broadway, 3rd Floor
New York, New York 10018
917.584.4864

To: (Via e-Filing)
Beys Stein Mobargha & Berland LLP
Attorneys for plaintiff Salvatore Lauria
405 Lexington Avenue, 7th Floor
New York, New York 10174
646.755.3600