# LAW OFFICE OF FREDERICK M. OBERLANDER

**FREDERICK M. OBERLANDER**
ATTORNEY-AT-LAW

fred55@aol.com

28 SYCAMORE LANE (PO BOX 1870)
MONTAUK, NEW YORK 11954
TELEPHONE 212.826.0357
FAX 212.202.7624

October 18, 2010

Brian Herman, Esq.
Morgan Lewis
(by Fedex)

Re: *Kriss et al. v. Bayrock Group LLC et al.*     <u>PLAINTIFFS' DEMAND FOR THE PAYMENT OF $105,000,000</u>
     SDNY 10 CIV 3959                                  <u>COMMUNICATION IN CONTEMPLATION OF SETTLEMENT</u>

Dear Mr. Herman:

Enclosed is the original complaint with certain changes made to facilitate settlement prior to public notoriety and the unstoppable national and international scandal that will result. However, before I address our agreement to try to cooperate in good faith:

## PLAINTIFFS' DEMAND FOR THE PAYMENT OF DAMAGES OF $105,000,000

Plaintiffs have pled and will well present a case for the jury award of damages of approximately $105,000,000, exclusive of prejudgment interest and attorneys fees and exclusive of other legal and equitable remedy. This includes trebling as provided by 18 USC §1964(c). Your client will be jointly and severally liable for all of the damages, and there are no considerations of causality.

This is based on our estimate of actual damages of $35,000,000 and includes assumptions as to available abatements of certain potential penalties and interest. We will provide a statement of damages on request or at the first settlement meeting, but for now understand that this figure of actual damages in very large part, other than as to those penalties and interest, represents the value of Plaintiffs' interests in Bayrock in 2007 at the time they were, in a word, stolen as part of the racketeering and state law wrongs. They are based on Plaintiffs' entitled share of the projected proceeds of Bayrock as Bayrock itself computed and disseminated in 2007. Your client has given deposition testimony in March that he was instrumental in the preparation of those estimates in 2007 and that they were plausible at the time, and plausibility is the legal standard.

I should refer you to the Arizona case *Rhue* with the comment that the state law is essentially identical in New York, including the plausibility standard and the measuring date prospective as of the date of the theft, and Arizona RICO is substantially the same as federal RICO.

Moreover, Arizona law will control as to Bayrock Camelback in any event. It is clear Restatement doctrine, and New York doctrine, that the law of the state of incorporation governs the internal affairs thereof, including without limitation the obligations of managers, owners, and officers to and among each other.

But your takeaway from *Rhue* should be focused on two points: First, <u>even though the projects went bankrupt subsequent to the theft from plaintiffs, since at the time of the theft the partnership had circulated financing documents claiming a large profit was expected, they were hung with that</u>; and second, <u>not only were the damages trebled under punitive damage law, they were again trebled, doubly, under RICO</u>. In contrast, Plaintiffs here demand only a single trebling.

**THE STANDSTILL AGREEMENT AND REDACTED COMPLAINT**

Plaintiffs have observed this agreement in good faith. The attached redacted "complaint" is for immediate dissemination, not service, upon all defendants to incent them into settlement discussions without the necessity for blowing this all up publicly.

First, allegations which quote from or describe the contents of the PSR, complaint, proffer, information, or cooperation agreement will be blacked out in standard redaction typeface. For your review, they are shown now as strike-through gray highlighted font.

While I was redacting it for this purpose, I took the opportunity to add additional allegations which well relate the human trafficking of minors and the bribery of Kazakh government officials to the racketeering. As you will see, they allege Bayrock or Arif or both owned most or all of Rixos, which along with the *Savarona* was the *situs* of the forced sexual servitude of the underage girls, reportedly videotaped; that Arif was known as part of the racketeering to embezzle money from Bayrock, such money itself the proceeds of racketeering crimes, to send to Fettah in Turkey in support of this, and that at least one Kazakh official received substantial money from Bayrock in 2007 for an ostensible "energy project" which disappeared off the face of the earth. The redacted version alleges this all relates per *Daidone*, and alleges violations of the Foreign Corrupt Practices Act which are either themselves RICO predicates or at least violate Travel Act predicates (in addition, of course, human trafficking and sexual exploitation of minors are RICO predicates, as are using vessels at sea for human servitude). These additions are in magenta highlight.

In other words, your client, and the other defendants, is(are) now alleged to have aggregate RICO liability to Plaintiffs and now others for not only the financial crimes already alleged but for international bribery, human trafficking, and the involuntary servitude and sexual exploitation of children. <u>There is no allegation that your client personally participated in these predicate trafficking and exploitation acts</u> (but of course overt participation is not a requirement for substantive or vicarious RICO or state law liability therefor).

I might add almost everything alleged is an extraditable offense pursuant to 32 UST 3111, the United States bilateral extradition treaty with Turkey. Of course Mr. Arif is already there, so this may or may not matter.

But for the rest of this letter I want to concentrate on your client's prior racketeering conviction and our standstill agreement and what must happen next.

*Reasoning by Induction and Deduction from the Transcripts and Other Public Documents*

As you know, all transcripts of all hearings in the OSC you brought are matters of public record. They are not sealed, nor could they have been without prior noticed public hearings and on the record factfinding, but in any event my counsel requested, and received on the record affirmation that they are not sealed.

As a result, the identity of your client is public record, because forever and through today, the case number, CR-98-1101, which you have captioned as "John Doe", nevertheless has shown all this time on PACER as captioned "United States of America vs. Felix Sater" (and in any event Judge Glasser declined to order anyone not to state that John Doe is your client).

As a result, the existence of his PSR, cooperation, information, complaint, and proffer are matters of public record because they were discussed in open court.

As a result, your client's conviction can be presumed, and certainly alleged, because he wouldn't have a PSR if he hadn't been convicted.

As a result, your client's conviction for violation of federal RICO predicated on securities fraud and money laundering can be presumed, and certainly alleged, because that's what most of his co-defendants were (publicly) convicted of.

As the PACER and physical (court storage) docket sheets are completely empty, one can presume, and certainly allege, that your client was not ordered to pay restitution, as that, and any other aspect of sentencing, would have had to have a docket entry, pursuant to *Hartford Courant*.
As the December 2007 New York Times article your colleague believes so credible relates, Mr. Klotsman, your client's co-defendant, was at the time in 2007 paying $625 per month restitution.

As the applicable restitution provisions, §3663A for example, and §5 of USGS, state that restitution may be ordered paid over time, but must be paid within 5 years of sentencing, one can presume that Mr. Klotsman's conviction, and your client's, occurred no earlier than December 2002.

As that is within the 10 year period of FRE 609, this will all be admissible (notwithstanding the size of the loss would justify an exemption in any event[1].

As the press accounts, congressional hearings, and other public documents show, the White Rock and State Street crimes extended through 1996 and into 1997, and one can presume, and certainly allege, that your client's racketeering charges cover that period.

As the MVRA (Mandatory Victims Restitution Act) applies to convictions for covered offenses which occurred after April 24, 1996, it would apply to your client's conviction for racketeering straddling that date, so long as racketeering (i) is a covered offense; (ii) is a continuous crime and thus there is no *ex post facto* implication; and (iii) *Booker* does not apply to the MVRA.

As the 2nd Circuit has ruled in *Cataggio* that pump and dump securities fraud racketeering convictions are covered offenses, the first leg is satisfied.

As the 2nd Circuit's rulings in *Butler* and *Samet* provide that racketeering is a continuous crime and that racketeering activity which straddles April 24, 1996 is covered by the MVRA, the second leg is satisfied.

As the 2nd Circuit has ruled in *Reiffler* that *Booker* does not apply to the MVRA, the third leg is satisfied.

As all three legs are satisfied, your client should have been ordered to pay restitution in the full amount of the loss, which can well be alleged from public records to have been at least $40,000,000. See §3663A.

As the other co-defendants who were convicted were ordered to pay restitution, we can presume, and certainly allege, (i) that the mandatory nature of the restitution was apparent to the Court at the time, else why would everyone but your client be ordered to make restitution (again, this is all well supported by inductive and deductive reasoning without recourse to the PSR); and (ii) that the Court found the administrative burden exclusions inapplicable.

As your client took about $8,000,000 or so from Bayrock, plus whatever he took from Michael Samuels directly or indirectly through the FL deal (ask him to explain this), and from Mirax (ask him to explain this too), and almost all of this occurred by the end of 2007, possibly some in 2008, we can certainly presume and allege that, given the presumptive earliest possible date of his conviction as December 2002, had $40,000,000 restitution been ordered, the victims would have actually received a very substantial amount within the 5 year window, certainly $10,000,000 or more can be alleged.

All the above can be alleged without reference to the PSR. Of course, as you well know, the PSR is absolutely damning, but I can allege the above, in the following context, without violating any existing or possible court order or standstill agreement:

---

[1] When asked by Mr. Bernsteins counsel of record (in other words, not me) during his March 2010 deposition if he had been convicted of any crime other than assault with a deadly weapon, your client was kind enough not only to decline to answer on 5th Amendment grounds, but to state that in doing so he was relying on your firm's advice that he could so decline. In other words, he waives privilege.

*Pretext and Face Saving*

Your initial attempt to conceal all this was predicated, to the extent any legal basis was stated or discernible, on some concept of *in rem* jurisdiction or global gag orders or some nonsense that somehow dissemination of information of public concern contained in lawfully obtained documents can be prior restrained when inconvenient for your client.

When that failed, you and Judge Glasser decided that the "danger" to your client of revealing his "cooperation" justified prior restraint. This is pretext. And it is shameful.

It is shameful because there is ample federal court precedent supporting a First Amendment right to disclose the names of undercover police operatives and undercover informants, some of which I cited in prior letters to the Court. But it's worse than that.

It is shameful because no one bothered offering any actual evidence of any threat, nor was any finding made of substantial likelihood of success (in fact Judge Glasser went out of his way to say that the probability of success was there, or it wasn't).

It is shameful because it's all pretext. What my clients believe happened here is simple.

They believe Judge Glasser had a predisposition to "reward" informants, as well reported in the media, for example in the case of Sammy Gravano, who was sentenced in 1994 without any order of restitution and allowed to keep his millions of dollars he took as a Gambino underboss for, *inter alia*, dozens of contract killings (which would itself support an allegation that Sater was also allowed to keep millions), which was then up to the trial judge's discretion. In fact, such failures to award restitution was what prompted Congress to pass the MVRA to remove it from the judge's discretion and make the order mandatory.

They believe that your client was rewarded for his cooperation by being allowed to keep the millions of dollars he admitted taking from the White Rock racketeering enterprise and by being allowed to evade what was then mandatory restitution, *inter alia* concealing by "super sealing" his entire criminal process.

The PSR as you well know is a roadmap to all this, which is why there is no chance you will withstand First Amendment scrutiny of the public interest attendant to disclosure of all this and the PSR.

Fortunately for your client's thousands of victims, the Supreme Court just this June ruled in *Dolan* that the 90 day time limit for a judge to order restitution is not a barrier to, and that a judge retains the right to, order restitution at any time, so when all this becomes public any of them can petition Judge Glasser for restitution orders, notwithstanding this is 15 years after the offense.

But wait. There's more.

Your client was convicted of racketeering predicated on securities fraud. Not only the conviction, but the entire criminal proceeding against him, was covered up. No victim was told. No victim was informed. No victim could have found out had they gone looking, and for all we know some or all of them did.

Of particular interest here is §1964(c), the civil damage section of RICO, particularly insofar as the PSLRA limited the use of predicate acts of securities fraud in civil RICO actions (emphasis added).

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that **no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.**

You see, your client's victims were deprived of their right to sue him in RICO for treble damages because his conviction, a substantive element of his civil liability, was wrongfully and intentionally concealed.

Or in alternate terms, your client's victims were deprived of, and continue to be deprived of, since concealment is a continuing offense, their knowledge of, and thus their right to, a <u>chose in action</u>.

And interestingly, the 2nd Circuit ruled 20 years ago, in *Porcelli*, that depriving someone of a chose in action by wrongfully concealing it from them states a cause of action in RICO (assuming jurisdictionally significant use of mail and wire).

I'm telling you that your client remains liable for continuing, related racketeering offenses, to his victims, and not only by the doctrine of continuous concealment as a continuing RICO predicate, but by any concept of equitable tolling[2].

Since you know the PSR shows his responsibility can be as much as $80,000,000, not just $40,000,000, that makes him potentially liable for $240,000,000.

But wait. There's more.

The leading cases on the issue, in SDNY, *Bingham*, and in EDNY, *Chubb*, state that prejudgment interest is available in RICO in exceptional cases, such as where the defendant is responsible for delaying justice. I think it's clear this would be such a case.

That makes him potentially liable for something in the vicinity of $600,000,000. Exclusive of counsel fees.

It also makes liable anyone else who conspired with him or participated with him in this racketeering, substantively or vicariously, based on combinations of relatedness and causation, and outside of RICO makes liable everyone involved in the fraudulent conveyance, conversion, or transfer of his assets, as a matter of state law, insofar as these claimants are and remain creditors under New York law.

**NEXT STEPS**

This was never about some purported threat to his safety. As I said in my last letter to Judge Buchwald, these would have to be the most stupid criminals in the history of crime if they haven't figured out that Sater cooperated. We're supposed to believe that none of his co-defendants noticed that he was testifying against them, and none of them noticed that they (those who did) went to jail and he didn't?

This is a cover-up of his evasion of restitution and liability for his racketeering crimes, part of the obvious result of the super-sealing of the criminal proceedings.

So long as I have no obligation to disclose these facts, and my clients have no obligation to disclose them, and Judge Buchwald with full disclosure signs off on this as appropriate, we will cooperate with this avoidance of liability for his racketeering in the 1990's. But in return he cannot evade liability for his racketeering in the 2000's, at least to Plaintiffs and those to whom they owe duties.

In return you will, as a threshold act to show good faith, cooperate by immediately executing a companion tolling agreement, a stipulation of further extension of time to serve, an agreement to accept service on Mr. Sater's behalf, will join in all concomitant requests to Judge Buchwald, and will otherwise acting with all deliberate speed to get every other defendant tolling, stipulating, and joining, and then "in there" negotiating while this is all tolled and sealed and gagged.

---

[2] Which in the federal context applies to the government as well as to private litigants, per *Irwin*.

That includes Mr. Samuel, whom we have sued personally and against whom we will amend to include RICO conspiracy liability.

Although you don't know of it, I know of (but it is work product and my client's control whether I can disclose it) multi-million dollar cross-claims your client has against at least some of these Defendants. Perhaps that will further incent him to cooperate.

On which note, as I already told you, my clients are indifferent as to which Defendants write the checks, and if your client can get out of this without paying much, if anything, that's fine with them. They are also well aware that your client lacks the means to pay what is demanded, and thus are proposing he pay at least in very principal part with his cooperation, something he no doubt will understand.

Start working the phones. Based on our negotiations with Mr. Schwarz and counsel, my clients and I are relatively certain Bayrock Group LLC and Mr. Schwarz (trust me, Mr. Halberg, too), will be very eager to go along and help, as will Akerman Senterfitt. I suspect Mr. Sater will convince Mr. Samuel as well.

I remind you my clients are not interested in one dime they are not entitled to by law and this is no extortion or improper threat. They simply demand for what they are entitled to: one billion dimes[3].

### ANTI-SPOLIATION AND DEMAND FOR TURNOVER

You and your client are on notice to preserve all books and records, regardless of claim of privilege, whether in your client's possession and control or yours, and if such whether or not work product, for purposes of this litigation and for presumptive demand by federal, state, and local agencies and Interpol.

Sincerely yours,

Frederick M. Oberlander
Attorney-at-Law

---

[3] At this time, plaintiffs will very favorably consider settling the entirety of all claims known and unknown for their actual damages of $35,000,000. This is not an offer at common law or for purposes of FRCP 68. It is the least amount which plaintiffs would be willing to accept for a quick settlement that avoids the dissemination. Please note this or any settlement may be subject to judicial approval.