**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

JJ KRISS and MICHAEL "CHU'DI" EJEKAM, et al.,

                    Plaintiffs,

vs.

BAYROCK GROUP LLC, et al.,

                    Defendants,

             and

BAYROCK  GROUP LLC, et al.,

                    Nominal Defendants.

-------------------------------------------------------------------X

          **10 Civ. 3959 (LGS) (FM)**

**PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF DEFENDANT FELIX SATTER (AKA FELIX SATER) TO THE AUGUST 13, 2015 REPORT AND RECOMMENDATION OF CHIEF MAGISTRATE JUDGE FRANK MAAS**

**TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................................................................1

II.  STATEMENT OF FACTS ...................................................................................................4

    A. Background ...............................................................................................................4

    B. Proceedings Before Chief Magistrate Judge Frank Maas..................................................6

    C. Chief Magistrate Judge Maas' August 13, 2015 Report & Recommendation................11

III. THE COURT SHOULD ADOPT THE AUGUST 2015 R&R BECAUSE IT CONTAINS
    NEITHER CLEAR ERROR NOR RECOMMENDATIONS THAT ARE CONTRARY TO
    LAW .................................................................................................................................12

    A. Sater Does Not Have Standing to Object on Behalf of Other Defendants......................13

    B. There Has Been No Violation of the March 2015 Order Requiring Judge Maas
      (or This Court) to Deny Plaintiffs Leave to File Their SAC...............................…..14

    C. The March 2015 Order is Consistent with the August 2015 R&R, and Therefore Forms
      No Basis for Finding Error in the August 2015 R&R………......…………………..…..15

    D. Judge Maas Properly Applied the Law Governing Leave to Amend
      Complaints…………………………………………………….………......…………………17

IV. THE COURT SHOULD REJECT SATER'S REQUEST FOR A DISMISSAL OF THE
    CLAIMS AGAINST HIM AS A SANCTION AGAINST PLAINTIFFS...............................19

    A. No New Sanctionable Conduct by Plaintiffs Is Before the Court...................................19

    B. Sater Comes to Court with Unclean Hands, Precluding Him From Obtaining Dismissal
      of Plaintiffs' Claims Against Him as a Sanction…………......…………………….…..22

V.  CONCLUSION.................................................................................................................25

**TABLE OF AUTHORITIES**

**Cases**

*Abu-Nassar v. Elders Futures*, 1994 U.S. Dist. LEXIS 11470 (S.D.N.Y. Aug. 17, 1994) ..........20, n.5

*Blum v. Schlegel*,1996 U.S. Dist. LEXIS 21598 (W.D.N.Y. May 9, 1996) ...............................25, n. 7

*Brentwood Pain & Rehab. Servs., P.C. v. Allstate Ins. Co.*, 508 F. Supp. 2d 278
    (S.D.N.Y. 2007) ........................................................................................................16,22

*Colliton v. Cravath*, 2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sept. 23, 2008).........................25, n. 7

*In re Facebook, Inc., IPO and Secs. and Derivative Litig.*, 986 F. Supp. 2d 428
    (S.D.N.Y. 2013) ................................................................................................................17

*Fayemi v. Hambrecht and Quist, Inc.*, 174 F.R.D. 319 (S.D.N.Y. 1997) .....................................22,25

*Feehan v. Feehan*, 2010 U.S. Dist. LEXIS 100422 (S.D.N.Y. Sept. 22, 2010)..................................20

*Fielding v. Tollaksen*, 510 F.3d 175 (2d Cir. 2007) ....................................................................12, n.2

*Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287 (S.D.N.Y. 1996) ...............................22

*Lyondell-Citgo Ref., LP v. Petroleos de Venez., S.A.*, 2005 U.S. Dist. LEXIS 6533
    (S.D.N.Y. Apr. 12, 2005)..................................................................................................12

*Marfia v. T.C. Ziraat Bankasi, New York Branch*, 100 F.3d 243 (2d Cir. 1996) ...............................21

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992).......................................................................17

*Mitra v. State Bank of India*, 2005 U.S. Dist. LEXIS 19138 (S.D.N.Y. Sept. 6, 2005) ....................17

*Pan Am. World Airways v. Int'l Bhd. of Teamsters*, 894 F.2d 36 (2d Cir. 1990) ........................20, n.5

*In re PCH Assoc.*, 949 F.2d 585 (2d Cir. 1991) ................................................................................16

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 587 F. Supp. 2d 548
    (S.D.N.Y. 2008).................................................................................................................22

*Roe v. United States*, 428 F. App'x 60 (2d Cir. 2011).........................................................................5

*Robert's Farm Equip., Inc. v. William Hackett Chains, Inc.*, 2011 U.S. Dist. LEXIS 88984
    (E.D. Va. July 19, 2011)....................................................................................................13

*Robles v. Archer Western Contrs., LLC*, 2015 U.S. Dist. LEXIS 109868
    (N.D. Tex. Aug. 19, 2015).................................................................................................13

*Rural Water Dist. No. 4 v. City of Eudora*, 2008 U.S. Dist. LEXIS 58548 (D. Kan. July 16, 2008)..15

*Sandau v. Wood*, 2009 U.S. Dist. LEXIS 98057 (D. Or. Oct. 19, 2009)............................................13

*Sang Lan v. Aol Time Warner, Inc.*, 2012 U.S. Dist. LEXIS 65307 (S.D.N.Y. May 9, 2012) ...........12

*Sokolski v. Trans Union Corp.*, 178 F.R.D. 393 (E.D.N.Y. 1998) .....................................................17

*Soroof Trading Dev. Co. v. GE Microgen Inc.*, 2014 U.S. Dist. LEXIS 113078
    (S.D.N.Y. Aug 14, 2004).............................................................................................12, n.2

**Rules & Statutes**

Fed. R. Civ P. 11.................................................................................................25, n.7

Fed. R. Civ P. 15.......................................................................................................15

Fed. R. Civ. P. 72(a) .......................................................................................12, 13, 14

New York CPLR §205(a) ............................................................................ 5, 6 & n. 1

# I. INTRODUCTION

In late March 2015, Plaintiffs Jody Kriss ("Kriss") and Michael Chu'di Ejeckam

("Ejekam"), concluded that their former counsel, Frederick Oberlander ("Oberlander"), was

conducting this litigation in a manner they believed was not in their best interests. They decided

it would be best to retain new counsel to represent them in this action. As recognized by the

August 13, 2015 Report and Recommendation submitted to this Court by Chief Magistrate Judge

Frank Maas (the "August 2015 R&R"), Plaintiffs' retention of the firm submitting this response,

Simon & Partners LLP, has dramatically transformed this litigation.

In the months since this firm was retained, Mr. Kriss conducted a thorough search of his

electronic devices, found copies of sealed documents that had been sent to him by Oberlander

that he had not realized he possessed, and returned them to Sater. Moreover, Plaintiffs submitted

a Proposed Second Amended Complaint (the "SAC") that, unlike its predecessor, is coherent and

cogent, and excludes the sealed and privileged information obtained by Oberlander. In short,

Defendants have received what they have sought for years: the removal of Oberlander from this

case, and a lucid complaint that does not expose sealed and privileged information that was

obtained from a former employee of Defendant Bayrock Group, Inc., Joshua Bernstein

("Bernstein").

Plaintiffs' recent actions have put this litigation back on track to be adjudicated on the

merits – claims and defenses alike. Rather than welcoming the opportunity to clear his name,

Defendant Felix Satter (aka Felix Sater) ("Sater") now seeks to stall the litigation by demanding

that the Court and the parties relitigate issues that have held up this case for years. Sater's

motive is painfully obvious. Now confronted with an intelligible pleading that alleges that he

has defrauded scores of individuals and entities, and threatened at least two individuals with

bodily harm – and which can be filed publicly – he seeks to shut this case down at all costs, whether a legal basis to do so exists or not.

Plaintiffs respectfully ask this Court to adopt the August 2015 R&R and thereby soundly reject Sater's desperate efforts to derail this litigation. Sater's Objections to the August 2015 R&R (the "Objections") provide neither a legal nor an equitable basis for rejecting Judge Maas' recommendations or for granting Sater's request for a dismissal of the claims against him in this matter. The Objections set forth no clear error committed by Judge Maas, nor any legal infirmity in the R&R. Grasping at straws, Sater invokes the "law of the case" doctrine, claiming that a limited ruling by this Court to strike specific portions of Plaintiffs' First Amended Complaint (the "FAC") – a ruling aimed at allowing the case to proceed with the filing and service of a complaint – implicitly denied Plaintiffs any future leave to amend their complaint. Unfortunately for Sater, the ruling cannot be stretched so thin as to incorporate such a broad interpretation. Moreover, he never raised this legal argument before Judge Maas and thus cannot do so now.

As far back as 2013, Defendants including Sater have (1) apprised both Your Honor and Judge Maas of Oberlander's misconduct with respect to documents given to him by Bernstein (the "Bernstein Documents"), (2) submitted Bernstein's September 2011 affidavit which contains allegations about Plaintiff Kriss' interactions with Bernstein and (3) sought to convince the Court that these compelled dismissal of this action. Both Your Honor and Judge Maas have explicitly rejected these entreaties in written decisions following Second Circuit precedent. The "law of the case" doctrine, upon which Sater seeks to rely, in fact militates *against* the relitigation of the question of dismissal as an appropriate sanction.

2

Accordingly, this Court has only two options – adopt the August R&R and grant Plaintiffs leave to file the SAC or require them to litigate their claims using an incomprehensible pleading drafted by their former counsel. Sater's suggestion that Plaintiffs will simply fold if they are required to rely upon the FAC in its abbreviated form is nothing more than wishful thinking. Plaintiffs are prepared to pursue their claims zealously under any circumstances. Plaintiffs submit that proceeding with the FAC as the operative pleading will cause numerous headaches for the Court and the Defendants, not just Plaintiffs.

The fact that on May 1, 2015, Plaintiff Kriss complied with an April 30, 2015 order of Judge Maas to turn over copies of any of the Bernstein Documents in his possession – about which the Objections make great play – should in no way alter this Court's analysis. No Defendant raised Kriss' return of the documents as a basis for denying Plaintiffs leave to amend when the question was before Judge Maas, and thus Sater should be precluded from raising it now. Similarly, the fact that *four months after the return of the documents, and 14 days after Judge Maas ruled against him*, Sater decided to run to Judge Cogan of the Eastern District to seek a contempt order should not be viewed as mandating either a rejection of the August 2015 R&R or a dismissal of the claims against Sater. The August 2015 OSC, an event initiated by Sater himself *after Judge Maas issued the August 2015 R&R*, was not before Judge Maas when he issued his report and recommendation. Allowing these two events to factor into the Court's review of the August 2015 R&R would effectively undermine Judge Maas' authority over pretrial matters in this action.

Plaintiffs respectfully ask the Court to deny Sater's equity-based request to dismiss this action based on Plaintiff Kriss' May 2015 return of Bernstein Documents. As set forth in his affidavit accompanying this Response, Kriss does not recall being instructed, prior to Judge

3

Maas' April 30, 2015 order, to conduct an exhaustive search of all of his electronic devices to locate copies of any Bernstein Documents. (Affidavit of Jody L. Kriss sworn to on September 28, 2015 ("Kriss Aff.") ¶¶ 7-9). Prior to the search, Kriss was unaware that copies of documents from the Bernstein hard drive that Oberlander emailed to him still existed on his electronic devices. (Kriss Aff. ¶ 10.) Kriss has neither disseminated the documents in question, nor did he read, review or access these documents since he reviewed the FAC, at Oberlander's request, in 2013. (Kriss Aff. ¶ 11.) Thus Sater has not suffered any harm from Kriss' failure to return the documents to him sooner. To penalize Kriss for complying with the April 2015 Order would create a terrible precedent, sending a message to parties considering coming into compliance with court orders after a period of non-compliance that the price of reaching compliance is too high to be considered.

Finally, as explained *infra* at 22-25, under the doctrine of unclean hands, Sater is unable to obtain any new sanction against Plaintiffs.

## II. STATEMENT OF FACTS

### A. <u>Background</u>

In this action Plaintiffs allege, *inter alia*, that they, like other individuals, investors and banks, were financially injured when they transacted with Defendants, including Sater, because, in part, Sater had concealed his 1998 RICO conviction based on his masterminding of a securities fraud and money laundering scheme from them. (ECF No. 68, at 2; Excerpts from FAC, Affirmation of J. Evan Shapiro ("Shapiro Aff."), Ex. 1; *see also United States v. Sater*, No. 98 Cr. 1101 (the "EDNY Action"), ECF Nos. 2, 18, 92). During the time period at issue in this case, Sater served as the Managing Director of Defendant Bayrock Group, Inc. ("Bayrock"), a real estate investment and development company. (Id.) In their FAC, Plaintiffs allege that they

provided executive financial services to Bayrock and were defrauded of funds due them under the agreements that governed the provision of those services. (Shapiro Aff. Ex. 1, at 75-76). Moreover, they allege that Sater was behind the frauds that injured them (Shapiro Aff. Ex. 1), frauds that are consistent with the criminal activity for which Sater was convicted before Judge Glasser of the Eastern District in 1998. (See, e.g., EDNY Action, ECF No. 18).

At issue since this case has been filed is the use of the Bernstein Documents in the drafting and content of Plaintiffs' initial complaint, filed on May 10, 2010, and the FAC. (ECF No. 68, at 1-2). Judge Buchwald, to whom this matter had been assigned originally, requested in 2010 that Oberlander propose a version of the complaint that specifically cited public sources for any allegations that "generally" would be treated as sealed or privileged. (ECF No. 68, at 2.) Oberlander eventually offered the FAC, which this Court determined had not complied with Judge Buchwald's directive. (ECF No. 68, at 7).

This Court halted the distribution of both complaints because of the relationship between those pleadings and the Bernstein Documents. (ECF No. 68, at 3-4, 7). It did so after the parties went before Judge Glasser to litigate the use of sealed documents relating to Sater's conviction that represent some of the Bernstein Documents. (Id. at 7). During those proceedings, Judge Glasser found that Bernstein had "wrongfully taken" the Bernstein documents. *See Roe v. United States*, 428 F. App'x 60, 64 (2d Cir. 2011). Although Judge Glasser made several findings about Oberlander's procurement, knowledge and use of the sealed documents, he made no findings about either Plaintiff. *See id.* At a hearing held on June 21, 2010 to determine whether the Bernstein Documents were obtained illegally, Judge Glasser stated to the attorney representing Plaintiff Jody Kriss – Stamatios Stamoulis, "I don't think you have a dog in this fight" (EDNY Action, ECF No. 49, at 116:2-7).

5

On May 31, 2013, this Court granted Plaintiffs leave to file their FAC under seal, and

Plaintiffs did so shortly thereafter. (ECF Nos. 38, 39). Having received a copy of the FAC in

April 2013, on May 9, 2013, Bayrock sent the Court a letter objecting to both the FAC and

Oberlander's actions (the "May 2013 Bayrock Letter"). (See ECF No. 68, at 2; Shapiro Aff. Ex.

2). The letter asserted that the FAC incorporated or was "otherwise devised from" privileged

and confidential information and thus failed to meet Judge Buchwald's demands, and sought

both dismissal of the FAC and the case, as well as Oberlander's disqualification from the case.

(ECF No. 68, at 8; Shapiro Aff. Ex. 2 at 1-2). Exhibit A to the May 2013 Bayrock Letter,

Bayrock complained that the FAC was "nearly unintelligible" and listed the FAC paragraphs to

which it objected on privilege and confidentiality grounds. (ECF No. 68, at 8; Shapiro Aff. Ex.

2, at 2, Ex. A). Bayrock urged that the Court, at a minimum, to require Plaintiffs to identify the

basis of the information contained in the paragraphs listed in Exhibit A (ECF No. 68, at 8).

Satter joined in Bayrock's objections with a letter to the Court before the case was referred to

Judge Maas. (See Transcript of the Sept. 11, 2013 Conference before Chief Mag. Judge Frank

Maas, ECF No. 61, at 3:22-4:11.)

### B.    Proceedings Before Chief Magistrate Judge Frank Maas

On July 23, 2013, the case was referred to Judge Maas for general pretrial purposes,

including "resolution of the issues that are the basis for [Bayrock's] objections to the public

filing of the FAC." (ECF Nos. 52, 53). On September 11, 2013, Judge Maas held a status

conference in the case. (Jan 2015 R&R, ECF No. 97, at 8). Counsel for Satter, Michael Beys

and Nader Morbagha of the firm Beys, Stein, Mobargaha & Berland, appeared at the September

11 conference. (ECF No. 61, at 2). During the hearing, they submitted an affidavit of Joshua

Bernstein sworn to in September 2011 (the "Bernstein Affidavit") to Judge Maas for his

6

consideration. (ECF No. 61, at 24:9-14.) During the conference, Judge Maas ordered the Plaintiffs to "'address whether the paragraphs [listed in the Exhibit A]' in fact came from Bernstein, by indicating whether 'there [was also] a public source . . . for the information' set forth therein." (January 2015 R&R, ECF No. 97, at 5).

Counsel for Plaintiffs failed to comply with Judge Maas' request despite numerous opportunities afforded them. (ECF No. 97). Judge Maas issued a Report and Recommendation on May 29, 2014, which relied upon the Bernstein Affidavit in addressing the "the manner in which Plaintiffs and their counsel came to possess the sealed criminal case materials and other allegedly privileged information" that formed the basis of Defendants' objections to the FAC. (ECF No. 68, at 4.) In the May 2014 R&R, Judge Maas afforded Plaintiffs and their counsel one last opportunity to comply with the directive that they cite the specific sources of each of the allegations to which the Defendants had objected. (ECF No. 68, at 12.) Unfortunately, Oberlander failed to provide Judge Maas with a chart containing such detailed information. (ECF No. 97).

Thereafter, on January 14, 2015, Judge Maas issued another Report and Recommendation designed to move the litigation forward. In it, he found that the Court was still "unable to determine the extent to which the Plaintiffs' allegations are improperly based on purloined information" because Oberlander had refused to cooperate with the Court. He wrote:

> In these circumstances, the equities suggest that the only viable course of action is to strike from the FAC the factual assertions in Exhibit A whose provenance has been challenged by Bayrock... Ultimately, at this late stage, there does not appear to be any other means to ensure that the Plaintiffs are not impermissibly relying on sealed and other confidential information that Mr. Oberlander improperly obtained from Bernstein.

(ECF No. 97, at 20-21). He thus recommended that the Court "strike from the FAC each paragraph to which Bayrock has objected on privilege, work product, or confidentiality grounds." (ECF No. 97, at 21). Judge Maas also lamented that he could not have proposed a more limited order, one that only ordered redacted those paragraphs that he himself had determined were based on privileged, sealed or confidential materials. (ECF No. 97, at 21).

In the January 2015 R&R, Judge Maas explicitly refused to grant Defendants' joint requests to dismiss the case. He noted that the Second Circuit "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, and that dismissal be deployed as a remedy only in extreme situations." (ECF No. 97, at 15 (internal quotations and quotation marks omitted)). Judge Maas found that "an outright dismissal of the FAC" was "not warranted" as "it is entirely possible that the Plaintiffs were wronged, have viable claims for relief, and also have a good-faith basis for asserting those claims, wholly apart from" the Bernstein Documents (ECF No. 97, at 15).

In a March 23, 2015 Order and Opinion (the "March 2015 Order") this Court adopted the January 2015 R&R in its entirety. (ECF No. 126 at 1). The Court explicitly rejected the joint objections seeking dismissal of the FAC. (ECF No. 126 at 5) ("Bayrock argues that … [ ] the FAC should be dismissed in its entirety. The Report appropriately finds that remedy to be too extreme."). The Court also rejected Defendants' request that upon adoption of the January 2015 R&R Plaintiffs should "be granted leave to amend" as "premature absent a motion seeking leave to amend." (ECF No. 126 at 5).

The January 2015 R&R, and the March 2015 Order, struck the paragraphs, footnotes and exhibits listed in Exhibit A to Bayrock's May 9, 2013 letter from the FAC. (ECF No. 97, at 21; ECF No. 126 at 12.) The March 2015 Order makes clear that both it, and the January 2015

R&R, did so as a sanction for Oberlander's failure to comply with Judge Maas' orders

concerning the sources of the information upon which the disputed content of the FAC relied.

(ECF No. 126 at 12.) ("The Report's recommended sanction is strengthened by Bayrock's

claims of privilege and work product, but does not depend on them. Rather, the Report

recommends exercising the inherent powers of the Court in sanctioning Plaintiffs for consistently

flouting orders of the Court as fully described above.") In concluding the March 2015 Order, the

Court emphasized the importance of "mov[ing] the case forward." (ECF No. 126 at 12.)

In March 2015, Plaintiffs discharged Oberlander and retained Bradley D. Simon of

Simon & Partners LLP to represent them. (ECF Nos. 131-33). Plaintiffs' new counsel requested

by letter an opportunity to file a second amended complaint. (ECF No. 135). On March 27,

2015, Judge Maas ordered that no papers be served or filed between that date and a status

conference that he ordered to take place on April 14, 2015. (ECF No. 139). During the

conference, Bayrock and Satter once again requested a dismissal of the case; however, Judge

Maas confirmed that both he and the Court had already rejected that request as too severe.

(Transcript of April 14, 2015 Conference, ECF No. 140 at 36:13-17) ("[T]here are several letters

saying, well, the solution here is not just to redact the complaint; the solution is to dismiss the

complaint. And neither I, nor, to my knowledge, Judge Schofield has accepted that, so that

argument is a nonstarter.")

At the April 2015 conference, Judge Maas instructed Mr. Simon to file a proposed second

amended complaint under seal by June 5, 2015. (ECF No. 140 at 39-40). On April 30, 2015,

Judge Maas issued an order stating that "By June 5, 2015, Plaintiffs shall file under seal their

second amended complaint…" (ECF No. 142, at 1). On June 5, 2015, Plaintiffs filed under seal

the SAC. (ECF Nos. 178, at 2; 160). The SAC includes claims that are based upon events

involving Plaintiffs that are discussed in the FAC. (ECF No. 160). However, the SAC dispenses

with the obscure, difficult-to-comprehend RICO claims based on violations of federal tax and

money laundering statutes found in the FAC. (ECF No. 160). The SAC replaces these with

similar claims based on a series of frauds committed by Defendants, and a series of violations of

the National Stolen Property Act, 18 U.S.C. §§ 2314 and 2315 related to those frauds. (ECF No.

160). The SAC also contains state law claims based on the same set of facts as are the SAC's

RICO claims. (ECF No. 160).[1]

     After the (sealed) filing of the proposed SAC, the parties conferred with respect to

Defendants' ongoing concern that any second amended pleading in the case might contain the

sealed and privileged information about which Defendants have complained since 2010. (ECF

No. 178, at 2.) During this process, Plaintiffs provided Defendants with a 17-page chart setting

forth the origin of the information contained in paragraphs of the SAC to which Defendants had

objected in Bayrock's May 2013 letter and Exhibit A thereto. (ECF No. 178, at 3.) During the

process, Defendants failed to identify any such information in the SAC that would require the

SAC to be filed under seal, or any content thereof that could only have been sourced from such

information. (ECF No. 178, at 3; Plaintiffs' letter to Chief Mag. J. Maas dated July 8, 2015,

Shapiro Aff. Ex. 3, at 2-3).

     In a letter to the Court submitted jointly by the parties on July 17, 2015, Bayrock stated

that it was "highly skeptical" that certain paragraphs in the SAC to which it had objected were,

---

[1] The FAC is 164 pages which contain many single-spaced quotations and references. The SAC
is 104 pages. Approximately 9 pages of the SAC are comprised of charts located in the Counts
section that summarize allegations elsewhere in the Complaint for the purpose of making it
easier for the reader to recall which of the 16 defendants named in the Complaint are alleged to
have committed specific actions forming the basis of different legal claims. (*See* ECF No. 160 at
80-82, 84-88, 90-91, 102). Approximately 12 pages of the SAC set forth Plaintiffs' state law
claims. (*See* ECF No. 160 at 91-102). The FAC did not include Plaintiffs' state law claims in its
Counts section.

as Plaintiffs asserted in July 8, 2015 letter, based on Kriss' recollection. (Shapiro Aff., Ex. 4, at 3-4). However, Bayrock's submission failed to identify specifically anything that caused such skepticism. (Id. at 3-4). Without providing any examples, Bayrock also argued that in their SAC, Plaintiffs had "simply reword[ed] and disguise[ed] the stricken allegations" from the FAC. (Id. at 4). One attorney representing, Michael P. Beys, Satter participated in the joint letter, echoing the assertions made by Bayrock. (Id. at 4-5).

The other attorney representing Satter, Robert S. Wolf, submitted its own letter dated July 17, 2015, objecting that the SAC contained legal claims not found in the FAC. (Shapiro Aff. Ex. 5). It further argued that "Plaintiffs' filing of an entirely new complaint represents a bad faith attempt to circumvent" the Court's March 2015 Order. (Id. at 5). Wolf's July 17, 2015 letter does not refer to the "law of the case" doctrine.

### C.   Chief Magistrate Judge Maas' August 13, 2015 Report & Recommendation

On August 13, 2015, Judge Maas issued a Report and Recommendation (the "August 2015 R&R") recommending that Plaintiffs be granted leave to file the SAC, with minor changes that Plaintiffs agreed to make during the meet-and-confer process. (ECF No. 178, at 5-6). He commended Plaintiff's new counsel for having "deconstructed the rather complex claims advanced by his predecessors, returned any allegedly purloined documents in the plaintiffs' possession, drafted a clear (albeit lengthy) SAC, dismissed a related action that also had been stalled, and provided every indication that the plaintiffs are now prepared to prosecute this case." (Id., at 3-4). Judge Maas rejected Defendants' renewed calls for dismissal recommending that Oberlander's "sins" not be "visited upon" Plaintiffs given the Second Circuit's preference for litigation on the merits. (Id. at 4).

11

On September 14, 2015, Sater filed the Objections, arguing that (1) Plaintiffs have violated the March 2015 Order, (2) the "law of the case" doctrine prohibits the Court from adopting Judge Maas' recommendation that Plaintiffs be granted leave to file the SAC, and (3) the case should be dismissed because of Plaintiffs' past conduct and in light of the August 2015 OSC.

## III. THE COURT SHOULD ADOPT THE AUGUST 2015 R&R BECAUSE IT CONTAINS NEITHER CLEAR ERROR NOR RECOMMENDATIONS THAT ARE CONTRARY TO LAW

As noted by Sater, the Objections are brought under Fed. R. Civ. P. 72(a), which provides with respect to a magistrate judge's order on a "nondispositive matter" that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."[2] "[A] magistrate judge is afforded broad discretion in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused. Thus, a party seeking to overturn or modify a discovery order bears a heavy burden." *Lyondell-Citgo Ref., LP v. Petroleos de Venez., S.A.*, 2005 U.S. Dist. LEXIS 6533, at *9-*10 (S.D.N.Y. Apr. 12, 2005) (internal quotation marks and citation omitted) (upholding Magistrate Judge Peck's ruling denying a defendant leave to file an amended answer and counterclaim). It is unsurprising, given the nature of that burden, that it is nearly impossible to find a decision in which a federal district judge has reversed a federal magistrate judge's recommendation to ***grant*** a party leave to amend a pleading. * Sater has failed to cite a single one. By contrast, district courts routinely adopt the recommendations of federal magistrates to grant such leave. *See, e.g., Sang Lan v. Aol Time Warner, Inc.*, 2012 U.S. Dist. LEXIS 65307 (S.D.N.Y. May 9, 2012);

---

[2] "A motion to amend a complaint is non-dispositive." *Soroof Trading Dev. Co. v. GE Microgen Inc.*, 2014 U.S. Dist. LEXIS 113078 at *3 (S.D.N.Y. Aug 14, 2004) (citing *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007).

*Robles v. Archer Western Contrs., LLC*, 2015 U.S. Dist. LEXIS 109868 (N.D. Tex. Aug. 19, 2015); *r's Farm Equip., Inc. v. William Hackett Chains, Inc.*, 2011 U.S. Dist. LEXIS 88984 (E.D. Va. July 19, 2011); *Sandau v. Wood*, 2009 U.S. Dist. LEXIS 98057 (D. Or. Oct. 19, 2009).

Because the August 2015 R&R contains no clear error, nor any recommendation or ruling that is contrary to law, Sater has failed to meet his heavy burden. Neither the August 2015 R&R, nor Plaintiffs' compliance with Judge Maas' orders concerning the SAC, has "defied" this Court's March 2015 Order as the Objections contend. (*See* ECF No. 182, at 13). Moreover, an order to strike language from one pleading is not, as Sater suggests, inconsistent with an order granting leave to file subsequent version amending that pleading. The August R&R does not, therefore, run afoul of the "law of the case" doctrine. Finally, Judge Maas properly applied Federal Rule of Civil Procedure 15 in granting Plaintiffs leave to amend. Accordingly, the Court should deny the Objections in their entirety.

## A. <u>Sater Does Not Have Standing to Object on Behalf of Other Defendants.</u>

As a preliminary matter, Sater is the single defendant in this action that filed objections to the August 2015 R&R in a timely fashion under Fed. R. Civ. P. 72. The remaining defendants are therefore foreclosed from claiming that the August R&R constitutes error with respect to Plaintiffs' claims against them. *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.").

Accordingly, Sater has no standing to request that Plaintiffs be denied leave to file the SAC as to any of the remaining defendants in the case. *See, e.g., Southeastern Pipetrades Health & Welfare Fund v. Friedman*, 2015 U.S. Dist. LEXIS 72490 at *3 (M.D. Tenn. June 4,

13

2015). Moreover, he has no standing to seek dismissal of the case as against the remaining defendants. Accordingly, the Court should deem the Objections to request that Plaintiffs be denied leave to replead only with respect to their claims against Sater (but not those against any other defendant), or in the alternative, that only the claims against Sater be dismissed.

### B. There Has Been No Violation of the March 2015 Order Requiring Judge Maas (or This Court) to Deny Plaintiffs Leave to File Their SAC.

The Objections make great play of the fact that Plaintiffs have not filed the version of the FAC stripped of the disputed content as the March 2015 Order directed. As explained above, that Order represented the Court's adoption of an identical recommendation by Judge Maas made in light of the Oberlander's refusal to comply with his orders concerning the disputed paragraphs in the FAC. Those circumstances changed days after the March 2015 order was issued, when Plaintiffs retained new counsel and discharged Oberlander. (*See* ECF Nos. 133, 142). Taking into account the new circumstances, Judge Maas, acting under the authority of this Court's two orders referring this matter to him (ECF Nos. 52, 53), issued three orders after the March 2015 order that superseded it. These three orders include his March 27, 2015 order prohibiting the filing and serving of additional papers, and his two orders granting Plaintiffs leave to draft and propose a second amended complaint – (1) his oral order of April 14, 2015 and (2) his April 30, 2015 written order (*See* ECF Nos. 139, 140, 142). Sater did not file any objection to those orders in a timely fashion under Fed. R. Civ. P. 72(a). Plaintiffs complied with each of these superseding orders. Under these circumstances, it cannot be said that Plaintiffs "violated" the March 2015 order; nor can Plaintiffs be penalized for complying with the subsequent orders issued by Judge Maas. Sater denigrates Judge Maas's authority with respect to pretrial matters – and by extension that of all federal Magistrate Judges – by asking the Court to reach such a finding and to penalize Plaintiffs on this basis.

14

Additionally, Judge Maas' two orders granting Plaintiffs' request to submit the SAC, and the August R&R, have rendered the question of Plaintiffs' compliance with the March 2015 order, which relates to the FAC, moot and therefore non-justiciable.

**C. The March 2015 Order is Consistent with the August 2015 R&R, and Therefore Forms No Basis for Finding Error in the August 2015 R&R.**

An unfavorable order relating to a pleading is consistent with a subsequent order granting the filer of the pleading leave to file a subsequent, amended pleading pursuant to Fed. R. Civ P. 15. *See Rural Water Dist. No. 4 v. City of Eudora, 2008 U.S. Dist. LEXIS 58548*, at \*6-\*7 (D. Kan. July 16, 2008) (district judge ruled that his own order dismissing the plaintiff's complaint and a magistrate judge's order granting plaintiff leave to amend that complaint were not "inconsistent" as argued by defendant).

In an effort to reach the conclusion that the August 2015 R&R contains clear error and/or is contrary to law, the Objections offer a strained, overly broad interpretation of the March 2015 Order. That Order did not dismiss the case; nor did it deny Plaintiffs' the right to propose and/or file a second amended complaint with new or different legal theories in the future. It expressly rejected an objection by Defendants to the January 2015 R&R seeking dismissal of the case in its entirety: "The Report appropriately finds that remedy to be too extreme." (ECF No. 126, at 5). In the March 2015 Order, the Court also expressly rejected Defendants' request to deny prospectively Plaintiffs leave to amend the FAC. (Id.) ("Any ruling on amending the FAC after striking the contested allegations is premature absent a motion seeking leave to amend.") Although the order contains a directive to file the permanently redacted FAC on ECF, the clear aim of that instruction was to provide the public, at last, with access to at least some information about a case filed in 2010. (ECF No. 126, at 12 ("No complaint has been docketed publicly.")).

That goal can be achieved equally by the course recommended by Judge Maas – granting Plaintiffs leave to file the SAC publicly.

Further, Judge Maas' January R&R makes clear that his recommendation therein that the disputed portions of the FAC be stricken was not intended to be interpreted as the equivalent of a dismissal of the case or a prospective denial of leave to Plaintiffs to amend the FAC. Nor is there any indication that the recommendation, which Judge Maas stated was *not based on any thorough, substantive review of the disputed portions of the FAC*, was intended to preclude Plaintiffs from alleging facts in support of their claims not based on sealed or privileged information, or information solely derived from the Bernstein documents.

Accordingly, Sater's invocation of the "law of the case" doctrine fails at the outset. Under the doctrine, "a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation." *Brentwood Pain & Rehab. Servs., P.C. v. Allstate Ins. Co.*, 508 F. Supp. 2d 278, 288 (S.D.N.Y. 2007) (citing *In re PCH Assoc.*, 949 F.2d 585, 592 (2d Cir. 1991)). The August R&R does not recommend the reversal of the order striking paragraphs from the FAC and therefore leaves that order in place as binding precedent. Plaintiffs remain unable to proceed in this case using the FAC in its original form as their pleading. Moreover, as the August R&R states, Judge Maas has determined that the SAC, in the form that he has recommended Plaintiffs be granted leave to refile, omits allegations containing the sealed, privileged and/or confidential information at the center of the dispute concerning the FAC, and allegations that appear on their fact to be based solely upon such information. (ECF No. 178, at 2-3, 5).[3]

---

[3] Moreover, as the January 2015 R&R and the March 2015 Order make clear, the decision to strike content from the FAC was a ruling based on the "equities" of the situation before Judge Maas and not a "decision on an issue of law." (ECF Nos. 97, at 20-21; 126, at 10-12).

### D. **Judge Maas Properly Applied the Law Governing Leave to Amend Complaints.**

At the April 2015 Conference, Plaintiffs moved for leave to amend the FAC, asking that Judge Maas permit them to file a legible complaint omitting the disputed content. *See, e.g., McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992) (noting that where the plaintiff has made its desire to amend clear, the lack of a formal motion does not require the district court to deny leave to amend; the decision to grant or deny leave remains within the court's discretion); *Mitra v. State Bank of India*, 2005 U.S. Dist. LEXIS 19138, at *23 (SDNY Sept. 6, 2005). Judge Maas granted that motion taking into account the directive of Fed. R. Civ. P. 15(a)(2) that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Doing so did not constitute legal error as "amendments are favored because they 'tend to facilitate a proper decision on the merits.'" *In re Facebook, Inc., IPO and Secs. and Derivative Litig.*, 986 F. Supp. 2d 428, 472 (S.D.N.Y. 2013) (quoting *Sokolski v. Trans Union Corp.*, 178 F.R.D., 393, 396 (E.D.N.Y. 1998)).

The Objections erroneously suggest that the content of the SAC required Judge Maas to deny Plaintiffs leave. Nothing could be further from the case. The FAC plainly alleges that Plaintiffs were injured financially by certain actions taken by Defendants with respect to Plaintiffs' employment agreements, and asserts RICO claims, but also contains scores of pages setting forth nearly incomprehensible legal theories concerning federal tax law. The SAC is based on the same sets of facts, and asserts RICO claims, but replaced the challenging text with a set of coherent theories under which Plaintiffs seek recovery. Plaintiffs have thus made their claims far easier to adjudicate for all the parties. Plaintiffs' addition of state law claims to their pleading did not provide Judge Maas with grounds for rejecting the SAC. The FAC provides the factual bases for asserting such claims. In the event the FAC had been dismissed for lack of

subject matter jurisdiction, Plaintiffs would have therefore been entitled to pursue their state law claims in New York state court, without regard to whether the FAC asserted such claims. *See* New York CPLR §205(a).[4]

In the Objections, Sater laments that "[f]iling a redacted version of the FAC would have foiled Plaintiffs' blatantly extortionist plan." (ECF No. 182, at 10). However, the filing of the SAC, which does not contain any sealed or privileged information, and which cites to publicly available sources of information for its allegations, *would also thwart any plan to extort Sater*, whether real or imagined. Because the FAC is, as Defendants concede, "nearly unintelligible," (Shapiro Aff. Ex. 2, at 2) the filing of the SAC is the better method of preventing any extortion from occurring. In any event, because – as explained *infra* – Sater has engaged in his own extortionist conduct with respect to the FAC, he is prohibited from obtaining any relief based on the notion that Plaintiffs are continuing to pursue an "extortionist plan."

Finally, as explained below, the Objections' discussion of alleged misconduct by Plaintiffs represents nothing more than a renewal of Defendants' repeated requests that the Court dismiss this case as a sanction – requests that this Court has explicitly denied. It therefore fails to provide a basis for arguing that the August 2015 R&R contains legal error.

---

[4] CPLR §205(a) provides in pertinent part: "If an action is timely commenced and is terminated in any other manner than by ... a final judgment upon the merits, the plaintiff ... may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action..."

## IV. THE COURT SHOULD REJECT SATER'S REQUEST FOR A DISMISSAL OF THE CLAIMS AGAINST HIM AS A SANCTION AGAINST PLAINTIFFS

For the reasons discussed below, this Court should reject Sater's request that it dismiss the claims against Sater as a sanction against Plaintiffs.

### A. No New Sanctionable Conduct by Plaintiffs Is Before the Court.

The Objections assert that Plaintiffs have engaged in misconduct that this Court must take into account in considering the August R&R. They focus on four instances: (1) Plaintiffs' purported violation of the March 2015 Order; (2) Plaintiff Kriss' May 2015 compliance with Judge Maas' April 30, 2015 directive to return all copies of Bernstein Documents in his possession to Sater; (3) the August 2015 OSC; and (4) Bernstein's allegations concerning Plaintiff Kriss' involvement in the delivery of the Bernstein Documents to Oberlander in the Bernstein Affidavit.

#### 1. Plaintiffs' Purported "Violation" of the March 2015 Order

As discussed *supra*, at 14-15, Plaintiffs have not "defied" the March 2015 Order as Sater argues in his Objections. (*See* ECF No. 182 at 13).

#### 2. Plaintiff Kriss' May 2015 Return of Copies of Bernstein Documents

As set forth in his affidavit accompanying this Response, Kriss does not recall being instructed, prior to Judge Maas' April 30, 2015 order, to conduct an exhaustive search of all of his electronic devices to locate copies of any Bernstein Documents. (Kriss Aff. ¶¶ 7-9). Once current counsel for Plaintiffs instructed Kriss to take such action, he promptly complied. (Id. ¶10). Prior to the 2015 search, Kriss was unaware that copies of documents from the Bernstein hard drive that Oberlander emailed to him still existed on his electronic devices. (Id. ¶¶ 10-11). Kriss has not disseminated the documents in question; nor did he access them since reviewing the FAC at Oberlander's request in 2013. (Id. ¶ 11). Thus Sater has not suffered any harm from

Kriss' failure to return the documents to him sooner. It would thus be inequitable to penalize Kriss for such actions. As argued in the Introduction, penalizing Kriss for returning the documents would send a counterproductive message to parties who are failing to comply with court orders but are considering coming into compliance.

In any event, Kriss' compliance with the April 30, 2015 order is not properly before the Court at this juncture, as no party raised this event before Judge Maas as a ground for denying Plaintiffs leave to file their SAC. Nor are the numerous orders cited in the Objections that Sater *claims* Kriss has violated based on the May 2015 return of documents. (*See* ECF No. 182, at 11-12). Courts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation. *See, e.g., Feehan v. Feehan*, 2010 U.S. Dist. LEXIS 100422, at *2 (S.D.N.Y. Sept. 22, 2010) ("it is inappropriate for the Court to consider new evidence upon review of a Magistrate's Report and Recommendation, when Parties had an opportunity fully to brief their Cross-Motions before the Magistrate").[5]

### 3. *The August 2015 OSC*

Sater himself initiated the August 2015 OSC before Judge Cogan based on the fact that in compliance with Judge Maas' April 30, 2015 order in *this* case, Plaintiff Kriss delivered copies of Bernstein Documents that had been in his possession on May 1, 2015 (EDNY Action, ECF

---

[5] *Cf. Pan Am. World Airways v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) ("A district judge is not required to hear or rehear any witness, and Pan Am had no right to present further testimony when it offered no justification for not offering the testimony at the hearing before the magistrate.") (citation omitted); *Abu-Nassar v. Elders Futures*, 1994 U.S. Dist. LEXIS 11470, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) ("In their Objections to the Report plaintiffs contend that Elders indeed terminated the Agreement in bad faith, and plaintiffs cite record evidence. These arguments were not raised before Magistrate Judge Dolinger, and are not submitted as objections but as new arguments. Accordingly, plaintiffs' arguments and evidence are untimely. If the Court were to consider formally these untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments.") (citations omitted).

No. 122, at ¶ 4). That Sater waited for four months after Kriss returned the documents – and only 2 weeks after Judge Maas issued the August 2015 R&R – to file the August 2015 OSC leaves no question that the August 2015 OSC represents little more than a litigation tactic, a ham-handed attempt to circumvent Judge Maas' recommendation that the Court grant Plaintiffs leave to file their SAC by engaging in blatant forum shopping. Plaintiffs submit that the Court should not honor such a disruptive and inefficient litigation strategy with consideration.

Moreover, as with Plaintiff's compliance with the April 30, 2015 order, the OSC was not before Judge Maas when he issued the August 2015 R&R. This is presumably only the case because *Sater himself chose to wait until after the August 2015 R&R was issued* to bring his OSC. For the same reasons set forth with respect to Plaintiffs' May 2015 return of documents, the August 2015 OSC is not properly before the Court and the Court should thus exclude it from its analysis.

### 4. The Bernstein Affidavit's Allegations Concerning Plaintiff Jody Kriss

As explained *supra*, at 6-7, Defendants, seeking a dismissal of the case as a sanction against Plaintiffs, submitted the Bernstein Affidavit to both Your Honor and Judge Maas on numerous occasions prior to January 2015 R&R. Both the January 2015 R&R, and the March 2015 Order which adopted it, explicitly refused to dismiss the FAC on the ground of Plaintiffs' conduct with respect to the Bernstein Documents. Judge Maas' ruling on this point, explicitly adopted by the Court, was based on Second Circuit precedent. (ECF No. 97, at 15) ("The Second Circuit 'has expressed on numerous occasions its preference that litigation disputes be resolved on the merits,' and that dismissal be deployed as a remedy 'only in extreme situations.'" (quoting *Marfia v. T.C. Ziraat Bankasi, New York Branch*, 100 F.3d 243, 249 (2d Cir. 1996))). The "law of the case" doctrine, to which Sater devotes several pages of his Objections, thus

militates against consideration of the allegations set forth in the Bernstein Affidavit as a ground for dismissing the claims against Sater as a sanction. Under the doctrine, "a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation." *Allstate Ins. Co.*, 508 F. Supp. 2d at 288. The Court therefore should dismiss Sater's blatant effort to re-litigate the Bernstein Affidavit.

**B. Sater Comes to Court with Unclean Hands, Precluding Him From Obtaining Dismissal of Plaintiffs' Claims Against Him as a Sanction.**

Where a party has invoked a court's "the inherent equitable power over [its] own process to prevent abuses, oppression and injustices" to obtain sanctions against another party, as Sater has here, the equitable doctrine of unclean hands may impose a bar to such relief. *See, e.g., Fayemi v. Hambrecht and Quist, Inc.*, 174 F.R.D. 319, 326 (S.D.N.Y. 1997) ("Because the relief sought by the defendant is equitable, the unclean hands doctrine applies.") Under the unclean hands doctrine, "a party will be denied equitable relief where it has itself acted unconscionably in relation to the matter at issue to the detriment of the other party." *Id.* (citing *Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996)); *see also Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 587 F. Supp. 2d 548, 570 (S.D.N.Y. 2008). As the Shapiro Affirmation and Kriss Affidavit set forth, Sater has engaged in unconscionable conduct relating to the FAC and this case generally to Plaintiffs' detriment. Sater has attempted to extort from Plaintiff Ejekam a voluntary dismissal of the FAC and this case, seeking to exploit an anonymously-conducted campaign of cyber-defamation against Plaintiff Kriss that has occurred since 2012. Accordingly, Sater's equitable demand that the claims against him be dismissed as a sanction against Plaintiffs must be denied.

Since 2012, scores of websites, blog entries, online postings including some made to look like legitimate online news articles have appeared that falsely claim that Mr. Kriss is a "mobster"

who has been harassing, defaming and slandering (generally unnamed) other individuals. (Affidavit of Bradley D. Simon, sworn to on September 28, 2015 ("Simon Aff.") ¶ 4 ). These websites and posts appear to share a single source. They all use domain names and/or titles that include Kriss' name or the name of his current company, East River Partners, LLC ("ERP"), thus ensuring that they will be retrieved through any search engine query for Kriss or ERP. (Id.) They use the same handful of photographs of Mr. Kriss emblazoned with nearly identical captions such as "mobster," "billion dollar plaintiff" or "serial litigator." (Id. ¶ 6). Moreover, they constitute variations upon a small number of templates, often with identical content appearing on numerous seemingly unrelated websites, domains and blogs. (Id.) Some of them utilize identical expletives and references to sexual acts in describing Kriss. (Id.).

In July 2012, Sater registered the domain name of one of the websites – jodykriss.com – through the Go Daddy clearinghouse in July 2012. (Id. ¶ 2). After Sater's initial registration expired, the jodykriss.com domain name was registered anonymously through Domains by Proxy LLC, an entity that administers anonymous domain name registration through GoDaddy. (Id. ¶ 3). All of the websites defaming Plaintiff Kriss are likewise registered anonymously through Domains by Proxy. (Id. ¶ 4). Most of them assert that Plaintiffs' allegations in this action are false, that because Kriss received a degree from Wharton Business School he could not have been defrauded about the criminal activities of his employers at Bayrock, and that it is Kriss himself who is involved with the Russian mob and not his former employers. (Id.). None of the websites mentions Sater by name, but they mention other defendants in this case. (Id. ¶ 5). As a result of the volume of defamatory created against Kriss and ERP, many of the top 10-25 results from search engine queries for Kriss and ERP contain the defamatory material described above. (Id. ¶ 8).

23

It appears that Sater, relying on the websites, postings, "articles" and blogs, has sought to

force Kriss' co-Plaintiff, Michael Chu'di Ejekam ("Ejekam") to abandon the FAC and drop his

claims against Sater.  In April 2014, Sater sent an email to Ejekam, as well as to approximately

300 employees of Actis, the private equity firm where he works as Director of Real Estate (in the

Lagos, Nigeria office), stating:

> Fred [Oberlander] has to finalize this absurd extortion of a
> lawsuit… If on [M]onday your name remains part of this extortion,
> you will only have yourself to blame… See your friend and co-
> plaintiffs'*[sic]* new lifetime online reality.  If you choose to
> continue with this extortion, it will also be your new online reality
> for the rest of your life, you can explain to people why these
> companies owe you $1 BILLION DOLLARS.  This is your one
> and only warning.

Simon Aff. Ex. 13).[6]  The email attaches a .pdf files of a document identified as

"Hits_to_Date.pdf," the electronic version of which lists its author as "FELIX SATER."  (Simon

Aff. ¶ 10, Exs. 13, 14).

On January 16, 2015, two days after Judge Maas issued the January 2015 R&R, Sater

sent an email to Kriss and all ERP employees attaching the ruling and stating:

> The truth about your gangster blackmailing extortion is starting to
> come to light.  Federal judges are starting to put it on record.  This
> is the first of many court rulings… You have spent 5 years of
> blackmailing, extorting and ruining peoples*[sic]* lives with your [ ]
> frivolous [ ] lawsuits, now we will spend the next decade
> reminding everyone what a lying cheating piece of shit you are…
> Go ahead and explain… why you sued in Delaware (dismissed)
> then this lawsuit in New York (about to be dismissed) and again a
> second lawsuit in New York (also about to be dismissed)…

(Simon Aff. ¶ 11, Ex. 15).  Although the email was sent from the address

"paulnelsonesq@gmail.com," the email references information that only Sater and his co-

---

[6] The email was sent from the email address jkrissinfo@gmail.com, which bears a close
resemblance to one of the websites – jodykriss.info – that contain material identical to that
appearing on jodykriss.com, which Sater registered in July 2012.  (Simon Aff. ¶ 9).

defendants could have; moreover, the Web is devoid of any information concerning an attorney named Paul Nelson who would have access to the information in the email. (Simon Aff. ¶¶ 11-13, Ex. 15).

Plaintiffs are considering a motion for sanctions against Sater, and seeking a referral of Sater to the U.S. Attorney's Office for the Southern District of New York, based on his efforts to extort from Plaintiffs a voluntarily dismissal of this action.[7] Plaintiffs prefer to proceed directly to litigating on the merits but are prepared to take such action in the event that Sater continues to bog this case down in disputes concerning sanctions and the Bernstein Documents.

## V.    CONCLUSION

For the reasons set forth above, the Court should adopt Chief Magistrate Judge Maas' August 13, 2015 Report & Recommendation.


Dated:  New York, New York            By: _____
        September 28, 2015                 Bradley D. Simon
                                           J. Evan Shapiro (JS 9903)
                                           Simon & Partners LLP

                                           *Attorneys for Plaintiffs Jody Kriss and*
                                           *Michael "Chu'di" Ejekam*

---

[7] Under this Court's "inherent equitable power over its own process 'to prevent abuses, oppression and injustices,'" *Fayemi*, 174 F.R.D. at 324 (internal citations and quotation marks omitted), it may sanction parties for conduct aimed at harassing and intimidating opposing litigants, or at extorting concessions from them. *See, e.g., Blum v. Schlegel*, 1996 U.S. Dist. LEXIS 21598, at *13-*25 (W.D.N.Y. May 9, 1996); *cf. Colliton v. Cravath*, 2008 U.S. Dist. LEXIS 74388, at *34-*43 (S.D.N.Y. Sept. 23, 2008) (Sanctions against extortionate conduct awarded under Fed. R. Civ. P. 11).

25