UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J. L. KRISS and MICHAEL "CHUDI" EJEKAM, directly and derivatively on behalf of BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; and  BAYROCK WHITESTONE LLC;<br><br>                          Plaintiffs,<br>         v.<br><br>BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ; FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA; ALEX SALOMON; JERRY WEINRICH; SALOMON & COMPANY PC; AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN; DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC: BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.; and NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;<br><br>                          Defendants,<br><br>       and<br><br>BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC, and  BAYROCK WHITESTONE LLC<br><br>                   Nominal Defendants (Derivative Plaintiffs) | No. 10 Civ. 3959 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' OBJECTIONS TO THE AUGUST 13, 2015
<u>REPORT AND RECOMMENDATION OF CHIEF MAGISTRATE JUDGE MAAS</u>**

Robert S. Wolf
MOSES & SINGER LLP
*Attorneys for Defendants*
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)
(212) 554-7700 (facsimile)

2813097 014140.0106

**PRELIMINARY STATEMENT**

Defendant Felix Sater ("Mr. Sater"), by and through his attorneys, Moses & Singer LLP, submits this memorandum of law in reply to Plaintiffs' Response (Dkt. 194) to Defendants' Objections to the Report and Recommendation of Chief Magistrate Judge Maas.[1] (Dkt. 182).

**ARGUMENT**

**I.    THE SANCTIONS AGAINST PLAINTIFFS ARE WARRANTED**

By its March 23, 2015 Order, this Court sanctioned Plaintiffs for years of defiance of multiple Court orders, by directing them to file a redacted version of the FAC after removing over four hundred (400) specified paragraphs, footnotes, and exhibits. This Court ordered that sanction as "a direct consequence of the Plaintiffs' refusal to comply with the [Court's] Orders", despite the fact that such a sanction "may leave significant factual gaps in the FAC." Report and Recommendation of 1/14/2015 (Dkt. No. 97) at 21. To be certain, Judge Maas, in proposing this sanction, was not punishing Plaintiffs' counsel – he was punishing Plaintiffs, themselves:

> Plaintiffs repeatedly have failed to comply with the 2014 Order and prior directives to the same effect. (See ECF No. 60) ("2013 Order"). It therefore is clear that the Plaintiffs must be sanctioned. I initially threatened to strike the FAC and all the Plaintiffs' prior pleadings if the Plaintiffs and their counsel continued to flout my Orders. (See 2014 Order at 13). Upon further reflection, however, for the reasons explained below, I recommend that Your Honor strike from the FAC each paragraph that Bayrock has objected to on privilege, work product, or confidentiality grounds.

Report and Recommendation of 1/14/2015 (Dkt. No. 97) at 1 (emphasis added).

It is clear from Judge Maas's January 14, 2015 Report and Recommendation, wherein he frequently distinguishes between Plaintiffs and Plaintiffs' counsel, that he intended to sanction Plaintiffs.

---

[1] Plaintiffs' memorandum is referred to herein as "Plaintiffs' Response." Defendants' objections are referred to herein as "Defendants' Objections." All other capitalized terms have the meanings set forth in Defendants' Objections.

2813097 014140.0106

When this Court adopted Magistrate Judge Maas's recommendation on March 23, 2015, it held that Plaintiffs' conduct warranted sanctions, holding:

- "Plaintiffs have consistently defied the Court's requests and orders" (ECF No. 126, at p. 6);

- "Plaintiffs are being sanctioned for engaging in a pattern of arguing implausible and unsupported interpretations of court orders rather than following them" (*id.* at p.8);

- "Plaintiffs ignored the clear language of the May 2014 Order in favor of their own baseless interpretation" (*id.* at p. 9);

- "Plaintiffs have repeatedly and vexatiously defied the Court's orders. They must now face the consequences" (*id.* at p. 10);

- Plaintiffs' conduct has been more than negligent and meets the standard for willful and vexatious defiance of court orders. Striking the contested allegations may have been too extreme a remedy in a different case, but it is justified here for the reasons stated in the Report" (*id.*);

- "For the foregoing reasons, the Report is ADOPTED in its entirety as the decision of the Court. Each paragraph, footnote and exhibit in the FAC to which Bayrock has objected on privilege, work product, or confidentiality grounds as listed in footnote 8 of the Report is hereby STRUCK. No later than March 30, 2015, Plaintiffs shall file on ECF and serve on all Defendants the FAC with the paragraphs, footnotes and exhibits listed in footnote 8 of the Report redacted.

If the Court overrules Defendants' Objections, it will allow Plaintiffs to now escape accountability by simply changing counsel. It will, in effect, substantially reward these Plaintiffs for engaging in five years of vexatious litigation in which they repeatedly ridiculed the Court and willfully defied multiple Court orders. It will reinforce their dishonest scheme of playing dirty and disregarding countless Court Orders without any repercussions. Most importantly, it will render meaningless this Court's carefully considered sanction, and it will completely undermine the Court's statement that "they must now face the consequences." It is axiomatic that the right to counsel of one's choosing may not be employed as a tactical device "merely to delay the orderly administration of justice," *Salinas v. Artus*, 2007 WL 4292033 (S.D.N.Y. 2007) (quoting

*People v. Sides,* 75 N.Y.2d 822, 824 (N.Y. 1990), so too the right to counsel of one's choosing may not be employed as a tactical device to avoid sanctions. If you cannot substitute counsel as a tactical device to delay judicial proceedings, you certainly cannot do so to achieve the even greater advantage of avoiding sanctions. All to the extreme prejudice of the defendants.

II. **PLAINTIFFS' HIRING OF NEW COUNSEL IS PLAINLY A PLOY TO AVOID SANCTIONS**

Plaintiffs' eleventh-hour hiring of new counsel is a transparent ploy to avoid Court-imposed sanctions. For over five years, Plaintiffs engaged in intentionally destructive litigation tactics toward Mr. Sater, including tactics explicitly designed to expose Mr. Sater to physical violence. In the process, they violated multiple court orders, impugned the integrity of the judiciary, and made a mockery of Court rules. Now, Plaintiffs seek to dodge the consequences of their inexcusable, destructive acts by the too simple expedient act of hiring new counsel, as if new counsel will wipe away all of their sins. This is nothing more than a litigation tactic, supported only by Jody Kriss's carefully worded sworn affidavit, in which he attempts to excuse his documented history of vexatious conduct by repeatedly claiming that he "does not recall" the many orders that this Court has already held that he and Mr. Ejekam vexatiously and willfully defied. The Court has no affidavit from Mr. Ejekam that even attempts to justify his conduct over the past five years, and Kriss's feeble defense that he "does not recall" smacks of the same brand of deceit that has characterized their conduct of this case under former counsel.

This Court has already ruled that Kriss violated the Court's orders "repeatedly," "willfully" and "vexatiously." By putting forth this feeble, last second "I don't recall" defense, Plaintiffs are still "engaging in a pattern of arguing implausible and unsupported interpretations of court orders rather than following them." March 23 Order, p. 8. It is obvious that nothing has changed under new counsel. You can put lipstick on a sow but it's still a pig.

3

It is unfathomable that Plaintiffs only realized that their former counsel "was conducting this litigation in a manner [that] was not in their best interests" on March 26, 2015, five years into this litigation and three days after the Court issued sanctions in its March 23 Order. The truth is, Plaintiffs have been complicit in all of their prior counsels' actions up to and through the March 23 Order. It was only after the Plaintiffs were faced the prospect of having to "face the consequences" of their actions that they concocted this recently fabricated claim of dissatisfaction with prior counsel. However, as set forth below, that claim is factually false and a deliberate misrepresentation to the Court, sanctionable in its own right. The truth is that Jody Kriss is currently, and continues to be represented by Frederick Oberlander ("Oberlander") and Richard Lerner ("Lerner") in litigations related to this very case. Indeed, this Court should not forget that the very genesis of this case was a scheme devised by Kriss and Oberlander to leverage stolen documents into a billion-dollar settlement. Plaintiffs have been in lockstep with prior counsel ever since. In fact, Kriss is *still* being represented by Oberlander and Lerner in the New York County Supreme Court case *Lauria v. Kriss*, Index No 152324/2014 (N.Y. Co. Sup. Ct.), which involves many of the same underlying facts as the case at bar. Subsequent to being "terminated" in the current case, Lerner has filed multiple documents in that litigation, and even appeared on Kriss's behalf at oral argument. See Exhibit A, Docket in *Lauria v. Kriss*.[2] In addition, Lerner continues to act as counsel for Jody Kriss in the defamation action *Kriss v. Lombardi*, Index No. 701759/14 (Queens Co. Sup. Ct.), where he has also appeared on Kriss's behalf subsequent to being "terminated" in this case. See Exhibit B, Docket in *Kriss v. Lombardi*. Apparently, Kriss only feigns dissatisfaction with these lawyers when necessary to give him a tactical advantage or allow him to evade sanctions.

---

[2] Lerner is counsel to Kriss while Oberlander is "Of Counsel" to Defendant.

4

Make no mistake, Kriss and his prior counsel are a team, and Kriss is the captain. This much is clear from the Affidavit of Joshua Bernstein (Dkt. 182, Att. 4). It was Kriss who first learned of the stolen documents from his ex-Bayrock colleague, Joshua Bernstein ("Bernstein"). It was Kriss who introduced Oberlander to Bernstein for the sole purpose of giving Oberlander access to the stolen documents. It was Kriss who offered to give the thief Bernstein a "cut" of whatever proceeds Kriss recovers in this litigation. *Id.* at §§ 9-12. It was Kriss who, after Mr. Sater's personal documents had been pillaged, orchestrated five years of intentionally abusive litigation in furtherance of his and the other Plaintiff's goal of leveraging confidential information to extort a huge settlement from perceived deep-pocketed defendants. It is Kriss who, with the assistance of prior counsel, leaked potentially life-threatening information about his past cooperation with the Government – information that prior counsel would not have ever known about were it not for the criminal actions of Kriss. As Judge Glasser described:

> Those two documents [the Presentence Report and Cooperation Agreement], among others, which were sealed, were documents [that] if divulged … may seriously jeopardize not only the life of the person who was the subject of those documents. In this case it might also significantly affect matters of national interest.

Exhibit C, June 14, 2010 Tr. in 98 Crim. 1101 (ILG) at 4, 8.

Sure enough, in July 2012, Plaintiffs and their prior counsel disclosed Mr. Sater's PSR and cooperation agreement to a well-known attorney for one of the organized crime figures against whom Mr. Sater and Mr. Lauria had cooperated. As a direct result, defendant Salvatore Lauria ("Mr. Lauria") was viciously assaulted by a member of organized crime, who accused him of being a 'rat' and who threatened to kill both Mr. Lauria and Mr. Sater. Shouldn't Plaintiffs have realized *then* that their former counsel "was conducting this litigation in a manner [that] was not in their best interests"? (Plaintiff's Response at 1).

5

Plaintiffs have had countless reasons to terminate prior counsel. Instead they consciously chose, time and again, to continue down a blatantly extortionist path. If Plaintiffs were not complicit with prior counsel, they would have realized that prior counsel was not acting "in their best interests" when, in open court, Judge Glasser rebuked prior counsel for disseminating stolen information, stating "something very bad and perhaps despicable was done by the use of those documents annexed to a complaint in the Southern District, in a civil case." See Exhibit D, Transcript of 7/20/2010 Hearing in 98-CR-1101 (E.D.N.Y.) at 20. If Plaintiffs were not complicit with prior counsel, they would have realized that prior counsel was not acting "in their best interests" when Judge Glasser found that they "knowingly and intentionally flouted a Court order", and when Judge Maas accused Plaintiffs of another "effort to pay lip service to-but not actually comply with- [the Court's] Orders." Exhibit E, Order dated March 23, 2011 in 98-CR-1101 (E.D.N.Y.) at 4; Dkt. No. 97 at 10. If Plaintiffs were not complicit with prior counsel, they would have realized that prior counsel was not acting "in their best interests" when they mocked Judge Glasser by asking, "*Have you no sense of decency sir, at long last? Have you no sense of decency?*" Exhibit F, Declaration of Oberlander dated July 16, 2010, ¶ 20 (emphasis in original). It is incomprehensible that Plaintiffs, both Ivy League-educated, only decided that prior counsel was conducting this litigation "in a manner not in their best interests" following the March 23 Order, when for over five years, "Plaintiffs repeatedly failed to comply with -- even defied -- Judge Maas' orders … and engag[ed] in a pattern of arguing implausible and unsupported interpretations of court orders, rather than following them." March 23 Order at 3. Clearly, Plaintiffs only switched counsel on March 26, 2015 to avoid facing sanctions, and not for any good reason. As stated in *Marlowe Patent Holdings LLC v. Dice Electronics, LLC*, 293 F.R.D. 688, 701 (D.N.J. 2013):

> *Ex post facto* disagreement with strategic decisions of counsel, made in the course of litigation, does not constitute good cause. The decision to retain [counsel] was

6

>Plaintiff's at the outset. It was similarly Plaintiff's obligation to monitor and approve [counsel's] proposed strategies and decisions throughout the course of this two and half year old litigation. Here, Plaintiff ratified—whether by action or inaction—[counsel's] decisions through claim construction briefing and completion of discovery, as set by the Scheduling Order… To allow Plaintiff to unilaterally change the course of this action now would be inappropriate.

The notion that Plaintiffs should not be punished for the "the sins of [prior] counsel" disregards the fact that Plaintiffs orchestrated the sins of prior counsel and watched the aftermath like theater.  The case cited by Judge Maas for the proposition that "[t]he sins of counsel should not be visited upon his client," *W. T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976) is wholly inapplicable and irrelevant.  It involved misconduct of counsel outside of the litigation and dealt with a motion to disqualify.  *Id.*  In this case, the misconduct consists of counsel and Plaintiff's willful disobedience of multiple court orders and the mockery they have sought to make of this Court.  Indeed, the sanction imposed by this Court is the result of Plaintiffs' and prior counsels' highly prejudicial actions *in these* proceedings.  Five years of history cannot be wiped away by the hiring of new counsel.

### III. PLAINTIFFS' ACCUSATIONS OF UNCLEAN HANDS ARE A CLASSIC ATTEMPT AT MISDIRECTION, WHICH THIS COURT PREVIOUSLY REJECTED, AND WHICH IS FURTHER PROOF THAT PLAINTIFFS' NEW COUNSEL IS FOLLOWING THE SAME PLAYBOOK AUTHORED BY THEIR FORMER COUNSEL

In a classic case of misdirection, Section IV of Plaintiffs' Response purports to invoke the doctrine of "unclean hands" in hopes of distracting the Court from Plaintiffs' own five year history of wrongdoing.[3]  Plaintiffs' new counsel, Mr. Simon, does so by resurrecting the *very*

---

[3] A court should only apply the equitable defense of unclean hands "for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." *Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 245 (1933).  Mr. Sater has never been found to have committed any wrongdoing with respect to the present case.  The same cannot be said for the Plaintiffs and their prior counsel, whose actions have led Judge Cogan of the Eastern District of New York to *twice* refer Plaintiff's prior counsel to the United States Attorney's Office for criminal investigation.  Recently, Kriss himself was ordered to show cause before Judge Cogan on October 13, 2015, why an order should not be issued holding *him* in Civil Contempt and referring *him* to the United States Attorney's Office for the Eastern District of New York for criminal

*same the three year old allegations about Mr. Sater that were first raised by Mr. Oberlander in April 2014.* Those allegations were considered by this Court and summarily rejected by this Court, which specifically <u>directed Plaintiffs not raise them again in this Court</u>! It is remarkable that Plaintiffs new attorney, claiming to lead Plaintiffs' in a new direction, would argue that Plaintiffs should be relieved of this Court's explicit sanction by flagrantly defying yet another Order of this Court.

As the Court may recall, Plaintiffs' prior counsel filed a similar "Emergency *Ex Parte* Request to Stay Proceedings" in *Kriss I* and *Kriss II* on April 7, 2014 (the "*Ex Parte* Request"). In the *Ex Parte* Request, Oberlander accused Mr. Sater of exactly same conduct that is addressed in the Affidavit of Bradley Simon (ECF 194-8), and which is then repeated in Plaintiffs' Response. That includes the accusations that Mr. Sater: (i) created websites using Jody Kriss's name in order to defame him; (ii) attempted to intimidate Plaintiff Ejeckam into dropping his name from the Complaint; (iii) accusing Jody Kriss of being connected to the Russian mafia; (iv) sent the same email to 300 employees of Mr. Ejekam's real estate firm (Simon Aff., ¶¶11-12) and to every attorney at Strook (*Ex Parte* Request). In fact, Exhibit 8 to the Simon Affidavit is *identical* (albeit truncated) to Exhibit 4 of Oberlander's May 1, 2014 Motion in *Kriss II* (ECF No. 53, Att. 4,), and Exhibit 13 to the Simon Affidavit is the <u>exact same e-mail</u> as contained in Exhibit 5 of Oberlander's May 1, 2014 Motion for Reconsideration! (ECF No. 53, Att.5).

Here, as with the *Ex Parte* Request, the accusations against Mr. Sater are being raised in an effort to avoid having to comply with an Order of this Court. The *Ex Parte* Request was filed on the *very day* that Plaintiffs had been directed to file a Complaint in *Kriss II*. It was an obvious

---

investigation. Indeed, the only party here with unclean hands is Kriss, whose unconscionable acts have not only threatened Mr. Sater's life, but have drawn the ire of numerous Federal Courts, warranting the sanctions imposed in the March 23 Order.

8

ploy by Plaintiffs to avoid having to comply with that order. The Court promptly rejected Plaintiffs' ploy, and in an April 17, 2014 Order (ECF No. 49 in 13-cv-3905, ordered:

> the allegations raised in Plaintiffs' ex parte letter shall be raised, if at all, with the appropriate authorities, ***and not with the Court***. (Emphasis added)…
>
> It is further ORDERED that Plaintiffs shall file a complaint in this action no later than April 23, 2014. Should Plaintiffs fail to do so, the Court will entertain any motions to dismiss for failure to prosecute, which Defendants may file without exchanging letters with Plaintiffs pursuant to the Court's Individual Rule III.A.3

Exhibit G, Order in 13-cv-3095 (LGS) (FM) (*Kriss II*) (Dkt. No. 49).

By filing Mr. Simon's Affidavit containing the same allegations as the *Ex Parte* Request with this Court, Plaintiffs are again defying an explicit order of this Court – this time in an attempt to avoid the sanctions contained in this Court's March 23 Order. By doing so, Plaintiffs' and their new attorneys are taking a page right out of Oberlander's playbook. Indeed, as demonstrated above, they use the exact same exhibits. It is truly remarkable that Mr. Simon would follow the script authored by Oberlander, while at the same time claiming that Oberlander is no longer involved in representing the Plaintiffs.[4] The Court should not be deluded by Mr. Simon's prose, which is admittedly easier to read and much more understandable than that of Oberlander. The tactics and the substance are the same – only the font, margins and tone have changed. Rather than justifying a departure from the sanctions imposed by this Court on March 23, 2015, Plaintiffs' continued defiance of yet another Order of this Court serves only to highlight the need for the additional sanction that Defendants have requested: dismissal of the SAC with prejudice.

---

[4] Indeed, counsel's effort to distance himself and the Plaintiffs from Oberlander appears to be a ruse. As discussed further above, Lerner and Oberlander continue to represent Jody Kriss in *Lauria v. Kriss* and *Kriss v. Lombardi*, *supra*.

9

## **CONCLUSION**

For the reasons stated above, Defendants' objections to the Report should be sustained in their entirety. The SAC should be dismissed with prejudice. Alternatively, Plaintiffs should be directed to comply with March 23 Order by filing a redacted FAC.

Dated: New York, New York
October 6, 2015

                                              MOSES & SINGER LLP
                                              *Attorneys for Defendant Felix Sater*

                                              By: _____/s/_____
                                                  Robert S. Wolf, Esq.
                                              The Chrysler Building
                                              405 Lexington Avenue
                                              New York, New York 10174
                                              Tel: (212) 554-7800