**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| JODY KRISS and MICHAEL "CHUDI" EJEKAM, et al., | : | |
| | : | 10 CV 3959 (LGS)(FM) |
| Plaintiffs, | : | |
| -against- | : | **ECF FILING** |
| | : | |
| BAYROCK GROUP LLC, et al., | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW OF NON-PARTY FREDERICK OBERLANDER IN RESPONSE TO COURT'S FEBRUARY 1, 2016 ORDER TO SHOW CAUSE**

**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000

*Attorneys for Frederick Oberlander*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ...............................................................................................................5

THIS COURT SHOULD NOT IMPOSE A FILING RESTRICTION SANCTION AGAINST OBERLANDER ..............................................5

A. Due Process Requires That Before A Court May Impose A Sanction On An Attorney, Specific Notice is Required ..........................................5

B. "Inherent Powers" Sanctions Should Be Granted Only In Rare Situations ............6

C. Sanction Requires Both Frivolous Conduct And Improper Purpose ......................9

D. This Court Does Not Have Authority To Bar Oberlander's Use Of The Bayrock Documents Which Were Obtained Outside the Court Process ...............11

E. There Are No Facts to Support Imposition Of A Filing Restriction......................13

1. No finding that the Complaint Oberlander filed lacked merit ..................13

2. No finding (as opposed to suggestion) of wrongdoing .............................15

3. "Stolen" Evidence Alone Not A Basis For Sanction ................................18

System.Object[]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anthony R. Martin-Trigona*,
737 F.2d 1254 (2d Cir. 1984)....................7, 8

*Argo Marine Systems, Inc. v. Camar Corp.*,
755 F.2d 1006 (2d Cir. 1985)....................17

*Bank of Montreal v. Optionable, Inc.*,
2013 WL 5943992 (S.D.N.Y. 2013)....................11

*Bartnicki v. Vopper*,
532 U.S. 514 (2001)....................5, 7

*BE & K Construction Corp. v. NLRB*,
536 U.S. 516 (2002)....................5, 7

*Bridge CAT Scan Assoc. v. Technicare Corp.*,
710 F.2d 940 (2d Cir. 1983)....................2, 4, 10, 11

*Carroll v. President and Commissioners of Princess Anne*,
389 U.S. 175 (1968)....................7

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....................6

*Cheng v. GAF Corp.*,
713 F.2d 886 (2d Cir. 1983)....................17

*Fayemi v. Hambrecht and Quist, Inc.*,
174 F.R.D. 319 (S.D.N.Y. 1997)....................11

*International Products Corp. v. Koons*,
325 F.2d 403 (2d Cir. 1963)....................10, 11

*Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*,
55 F.3d 34 (2d Cir. 1995)....................6, 7, 8

*Mosallem v. Berenson*,
76 A.D.2d 345 (1st Dept. 2010)....................16

*Revson v. Cinque & Cinque, P.C.*,
221 F.3d 71 (2d Cir. 2000)....................6, 9

*Sackler v. Sackler*,
15 N.Y.2d 40 (1964) ....................................................................................................4, 16

*Sassower v. Sansverie*,
885 F.2d 9 (2d Cir. 1989)...........................................................................................7, 8

*Schlaifer Nance & Co. v. Estate of Warhol*,
194 F.3d 323 (2d Cir. 1999)...........................................................................................6

*Sussman v. Bank of Israel*,
56 F.3d 450 (2d Cir. 1995)...........................................................................................8, 9

*Ted Lapidus, S.A. v. Vann*,
112 F.3d 91 (2d Cir. 1997)...........................................................................................4, 5

*United States v. Seltzer*,
227 F.3d 36 (2000)...........................................................................................5, 9

*Wolters Kluwer Financial Services, Inc. v. Scivantage*,
564 F.3d 110 (2d Cir. 2009)...........................................................................................7

**Other Authorities**

8 Wigmore on Evidence Sec. 2183 (McNaughton rev. 1961) ......................................................16

**PRELIMINARY STATEMENT**

Non-party Frederick Oberlander, formerly counsel for the Plaintiffs in the above captioned matter ("Oberlander"), respectfully submits this Memorandum of Law in response to this Court's February 1, 2016 Opinion and Order which (a) vacated so much of the April 30, 2015 Order issued by United States Magistrate Judge Frank Maas as was directed at Oberlander and his co-counsel Richard Lerner ("Lerner") and (b) *sua sponte* directed the "parties" to show cause why Oberlander and Lerner should be prohibited from "filing any action in federal court that appends any of the Bayrock Documents or relies on information from the Bayrock Documents and from filing any action in state court without appending the order restricting the filing in federal court." February 1, 2016 Order, p. 8.[1]

Oberlander respectfully submits that the Court lacks both the power and the factual predicate to impose the onerous filing restriction referred to above. Having concluded correctly that this Court is (a) without power to restrict Oberlander's use of the Bayrock Documents since they were obtained outside the judicial process and (b) without subject matter jurisdiction to adjudicate Oberlander's rights to the Bayrock Documents, the Court nonetheless seeks, apparently on its own initiative, to essentially accrete to itself that jurisdiction in order to impose a filing restriction against Oberlander (and Lerner) as a "sanction" for allegedly "vexatious" litigation. There is no supporting motion before the Court and the February 1, 2016 Order does not precisely articulate what alleged conduct forms the basis for the Court's order to show cause. Accordingly, while certain alleged conduct could be inferred to be at issue from the February 1, 2016 Order, it is respectfully submitted that such Order does not provide sufficient notice of the

[1] While the February 1, 2016 Order directs only the "parties" to submit responses to the Court's Order to Show Cause, it is respectfully assumed that the Court intended to include Oberlander, as a non-party, in that group.

factual allegations on which a conclusion of "vexatiousness" could be reached so as to satisfy the notice the Court recognized is required before a sanction could be issued.  Moreover, because the proposed sanction, a filing restriction, is a clear prior restraint on Oberlander's First Amendment rights of speech and petition, both a strict scrutiny level of proof and the heightened full adversarial due process is required to justify its imposition.  Indeed, because much of the information in the Bayrock Documents is public and the proposed filing restriction is both absolute and applies only to Oberlander (and Lerner), it is both punitive and Constitutionally overbroad.

Indeed, in the February 1, 2016 Order, the Court appears to recognize that the factual predicate required to justify an attorney sanction, frivolous, meritless actions taken "entirely without color," is not present here since there has been no finding on the merits of the claims Oberlander brought on behalf of his clients.  Notwithstanding the recognized absence of frivolous conduct, the Court states the putative issue as follows: "[t]he concern is the filing of multiple actions based on what are essentially stolen documents, followed by a multitude of court proceedings, filings, motions and appeals to deal with the problems raised by the Bayrock Documents without ever reaching an adjudication on the merits."  Feb. 1, 2016 Order p. 7.  It appears the Court's concern is that by filing a complaint based on the Bayrock Documents which included certain documents relating to the criminal proceedings involving former Bayrock partner Felix Sater, Oberlander set in motion all the subsequent proceedings which were ancillary to the merits of the original action he filed.  In fact, the opposite is true.

Thus, the record shows that after Oberlander sought to file his original complaint under seal in an unfortunately vain attempt to avoid exactly what transpired, Bayrock's counsel undertook a concerted effort to derail consideration of the underlying claims in the complaint by

turning the focus to the Bayrock Documents and, in particular, the documents regarding Felix Sater. Rather that addressing the merits, Defendants' counsel convinced the Court to direct its attention to an entirely "collateral" issue which the Second Circuit in *Bridge CAT Scan Assoc. v. Technicare Corp.*, 710 F.2d 940 (2d Cir. 1983) held should not have affected its consideration of the merits of the underlying case. It is respectfully submitted that to lay blame on Oberlander for the delay in this proceeding attendant to such collateral issues which should not have been addressed in this Court would be to punish him for the distraction caused by Defendants' counsel.[2]

It is also important to note that contrary to the Court's characterization, there has been no finding as opposed to allegations that Oberlander obtained the Bayrock Documents through improper means, let alone that they were "stolen." Of course, in this action, beyond unsubstantiated assertions by attorneys who lack direct personal knowledge of relevant facts, there has been no hearing or determination of Oberlander's rights to use the Bayrock Documents. In the proceedings before Judge Glasser, which were commenced by Sater's counsel rather than Oberlander, he only considered the documents relating to Sater rather than the Bayrock Documents as a whole. Contrary to actual factual findings, Judge Glasser considered whether grounds existed to enjoin Oberlander's use of the documents regarding Sater and his cooperation arrangement with the Government. While Defendants' counsel has repeatedly relied on a short misleading excerpt of certain comments Judge Glasser made during a July 20, 2010 court conference, the full record of Judge Glasser's comments makes clear that he was raising questions regarding the manner in which Oberlander obtained the Sater documents rather than

[2] It is not insignificant that Bayrock has never brought a misappropriation claim against Oberlander presumably because it recognizes that such a claim likely would not succeed and its true goal is obfuscation.

making factual findings.  Significantly, Judge Glasser noted, similarly to this Court, that the remedy for such alleged conduct lay elsewhere.  More significantly, other than Sater's Pre Sentencing Report, Judge Glasser did not enjoin dissemination or require return of any other documents beyond a brief temporary restraining order and, in 2012, unsealed substantially all the criminal proceedings involving Sater.

Even if there were a finding that the Bayrock Documents were "stolen" outside the judicial process, New York law is analogous to the *Bridge CAT Scan* line of cases in making clear that such documents may not be rejected in court or ruled inadmissible in a private civil litigation for that reason alone.  *See, e.g., Sackler v. Sackler*, 15 N.Y.2d 40 (1964).

It is also respectfully noted that with respect to the various appellate proceedings to which the Court refers, Second Circuit law is clear that only an appellate court and not a District Court may sanction an attorney for conduct before that appellate court.

In sum, there is simply no factual predicate under well settled Second Circuit law to impose the extreme sanction of the described filing restriction on Oberlander with its attendant limitations on his First Amendment rights of speech and petition.  There is no finding that any conduct by Oberlander in prosecuting this action was either "frivolous" or "entirely without color."  There is no finding of bad faith on his part and no legitimate basis for such a finding in the record.  There is no finding that Oberlander obtained the Bayrock Documents by improper means or other legitimate and Constitutional basis for otherwise prohibiting him from using such Documents as he sees fit.

## ARGUMENT

## THIS COURT SHOULD NOT IMPOSE A FILING RESTRICTION SANCTION AGAINST OBERLANDER

### A. Due Process Requires That Before A Court May Impose A Sanction On An Attorney, Specific Notice is Required

"Due process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997)(quoting *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 70 (2d Cir. 1996)(emphasis in original). In the February 1, 2016 Order, this Court recognized this "unequivocal rule" in the Second Circuit applies to filing injunctions. Feb. 1, 2016, p. 8, citing *Iwachiw v. New York State Dept. of Motor Vehicles*, 396 F.3d 525 (2d Cir. 2005). The same rule applies to counsel. *See United States v. Seltzer*, 227 F.3d 36 (2000). In *Seltzer*, the Second Circuit held that the Court must provide counsel:

> "'Specific notice of the conduct alleged to be sanctionable and the standard by whch that conduct will be assessed, and an opportunity to be heard on th[e] matter,' and [counsel] must be 'forewarned of the authority under which sanctions are being considered, and given a chance to defend [herself] against specific charges.'"

*Seltzer*, 227 F.3d at 42 (quoting *60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.*), 218 F.3d 109, 117-118 (2d Cir. 2000)(vacating District Court's sanction due to inadequate notice). "The purpose of particularized notice is to put counsel 'on notice as to the particular factors that he must address if he is to avoid sanctions." *Ted Lapidus, S.A.*, 112 F.3d at 96 (vacating District Court sanction against counsel due to inadequate notice). Because it would infringe on valuable First Amendment freedoms of speech and petition, the need to provide adequate notice before imposition of a filing restriction is particularly acute. *See, e.g., BE & K Construction Corp. v. NLRB*, 536 U.S. 516 (2002)(right to petition); *Bartnicki v. Vopper*, 532

U.S. 514 (2001)(freedom of speech).

In the February 1, 2016 Order, the Court describes in general terms certain conduct which is alleged to be improper. The Court acknowledges that "whether the cases [Oberlander filed] have any merit is completely unknown." Rather, the Court asserts that "[t]he concern is the filing of multiple actions based on what are essentially stolen documents, followed by a multitude of court proceedings, filings, motions and appeals to deal with the problems raised by the Bayrock Documents without ever reaching an adjudication on the merits." Feb. 1, 2016 Order, p. 7. Beyond the filing of the complaints in the instant action which are the only actions commenced at Oberlander's initiative, and the fact that, as set forth below, certain factual assertions in the February 1, 2016 Order, in particular the assertion that the Bayrock Documents are "essentially stolen" are at odds with the record, it is not clear what actions specifically undertaken by Oberlander, the Court is challenging. Accordingly, Oberlander's ability to adequately respond to the Court's show cause order is wholly compromised.

**B. "Inherent Powers" Sanctions Should Be Granted Only In Rare Situations**

While the Court has not specified the source of authority for the sanction being considered, it refers to its "inherent power" to impose a filing injunction. Feb. 1, 2016 p. 7.

The United States Supreme Court has made clear that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (appellate court must "ensure that any such decision [to impose a sanction] is made with restraint and discretion"). "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* at 50.

"Sanctions are not appropriate unless the challenged actions are (1) 'entirely without color' and (2) motivated by 'improper purposes,' such as harassment or delay." *Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 38 (2d Cir. 1995); *see also Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000)("to impose sanctions . . . the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."). For something to be "entirely without color," the court must find that the action "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Revson*, 221 F.3d at 79.

"A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings." *See Wolters Kluwer Financial Services, Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *also Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 38 (2d Cir. 1995).

With respect to the sanction of a filing restriction, the resulting impairment of an attorney's First Amendment rights of speech and petition requires heightened proof. *See Bartnicki*, 532 U.S. at 528 (publisher of stolen or improperly obtained information of public concern may not be punished); *BE & K Construction Corp.*, 536 U.S. at 535 (First Amendment right of petition bars enjoining retaliatory anti-trust actions unless they are "shams"). Moreover, where, as here, the sanction unquestionably comprises a prior restraint on core protected speech, strict scrutiny requires (a) full adversarial due process, (b) clear and convincing evidence of wrongdoing, (c) the least restrictive means necessary to protect a compelling interest. *See Carroll v. President and Commissioners of Princess Anne*, 389 U.S. 175, 189 (1968)("prior restraints of expression come to the [United States Supreme] Court bear[] a heavy presumption against its Constitutional validity.").

The cases cited by the Court in the February 1, 2016 Order in which filing restrictions were granted demonstrate by distinction why insufficient cause for such a sanction exists here. In *In re Anthony R. Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984), the court considered an attorney who, principally *pro se,* filed "literally hundreds of lawsuits, motions and miscellaneous pleadings, all but a small fraction of which lack any merit whatsoever." The attorney had engaged in a pattern and practice over years of filing lawsuits "of a vexatious, frivolous and scandalous nature" commencing actions against state and federal judges, public officials, amongst others including instituting actions "as a vehicle to launch vicious attacks upon persons of Jewish heritage." *Id.* at 1256. In *Sassower v. Sansverie*, 885 F.2d 9 (2d Cir. 1989), an attorney whose prior conduct led to his debarment continued to file "an avalanche of litigation" *pro se*. Notably, on appeal, despite the fact that the disbarred attorney had already filed six other appeals, the Second Circuit declined to issue a filing restriction against the attorney but simply issued a warning. *Id.*[3]

As demonstrated below, none of Oberlander's actions have been determined to be frivolous or vexatious. Moreover, however construed, nothing in the instant record comes close to the histories of vexatious conduct described in *Martin-Trigona* or *Sassower.* Notwithstanding the obvious factual distinctions, the proposed filing restriction/prior restraint is in several respects broader than those imposed in the *Martin-Trigona* and *Sassower*. First, unlike the restrictions in *Martin-Trigona* and *Sassower* both of which permitted the filing of actions with leave of court, the proposed sanction is absolute. Oberlander would be barred from filing any action in any Federal Court using the Bayrock Documents without exception or opportunity for

[3] While the Court cited *Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, as an example of a filing restriction sanction, that case did not involve a filing restriction but instead was an assessment of costs against an attorney. Moreover, in *Milltex Industries Corp.*, the Second Circuit vacated the District Court's sanction.

leave. Moreover, the proposed order would purport to bar Oberlander from filing any proceeding in any Federal appellate court. Indeed, Oberlander would, by extension, be barred from appealing the Court's sanction should it decide to issue it. Plainly, that would not be within the Court's inherent authority.

Perhaps more significant, much of the information contained in the Bayrock Documents is now part of the public domain including the Sater documents which were unsealed by Judge Glasser in 2012 and 2013 and many of the Bayrock Documents which were included in public filings by Sater in a recently filed lawsuit in Israel against one of the Kriss II plaintiffs. Accordingly, there does not appear to be any interest, compelling or otherwise, to protect with the proposed sanction other than simply punishing Oberlander and depriving him of his First Amendment right of petition. The proposed prior restraint would be Constitutionally overbroad and beyond the scope of the Court's inherent authority.

**C. Sanction Requires Both Frivolous Conduct And Improper Purpose**

Before a court may impose a sanction against an attorney, the court must find both (a) bad faith or improper purpose and (b) conduct which is frivolous or "entirely without color." *See Sussman v. Bank of Israel*, 56 F.3d 450, 456 (2d Cir. 1995). In *Sussman*, the District Court sanctioned counsel to plaintiffs with respect to a complaint which was dismissed on grounds of *forum non conveniens* but expressly without prejudice to the merits of the underlying claims. The Court based the sanction on the fact that plaintiffs' counsel brought the complaint, in part, to pressure the defendants to engage in settlement discussions. More specifically, in advance of commencing the action, plaintiffs' counsel sent letters to defendants' representatives warning of adverse consequences if the allegations in the complaint were made public and proposed settlement negotiations. The court "imposed its sanctions 'based solely,' on what the court

described as 'the manifestly improper purpose which played a significant part in plaintiffs' motivation for filing their complaint." *Id.*

In vacating the sanction on appeal, the Second Circuit held that "the district court erred as a matter of law (a) in concluding that it is improper for an attorney to file a nonfrivolous complaint in a new and proper forum partly as a means of enhancing his client's chances of obtaining the settlement of another pending action, and (b) in concluding that sanctions maybe imposed for the filing of a complaint that not only is not found to be frivolous but also wins for the plaintiff a measure of judicially imposed relief." *Id.*

Accordingly, "[a]n award of sanctions under the court's inherent requires both 'clear evidence that the challenged actions are *entirely without color*, and [are taken] for reasons of harassment or delay or for other improper purposes[,] and a high degree of specificity in the factual findings of [the] lower courts." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (emphasis added) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)). As this Court recognized, here, there has been no finding regarding the merits of the underlying claims in the Complaint, let alone a finding that the Complaint was frivolous.[4]

In the February 1, 2016 Order, the Court opines that a showing of "bad faith" is not required where the alleged misconduct is "not undertaken for the client's benefit." Feb. 1, 2016, p. 7 (citing *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000). In *Seltzer*, the Second Circuit described this exception as allowing a court to "sanction attorneys for *conduct not inherent to client representation*, such as, violations of court orders or other conduct which

[4] While the Court does not refer to any activity in advance of the filing of the complaint, the Second Circuit has held that threatening to file a complaint in part to facilitate a settlement is not an "improper purpose." *See Sussman*, 56 F.3d at 459 ("[t]he district court held that the filing of the complaint with a view to exerting pressure on defendants through the generation of adverse and economically disadvantageous publicity reflected an improper purpose. To the extent that a complaint is not held to lack foundation in law or fact, we disagree.").

interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." *Id.* at 42(emphasis added). The misconduct at issue was an attorney's failure to return to court following a break. *Id.* As demonstrated below, the conduct apparently at issue here is the filing of pleadings by Oberlander on behalf of his clients which is, unlike an attorney's failure to honor a court's direction regarding resumption of a trial, "inherent to client representation."

**D. This Court Does Not Have Authority To Bar Oberlander's Use Of The Bayrock Documents Which Were Obtained Outside the Court Process**

While it is well settled that this Court has inherent power to regulate the administration of its cases and its courtroom (*see, e.g., International Products Corp. v. Koons*, 325 F.2d 403, 407-8 (2d Cir. 1963), that inherent authority does not extend to barring a party, or in this case a non-party, from possessing or use documents or information which were obtained outside the judicial process.

In *Bridge CAT Scan Assoc. v. Technicare Corp.*, 710 F.2d 940 (2d Cir. 1983), the Second Circuit addressed directly the distinction between a Court's inherent authority to control the use and disclosure of court filings and documents obtained in discovery and documents obtained outside the court process. Drawing on its earlier precedent, the Court held that the distinction was as follows:

> . . . the court has inherent equitable power to prohibit a party from abusing the judicial process by disseminating information or representations clothed in an official-looking document on file with the court; but, in light of First Amendment considerations, the court generally has no such power to prohibit dissemination of the information itself, stripped of its judicial garb, if that information has been gathered independently of judicial processes.

*Bridge CAT Scan*, 710 F.2d at 946.

In *Koons*, the Second Circuit considered the extent to which a district court could enjoin dissemination of deposition testimony and certain documents marked as exhibits at the deposition. The Court held as follows:

> The portion of the order which seals the deposition [] and limits defendants and others in their use of information obtained therefrom was plainly authorized by F.R.Civ. Proc. 30(b), and we entertain no doubt as to the constitutionality of a rule allowing a federal court to forbid the publicizing, in advance of trial, of information obtained by one party from another by use of the court's processes. Whether or not the Rule itself authorizes so much of the order as also seals all affidavits submitted by defendants on various motions, we have no question as to the court's jurisdiction to do this under the inherent "equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." [citation omitted].

325 F.2d at 407. The Court continued, however, to find that the prohibition on dissemination of documents obtained prior to discovery amounted to a prior restraint on free speech:

> What causes concern here is that the order went further and curtailed disclosure of information and writings which defendants and their counsel possessed before they sought to take [the] deposition. We fail to see how the use of such documents or information in arguing motions can justify and order preventing defendants and their counsel from exercising their First Amendment rights to disclose such documents and information free of governmental restraint.

*Id.* at 407-408.

*See also Bank of Montreal v. Optionable, Inc.*, 2013 WL 5943992 (S.D.N.Y. 2013)("[a]s the Supreme Court ruled in *Seattle Times*, 'where . . . a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery and *does not restrict the dissemination of the information if gained from other sources,* it does not offend the First Amendment'")(emphasis in original) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984)); *compare Fayemi v. Hambrecht and Quist, Inc.*, 174 F.R.D. 319, 325 (S.D.N.Y. 1997)("[t]he *Bridge* case is further distinguishable from the instant action because it implicated First Amendment concerns. There, the protective order initially obtained by the

defendant precluded disclosure outside the litigation of information that had been obtained independent of discovery, and it therefore threatened to infringe the plaintiff's free speech rights. Here, the defendants seek only dismissal of the complaint or an order precluding use of the information in this litigation, and First Amendment principles are therefore not in issue.").

Here, there is no dispute that Oberlander obtained the Bayrock Documents outside of the judicial process in this matter. Accordingly, there is no authority for the Court to preclude his use of the Document outside the context of court proceedings in which he is no longer counsel. In particular, since many of the Bayrock Documents are now publicly available, barring Oberlander from relying on them would serve no purpose other than to punish him rendering this sanction criminal or quasi-criminal thereby implicating additional due process protections.

**E. There Are No Facts to Support Imposition Of A Filing Restriction**

**1. No finding that the Complaint Oberlander filed lacked merit**

As the Court recognizes in the February 1, 2016 Order, there has been no determination of the merits of the claims Oberlander asserted in this action. More significantly, there has been no finding that any of the claims brought by Oberlander relating to Bayrock or Sater (Estate of Gottdiener, et al. v. Felix Sater et al., SDNY Docket No. 13-1824, Kriss v. Bayrock Group, LLC, New York Supreme Court Index No. 651715/2013, removed to the SDNY on June 21, 2013, and docketed as 13-cv-3905) are frivolous or are otherwise without merit.

Other than the foregoing proceedings, the other proceedings relating to Sater and Bayrock were not initiated by Oberlander but rather were initiated by counsel for Bayrock and/or Sater.[5] As demonstrated by the annexed description of the procedural history of this matter, Oberlander initially sought to have his original complaint filed under seal temporarily. Indeed,

---

[5] Significantly, in those other proceedings, Oberlander was represented by counsel negating any argument that he could be sanctioned for any conduct in those proceedings where he was a party rather than counsel.

upon the order of Judge Buchwald, dated May 14, 2010 sealing the First Amended Complaint, there was no further need to resolve the "collateral" issue of Oberlander's right to use and retain the Bayrock Documents in order to proceed with this matter. Nevertheless, when Sater's counsel objected to proceeding with this matter on the merits to the extent allegedly sealed documents from Sater's criminal proceedings were implicated, the Court stayed this action to permit Sater to proceed before Judge Glasser to seek an injunction barring Oberlander's continued use of those documents which were a small subset of the so-called Bayrock Documents. As demonstrated below, Judge Glasser never ruled on such preliminary injunction except with respect to Sater's Pre-Sentencing Report. Moreover, the remaining Bayrock Documents were never the subject of Judge Glasser's proceedings.

Throughout the litigation of the ancillary issue of the use of the Sater documents, as demonstrated by the annexed appendix, the Court in this action repeatedly issued stays which excused Plaintiffs from proceeding with this case until the issues before Judge Glasser regarding the Sater documents were resolved. Indeed, in January, 2012, the Court (Englemeyer, J.) denied the request of Sater's counsel that no further extensions be granted and reiterated that the proceedings before Judge Glasser and any related appeals would be completed before Plaintiffs would be required to go forward. In 2013, after Judge Glasser had unsealed Sater's criminal docket and Oberlander served the First Amended Complaint ("FAC"), counsel for Bayrock objected to proceeding under such pleading by April 23, 2013 letter to the Court (ECF 35) and by Order dated May 31, 2013 (ECF 38), this Court initially barred Plaintiff/Oberlander from serving the FAC.[6] Moreover, by Order dated July 16, 2013 (ECF 48) which followed a court

[6] While not on the Court's docket, on information and belief, in April 2013, Sater's counsel wrote to the Court advising that they had no objection to proceeding with this case.

conference of that same day at which the Court dictated how the case was to proceed, this Court ordered that the parties prepare a proposed order of reference to United States Magistrate Frank Maas to, amongst other things, address Bayrock' objections to proceeding with the FAC.

It is respectfully submitted (a) that given the long history of court approvals of extended stays of this proceeding, on occasion, over party objection, (b) that the other proceedings to which the Court refers in the February 1, 2016 Order arose not due to Oberlander's initiation, (c) other than Sater's Pre Sentence Report, Judge Glasser did not enjoin any of the Sater Documents and (d) that, with respect to the Bayrock Documents (other than those relating to Sater's criminal proceeding), Bayrock elected to have this Court address a "collateral" issue rather than simply (a) proceed with the lawsuit on the merits, or (b) bring the issue of Oberlander's right to use and retain the Bayrock Documents properly before the Court by invoking the Court's jurisdiction through a misappropriation claim, it would be unfair and inappropriate, after the fact, to impose a sanction on Oberlander for what was essentially judicially-condoned conduct.

**2. No finding (as opposed to suggestion) of wrongdoing**

Contrary to the suggestion of "apparent" wrongdoing in the February 1, 2016 Order, there has, in fact, been no factual determination that Oberlander engaged in wrongdoing with respect to the Bayrock Documents. As recognized in the February 1, 2016 Order, there has been no such determination in this action. To the contrary, this Court has already determined that the issue of how Oberlander obtained the Bayrock Documents is "collateral" to the issues in this matter. Moreover, as there is no claim before the Court regarding the parties' respective rights to keep and use the Bayrock Documents, such as a misappropriation claim, this Court is without subject matter jurisdiction to make such determination.[7]

[7]It is respectfully submitted that having concluded that this Court lacks subject matter jurisdiction over this issue, it would be inappropriate and beyond the scope of its inherent authority to essentially create such jurisdiction.

Contrary to the Court's assumption, there was no finding in the ancillary proceedings before Judge Glasser regarding certain of the documents relating to Sater's criminal proceedings. More specifically, this Court assumed that Judge Glasser (a) "made factual findings that Oberlander knew or should have known that Bernstein did not have any legal right to the Sater documents and (b) "found that Oberlander publicly filed some of the[Sater criminal documents] as attachments to the complaint in the present case knowing that they were sealed."  Feb. 1, 2016 Order, p. 7.  As a preliminary matter, Judge Glasser only considered the four or five documents relating to Sater's criminal proceedings rather than the Bayrock Documents.  More significantly, a review of the full transcript from the record of proceedings before Judge Glasser makes clear that no factual findings regarding the propriety of how Oberlander obtained those few documents.  In the prior motion papers before this Court on which the February 1, 2016 Order was based, defendants argued that pages 19 and 20 from the transcript of a July 20, 2010 conference before Judge Glasser amounted to a factual finding that Oberlander was a "converter" (Sater Opp. Br. p. 3 [ECF 156]) of the Bernstein Documents and a holding that Oberlander had "no legal right to them."  Bayrock Opp. Br. 9 (ECF 154).  First, Judge Glasser only ever had before him consideration of the four or five so-called "Sater documents."  Second, the full transcript from the July 20, 2010 court conference demonstrates that no factual finding was being made.  See Exhibit G to Affirmation of Simon Miller, dated June 9, 2015 (ECF 163).  This July 20, 2010 conference was to be an argument of the motion from Defendant Sater for a preliminary injunction brought on by Order to Show Cause on May 18, 2010 seeking to restrict Oberlander's use of the Sater Documents.[8]  At the July 20, 2010 hearing, Sater's attorneys requested the

---

[8] Sater's counsel argued that the May 18, 2010 Order to Show Cause comprised an order directing Oberlander to return the Sater Documents.  That is not true.  The May 18, 2010 Order to Show Cause merely set down for hearing Sater's motion which sought that relief.  The only document Judge Glasser ever ordered turned over was the PSR.

opportunity to put in further papers on their motion. Judge Glasser granted this application and, accordingly, did not rule on the preliminary injunction motion and, by extension, held no evidentiary hearing and made no findings of fact.

During that conference, however, the Court, starting at page 16, noted several things including that (a) he could not locate an order sealing the record of the Sater criminal proceedings, (b) he questioned whether such an order, if it existed, would have bound Oberlander, (c) he noted that he had an affidavit from Sater regarding Bernstein's conduct and positing that such affidavit could give rise to an "inference" that Bernstein "may have improperly obtained those [Sater] documents," and (d) if such inference was born out, what possible claims might exist against Bernstein and Oberlander in other forums. This type of hypothetical musing is nothing close to a "factual finding" as might result from an actual determination of a preliminary injunction motion following an evidentiary hearing.[9]

While the 2011 appellate proceedings before the Second Circuit were initiated by Oberlander, it is well settled that a District Court may not sanction a party or counsel for conduct engaged in during appellate proceedings. *See Argo Marine Systems, Inc. v. Camar Corp.*, 755 F.2d 1006, 1015 (2d Cir. 1985); *Cheng v. GAF Corp.*, 713 F.2d 886, 891-892 (2d Cir. 1983). Finally, with respect to the proceedings before the Honorable Brian Cogan arising out of the 2011 appellate proceedings with respect to potential claims of civil and criminal contempt against Oberlander, there has been no finding of fact at all, no evidentiary hearings and no findings of either civil or criminal contempt.

[9] In fact, Judge Glasser never ruled on Sater's preliminary injunction motion and, accordingly, never made a final factual finding. Moreover, any factual "findings" in connection with the proceedings before Judge Glasser would have been based on a "preponderance of the evidence" standard rather than the more exacting "clear and convincing evidence" required for imposing a sanction, particularly a filing restriction.

### 3. "Stolen" evidence alone not a basis for sanction

While the February 1, 2016 Order does not expressly identify the allegedly "stolen" documents as a basis for sanction and, as demonstrated above, there has been no determination that the Bayrock Documents were, in fact, "stolen," that fact would not, even if true, justify a sanction. Indeed, New York law is clear that even evidence which has been improperly obtained such as stolen, is nevertheless admissible in court. *See Sackler v. Sackler*, 15 N.Y.2d 40 (1964); Prince, Richardson on Evidence § 4-104 (Farrell 11th ed.); 8 Wigmore on Evidence Sec. 2183 (McNaughton rev. 1961)[10]; *Mosallem v. Berenson*, 76 A.D.2d 345, 353 (1st Dept. 2010)("we see no reason why the documents should be sealed merely because they were obtained improperly").

---

[10] **"Documents, chattels and testimony obtained by illegal search or removal; General principle.** Does the *illegal source* of a piece of evidence taint it so as to exclude it, when offered by the party who has shared in the illegality?

As a general rule, our legal system does not attempt to do justice incidentally and to enforce penalties by indirect means. A judge does not attempt, in the course of a specific litigation, to investigate and punish all offenses which incidentally cross the path of that litigation. Such a practice would offend our system of law in several ways. (1) It amounts to trying a violation of law without the proper complaint and process which are essential for its correct investigation. (2) Determination of incidental violations jeopardizes the primary litigation by delaying, interrupting, confusing and sometimes frustrating it. (3) It does all this unnecessarily and gratuitously; the persons harmed by the supposed incidental violations have direct means of redress available and should not be allowed to attend to their complaints in this indirect and possibly tardy manner. (4) The judicial rules of evidence were never meant to be used as an indirect method of punishment. To punish the incidental violation by rendering evidence obtained thereby inadmissible in the primary litigation is to enlarge improperly the fixed penalty of the law, that of fine or imprisonment, by adding to it the forfeiture of some civil right through loss of the means of proving it.

WHEREFORE, non-party Frederick Oberlander respectfully submits that there is no legal or factual basis to justify imposition of a filing restriction barring his use of the Bayrock Documents and respectfully requests a full opportunity to supplement this submission to the extent necessary to address any other matter which was not explicitly set forth in the February 1, 2016 Order.

Dated: New York, New York
March 21, 2016

**BLANK ROME, LLP**

By: ____/s/__________________________
Simon Miller
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Attorneys for Frederick Oberlander*

Addendum to March 21, 2016 Memorandum of Law in Response to

February 1, 2016 Order on behalf of Frederick Oberlander

Pertinent procedural history of 10-cv-3959

05/10/2010 Complaint filed (ECF 1).

5/10/2010 On date the complaint was filed, Mr. Oberlander presented a motion for a temporary sealing order, to keep the case under seal temporarily so that the defendants could be put on notice, and be afforded an opportunity to request redactions of the publicly complaint when publicly filed. The motion was presented to Judge Kimba Wood in chambers, and Mr. Oberlander also explained that there was information in the complaint about Felix Sater being a cooperator. Judge Kimba Wood denied the application to maintain the complaint under seal. (This motion is undocketed).

5/14/2010 After conference call with Sater's counsel and Judge Buchwald, who was now assigned the case, the court issued an order "pending further order of the court," that the complaint be sealed, and that those who had received a copy be informed that the judge had issued a non-dissemination order. (ECF 2).

5/14/2010 The foregoing order was followed shortly thereafter with an order directing Mr. Oberlander to upload a redacted version of the original complaint by May 19, 2010, redacting "sealed documents or references to sealed documents." (ECF 3)

8/11/2010 As Felix Sater had filed an order to show cause before Judge Glasser, which impled Mr. Oberlander, Mr. Kriss and Mr. Ejekam, for the purpose of determining how certain documents from Felix Sater's criminal case came into their possession and whether they could be ordered returned to Mr. Sater, etc., Judge Buchwald issued an order (ECF 5), good cause having been shown, enlarging the plaintiffs' time to serve the complaint until Judge Glasser resolved the issues before him.[11]

11/02/2010 Further order (ECF 6), good cause having been shown, enlarging plaintiffs' time to serve the complaint, which was requested because Judge Glasser had not yet ruled on the issues brought before him by Felix Sater in his order to show cause against Mr. Oberlander, Mr. Kriss and Mr. Ejekam.

[11] Those issues were not resolved until March 13, 2013, when Judge Glasser made public the documents in Felix Sater's criminal case

12/23/2010 Further order (ECF 7), good cause having been shown, enlarging plaintiffs' time to serve the complaint, as Judge Glasser had not yet ruled on the OTSC.

12/23/2010 Order (ECF 8) allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint.

2/25/2011 Further order (ECF 9), good cause having been shown, allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint.

2/25/2011 Further order (ECF 10), good cause having been shown, enlarging plaintiffs' time to serve the *original* complaint.

5/11/2011 Further order (ECF 11), good cause having been shown, enlarging plaintiffs' time to serve the *original* complaint.

5/11/2011 Further order (ECF 12) allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint.

8/17/2011 Further order (ECF 13), good cause having been shown, enlarging plaintiffs' time to serve the *original* complaint.

8/23/2011 Further order (ECF 14) allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint.

8/30/2011 Endorsed order (ECF 15) denying Sater's counsel's request to be given notice of any further requests by the plaintiffs for enlargements of time to serve the complaint or an amended complaint, which enlargements had been requested because Judge Glasser had not yet ruled on Sater's OTSC.

10/12/2011 Further order (ECF 17) allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint.

12/09/2011 Further order (ECF 18), good cause having been shown, enlarging plaintiffs' time to serve the *original* complaint.

12/09/2011 Further order (ECF 19) allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint.

1/27/2012 Order (ECF 20) in response to Sater's counsel's request that no further enlargements to serve be granted, the court noted that the Second Circuit had directed that Judge Glasser take up the issues raised by Sater's order to show cause and the pending motions to unseal Sater's criminal case and indicating that the plaintiffs would have until such time as Glasser ruled to serve the complaint or amended complaint.

1/27/2012 Further order (ECF 22), good cause having been shown, enlarging plaintiffs' time to serve the *original* complaint.

| | |
|---|---|
| 1/27/2012 | Further order (ECF 21) allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint. |
| 3/05/2012 | Further order (ECF 23), good cause having been shown, enlarging plaintiffs' time to serve the *original* complaint. |
| 3/05/2012 | Further order (ECF 24) allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint. |
| 6/05/2012 | Further order (ECF 26), good cause having been shown, enlarging plaintiffs' time to serve the *original* complaint. |
| 6/05/2012 | Further order (ECF 25) allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint. |
| 9/05/2012 | Further order (ECF 27), good cause having been shown, enlarging plaintiffs' time to serve the *original* complaint. |
| 9/05/2012 | Further order (ECF 28) allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint. |
| 12/17/2012 | Further order (ECF 29), good cause having been shown, enlarging plaintiffs' time to serve the *original* complaint, until April 1, 2013, noting that "counsel should not expect any further extensions." |
| 12/17/2012 | Further order (ECF 30) allowing the plaintiffs to proceed using an amended complaint, if they wished, rather than upon the original complaint, until April 1, 2013. |
| 4/2/2013 | Plaintiffs file amended complaint, deemed timely filed as of 4/1/013, per order (ECF 32) of Judge Schofield dated 4/5/13. |