UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JODY KRISS and MICHAEL CHU'DI EJEKAM,

    Plaintiffs,

        v.

TEVFIK ARIF; FELIX SATTER (aka FELIX SATER);
SALVATORE LAURIA; JULIUS SCHWARZ; ALEX
SALOMON; JERRY WEINRICH; MEL DOGAN;
ELLIOT PISEM; BAYROCK GROUP LLC;
BAYROCK OCEAN CLUB LLC; BAYROCK
MERRIMAC LLC; BAYROCK CAMELBACK LLC;
BAYROCK WHITESTONE LLC; BAYROCK SPRING
STREET LLC; SALOMON & CO., P.C.; ROBERTS &
HOLLAND LLP; and JOHN DOES 1-100,

    Defendants.

No. 10-CV-3959 (LGS) (FM)

---

**THE BAYROCK DEFENDANTS' REPLY BRIEF IN RESPONSE TO THE COURT'S
FEBRUARY 1, 2016 ORDER TO SHOW CAUSE AND
IN FURTHER SUPPORT OF THE PROPOSED FILING INJUNCTION**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.  Respondents Have Adequate Notice of their Misconduct .............................. 1

II.  The Court Has Authority to Sanction Respondents for their Misconduct by
     Issuing the Filing Injunction…………………………………………………....3

CONCLUSION................................................................................................................... 111

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.)*,
 218 F.3d 109, 117–18 (2d Cir.2000 ........................................................................3

*Bridge CAT Scan Assoc. v. Technicare Corp.*,
 710 F.2d 940 (2d Cir. 1983) .................................................................................5

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*,
 561 F.3d 1298 (11th Cir. 2009) .............................................................................6

*Eagle Hospitals Physicians, LLC v. SRG Consulting, Inc.*,
 CIVA 104-CV-1015-JOF, 2007 WL 2479290, at *6-7 (N.D. Ga. Aug. 28,
 2007) ......................................................................................................................6

*Fayemi v. Hambrecht & Quist, Inc.*,
 174 F.R.D. 319 (S.D.N.Y.1997) ............................................................................5

*Filipas v. Lemons*,
 835 F.2d 1145 (6th Cir.1987) ................................................................................9

*Herrera v. Clipper Grp., L.P.*,
 97-CIV-560 (SAS), 1998 WL 229499 (S.D.N.Y. May 6, 1998) ...........................5

*Jackson v. Microsoft Corp.*,
 211 F.R.D. 423 (W.D. Wash. 2002) ......................................................................7

*Lipin v. Bender*,
 84 N.Y.2d 562 (1994) ...........................................................................................6

*Martin–Trigona,* 737 F.2d 1254, 1261–62 (2d Cir. 1984),................................................8

*Moore v. T-Mobile USA, Inc.*,
 No. 14 CIV 7724 GBD AJP, 2014 WL 6474904, at *7 (S.D.N.Y. Oct. 27,
 2014), *report and recommendation adopted in part*, No. 14 CIV 7724 GBD
 AJP, 2015 WL 456680 (S.D.N.Y. Feb. 3, 2015) ............................................. 9-10

*In re Neroni*,
 No. 14-4765, 2015 WL 9261287 (2d Cir. Dec. 18, 2015).....................................2

*Perna v. Electronic Data Sys. Corp.*,
 916 F. Supp. 388 (D.N.J. 1995) ....................................................................... 6-7

*Riccard v. Prudential Ins. Co.,*
  307 F.3d 1277 (11th Cir. 2002) ........................................................9

*Roe v.United States,*
  428 F. App'x 60 (2d Cir. 2011) ................................................ *passim*

*Safir v. United States Lines, Inc.,*
  792 F.2d 19 (2d Cir.1986).............................................................10

*Shanahan v. Vallat,*
  No. 03 CIV. 3496 (PAC), 2006 WL 3317018 (S.D.N.Y. Nov. 15, 2006)...............................5

*In re Shell Oil Refinery,*
  143 F.R.D. 105 (E.D. La. 1992).......................................................6

*Smith v. Krieger,*
  389 Fed. Appx. 789 (10th Cir. July 27, 2010), *cert. denied sub nom Smith v.*
  *Anderson,* 131 S.Ct. 1511, 179 L.Ed.2d 307 (2011)................................9

*Ted Lapidus, S.A. v. Vann,*
  112 F.3d 91 (2d Cir. 1997)............................................................3

*United States v. Seltzer,*
  227 F.3d 36 (2d Cir. 2000)..........................................................3, 4

This Court, the Eastern District and the Second Circuit have issued multiple orders finding that Respondents repeatedly and vexatiously defied court orders relating to their use of the Bayrock Documents.  Yet, incredibly, Respondents now feign ignorance about the misconduct for which sanctions are being considered.  Respondents ignore not only these findings of vexatious defiance but also the "unrefuted evidence" that they wrongfully obtained and used sealed, privileged and confidential information.  Clearly, Respondents do not acknowledge any wrongdoing and intend to continue their abusive behavior.  The proposed Filing Injunction is the only means to protect the judicial process from such further abuse. Further, these are two attorneys who are retaining stolen documents that were provided to them in the attorney-client relationship, where the client has long ago returned the documents to the Bayrock Defendants in settlement of a misappropriation claim and has demanded that Respondents also return them.  Respondents have no right to bring further litigation using the Bayrock Documents, and the Filing Injunction imposes no real burden on them.

## I.     Respondents Have Adequate Notice of their Misconduct

Respondents have clear notice of the conduct at issue, which by now has been the subject of years of litigation and extensive court findings.  This Court has issued several opinions describing in detail Respondents' "repeated and vexatious" defiance of the Court's orders directing Respondents to disclose the source of the challenged complaint paragraphs.  *See* 3/23/2015 Sanctions Order at 6-10; 1/14/2015 Report & Recommendation at 2-12; 5/29/2014 Memorandum Decision and Order at 10-13.  The Court's opinions also describe the undisputed evidence of how Oberlander accessed the Bayrock Documents from former employee Joshua Bernstein ("Bernstein") and deliberately searched for communications between the Bayrock Defendants and their attorneys, which he then used in the original and first amended complaints.

1

5/29/2014 Memorandum Decision and Order at 5-7.  The Court's prior opinions also refer to the factual findings by the U.S. District Court for the Eastern District of New York, after hearing testimony from Oberlander, "that Oberlander knew that the documents concerning Satter's criminal case had been sealed before Plaintiffs filed this action, and that those documents had been 'wrongfully taken' by Bernstein, who had 'no legal right to those documents.'" 5/29/2014 Memorandum Decision and Order at 5-7 (quoting *Roe v. United States*, 428 F. App'x 60, 64 (2d Cir. 2011)).

In its Opinion and Order of February 1, 2016 (the "02/01/2016 Opinion and Order"), the Court expressly assumed familiarity with this history and also referred to it several times.  *See, e.g.*, 02/01/2016 Opinion and Order at 1-2 (noting that the litigation "suffered five and a half years of protracted litigation" centering "on the concern that the original complaint divulged privileged and sealed information from the Bayrock Documents, which had been improperly obtained"); *id.* at 5 (referring to factual findings about Oberlander's conduct by Judge Glasser in the Eastern District of New York); *id.* at 7 (stating that "the concern is the filing of multiple actions based on what are essentially stolen documents, followed by a multitude of court proceedings, filings, motions and appeals to deal with the problems raised by the Bayrock Documents . . . .").  For Respondents to claim that they do not have notice of their misconduct is absurd.

The 02/01/2016 Opinion and Order also warned Respondents that sanctions were being considered pursuant to the Court's inherent authority, described the applicable legal standards for imposing such sanctions, and provided Respondents with an extended opportunity to respond. *See* 02/01/2016 Opinion and Order at 6-8; *see, e.g.*, *In re Neroni*, No. 14-4765, 2015 WL 9261287, at *2 (2d Cir. Dec. 18, 2015).  Thus, Respondents received all of the notice that is

2

required under Second Circuit precedent. *See United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir.

2000) ("Specific notice of the conduct alleged to be sanctionable and the standard by which that

conduct will be assessed, and an opportunity to be heard on th[e] matter,' and [counsel] must be

'forewarned of the authority under which sanctions are being considered, and given a chance to

defend [herself] against specific charges" (quoting *60 E. 80th St. Equities, Inc. v. Sapir (In re 60

E. 80th St. Equities, Inc.*), 218 F.3d 109, 117–18 (2d Cir.2000)).

Neither of the cases cited by Respondents in which notice was deemed inadequate, *see*

Oberlander Br. at 5, is remotely similar to the circumstances here.  In *Seltzer*, 227 F.3d at 42-43,

the district court failed to specify the exact order that the attorney was accused of violating and

based its decision in part on information from a court clerk that was not communicated to the

attorney or preserved on the record for appeal.  Here, by contrast, multiple written decisions

specify every court order that Respondents have been found to have defied, and the record of

Respondents' misconduct is well-developed and supported by the undisputed declaration

testimony of Joshua Bernstein and the Eastern District's findings based on a hearing at which

Oberlander testified.  In *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91,96 (2d Cir. 1997), the district

court apprised the attorney only that it was considering sanctions under Rule 11, without warning

that sanctions for bad faith might be imposed under section 1927.  Here, the Court has warned

Respondents that sanctions are being considered under the Court's inherent powers and cited

various Second Circuit authorities supporting such sanctions.  No further notice is required.

## II.    The Court Has Authority to Sanction Respondents for their Misconduct by Issuing the Filing Injunction

This Court has ample authority pursuant to its inherent powers to impose the Filing

Injunction to protect the judicial process from further abuse and vexatious behavior by

Respondents.  As an initial matter, contrary to Respondents' arguments (Oberlander Br. at 7, 9),

3

a finding of bad faith is <u>not</u> required before this Court may sanction "an attorney's violation of a court order." *Seltzer*, 227 F.3d at 42-43.  In any event, in this case, Respondents' bad faith has already been established by findings that they "repeatedly and vexatiously defied the Court's orders."  03/23/2015 Sanctions Order at 19; *see also id.* at 8 ("Plaintiffs are being sanctioned for engaging in a pattern of arguing implausible and unsupported interpretations of court orders rather than following them."); 01/14/2015 Report & Recommendation at 1 ("Plaintiffs repeatedly have failed to comply with the [05/29/2014] Order] and prior directives to the same effect."); 05/29/2014 Memorandum Decision and Order at 10 ("it is clear that Plaintiffs have flouted my directive and Judge Buchwald's prior request"); *see also Roe v. United States*, 428 F. App'x 60, 64 (2d Cir. 2011) (referencing Judge Glasser's findings that Oberlander "knowingly and intentionally flouted a Court order" by "unilaterally deciding" to disclose information despite their "knowledge" that it "was sealed and came from a sealed criminal case"); *id.* at 65 (referencing a finding by the Eastern District that Oberlander was "seeking to fatally undermine the purpose of the injunctions by publicizing information that would render them ineffective"); *id.* at 67 (warning Oberlander that sanctions, including leave-to-file restrictions, would be imposed for "any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature").

Incredibly, in their response to the Order to Show Cause, Respondents completely ignore their repeated and vexatious defiance of court orders and the years of delay, waste of judicial resources and unnecessary costs that their misconduct caused.  Respondents also seek to blame the Bayrock Defendants for "distract[ing]" the Court with the supposedly "collateral" issue that the complaints filed by Respondents were based on the Bayrock Defendants' purloined privileged and confidential information.  (Oberlander Br. at 3.)  This issue was by no means

collateral.  Respondents' refusal to comply with the Court's orders made it "impossible to conduct an inquiry to determine whether the FAC is so tainted by Mr. Oberlander's decision to forage through the Bernstein Information as to preclude the further prosecution of this suit." 01/14/2015 Recommendation and Report at 20.

Indeed, Oberlander's foraging through the Bayrock Defendants' privileged and confidential information itself provides an independent basis to impose sanctions.  Respondents rely on *Bridge CAT Scan Assoc. v. Technicare Corp.*, 710 F.2d 940 (2d Cir. 1983), to argue that this Court cannot sanction or restrict their use of the Bayrock Documents because they were obtained outside of discovery.   However, the holding in *Bridge CAT Scan* is limited to documents that are *innocently* obtained outside of discovery.  "Cases in this district have restricted the disclosure or use of such information when a party has obtained the information wrongfully."  *Shanahan v. Vallat*, No. 03 CIV. 3496 (PAC), 2006 WL 3317018, at *1 (S.D.N.Y. Nov. 15, 2006); *see also Fayemi v. Hambrecht & Quist, Inc.,* 174 F.R.D. 319 (S.D.N.Y.1997). Pursuant to its inherent authority, "a court must be able to sanction a party that seeks to introduce improperly obtained evidence," including "material improperly obtained outside the discovery process." *Fayemi*, 174 F.R.D. at 324 (sanctioning employee by precluding use of confidential but non-privileged information that employee wrongfully took from employer); *see also Herrera v. Clipper Grp., L.P.*, 97-CIV-560 (SAS), 1998 WL 229499, at *2 (S.D.N.Y. May 6, 1998) ("The discovery process is not meant to be supplemented by the unlawful conversion of an adversary's proprietary information.")

Respondents argue that "there has been no finding as opposed to allegations that Oberlander obtained the Bayrock Documents through improper means." (Oberlander Br. at 3.) This is an unbelievable statement, given Judge Maas's finding that "the Court [was] presented

5

with unrefuted evidence that [Oberlander] improperly obtained sealed documents and, in all

likelihood, other confidential materials, including copies of Bayrock's attorney-client

communications," and it is "beyond dispute" that Oberlander used some of those materials to

draft the original and first amended complaints.  01/14/2015 Recommendation and Report at 20.

The facts concerning how Oberlander obtained the documents are set forth in Judge Maas's

5/29/2014 Memorandum Decision and Order:

> Oberlander furnished Bernstein with a retainer agreement, pursuant
> to which he agreed to represent Bernstein in the Westchester
> action, but only to the extent of deposing Schwarz.  In return,
> Bernstein provided Oberlander with access to the information
> stored on the backup hard drive as well as some paper documents.
> During a visit to Bernstein's apartment, Oberlander spent several
> hours reviewing the files on the hard drive, printing some and
> emailing others (perhaps to his personal email account). Among
> the search terms that Oberlander employed were "Roberts &
> Holland," "Duval & Stachenfeld," and "Nixon  Peabody," which
> were the names of three firms that had served as Bayrock's outside
> counsel.

*Id*. at 6 (internal citations omitted).  These facts were not contested by Oberlander.  *Id*.

It was plainly improper for Oberlander to solicit a former Bayrock employee and

deliberately search for and obtain copies of defendants' privileged, confidential and sealed

documents.  *See, e.g.*, *Lipin v. Bender*, 84 N.Y.2d 562 (1994) (imposing sanctions where party

"knowingly and deliberately intruded herself into plainly private communications between

defendants and their attorney" and made copies "for maximum advantage to herself (and

maximum disadvantage to defendants) in the litigation"); *In re Shell Oil Refinery*, 143 F.R.D.

105, 108 (E.D. La. 1992) (sanctioning attorney for obtaining Shell Oil's proprietary documents

by soliciting an employee and thereby "circumvent[ing] the discovery process and prevent[ing]

Shell from being able to argue against production"); *Perna v. Electronic Data Sys. Corp.*, 916 F.

Supp. 388 (D.N.J. 1995) (imposing sanctions for attorney's "scandalous" misconduct in making

6

photocopies of defense counsel's work product); *Eagle Hospitals Physicians, LLC v. SRG*

*Consulting, Inc.*, CIVA 104-CV-1015-JOF, 2007 WL 2479290, at *6-7 (N.D. Ga. Aug. 28,

2007) *aff'd sub nom. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298 (11th

Cir. 2009) (imposing sanctions for improperly obtaining plaintiff's privileged e-mails); *Jackson*

*v. Microsoft Corp.*, 211 F.R.D. 423, 432 (W.D. Wash. 2002) (imposing sanctions where plaintiff

acquired and reviewed two CDs containing 10,000 of defendant's e-mails, which included

privileged attorney-client communications and confidential information).

      Respondents' use of the documents, after improperly obtaining them, was perhaps even

more deplorable.  As Judge Glasser stated, in regards to the sealed documents, "something bad

was done, something very bad and perhaps despicable was done by the use of those documents

annexed to a complaint in the Southern District, in a civil case." (*See* Felix Sater's Response to

Oberlander and Lerner's Objections to and Motion to Set Aside the April 30, 2015 Order, dated

June 2, 2015 [ECF 156], at 4-5 (quoting Transcript dated July 20, 2010, at 19:12-20:23)).  And

as the Second Circuit also observed, Respondents' use of Sater's PSR was "of dubious utility []

except as a tool to intimidate and harass [Mr. Sater] by subjecting him to danger." *Roe*, 428 F.

App'x at 67.   Notwithstanding Oberlander's current contention, in an unsworn "addendum" to

his submission presented with no supporting evidence, that he initially sought to file the Original

Complaint under temporary seal, (*see* Oberlander Br. at 13 & Addendum), evidence submitted

by Sater shows that Respondents not only threatened, but also carried out their threats, to make

information from the Bayrock Documents public if defendants did not agree to Respondents'

extortionate demand for more than $100,000,000.  (*See* ECF 156 at 4-5; *see also* Letter from

Oberlander, dated Oct. 18, 2010 [ECF Nos. 201-3] at 4-5; Letter from Oberlander, dated Nov. 9,

2010 [ECF No. 201-4] at 1-2 (threat by Oberlander that there would be "worldwide

dissemination of this Complaint and every document attached thereto" and that "Judge Buchwald will be presiding over World War III with coverage likely on the front page of the New York Law Journal").

Respondents also state that "it is not insignificant that Bayrock has never brought a misappropriation claim against Oberlander presumably because it recognizes such a claim likely would not succeed." (Oberlander Br. at 3 n.2.)   In fact, the Bayrock Defendants brought a misappropriation claim in this District against Bernstein, from whom Respondents received the documents in their capacity as his counsel.  *See Bayrock Group LLC v. Joshua Bernstein*, No. 10 Civ. 6338 (NRB).  At the outset of that litigation, Bernstein stipulated to a temporary restraining order that prohibited himself, and his attorneys, from disclosing the documents.  (*See* Saurack Declaration Ex. 7 [ECF 260-7] at 1.)   That TRO was never terminated and remains in effect. Rather than contest the misappropriation claim, Bernstein agreed to return the Bayrock Documents to the Bayrock Defendants and instructed Respondents to return or destroy the copies in their possession.  (Saurack Declaration Ex. 8 [ECF 260-8].))[1]

Respondents have no right to use documents that their former client misappropriated and has since returned and demanded that Respondents return or destroy.  Nor do Respondents have a First Amendment right to continue attempting to use those documents to taint future litigations, presumably brought on behalf of new clients, after Respondents repeatedly defied this Court's considerable efforts to prevent Respondents from so tainting this litigation.  In *Martin–Trigona*, 737 F.2d 1254, 1261–62 (2d Cir. 1984), the Second Circuit recognized the authority of federal district courts to impose filing injunctions against vexatious litigants such as Respondents, and

---

[1] Further, Respondents' other former client, Kriss, purportedly has returned all copies of the Bayrock Documents received from Bernstein that were in his possession, without the need for the Bayrock Defendants to assert a misappropriation counterclaim against him.

other circuit courts have rejected the contention that narrowly-tailored filing injunctions violate a vexatious litigant's First Amendment rights. *See, e.g. Smith v. Krieger,* 389 Fed. Appx. 789, 799 (10th Cir. July 27, 2010), *cert. denied sub nom Smith v. Anderson,* 131 S.Ct. 1511, 179 L.Ed.2d 307 (2011); *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1298 (11th Cir. 2002) ("A vexatious litigant does not have a First Amendment right to abuse official processes with baseless filings."); *Filipas v. Lemons,* 835 F.2d 1145, 1146 (6th Cir.1987).  Moreover, given that Respondents do not themselves have any claims based on the Bayrock Documents, but instead have sought to represent clients in such claims, the Proposed Injunction does not impinge Respondents' own rights of access so much as it narrowly restricts their professional employment.

Respondents also falsely state that the Bayrock Documents have become public.  To the contrary, only a copy of the Original Complaint has become public.  On information and belief, a copy of the Original Complaint was inadvertently filed by Sater without appropriate redactions in an action in Israel against Ervin Tausky, who is or was a client of Oberlander and a plaintiff in the dismissed *Kriss II* and *Gottdiener* cases.  The Original Complaint then came into possession of the Associated Press, which published an online article containing a link to the Original Complaint.  None of the underlying Bayrock Documents have become public, and the inadvertent disclosure of the Original Complaint by a third party cannot operate to waive the Bayrock Defendants' attorney-client privilege or excuse Respondents' misconduct in originally obtaining the documents.

Courts have issued filing injunctions when faced with misconduct far less egregious than Respondents'.  For example, in *Moore v. T-Mobile USA, Inc.*, a filing injunction was granted against a former attorney for seeking to re-litigate rulings in a prior action that his dispute was

subject to mandatory arbitration and for making "unsupported accusations of fraud and treason on the part of the federal courts." No. 14 CIV. 7724 GBD AJP, 2014 WL 6474904, at *7 (S.D.N.Y. Oct. 27, 2014), *report and recommendation adopted in part*, No. 14 CIV. 7724 GBD AJP, 2015 WL 456680 (S.D.N.Y. Feb. 3, 2015).   In this case, Respondents filed this action after the Delaware Court of Chancery found that Kriss's claims were subject to arbitration and dismissed them, and *then* Respondents engaged in all of the misconduct and years of defiance of court orders at issue, and now Respondents are pursuing a putative class action accusing this Court and the Eastern District of fraud and conspiracy.   Respondents' conduct is worse than the typical vexatious litigant, who is *pro se*.   As officers of the Court, Respondents should be held to a higher standard.

"Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986).   Respondents' conduct over the last six years – their  multiple duplicative lawsuits (the dismissed Delaware Action, this action (*Kriss I*), the voluntarily dismissed *Kriss II* and the dismissed *Gottdiener* RICO action); their repeated defiance of court orders; their constant re-argument of issues decided against them, e.g., *Roe*, 428 F. App'x at 68; their baseless motions for disqualification and recusal, *e.g.*, ECF 128; their strident and disrespectful tone with the Court, *e.g.*, ECF 285 at 5 ("Of course you haven't, because you can't"); their refusal to acknowledge any wrongdoing, and, perhaps most tellingly, their recent $100 million class action accusing this Court and the Eastern District of conspiring to violate their clients' constitutional rights – shows that Respondents will continue their vexatious and abusive conduct unless this Court issues the Filing Injunction.

## <u>CONCLUSION</u>

For the foregoing reasons and those stated in the Bayrock Defendants' initial brief, the Court should issue the Filing Injunction.


Dated:  New York, New York
        April 6, 2016

SATTERLEE STEPHENS BURKE & BURKE LLP


By: <u>s/ Walter A. Saurack</u>
Walter A. Saurack
230 Park Avenue, Suite 1130
New York, New York  10169
212. 818.9200

*Attorneys for Defendants Bayrock Group LLC, Bayrock*
*Spring Street LLC, Bayrock Ocean Club LLC, Bayrock*
*Whitestone LLC, Bayrock Camelback LLC, Bayrock*
*Merrimac LLC, Tevfik Arif and Julius Schwarz*

11