# THE LAW OFFICE OF RICHARD E. LERNER, P.C.

**Richard E. Lerner, Esq.**
**122 West 27th Street, 10th Floor**
**New York, New York 10001**
**Phone: 917.584.4864**
**Fax: 347.824.2006**
**richardlerner@msn.com**

April 6, 2016

**Via ECF**

Hon. Lorna G. Schofield, USDJ-SDNY
40 Foley Square
New York, New York 10007

Re:     Kriss v. Bayrock Group LLC
        10-cv-3959

Dear Judge Schofield:

## The Bill of Rights Does Not Evanesce at the Courthouse Door.

I submit this memorandum *pro se* in response to the March 21, 2016 submissions by the

Bayrock Defendants and defendant Sater pursuant to this Court's February 1, 2016 Order *sua*

*sponte* directing the parties to show cause why Oberlander and Lerner should not be prohibited

from "filing any action in federal court that appends any of the Bayrock Documents or relies on

information from the Documents and from filing any action in state court without appending the

order restricting the filing in federal court" (the "Sanction").

Neither Bayrock nor Sater put forth a sufficient basis to impose the Sanction against us.

Bayrock's submission misstates and distorts the record, and Sater's is of no value whatsoever.

However, before analyzing it, there are matters of more immediate importance.

**Threshold Defects In The Order To Show Cause Must Be
Resolved Before Further Process**

**1)      The Order Should be Dismissed With Prejudice for Impossiblity**

Assuming the court would impose the Sanction pursuant to its inherent powers, the court correctly notes that subjective bad faith is a *mens rea* requirement before an attorney may be sanctioned for conduct which *by its nature* is inherently taken in advocacy, as obviously so here. The court also correctly notes that to impose a *Martin-Trigona* order restraining access to courts further requires that there have been a history of repeated, meritless, vexatious litigation so severe as to have impaired the court's ability to carry out its Article III function, affecting the orderly administration of justice and (2) have been committed with *mens rea* of specific intent.

Yet the only language that looks like a "charge" is this:

[T]he concern is not the filing of multiple duplicative or meritless actions because whether the cases have any merit is…unknown…The concern is the filing of multiple actions based on what are essentially stolen documents, followed by a multitude of…proceedings, filings, motions and appeals to deal with the problems raised by the…Documents without…reaching an adjudication on the merits.

That does not allege a predicate for imposition of a *Martin-Trigona* or any other sanction. It *does* allege (1) we filed a "multitude" of actions based on (2) "essentially" stolen Documents; (3) it isn't known if the actions were meritorious; and (4) there were years of litigation. It *doesn't* allege that we committed a wrongful act (actus reus). It *doesn't* allege that if we did, we did so with unlawful intent (mens rea). And it *doesn't* allege that we corruptly intended to and did *factually and* p*roximately* cause an impairment of the orderly administration of justice.

This is not a matter of mere notice pleading. Specificity of the facts and the law constituting the alleged misconduct and the standard by which it is to be judged is required. This failure to specify is fatal *structural* (Fifth Amendment) error requiring dismissal and, since even after six years the Court still has neither factual nor legal predicate to properly charge us without

asking for help from "the parties" – i.e., Sater and Bayrock – does not itself have sufficiently direct knowledge of obstructive conduct, dismissal must be with prejudice.

Respectfully, but truthfully, the power to sanction is abused when it is used as a latter-day Pirandello-esque device akin to some version of *A Sanction in Search of a Basis to Impose It.*

*For emphasis, inherent powers sanctions are to be used sparingly, and only when there has been frivolousness and bad faith, and of all possible inherent powers sanctions, a filing restriction is to be used only **extraordinarily** sparingly, and only when there is also the obstruction of justice.*

**a)      Imposition of the Sanction is impossible if "filing actions" is an element of the charge.**

Filing a complaint is core protected petitioning. According to *Noerr-Pennington*, an attorney may not be sanctioned for doing so unless it is first determined that the complaint has no merit whatsoever, and then it is determined that it was filed solely for an improper purpose – in short, that it was a sham.

Given the court's "concern" that actions were "filed" – as that *seems* to be an element of what this court believes to have constituted misconduct – absent a *specific* charge alleging how and why any filing was without merit nothing can be adjudicated. *And* this Court has already held in its order that the merits of the filings, and thus any lack of merit, cannot be determined at all, so the exercise is pointless. The same is true for inherent powers sanctions in general; frivolousness (lack of colorable merit) is an absolute requirement and again with both a failure to charge it, and a holding that makes it law of the case that lack of merit cannot be determined, this proceeding must abort.

**b)** **Imposition of the Sanction is impossible as it would be immediately at least in part void and unconstitutional and inevitably in full void and unconstitutional.**

In *Crosby v. Bradstreet Co.*, 312 F.2d 483(CA2 1963), the Second Circuit said that no court has the authority to enjoin truthful speech lawfully obtained; such an order would be void. this court has correctly held, and made law of the case, that it cannot adjudicate the rights of the parties (and us) in the Documents as the issue was never properly brought before it. Ergo, the scope of the rights we possess as a matter of state law runs anywhere from merely possessory (to the extent we have the documents) to plenary (for example, if title passed by adverse possession), and where it is on that spectrum is not for this court to say.

Accordingly, if our state law rights include the right to freely disseminate them and place them in the public domain, because the Sanction makes no allowance for, *e.g*., the use of such of the Documents as may be public (such as is the case of the Sater documents except for parts of the PSR), it would be a prior restraint on petitioning using public information, which must be *per se* void as well as unconstitutional for futility, there being no possible constitutional interest in restraining that petitioning because there can be no threat of future abuse or relitigation.

Respectfully, I put the question: Sater's criminal information is one of the Bayrock Documents (as are newspaper articles and the like, all public, because the Sanction covers everything Bernstein or his counsel gave us ever, even takeout menus and the like). It is also public on his criminal docket and public on your docket, because it's part of the Gottdiener RICO complaint and it's part of the Second Circuit public appellate record, too.

Exactly why is there a justification to enjoin its future use in a federal court? *The First Amendment does not evanesce at the courtroom door.*

Then there is the provision that bans the use of information "derived from" the Documents. If that order is put in place litigation will explode exponentially. For example, the New York Times is running a story today about Sater, Trump, and Bayrock. They couldn't have run it without what we legally forced public. Of course, we already knew that information before today. So again, what we figured out on our own can't be used in court even if it's also figured out somewhere else?

**2)      Criminal Due Process is Required and Must Be Implemented Immediately**

**a)      If the court will enliven the doctrine of "Civil Death," which it cannot, as it was English common law and there is no common criminal law here, then criminal process is due.**

As the sanction has no escape hatch, banning the court use of certain information, it deprives us and our clients of the rights to sue for our own (or their own) injuries suffered during the course of this litigation to the extent its use is necessary. Even by aleatory valuation that is worth a fortune given the fraud that went on here, certainly more than $2,000, and confiscating that from us (or our clients) is a confiscation of property with a value far beyond the level that triggers criminal due process rights, if imposed as a confiscation of cash. See *Mackler II*

Basically, the Sanction is seen as the imposition of "Civil Death," a Greco-Roman concept of antiquity that allowed courts to declare certain criminals "civilly dead" and divested of fundamental rights. It was last seen in common law in Medieval England. And because it could only be imposed upon a criminal conviction, once again, if the Court proceeds, it must do so criminally.

**b)** **Not only the penal nature of the remedy, but the penal nature of the predicate entitles us to criminal due process, for the court, should it proceed, is effectively charging criminal misconduct, *viz.* obstruction of justice.**

It would also be fatal structural error not to provide us with the protections of full criminal due process *ab initio*. Here, not only the penal nature of the *remedy* requires it, but so, too, does the penal nature of the *predicate* required to impose the penalty.

In *Mackler I* and *Mackler II*, the Second Circuit held that imposing a substantial sanction requires criminal due process to protect against, *inter alia*, "the risk of…vindictive pursuit by an offended judge."[1] The Ninth Circuit then followed in *Hanshaw Enterprises v. Emerald River Development*, 244 F.3d 1128 (9th Cir. 2001), and filled in *Mackler's* gaps:

In *Hanshaw*, a federal monitor told a district judge that the plaintiff had offered her a bribe. The court found that he had attempted to bribe the monitor and imposed an inherent power sanction. In reversing, the Ninth Circuit said:

> *Appellants' complaint…is…once the court…put him on trial for attempted bribery, he was effectively charged with criminal misconduct…entitled to the panoply of constitutional rights afforded anyone charged with a crime*…the district court attempted…to fashion a process to vindicate the integrity of the…proceedings while affording…a fair hearing. *We conclude, however, that the proceeding was criminal in nature and subject to the concomitant due process procedural guarantees.…*

Moreover, *Hanshaw*, by including all the standard rights to criminal process, resolved "gaps" in *Mackler I* that the Second Circuit either instructed the district court to address on

---

[1] *Mackler v. Cohen*, 146 F.3d 126 (CA2 1998); *Mackler v. Cohen*, 225 F.3d 136 (CA2 2000).

> [S]anctions raise…concerns…unfairness and abuse are possible, especially if courts…operate without any framework of rules or cap on their power to punish…*the individual bears the risk of substantial punishment by reason of obstructive or disobedient conduct, as well as of vindictive pursuit by an offended judge. The imposition of a sufficiently substantial punitive sanction requires that the person sanctioned receive the procedural protections appropriate to a criminal case.* [Emph. Add.]

remand, such as whether criminal process in a sanctions case should include trial by jury (the district court never held a retrial) or otherwise didn't consider.

A *Martin-Trigona* sanction may only be imposed if there is "bad faith" (required for all inherent powers sanctions for conduct taken as an advocate) obstruction of justice (required for this particular sanction, the words in *Martin Trigona* even match the statute, 18 U.S.C. § 1503). As "bad faith" is the same as "specific intent," the court is apparently charging us with criminal misconduct; "apparently" as again, the charge fails for not alleging how there was obstruction and how it was a factual and legal consequence of bad faith as opposed to a normal course of litigation.

**c)    The penal nature of the remedy also entitles us to criminal due process.**

      **i)    The Scarlet Letter Aspect**

It is self-evident that having to inform state courts if we use the information there that we have been adjudged to have obstructed justice is a professional hindrance far beyond the level of reprimand, and that level of sanction alone justifies criminal due process.

      **ii)    The "Death Penalty" Aspect**

As noted, *supra*, the confiscation of choses in action from us, personally, is a confiscation of property for which criminal process is required, no less than if it were money confiscated.

**d)    The criminal process due.**

I respectfully demand the entire panoply of criminal due process rights, including that all fact-finding be by jury and determined beyond a reasonable doubt; that it be public so media may cover it; that I have subpoena power; that I have Fifth Amendment testimonial privilege; that the proceedings be conducted by a credentialed prosecutor appointed at court expense with the

ability to exercise prosecutorial discretion[2]; and, again, that I be properly charged with specificity.

**3)      Even if We Are Not Entitled to Criminal Due Process, We Are Entitled to Extremely Heightened Civil Due Process**

That the Sanction would burden the exercise of fundamental constitutional rights of petition entitles us to full adversarial due process at strict scrutiny prior-restraint standards, with evidentiary hearings and findings of constitutional facts at a clear-and-convincing standard capable of *de novo* appellate review.

Even without that, the mere fact that an injunction would be imposed even if it didn't burden fundamental rights still triggers the due process requirements of equity that there be full evidentiary hearing and in particular no evidentiary or ultimate findings on affidavits or inferences.

**4)      Other Matters**

**a)      I join in and adopt as my own the reply filed in behalf of Mr. Oberlander today.**

**b)      I preserve my right to testimonial privilege by confirming that nothing herein is testimony and therefore while I now issue a general statement of "innocence" as the criminal analog of a civil general denial, I cannot be required to deny individual factual allegations by testimony and so no waiver may be inferred.**

**c)      I intend to prove that Mr. Saurack is appearing without authority, as Bayrock has no lawful management that can hire an attorney and authorize court appearances, and so lacks the capacity to do anything here but be called as a witness, as I intend to prove that the only person in the firm with the power to vote and so control it as to significant matters long ago left and no one new could have obtained that authority without Kriss's consent.**

---

[2] *Young v. U.S. ex rel Vuitton et fils*, 481 U.S. 787 (1987).

**d)**   **The court referred to the Bayrock Documents as "presumptively" privileged. There can be no such thing outside of e-discovery vocabulary. Substantively, the burden of proving privilege is on the person asserting it. There is no "presumption." If the privileged nature or confidential nature of any of the Documents is an element of the Sanction determination, then those factual findings will be made in the normal course; I will also prove that Magistrate Maas himself observed in or about October 2015 that Bayrock had had years to establish that anything was privileged or confidential and had still failed to do so; I will prove that Bayrock's initial counsel, Morrison and Cohen, identified 52 paragraphs in the complaint that Mr. Oberlander wrote as objectionable, then suddenly that number grew to 620; and I will prove that Magistrate Maas himself observed that if he had forced Bayrock to first establish a prima facie case of privilege or confidentiality (as he was required to by law, but did not), they would have failed, as the magistrate knew the list of 620 objections was quite overbroad.**

**e)**   **Oberlander has in many filings, none of them docketed, repeatedly propounded why he had every right as Kriss's agent and attorney to exercise Kriss's rights to absolute plenary access to those or any Bayrock documents because of his plenary agency authority as a managing member of the firm.**

**f)**   **No testimonial *evidence* exists**

There simply is no *evidence* present. Whether my or Oberlander's prior sworn statements may be admissible as party admissions notwithstanding, there is no *evidence* here.

All the statements in the world whether by this court, or Judge Maas, or Judge Glasser, not both based on *evidence* and also necessary for adjudication, are not findings.

In particular, I intend to prove that the Bernstein affidavit was purchased; that despite the claims that he stole the documents, he was actually *paid* to settle those civil charge against him in return for that affidavit; and was promised he would never have to testify anywhere, it had been "fixed."

The defendants assert that Bernstein misappropriated the Documents.  Whether that is true or not has not been considered in this court and, perhaps more significantly, is irrelevant to the question of whether or not Oberlander and I obtained such Documents improperly. Fifty years of constitutional law from the *Pentagon Papers* case to *Bartnicki v. Vopper* to *Florida Star* to countless others have made clear that even if a third party lost control of them, even if

Bernstein stole them, if he gave them to someone who played no role in the theft, then that recipient is free to use them as he will, at least if they are of public concern, despite the defect in the chain. No doubt the court has seen the news reports of the so-called Panama Papers. Apparently those documents were stolen by a whistleblower. No doubt, they will find there way into court, and no court is going to deem them inadmissible merely because they were stolen.

To end with a conundrum: If this court were to issue the Sanction, how would that apply to the information from Sater's PSR that the U.S. Supreme Court deemed we could freely use. Please read the motion in which we requested leave to tell the world of the judicial and prosecutorial misconduct that the PSR revealed. The motion is available here:

http://www.richard-roe.com/uploads/SCOTUS_package.pdf

And then read the U.S. Supreme Court's docket, 12-112 – specifically, the following entries, indicating that we were granted leave to publicly disseminate the information, and that we had properly complied with the U.S. Supreme Court's order with respect to making the information public: (emphasis added)

### Excerpts from U.S. Supreme Court Docket 12-112

| | |
|---|---|
| May 10 2012 | Motion (11M122) for leave to file a petition for a writ of certiorari under seal with redacted copies for the public record filed. |
| May 10 2012 | Petition for a writ of certiorari filed. (Response due August 27, 2012) |
| Jun 5 2012 | MOTION (11M122) DISTRIBUTED for Conference of June 21, 2012. |
| Jun 25 2012 | The motion (11M122) for leave to file a petition for a writ of certiorari under seal with redacted copies for the public record is granted on condition that petitioners provide a redacted motion and petition that remove any appended item containing a party's true name and any reference to such item within 30 days. |
| Jul 13 2012 | *Petitioners complied with order of June 25, 2012.* |

If this court were to say that the documents obtained from Bernstein could not be used, it would be holding that the U.S. Supreme Court erred in saying that the information from Sater's PSR could in fact be publicly disseminated. Respectfully, your honor does not have the power to

overrule the U.S. Supreme Court. Yet by the Sanction, any time I might refer in court papers to that information that the U.S. Supreme Court allowed me to make public and include in filings at the U.S. Supreme Court, I would have to append an order of this court with some kind of admonition that such information was improperly obtained.

Thank you,

THE LAW OFFICE OF RICHARD E. LERNER, P.C.

Richard E. Lerner

cc: via ECF