UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JODY KRISS and MICHAEL CHU'DI EJEKAM, <br><br> Plaintiffs, <br><br> v. <br><br> TEVFIK ARIF; FELIX SATTER (aka FELIX SATER); SALVATORE LAURIA; JULIUS SCHWARZ; ALEX SALOMON; JERRY WEINRICH; MEL DOGAN; ELLIOT PISEM; BAYROCK GROUP LLC; BAYROCK OCEAN CLUB LLC; BAYROCK MERRIMAC LLC; BAYROCK CAMELBACK LLC; BAYROCK WHITESTONE LLC; BAYROCK SPRING STREET LLC; SALOMON & CO., P.C.; ROBERTS & HOLLAND LLP; and JOHN DOES 1-100, <br><br> Defendants. | No. 10-CV-3959 (LGS) (FM) |

## DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

Table of Authorities ....................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT FACTS .........................................................................................................4

ARGUMENT ...................................................................................................................10

I.      **PLEADING STANDARDS TO SURVIVE A MOTION TO DISMISS.** ...................10

II.     **THE TAC FAILS TO STATE CLAIMS FOR VIOLATION OF CIVIL RICO.** ......................................................................................................................11

      A.     The TAC Fails to Adequately Plead Predicate Acts. ...............................11

      B.     The TAC Fails to Plead Relatedness and Pattern. ...................................21

      C.     Plaintiffs Do Not Have Standing to Bring RICO Claims. .....................22

      D.     The TAC Fails to Plead Proximate Causation. .......................................23

      E.     Plaintiffs' RICO Conspiracy Claim (18 U.S.C. § 1962(d)) Fails Because the 1962(c) Claim Fails and Because the TAC Fails to Allege Defendants Agreed to Commit the Predicate Acts In Furtherance of the Enterprise. ..............24

III.    **THE TAC FAILS TO STATE ANY STATE LAW CLAIMS.** ...............................26

      A.     The TAC Fails to State Claims for Breach of Contract. .........................26

      B.     The TAC Fails to State Claims for Tortious Interference with Contract. ..............30

      C.     The TAC Fails to State a Claim for Breach of Fiduciary Duty. ............31

      D.     The TAC Fails to State Claims for Breach of Aiding and Abetting Breach of Fiduciary Duty. ................................................................................................31

      E.     The TAC Fails to State Claims for Fraudulent Inducement. ..................32

      F.     The TAC Fails to State a Claim for Unjust Enrichment. ........................33

      G.     The TAC Fails to State Claims for Conversion or Aiding and Abetting Conversion. ...............................................................................................33

      H.     The TAC Fails to State a Claim for Alter Ego/Piercing the Corporate Veil. ........34

CONCLUSION ...............................................................................................................35

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*767 Third Ave. LLC v. Greble & Finger, LLP*,
8 A.D.3d 75 (1st Dep't 2004) ...................................................................................2, 32

*American United Life Ins. Co. v. Martinez*,
480 F.3d 1043 (11th Cir. 2007) ........................................................................................12

*Annulli v. Panikkar*,
200 F.3d 189 (3d Cir. 1999).............................................................................................17

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009).............................................................................4, 10, 29, 34

*Barron Partners, LP v. LAB123, Inc.*,
593 F. Supp. 2d 667 (S.D.N.Y. 2009).............................................................................16

*Bettan v. Geico Gen. Ins. Co.*,
296 A.D.2d 469 (2d Dep't 2002) .....................................................................................33

*In re BH S & B Holdings LLC*,
420 B.R. 112 (Bankr. S.D.N.Y. 2009),
*aff'd as modified*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011).........................................29

*Blue Tree Hotel Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
369 F.3d 212 (2d Cir. 2004)..............................................................................................5

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002).............................................................................................5

*Chevron Corp. v. Donziger*,
No. 11 CIV. 0691 LAK, 2013 WL 3879702 (S.D.N.Y. July 29, 2013) .................................16

*Cofacredit S.A. v. Windsor Plumbing Supply Co.*,
187 F.3d 229 (2d Cir.1999)..............................................................................................11

*Cohen v. S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013).......................................................................................12, 16

*Cordts-Auth v. Crunk, LLC*,
479 F. App'x 375 (2d Cir. 2012) .....................................................................................27

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F.Supp.2d 385 (S.D.N.Y.2003)....................................................................34

*Ehrlich v. Howe*,
    848 F. Supp. 482 (S.D.N.Y. 1994) ...................................................................33

*Elsevier Inc. v. W.H.P.R., Inc.*,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010)...............................................................24

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
    385 F.3d 159, 182 (2d Cir. 2004)..................................................................1, 24

*Fleischhauer v. Feltner*,
    879 F.2d 1290 (6th Cir. 1989) .........................................................................23

*Forbes v. Eagleson*,
    228 F.3d 471 (3d Cir. 2000).............................................................................17

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
    74 F. Supp. 3d 581, 589 (S.D.N.Y. 2015), *appeal withdrawn* (Apr. 27, 2015)......................15

*Foster v. Churchill*,
    87 N.Y.2d 744, 665 N.E.2d 153 (1996)...........................................................30

*Geary v. Hunton & Williams*,
    257 A.D.2d 482 (1st Dep't 1999) ....................................................................32

*Golden Pacific Bancorp v. F.D.I.C.*,
    273 F.3d 509, 519 (2d Cir. 2001).....................................................................33

*Estate of Gottdiener v. Sater*,
    35 F. Supp. 3d 386, 392 (S.D.N.Y.) .................................................................12

*Gross v. Waywell*,
    628 F.Supp.2d 475 (S.D.N.Y. 2009).....................................................10, 11, 12

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989).........................................................................................21

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21, 24 (2d Cir. 1990).............................................................23, 24, 25

*Helios International S.A.R.L. v. Cantamessa USA, Inc.*,
    No. 12 CIV. 8205, 2013 WL 3943267 (S.D.N.Y. July 31, 2013) ...................1, 11

*Hemi Group, LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010)............................................................................................23

*Holmes v. Sec. Investor Protection Corp.*,
   503 U.S. 258, 268 (1992) ...................................................................................23

*Matter of Johnston*,
   75 N.Y.2d 403 (N.Y. 1990) ...............................................................................19

*Jupiter Print Pack India Ltd. v. Anand Printing Mach., Inc.*,
   No. 12 CIV. 322 KBF, 2015 WL 996391 (S.D.N.Y. Mar. 5, 2015).....................33

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd* 113 F.3d 1229 (2d Cir. 1997).................10

*Kaufman v. Cohen*,
   307 A.D.2d 113,126 (1st Dep't 2003) ................................................................31

*Kosovich v. Metro Homes, LLC*,
   No. 09 CIV. 6992 (JSR), 2009 WL 5171737 (S.D.N.Y. Dec. 30, 2009),
   *aff'd*, 405 F. App'x 540 (2d Cir. 2010) ...............................................................17

*Lefkowitz v. Reissman*,
   No. 12 CIV. 8703 RA, 2014 WL 925410 (S.D.N.Y. Mar. 7, 2014)..................10, 20

*Mallis v. Bankers Trust*,
   615 F.2d 68 (2d Cir. 1980)................................................................................15

*Margrabe v. Sexter & Warmflash, P.C.*,
   353 F. App'x 547 (2d Cir. 2009) ........................................................................31

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*,
   32 Misc. 3d 758, 773, 927 N.Y.S.2d 517, 530 (Sup. Ct.) *on reconsideration*,
   33 Misc. 3d 1208(A), 939 N.Y.S.2d 742 (Sup. Ct. 2011) *rev'd*, 102 A.D.3d
   488, 956 N.Y.S.2d 891 (2013) ...........................................................................32

*Merhej v. I.C.S. Int'l Custody Sys., Inc.*,
   No. 13 CIV. 869 JGK FM, 2014 WL 104908, at *4 (S.D.N.Y. Jan. 9, 2014),
   *report and recommendation adopted,* No. 13 CIV. 869 JGK, 2014 WL
   948108 (S.D.N.Y. Mar. 11, 2014) ......................................................................25

*Midwest Grinding Co. v. Spitz*,
   976 F.2d 1016, 1025 (7th Cir. 1992) ...................................................................1

*Matter of Morris*,
   82 N.Y.2d at 141 (1993) ...................................................................................34

*Murphy v. City of Stamford*,
   No. 14-2485-CV, 2015 WL 8593525 (2d Cir. Dec. 14, 2015).............................25

*Museum Boutique Intercontinental, Ltd. v. Picasso*,
886 F. Supp. 1155 (S.D.N.Y. 1995)..................................................................30

*N. Shipping Funds I, LLC v. Icon Capital Corp.*,
921 F. Supp. 2d 94 (S.D.N.Y. 2013)................................................................31

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Archway Ins. Servs. LLC*,
No. 11 Civ. 1134(WHP), 2012 WL 1142285 (S.D.N.Y. Mar. 23, 2012)..............12

*Ningbo Products Imp. & Exp. Co. v. Eliau*,
No. 11 CIV. 650 PKC, 2011 WL 5142756 (S.D.N.Y. Oct. 31, 2011) ..................34

*Nova-Park New York, Inc. N.V. v. Banque Worms, S.A.*,
No. 85 CIV. 1254 (SWK), 1987 WL 19639 (S.D.N.Y. Oct. 29, 1987)............17, 23

*In re Pers. Commc'n Devices, LLC*,
528 B.R. 229 (Bankr. E.D.N.Y. 2015).............................................................29

*Ray Larsen Associates, Inc. v. Nikko Am., Inc.*,
No. 89 CIV. 2809 (BSJ), 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ..................21

*Real Estate Mortg. Network, Inc. v. Carnegie Mortg., LLC*,
2013 WL 497187 (N.Y. Sup. Ct. 2013)........................................................15, 16

*Reich v. Lopez*,
38 F. Supp. 3d 436 (S.D.N.Y. 2014), *reconsideration denied*, No. 13-CV-
5307 JPO, 2015 WL 1632332 (S.D.N.Y. Apr. 13, 2015)....................................22

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris
Companies, Inc.*,
75 F.3d 801 (2d Cir. 1996)..............................................................................15

*Sathianathan v. Smith Barney, Inc.*,
No. 04 CIV.7122(DAB)(FM), 2006 WL 538152 (S.D.N.Y. Feb. 24, 2006)
*report and recommendation adopted as modified*, No. 04 CIV 7122 DAB FM,
2007 WL 576097 (S.D.N.Y. Feb. 21, 2007)......................................................25

*Schaefer Nance & Co. v. Estate of Warhol*,
119 F.3d 91 (2d Cir. 1997)..............................................................................21

*Sedima, S.P.L.R. v. Imrex Co., Inc.*,
473 U.S. 479 (1985).......................................................................................11

*Sekhar v. U.S.*,
133 S.Ct 2720 (2013)......................................................................................19

*In re Taxable Mun. Bond Secs.Litig.*,
51 F.3d 518 (5th Cir. 1995) .............................................................................23

*Tutak v. Tutak*,
123 A.D.2d 758, 759 (2d Dept 1986). ................................................................15

*United States v. Applins*,
637 F.3d 59 (2d Cir. 2011)..................................................................................24

*United States v. Basciano*,
599 F.3d 184 (2d Cir. 2010)................................................................................11

*Weshnak v. Bank of Am., N.A.*,
451 F. App'x 61 (2d Cir. 2012)...........................................................................31

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
530 F. Supp. 2d 486 (S.D.N.Y. 2007).................................................................12

**Statutes**

18 U.S.C. § 1951(b)(2) ...........................................................................................19

18 U.S.C. § 1961(5)(c)......................................................................................11, 18

18 U.S.C. § 1962........................................................................................1, 3, 22, 24

18 U.S.C. § 1964(c) .................................................................................................22

18 U.S.C. § 2311.......................................................................................................14

18 U.S.C. § 2315.......................................................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 8 ....................................................................10, 34

Federal Rule of Civil Procedure Rule 9(b) ....................................................1, 12, 34

Federal Rule of Civil Procedure Rule 12(b)(6)................................................4, 10

Defendants submit this joint memorandum of law in support of their motion to dismiss the claims against them in the Third Amended Complaint ("TAC") [ECF 287].

__PRELIMINARY STATEMENT__

It has taken six years and countless rounds of litigation battling over Plaintiffs' wrongdoing before Defendants and this Court could address the merits of this action. After all this, what we find in the TAC (Plaintiffs' fourth attempt at drafting a viable complaint) falls far short of meeting the stringent pleading standards that apply. Despite Plaintiffs' claims of a sordid racketeering scheme with purported public interest implications, the TAC reveals only yet another case of civil RICO plaintiffs "trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." *E.g., Helios International S.A.R.L. v. Cantamessa USA, Inc.,* No. 12 CIV. 8205, 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013) ("*Helios*"), *quoting Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992). This is an action brought by two disgruntled former Bayrock employees who claim not to have received sufficient compensation under their respective employment agreements; a claim that, as discussed below, is facially implausible. The TAC seeks to transform this ordinary employment dispute into a sprawling RICO case by alleging that essentially every business deal entered into by Bayrock over at least a six-year period was part of a racketeering conspiracy. As set forth below, Plaintiffs' efforts do not come close to stating a valid RICO claim and also fail to adequately plead any state law claims.

Plaintiffs' claims for violations of RICO, 18 U.S.C. § 1962, fail as a matter of law for at least five separate and distinct reasons.

***First***, the TAC fails to adequately plead the predicate acts of mail and wire fraud or violations of the National Stolen Property Act ("NSPA") with the particularity required by Rule

1

9(b). Although almost all the alleged predicate acts are based on Defendants' failure on various occasions to disclose information – concerning Felix Satter's ("Satter") prior criminal conviction, Tevfik Arif ("Arif") and Satter's alleged intentions to breach future contracts and violate the law in order to accomplish their ends, and Bayrock Group, LLC's ("Bayrock Group") payments to Satter, the TAC fails to plead with particularity the statements that omitted this information, identify the speaker or when and where the allegedly fraudulent statements were made, why the omission of this information was fraudulent, and the source of Defendants' alleged duty to disclose this information to any of the allegedly affected parties.

*Second,* the TAC fails to plead a pattern of racketeering activity because the alleged predicate acts were not sufficiently related – *i.e.*, the failure of Defendants to pay them distributions, including those allegedly due as a result of the FL Loan (defined below) has no relation to alleged fraud based on the alleged omission of Satter's criminal history in unrelated business transactions.

*Third*, Plaintiffs do not have standing to bring the RICO claims because they have not suffered a cognizable injury proximately caused by a qualifying predicate act. The first injury allegedly suffered by Plaintiffs (job opportunities they could have pursued instead of working with Bayrock or salary from Bayrock they could have bargained for) is too speculative for a RICO claim, which requires a concrete financial loss. The second injury allegedly suffered by Plaintiffs (alleged loss of memberships in Bayrock entities and loss of distributions) is allegedly caused by breach of Plaintiffs' agreements with Bayrock, but a breach of contract cannot be a predicate act.

***Fourth***, for the same reasons, the TAC fails to plead proximate causation because it fails to allege that the purported racketeering activity proximately caused a cognizable injury to Plaintiffs.

***Fifth***, Plaintiffs' RICO conspiracy claim under Section 1962(d) fails both because Plaintiffs have not adequately pleaded a substantive RICO violation and because their conspiracy allegations are wholly conclusory. In addition, the intra-corporate conspiracy doctrine bars this claim.

The TAC's common law claims fare no better:

- The breach of contract claims should be dismissed because there was no breach of contract, as the conditions for distributions in Plaintiffs' agreements were not met, none of Plaintiffs' agreements conveyed to them membership in any Bayrock entities, and the FL Loan did not result in any distributions.

- The claim for tortious interference with contract should be dismissed because there was no breach of contract and because there is no plausible allegation that any defendant intentionally interfered with any contract.

- The claim for breach of fiduciary duty should be dismissed because there is no fiduciary duty owed to Plaintiffs, who, as discussed above, were not members of Bayrock entities. Further, Defendants' actions did not breach any duty to Plaintiffs because Plaintiffs were not entitled to any distributions from the FL Loan.

- The claim for aiding and abetting breach of fiduciary duty should be dismissed because there is no breach of fiduciary duty, and because the TAC fails to plead substantial assistance.

- The fraudulent inducement claim should be dismissed because it fails to plead with particularity a false representation of material fact made by the Defendants that induced Plaintiffs' justifiable reliance. The damages claimed – lost professional opportunities – are too speculative. Furthermore, allegations that Defendants never intended to perform under the contract are allegations of breach of contract, which cannot be bootstrapped into a fraudulent inducement claim.

- The claim for unjust enrichment should be dismissed because it is duplicative of breach of contract claim.

- The claim for conversion should be dismissed because there is no claim for conversion to enforce an obligation to pay money, which is all the TAC alleges.

- The aiding and abetting conversion claim fails because the conversion claim fails, and because it fails to plead substantial assistance.

- The claim for piercing the corporate veil should be dismissed because the TAC fails to plead with particularity the elements of the claim (complete domination, use of the domination to commit wrongs against Plaintiffs).

For these reasons, this Court should dismiss the TAC in its entirety.

### RELEVANT FACTS[1]

Plaintiff Jody Kriss ("Kriss") was Bayrock Group's Director of Finance from 2003 to 2007 (TAC ¶¶ 165, 223-24). While at Bayrock, he negotiated an employment agreement dated November 10, 2005 (the "2005 Employment Agreement")[2] that, *inter alia*, set forth how he would be compensated. Kriss was to receive an "Executive's Membership Interest", defined as a "non-dilutable 10% non-voting membership interest in the Company and each of the Company Entities, pursuant to which, following [Arif] having first received a 10% return of his Total Principal Company Contribution, and subject to the provisions of this Section 4 and Section 5, [Kriss] shall be entitled to 10% of all Company Proceeds." (See 2005 Employment Agreement Section 4.G, attached as Exhibit A to the Declaration of Maria Simonchyk, dated April 15, 2016 ("the Simonchyk Declaration")).

Plaintiff Michael "Chu'di" Ejekam was an independent contractor of Bayrock. Ejekam negotiated two agreements regarding compensation for his work at Bayrock: an October 6, 2006 letter agreement concerning Bayrock Spring Street ("Spring Street") (the "Ejekam-Spring Street Agreement") and an October 6, 2006 letter agreement concerning Bayrock Whitestone

---

[1] For purpose of a motion to dismiss under Rule 12(b)(6), the alleged facts pled in a motion to dismiss are assumed to be true, but the court need not accept as true conclusory statements and legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

[2] Kriss had a previous employment agreement, dated June 29, 2004 (the "2004 Employment Agreement") that was voided by the 2005 Employment Agreement, per the terms of the 2005 Employment Agreement.

("Whitestone") (the "Ejekam-Whitestone Agreement").[3] These agreements also gave Ejekam a "membership profit interest" in those two Bayrock subsidiaries.[4]

During their tenure at Bayrock, both Kriss and Ejekam became dissatisfied with their compensation. They claim that their agreements with Bayrock conveyed to them memberships in Bayrock entities and that they were due distributions as members, particularly, a distribution allegedly due to them as a result of Bayrock's transaction with FL Group, an Icelandic company.

Kriss first brought suit against Bayrock in Delaware Chancery Court in 2008, *Kriss v. Bayrock Group LLC*, Civ No. 4154-VCS (2008) (the "Delaware Action"), asserting claims for breach of contract, fraud, state securities fraud, aiding and abetting securities fraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty – all based on Bayrock's alleged failure to pay Kriss the distributions he believed he was due as a member of Bayrock. There, the court determined that Kriss's rights with respect to any money or interests in Bayrock were determined by the 2005 Employment Agreement.[5] Because the 2005 Employment Agreement also contained an arbitration provision, the Delaware Chancery Court dismissed Kriss's Delaware Action, holding that the employment agreement required that he pursue his claims in arbitration.[6]

---

[3] *See* the Ejekam-Spring Street Agreement and the Ejekam-Whitestone Agreement, attached as Exhibits B and C respectively to the Simonchyk Declaration.

[4] The 2005 Employment Agreement, the Ejekam-Spring Street Agreement and the Ejekam-Whitestone Agreement may be considered on a motion to dismiss because they are incorporated by reference into the TAC and are integral to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)

[5] *See* the cover and contents pages of Delaware Action complaint, attached as Exhibit D to the Simonchyk Declaration, and the Final Order of the Delaware Court dated February 19, 2010 attached as Exhibit E to the Simonchyk Declaration.

[6] The Court may take judicial notice of the Delaware Action documents on a motion to dismiss. *See Blue Tree Hotel Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (stating that courts "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss").

Rather than do so, Kriss instead filed this action, recruiting Ejekam to be his co-plaintiff, and recasting his claim as a RICO action. The Third Amended Complaint ("TAC") is Plaintiffs' fourth attempt at a complaint.[7]

First, Kriss and Ejekam allege that Bayrock failed to treat them as members of Bayrock entities and pay them distributions they contend they were due, principally as a result of Bayrock Group's transaction with FL Group, an Icelandic company. The transaction was in actuality a $50 million loan from FL Group ("the FL Loan") (TAC ¶¶ 212, 215), and the terms of the FL Loan included a 15-year maturity date, with Bayrock Group to make periodic repayments of principal and interest, as set forth in the loan schedules.[8] The TAC alleges that all Defendants were involved in the transaction – Arif as a member of Bayrock, Felix Satter as an alleged member of Bayrock Group, Julius Schwarz ("Schwarz") as an alleged member of Bayrock Group and also its general counsel and executive vice president, Mel Dogan ("Dogan"), Elliot Pisem ("Pisem") & Roberts & Holland LLP ("Roberts & Holland") as outside counsel, and Alex Salomon, Jerry Weinreich and Salomon & Co., P.C. (the "Salomon Defendants") as its outside accountants.[9] (TAC ¶¶ 208-211.) Despite the FL Loan's provisions, the TAC alleges that the FL Loan violated Plaintiffs' agreements with Bayrock because, "for all intents and purposes, [it] effected a sale of membership profit interests in" various Bayrock entities. (TAC ¶ 215.) Plaintiffs also allege they were deprived of distributions to which they were allegedly entitled when Satter received payments. (TAC ¶ 145.)

---

[7] There is a long and unusual procedural history to this action which led to five years of litigation before Defendants had a chance to address the merits of any of Plaintiffs' complaints. The procedural history is set forth in the Court's previous opinions, Dkts No. 68, 97 and 126.

[8] *See* relevant excerpts from the FL Loan Agreement, attached as Exhibit F to the Simonchyk Declaration.

[9] It is alleged that Bayrock Spring Street LLC ("Spring Street"), Bayrock Whitestone LLC ("Whitestone"), Bayrock Camelback LLC ("Camelback"), Bayrock Merrimac LLC ("Merrimac") and Bayrock Ocean Club LLC ("Ocean Club") were controlled by Arif and Satter through Bayrock Group. (TAC ¶ 50.) All the Bayrock entities are collectively referred to as "Bayrock".

Second, Kriss and Ejekam allege that when they were negotiating their respective employment contracts with Bayrock, Arif and Satter concealed from them "(1) Satter's 1998 conviction; (2) Satter's familiarity with methods of converting corporate assets into personal income without triggering detection; and (3) the fact that under the Arif/Satter Agreement, Satter shared management and control of Bayrock Group and its investments, and would receive a large share of Bayrock Group's profits" (TAC ¶ 58) (the "Satter Information"). Arif and Satter also allegedly concealed from them the fact that "going forward [Arif and Satter] would simply ignore these contract provisions and promises – along with federal and state law, and IRS regulations – whenever doing so would increase their take from the Enterprise" (the "Alleged Bad Intentions") (TAC ¶ 58). The TAC further alleges that Arif and Satter concealed from them the fact that Satter received transfers from Bayrock Group between 2003 and 2007 "which Bayrock treated neither as wages nor as distributions to a member for tax purposes at the time they were made" (the "Satter Payments", together with the Satter Information and the Alleged Bad Intentions, the "Information") (TAC ¶¶ 70, 82). The TAC further alleges that Salomon Defendants, at the direction of and under supervision by Schwarz, performed their accounting duties in a manner that concealed the payments to Satter and otherwise disguised Satter's involvement and wrongdoing at Bayrock. (TAC ¶ 75, 78.) The TAC alleges that the failure to disclose the Information to Plaintiffs constituted a fraud on them.

Attempting to expand this employment and contractual dispute into a RICO scheme, the TAC alleges that Arif and Satter, along with other Defendants, concealed the Information from various other business partners in various transactions Bayrock entered into from 2003 to 2007. These transactions were:

**Donald Trump and the Trump Organization** – The TAC alleges that various Defendants failed to disclose to Donald Trump and the Trump Organization some or all of the Information when they began working with Bayrock on various real estate projects in Fort Lauderdale and Phoenix. The TAC alleges that had Trump and his organization known of this information, they "would never have agreed to partner with Bayrock Group on the Fort Lauderdale and Phoenix projects." (TAC ¶ 82.) It alleges that Trump and the Trump Organization were harmed when the New York Times reported in December 2007 about Satter's conviction because Trump "suffered embarrassment due to the revelations." (TAC ¶ 84.)

**Elizabeth Thieriot** – The TAC alleges that various Defendants concealed some or all of the Information from Elizabeth Thieriot, an alleged investor in the Trump International Beach Club, which was being developed by Bayrock Ocean Club. (TAC ¶¶ 88-91.) The TAC alleges that Thieriot invested $1 million in the Trump International Beach by purchasing approximately 1 million "units" in Ocean Club. Her investment was allegedly memorialized in a Memorandum of Understanding ("MOU") setting forth that Ocean Club owned a 50% membership interest in 550 Seabreeze Development LLC (which was developing the Trump International Beach Club). (TAC ¶ 90.) The TAC alleges that the Defendants then sold 4/5s of Ocean Club's membership interest without modifying Thieriot's MOU, obtaining her consent or notifying her and that Ocean Club failed to pay Thieriot her portion of the sale proceeds. (TAC ¶¶ 96-97).

**Camelback Plaza –** The TAC alleges that Arif and Satter, as allegedly assisted by the Salomon Defendants and Schwarz, concealed some of all of the Information from Camelback Plaza Development LLC ("Camelback Plaza") when negotiating with it the development of a commercial property in bankruptcy. Allegedly, in January 2007, Camelback Plaza filed an action in Arizona state court against Bayrock Group, Camelback, Arif, Satter, Schwarz and

Kriss, alleging that these Defendants breached their contractual obligations by, *inter alia*, failing to inform Camelback Plaza of Satter and Lauria's criminal history, failing to retain Ernst & Young as accountants, failing to properly maintain financial information, failing to provide financial information and skimming funds from the commercial development. (TAC ¶¶ 109-14.)

**Trump SoHo –** The TAC also alleges that various defendants concealed some or all the Information from the Trump Organization and the Sapir Organization during negotiations for investment in the Trump SoHo Hotel through Spring Street. The TAC alleges that as a result, these parties were "harmed" when the New York Times reported about Satter's conviction and when lender iStar demanded an audit of Spring Street's books. (TAC ¶¶ 125-26).

**Lenders –** The TAC alleges that Bayrock Group and its subsidiaries concealed the Information in their applications for various forms of debt financing from lenders iStar Financial, Capmark Finance, Inc. (f/k/a GMAC Mortgage Corporation) ("GMAC"), and Capmark Finance, Inc. ("Capmark"). Schwarz allegedly assured Capmark that it could trust the representations various other Defendants had made in connection with the loan applications. (TAC ¶ 133.) The Salomon Defendants allegedly "prepared accounting documents used by [various other Defendants] for the purpose of obtaining debt financing from iStar Financial and/or Capmark Finance," some of which "concealed Satter's managerial role and ownership interest in Bayrock Group, Camelback, Whitestone and Spring Street." (TAC ¶ 134). The TAC claims that iStar was harmed by the alleged fraud because it had to engage in "unanticipated audits" after revelation of Satter's criminal background and ownership interest in Bayrock Group in December 2007 and that Capmark was harmed when a Bayrock entity defaulted on its $27.675 million note. (TAC ¶ 135.)

<u>**ARGUMENT**</u>

**I.      PLEADING STANDARDS TO SURVIVE A MOTION TO DISMISS.**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not "shown" that the pleader is entitled to relief, and it must be dismissed. *Id.* at 679.

The standards for pleading a civil RICO claim are very high. "Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd* 113 F.3d 1229 (2d Cir. 1997). "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" *Gross v. Waywell,* 628 F.Supp.2d 475, 493 (S.D.N.Y. 2009) (quotation omitted); *Lefkowitz v. Reissman*, No. 12 CIV. 8703 RA, 2014 WL 925410, at *4 (S.D.N.Y. Mar. 7, 2014) ("Allegations merit particular scrutiny where the predicate acts are mail and wire fraud, and where the use of mail or wires to communicate is not in and of itself illegal, unlike other predicate acts such as murder or extortion.") (quotation omitted). Furthermore, courts have strongly cautioned against applying RICO to ordinary

business disputes. *See, e.g., Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir.1999) ("Mere common-law fraud does not constitute racketeering activity for RICO purposes."); *Gross,* 628 F. Supp. 2d at 488 ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour.") (citation omitted); *Helios,* 2013 WL 3943267 at *9 (alleged predicate acts "amount merely to a breach of contract [and common business torts], which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal").

     As is apparent from the TAC, Plaintiffs' claims are – at best – garden-variety breach of contract and breach of fiduciary duty claims. They do not plead a violation of civil RICO.

## II. THE TAC FAILS TO STATE CLAIMS FOR VIOLATION OF CIVIL RICO.

     To state a 1962(c) claim, Plaintiffs must allege that they were injured by Defendants' "(1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity." *Sedima, S.P.L.R. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (citing the required elements and noting that plaintiff "must, of course, allege <u>each</u> of the elements to state a claim.") (emphasis added). Plaintiffs fail to allege any of the elements. First, they fail to allege racketeering activity because they fail to adequately plead predicate acts. Second, Plaintiffs fail to plead a pattern of racketeering activity. Third, because they did not suffer a cognizable injury caused by a qualifying predicate act, Plaintiffs do not have standing to bring a RICO claim. Fourth, Plaintiffs fail to allege that the alleged acts were the proximate cause of their alleged injuries.

### A. The TAC Fails to Adequately Plead Predicate Acts.

     Section 1961 defines "racketeering activity" as any of the federal and state offenses listed in § 1961(1) – the "predicate acts". Plaintiffs must allege that each defendant committed at least two predicate acts of racketeering activity within the last 10 years. 18 U.S.C. § 1961(5). Alleging that Defendants collectively committed two predicate acts does not suffice. *See, e.g., United*

*States v. Basciano*, 599 F.3d 184, 205 (2d Cir. 2010) ("[A] defendant must be found to have committed at least two predicate acts to be guilty of substantive racketeering").[10] A RICO claim must allege every essential element of each predicate act. *Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 392 (S.D.N.Y.) *on reconsideration*, 35 F. Supp. 3d 402 (S.D.N.Y. 2014) and *aff'd*, 602 F. App'x 552 (2d Cir. 2015) (dismissing a RICO claim where the complaint failed to plead predicate acts of mail fraud with particularity). Where the alleged predicate acts are fraud-based, a plaintiff must "state with particularity the circumstances constituting fraud" pursuant to Federal Rule of Civil Procedure 9(b). *See Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013). To plead fraud with particularity, a pleading must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* at 359. Mail and wire fraud claims based on fraudulent omissions must also establish that the defendant has a duty to disclose the omitted facts. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007).

The TAC attempts to plead 21 alleged predicate acts for the basis of its RICO claim. Because the TAC alleges more than one predicate act based on the same alleged facts, this memorandum addresses their pleading in the following groups:

- Alleged mail and wire fraud and violation of the NSPA involving Kriss, Ejekam and non-party Beau Woodring (9 predicate acts)

- Alleged mail and wire fraud based on the "Initial Trump Transactions" (1 predicate act)

---

[10] *See also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Archway Ins. Servs. LLC*, No. 11 Civ. 1134(WHP), 2012 WL 1142285, at *5 (S.D.N.Y. Mar. 23, 2012) ("In a RICO case with more than one defendant, it is necessary for a plaintiff to particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts.") (internal quotation marks and citation omitted); *Gross*, 628 F.Supp.2d at 495 ("lumping the defendants into collective allegations results in the failure to demonstrate the elements of §1962(c) with respect to each defendant individually, as required."); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 496 (S.D.N.Y. 2007) ("A RICO plaintiff must show that each defendant participated in the RICO enterprise by engaging in at least two predicate acts.").

- Alleged mail and wire fraud and violation of the NSPA based on the Thieriot transactions (2 predicate acts)

- Alleged mail and wire fraud and violation of the NSPA based on the Camelback Plaza transactions (2 predicate acts)

- Alleged mail and wire fraud and violation of the NSPA based on the Trump SoHo transactions (2 predicate acts)

- Alleged mail and wire fraud based on the lender transactions (3 predicate acts)

- Alleged acts of extortion against Kriss and non-party Ernest Mennes (2 predicate acts)

For the reasons stated below, none are adequately pleaded.

### 1.    The Alleged Fraud and NSPA Violations Against Kriss, Ejekam and Woodring

The TAC alleges predicate acts based on two different alleged wrongs against Plaintiffs: (1) the alleged failure to pay Plaintiffs distributions they believe they were due as members of Bayrock entities; and (2)  alleged omissions during the negotiations of Plaintiffs' contracts with Bayrock. The TAC alleges mail and wire fraud and a NSPA violation based on Defendants' alleged conversion of their alleged memberships in Bayrock entities through the FL Loan and the failure of Defendants to pay Plaintiffs and non-party Beau Woodring distributions to which they were allegedly entitled as a result of that transaction and when Satter received payments.  (TAC ¶¶ 145, 147.) It further alleges that Arif, Satter and Schwarz used proceeds from the FL transaction to make improper and/or illegal payments to the Salomon Defendants and Lauria for the benefit of Arif and Satter (TAC ¶ 148) and that the Salomon Defendants "prepared accounting and other documents required to plan and execute the FL Group Investment that concealed vested membership interests owned by Plaintiffs and Woodring in Merrimac, Camelback, Whitestone and/or Spring street and treated such interests as if they were all owned by the Bayrock Group." (TAC ¶ 210).    Schwartz and the Salomon Defendants allegedly

"approved some or all of the Illegally-Structured Satter Payments and/or created documentation to conceal the nature of such payments." (TAC ¶ 167.)

The allegations that Plaintiffs and Woodring were denied the distributions to which they believe they were entitled under their alleged equity compensation agreements do not allege a RICO predicate act. First, they cannot form the basis for a claim of mail and wire fraud because there is no misrepresentation or omission alleged, much less plausibly and with specificity. Further, they are merely allegations of breach of contract, not allegations of mail and wire fraud.[11] As explained in Section II.A, *infra*, none of the agreements entitled them to distributions, as a result of which the alleged payments to Satter did not injure them in any way.

The TAC also alleges that the Bayrock Defendants concealed the Information from Plaintiffs and Woodring while negotiating their agreements. These allegations fail to plead (1) the time, place and speaker of any omissions or misstatements; (2) that any of the Defendants had a duty to disclose the allegedly omitted information to Plaintiffs and Woodring; (3) how the fact that Satter had a criminal conviction unrelated to his work at Bayrock would be material to Plaintiffs or Woodring; (4) that any of the defendants other than Satter even knew of Satter's conviction, and thus could have intended to conceal this information from Plaintiffs and Woodring; or (5) assuming the truth of Plaintiffs' allegation that they did not themselves know of Satter's conviction, that Plaintiffs with reasonable diligence could not have discovered this public fact, which was announced in a March 2000 press release by the U.S. Attorney's Office

---

[11] To the extent that Plaintiffs are alleging an NSPA violation because the alleged memberships were "securities" within the meaning of 18 U.S.C. § 2315, the allegations fail to state a NSPA claim because they fail to adequately allege that the funds were taken by fraud, as alleged above. Furthermore, the memberships are not "securities" within the meaning of the NSPA. *See* 18 U.S.C.A. § 2311 ("Securities" in the NSPA are defined as physical items including "any note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement…").

for the Eastern District of New York. [12] *See Mallis v. Bankers Trust*, 615 F.2d 68, 80-81 (2d Cir. 1980) ("[If plaintiff] has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations. (Citations omitted)").

The alleged concealment of the Alleged Bad Intentions, including "that Arif and Satter never intended to honor their promises of equity compensation" (TAC ¶ 143), do not support a fraud claim, which cannot be based on concealment or misrepresentation of future intentions. *Real Estate Mortg. Network, Inc. v. Carnegie Mortg., LLC*, 2013 WL 497187 (N.Y. Sup. Ct. 2013) ("Carnegie Mortg."), *citing Tutak v. Tutak*, 123 A.D.2d 758, 759 (2d Dept 1986). Further, allegations that Arif and Satter represented to Plaintiffs that certain of Bayrock's real estate projects "would be successful and earn significant profits for those owning equity in these" (TAC ¶¶ 170, 175, 188) are forward-looking statements that cannot be the basis for fraud claims, *see San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 813 (2d Cir. 1996), and Plaintiffs do not allege that Arif and Satter did not believe these statements at the time they allegedly made them.

## 2. The Initial Trump Transactions

The allegations that Arif and Satter concealed from Donald Trump and the Trump Organization the Information during the development of Trump-branded real-estate projects in real estate projects in Arizona and Fort Lauderdale do not adequately plead a predicate act of

---

[12] The press release is attached as Exhibit A to the Declaration of Walter Saurack, dated April 15, 2016 ("Saurack Decl.") and was recently cited in the Government's motion to dismiss a putative class action before the Federal Court of Claims alleging that the Government unlawfully concealed Satter's conviction. *See* Saurack Decl. Ex. B (Excerpt from Government's Motion to Dismiss, at 4, in *Estate of Ernest Gottdiener v. United States*, Case No. 15-1245C (Fed. Ct. of Claims filed Feb. 22, 2016). The Court may take judicial notice of the press releases of government agencies. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 589 (S.D.N.Y. 2015), *appeal withdrawn* (Apr. 27, 2015).

mail and wire fraud. First, they fail to identify the speaker, the statement which omitted the material information, and the time and place of the statement. *Cohen*, 711 F.3d at 359. Second, the TAC fails to plead that Arif and Satter, or any of the other Defendants, had a duty to disclose the omitted facts, nor could it, because it alleges that Bayrock Group and Trump and the Trump Organization were engaged in an arms-length business transaction. Without more, parties in an arms-length business transactions do not owe each other fiduciary duties. *Carnegie Mortg., LLC, supra* (holding that because there was no fiduciary relationship between Plaintiffs and Defendants, parties engaged in an arms-length business transaction, "defendants' mere silence, without some act which deceived [plaintiff], cannot constitute a concealment that is actionable as fraud"); *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 671 (S.D.N.Y. 2009).

Finally, the alleged "embarrassment" the TAC alleges that Trump suffered is not a cognizable injury for a mail and wire fraud claim. *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK, 2013 WL 3879702, at *3 (S.D.N.Y. July 29, 2013) ("recovery in a fraud action is limited to out of pocket expenses and…reputational injury is not compensable"). Accordingly, the Initial Trump Transactions do not meet the requirements for pleading a claim of mail and wire fraud and thus cannot be a predicate act for the RICO claim.

### 3.    The Alleged Thieriot Fraud and NSPA violation

The allegations related to the Thieriot Transactions similarly do not adequately allege a predicate act of mail and wire fraud. First, the TAC fails to allege, as required, the time, place and speaker of the alleged misstatements or omissions, nor that the Defendants had a duty to disclose the allegedly omitted facts to Thieriot. This is telling considering that Plaintiffs allege that they have reviewed Thieriot's complaint in her action against Bayrock (TAC ¶¶ 94-95, 97), and presumably Thieriot could allege with particularity what representations, if any, were made to her. Second, although the TAC alleges that Thieriot was damaged by Defendants' failure to

pay her proceeds from her investment in Ocean Club, the TAC fails to allege how this loss was caused by any alleged misstatement or omission. A connection between the alleged misstatement or omission and the loss is required for a fraud claim. *Kosovich v. Metro Homes, LLC*, No. 09 CIV. 6992 (JSR), 2009 WL 5171737, at *6 (S.D.N.Y. Dec. 30, 2009), *aff'd*, 405 F. App'x 540 (2d Cir. 2010) (finding fraud claim deficient for failure to establish loss causation). Third, Thieriot's claim is not one for mail and wire fraud at all, but a claim for breach of contract, based on Ocean Club's alleged failure to pay her distributions due to her pursuant to her agreement. A breach of contract claim cannot serve as a predicate act for a RICO claim. *See Nova-Park New York, Inc. N.V. v. Banque Worms, S.A.,* No. 85 CIV. 1254 (SWK), 1987 WL 19639, at *5 (S.D.N.Y. Oct. 29, 1987); *Annulli v. Panikkar*, 200 F.3d 189, 192 (3d Cir. 1999), *abrogation on other grounds recognized by Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000).

### 4.    The Alleged Camelback Plaza Fraud and NSPA Violation

The allegations concerning the Camelback Plaza development also do not adequately allege a predicate act of mail and wire fraud for multiple reasons. First, as with the Trump and Thieriot transactions, this claim fails to plead the time, place and speaker of any omissions or misstatements. Second, it fails to allege plausibly the basis for Defendants' alleged duty to disclose the omitted information. Third, it fails to allege with particularity the financial injury suffered by Camelback Plaza and how it was caused by the allegedly fraudulent omissions. Finally, because the Arizona Action was concededly a breach of contract action, Plaintiffs' attempt to allege that the actions pled in the Arizona Action form the basis for the predicate acts fails because breaches of contract cannot be predicate acts, as explained above.[13]

---

[13] Like with the alleged Thieriot NSPA violation, the alleged Camelback Plaza NSPA violation fails because the fraud claim on which it is based fails.

### 5. The Alleged Trump SoHo Fraud and NSPA Violation

Like those discussed previously, these allegations do not adequately allege a predicate act of mail and wire fraud for multiple reasons. First, the allegations do not state a claim for mail and wire fraud because they fail to plead the time, place and speaker of any omissions or misstatements. Second, the TAC fails to allege plausibly, nor could it, that the Defendants had a duty to disclose the omitted information to Trump, Sapir, or the other parties in an arms-length business transaction. Third, public embarrassment does not qualify as damages for a fraud claim, and the TAC also fails to plead how iStar's audit damaged Trump, the Trump Organization or Sapir. [14]

### 6. The Alleged Lender Frauds

Here, the allegations suffer from the same deficiencies as the other alleged predicate acts: 1) they fail to plead the time, place and speaker of any omissions or misstatements; 2) they fail to plead that any defendant had a duty to disclose the allegedly omitted information on their loan applications; and 3) they also fail to plead that the alleged omissions were the proximate cause of Capmark's alleged injury, the alleged default on the note.

### 7. The Alleged Act of Extortion Against Kriss

The TAC alleges that Satter demanded that Kriss drop his demand for distributions or an alleged contact of Satter's from the Russian mob might "inflict serious bodily harm or death" on Kriss. (TAC ¶ 226.) This allegation does not state a predicate act of extortion.

An alleged act of extortion is only a predicate act under Section 1961 if it is either 1) an act of extortion under Section 1951 (the Hobbs Act), 18 U.S.C. § 1961(c), or 2) an "act or threat"

---

[14] Because the Alleged Trump SoHo NSPA violation is based on the fraud, it also fails because the fraud is not adequately alleged.

involving extortion "which is chargeable under State law and punishable by imprisonment for more than one year".

Plaintiffs do not properly plead extortion under the Hobbs Act. The Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). No property is at issue here because the failure to provide Kriss with membership and distributions is not a cognizable property interest. *Sekhar v. U.S.*, 133 S.Ct 2720 (2013) (a claim under the Hobbs Act requires that the claimant be deprived of a property or asset that is capable of being transferred, *i.e.*, it cannot merely be a right or claim to something that is not tangible). Kriss is only asserting a right to money (distributions he alleges were rightfully his) and has not parted with any kind of property. Further, Kriss does not allege that he "consented" to the purported "loss" of his "property." To the extent that Plaintiffs purport to plead a predicate act for extortion under New York Penal Law, they fail for the same reasons they do not plead a Hobbs Act violation as a RICO predicate act. *See Matter of Johnston*, 75 N.Y.2d 403, 406 (N.Y. 1990) (noting that the elements of extortion under New York Penal Law are the same as under the Hobbs Act).[15]

\* \* \*

As demonstrated above, the TAC does not adequately plead any RICO predicate acts. None of the predicate acts based on fraud state any particulars (the time, place and speaker) of the alleged fraudulent misrepresentation or omission, nor do they plausibly allege that Defendants had a duty to disclose information to those allegedly defrauded. The alleged

---

[15] The TAC also alleges a predicate act of extortion against Ernest Mennes, alleging that Satter threatened Mennes with bodily harm if "Mennes disclosed to any party any of the suspected improprieties and past criminal conduct involving the Bayrock Defendants and [Camelback Development Plaza]." (TAC ¶ 114.) This allegation also fails because it does not allege that any kind of property within the meaning of the Hobbs Act was transferred as a result of this threat.

concealment of the fact that Arif and Satter allegedly intended to breach contracts in the future or never intended to perform under the contracts is not an actionable omission. Furthermore, the TAC also fails to plead that the alleged omissions caused the alleged injuries. Finally, much of the alleged damages, such as embarrassment or audits, are not cognizable damages of mail and wire fraud.

Moreover, virtually all the purported predicate acts relied upon simply do not allege racketeering activity, but merely run-of-the-mill breach of contract claims. Courts have dismissed RICO claims involving similar alleged facts. For instance, in *Lefkowitz*, 2014 WL 925410, plaintiff alleged that defendants perpetrated a RICO scheme based on mail and wire fraud when they fraudulently induced him to provide three loans. Plaintiff alleged that he did not receive his principal plus interest or dividends or a percentage of profits generated from use of the funds to which he was entitled under the loan agreements. *Id*. at *1-2. Stating that "this Court has repeatedly cautioned against plaintiffs' attempts to mold their claims to the RICO form even though their injuries do not fall within those intended to be addressed by the Act," (*id*. at *4) (internal citations omitted), the Court found that these allegations did not allege mail and wire fraud, but only breach of contract claims which cannot be the basis for a RICO claim. The Court further found that the alleged claims were not pled with particularity because they failed to plead the time, place, and speaker of any alleged misstatements or omissions, and that the allegations that defendants fraudulently induced plaintiff into making the loans were inactionable statements of future intent to perform.[16] Plaintiffs' claims here suffer from similar deficiencies, and, accordingly, fail to allege RICO predicate acts.

---

[16] Though, construing the complaint liberally, it found one potentially fraudulent statement that plaintiff's loan had generated $36,000 in profit, the Court further found that this lone statement could not support allegations for a sufficient number of predicate acts nor a pattern of racketeering activity. *Lefkowitz*, 2014 WL 925410, at *5-6.

## B.     The TAC Fails to Plead Relatedness and Pattern.

The TAC also fails to satisfy the pattern requirement, which requires that the predicate acts be "related" and "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). It requires that the predicate acts "share the same or similar purposes, results, participants, victims or methods, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240.

Here, the RICO claims fail the relatedness test. Plaintiffs' claims are really an employment and contractual dispute stemming from Plaintiffs' belief that they should have received distributions as a result of the FL Loan or when Satter received payments. These claims have nothing at all to do with the other alleged predicate acts. The other alleged "predicate acts" (various unrelated business disputes involving various Bayrock entities) are also allegedly "related" to each other only by the tenuous allegation that in all these situations, Defendants withheld from the business partners the Information. Conclusorily pleading that the Information was material to these business partners is a transparent ploy to allege a RICO "scheme" where none exists.

Where alleged predicates are not at all related or plaintiffs attempt to link two or more unrelated schemes together, courts have dismissed RICO claims for failure to plead relatedness. *See Schaefer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (affirming district court's dismissal of RICO claim because alleged schemes were not sufficiently related to support a RICO claim and the only related schemes were not sufficiently continuous); *Ray Larsen Associates, Inc. v. Nikko Am., Inc.*, No. 89 CIV. 2809 (BSJ), 1996 WL 442799, at *7 (S.D.N.Y. Aug. 6, 1996) (dismissing RICO claims where "the relationship between the two types of conduct is simply too remote to support a claim under RICO. A finding that this conduct is

related would render the requirement of relationship meaningless."). Courts have given particular scrutiny to the relatedness requirement where the alleged link between a predicate act that harmed plaintiffs and other predicate acts is tenuous. In *Reich v. Lopez*, 38 F. Supp. 3d 436 (S.D.N.Y. 2014), *reconsideration denied*, No. 13-CV-5307 JPO, 2015 WL 1632332 (S.D.N.Y. Apr. 13, 2015), the Court found that two schemes of bribery and wire fraud were not sufficiently related. The plaintiffs alleged that Defendants had participated in a scheme to win contracts by the use of bribery and kickbacks. They also alleged that Defendants engaged in wire fraud attempting to stop plaintiffs, consultants, from providing assistance to a company that had been a high-profile critic of defendants, and that fraud allegedly caused that company to cease to do business with plaintiffs. The Court found that the schemes were too dissimilar, that "Plaintiffs have attempted to combine the distinct violations under the Travel Act and the wire fraud statute into one claim so that each may compensate for the deficits of the other [Plaintiffs lacked standing to assert the bribery scheme and the wire fraud scheme lacked continuity]." *Id.* at 453 Similarly, because Plaintiffs' distribution claims do not establish a RICO scheme, Plaintiffs here have improperly attempted to engraft alleged predicate acts of wire fraud for failure to disclose the Information onto their distribution claims, which must be dismissed for failure to satisfy the relatedness requirement.

### C. Plaintiffs Do Not Have Standing to Bring RICO Claims.

Section 1964(c) identifies four factors that must be satisfied to establish standing for a civil RICO claim: (1) the plaintiff must be a person (2) who sustains injury (3) to its "business or property" (4) "by reason of" the defendants' violation of Section 1962. 18 U.S.C. § 1964(c). In this case, Plaintiffs do not have standing because they have not suffered a cognizable injury to their business or property by reason of any of the alleged predicate acts.

Kriss and Ejekam allege two different types of damages: 1) job opportunities they could have pursued instead of working with Bayrock or salary they could have bargained for; 2) alleged loss of membership interests in Bayrock entities and loss of distributions. Neither alleged injury confers standing on Plaintiffs. First, the loss of potential job opportunities or potential salary is far too speculative for a RICO claim, which requires a concrete financial loss. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) ("*Hecht*") (claim for lost future commissions too speculative).[17]

Second, the alleged deprivation of their membership interests and distributions is not a cognizable injury because it was not caused by a qualifying predicate act. Plaintiffs allege that Bayrock breached their contracts with them by denying them membership interests and by failing to provide them with distributions they were allegedly due as members of various Bayrock entities.[18] (*E.g.*, TAC ¶ 231-33.) However, as stated above, a breach of contract claim cannot be a RICO predicate act. *See Nova-Park New York,* 1987 WL 19639, at *5.

### D. The TAC Fails to Plead Proximate Causation.

To plead proximate causation, Plaintiffs must allege that the "RICO predicate offense 'not only was a "but for" cause of [their] injury, but was the proximate cause as well.'" *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992)). Of the 21 predicate acts alleged, Plaintiffs only allege seven directed at them (and that number only because Plaintiffs have alleged multiple predicate acts arising out of the same set of alleged facts). For the same reasons that Plaintiffs do not have standing, Plaintiffs fail to adequately plead proximate causation. To the extent that

---

[17] *See also In re Taxable Mun. Bond Secs.Litig.*, 51 F.3d 518, 523 (5th Cir. 1995) (lost opportunity to get loan); *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989) (lost opportunity to get loan).
[18] Furthermore, as explained in Section II.A, Plaintiffs were not actually injured because their agreements with Bayrock did not entitle them to memberships and because the FL Loan did not trigger any distributions.

Plaintiffs allege that the failure to recognize them as members of Bayrock entities and to pay them distributions caused their injuries, they do not allege RICO not predicate acts. Plaintiffs fail to allege (because they cannot) that any defendant's alleged failure to disclose any of the Information (or any alleged extortion) proximately caused their loss of the membership interest or distributions they claim they were due under their agreements.  To the extent they claim non-disclosures resulted in lost job opportunities, such a loss is not compensable.

### E.   Plaintiffs' RICO Conspiracy Claim (18 U.S.C. § 1962(d)) Fails Because the 1962(c) Claim Fails and Because the TAC Fails to Allege Defendants Agreed to Commit the Predicate Acts In Furtherance of the Enterprise.

Plaintiffs' RICO conspiracy claim under § 1962(d) also fails. First, to state a claim under subsection (d), Plaintiffs must adequately plead a substantive violation of RICO, which they have failed to do.  *See* 18 U.S.C. § 1962(d); *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004). Second, Plaintiffs must plead facts sufficient to show that Defendants consciously agreed "'(a) to conduct the affairs of an enterprise (b) through a pattern of racketeering.'" *United States v. Applins*, 637 F.3d 59, 76-77 (2d Cir. 2011) (citation omitted). Indeed, "[e]ven before *Twombly*, and certainly after *Twombly*," "[RICO conspiracy] allegations may not be conclusory, but must set forth specific facts tending to show that each of the defendants entered into an agreement to conduct the affairs of a particular, identified enterprise through a pattern of racketeering activity—not simply that each defendant committed two or more acts that would qualify as predicate acts, without regard to whether those acts were committed in furtherance of the activity of the enterprise." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010) (emphases added).[19]

---

[19] *See also Hecht*., 897 F.2d at 26 n.4 ("Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint . . . must allege specifically such an agreement. . . . [T]he Complaint must allege some factual basis for a finding of a conscious agreement among the defendants.").

Here, Plaintiffs have not pleaded any *facts* to show that Defendants consciously agreed to commit the alleged predicate acts in furtherance of the purported enterprise. All that is pleaded is the completely conclusory allegation that "Each Defendant (other than Bayrock Group) had knowledge of, and agreed to engage in, the activities alleged in the paragraphs listed in the chart below, and in so doing perpetrated, or attempted to perpetrate, the frauds and NSPA violations…" (TAC ¶ 253.) Plaintiffs' conclusory conspiracy allegations fail under *Twombly* and clear Second Circuit precedent. *See, e.g., Hecht*, 897 F.2d at 25 (dismissing RICO conspiracy claim where the complaint alleged only that defendants "conspir[ed]…to conduct their affairs through a pattern of racketeering activity").

The RICO conspiracy claims should also be dismissed because they are barred by the intra-corporate conspiracy doctrine which holds that a corporation is legally incapable of conspiring with its officers, employees and agents. *Murphy v. City of Stamford*, No. 14-2485-CV, 2015 WL 8593525, at *1 (2d Cir. Dec. 14, 2015). Here, all of the Defendants are either wholly-owned subsidiaries of Bayrock Group (Ocean Club, Merrimac, Camelback, Whitestone, and Spring Street), or its officers and employees (Arif, Schwarz, Satter, and Lauria) or its outside professionals (the Salomon Defendants, Dogan, Pisem, and Roberts & Holland LLP). The only conspiracy pled is an intra-corporate one, and therefore the RICO conspiracy claim fails. *See Merhej v. I.C.S. Int'l Custody Sys., Inc.,* No. 13 CIV. 869 JGK FM, 2014 WL 104908, at *4 (S.D.N.Y. Jan. 9, 2014), *report and recommendation adopted,* No. 13 CIV. 869 JGK, 2014 WL 948108 (S.D.N.Y. Mar. 11, 2014) (recommending dismissal of RICO conspiracy claim the conspiracy pled was an intra-corporate conspiracy); *Sathianathan v. Smith Barney, Inc.*, No. 04 CIV.7122(DAB)(FM), 2006 WL 538152, at *23 (S.D.N.Y. Feb. 24, 2006) *report and recommendation adopted as modified*, No. 04 CIV 7122 DAB FM, 2007 WL 576097 (S.D.N.Y. Feb. 21, 2007) (same).

# III. THE TAC FAILS TO STATE ANY STATE LAW CLAIMS.

## A. The TAC Fails to State Claims for Breach of Contract.

Kriss and Ejekam both allege that the failure to pay them distributions generated by the FL Loan or when Satter received payments was a breach of their respective agreements with Bayrock entities. The breach of contract claims fail for multiple reasons.[20]

### 1. The Conditions for Distribution of Proceeds in Kriss's Employment Agreement Were Not Met.

Kriss's 2005 Employment Agreement" provides in relevant part in Section 4.G:

"Executive's Membership Interest" means a non-dilutable 10% non-voting membership interest in the Company and each of the Company Entities, pursuant to which, *following Principal having first received a 10% return of his Total Principal Company Contribution*, and subject to the provisions of this Section 4 and Section 5, Executive shall be entitled to 10% of all Company Proceeds.

The TAC fails to plead (because it cannot) that the Principal (Arif, *see* Section 4.I) received a 10% return of his Total Principal Company Contribution, *i.e.*, a full return of all his capital contributions plus a 10% return. Accordingly, a condition precedent to Kriss receiving any Company Proceeds was not met.

### 2. Kriss' Agreement with Bayrock Did Not Convey to Him Membership in any Bayrock Entities.

Kriss' claim that the 2005 Employment Agreement was breached by Bayrock's failure to recognize him as a member and provide him distributions as such, is contradicted by the terms of the 2005 Employment Agreement and the Bayrock Group Operating Agreement. The 2005 Employment Agreement only gave Kriss an "Executive's Membership Interest," which Section 4.G defines as a "non-dilutable 10% non-voting membership interest in the Company and each of the Company Entities..." By contrast, the Bayrock Group Operating Agreement only speaks

---

[20] Bayrock also reserves its right to move to compel arbitration with regard to claims arising out of or relating to Kriss's 2005 Employment Agreement based on the arbitration provisions in the agreement.

in terms of transfers of "unit[s] of membership interest".[21]  According to Schedule A to the Operating Agreement, Tevfik Arif held 99 units and Rif International Group, Inc. held one. Nothing evidences the transfer of any of these "units" to Kriss.

It is established that a limited liability company may distribute "profit interests" to non-members, as was the case under the 2005 Employment Agreement, without making the recipients members.[22]  *Cordts-Auth v. Crunk, LLC*, 479 F. App'x 375, 379 (2d Cir. 2012).  In *Cords-Auth,* the Court held that the grant to plaintiff of non-membership "performance units" did not make plaintiff a member of the defendant LLC, but only entitled plaintiff to a share of the proceeds upon the sale of the company.  The court rejected plaintiff's claim to membership even though plaintiff and the LLC's director also signed an agreement in which plaintiff agreed to be treated as an "Additional Member" and plaintiff was once included on a list of members of the LLC.  The court held that the plaintiff was not a member because there was not written authorization by 2/3 of the members, as required by the LLC's Operating Agreement for membership.  Accordingly, plaintiff was not a member and did not have the right to bring a derivative action.  *Id.* at 380.  Similarly, Kriss' "Executive Membership Interest" gave Kriss a profit interest in Bayrock Group and its subsidiaries, but did not make him a member of those companies.  Accordingly, there is no breach of contract by Bayrock's refusal to recognize Kriss as a member of Bayrock and by failing to pay to him distributions.

---

[21] *See* Bayrock Group Operating Agreement, Sections 10.1 and 10.3(b), attached as Exhibit G to the Simonchyk Declaration.

[22] In addition, the Bayrock Group LLC Operating Agreement required the approval, in writing, of all of Bayrock Group's members, for admission of new members.  At the time Kriss' employment agreement became effective, to the extent Kriss can say he was a member, Satter allegedly was also a member because Satter's employment agreement used substantially the same language as Kriss' 2005 Employment Agreement and also purported to give him the same membership interest as Kriss.  Satter's agreement is dated November 10, 2005, but effective January 1, 2003, one month before the effective date of Kriss's employment agreement.  Satter was thus a member before Kriss, and pursuant to the Operating Agreement, had to give written approval of Kriss's membership. The TAC does not plead that Satter gave written consent.

### 3. Ejekam's agreements with Bayrock Spring Street and Bayrock Whitestone did not convey to him membership in these entities.

Ejekam's agreements with Bayrock – which purport only to assign to him a "membership profit interest" in Spring Street and Whitestone – also did not convey to him membership in any Bayrock entity for the reasons set forth above. Spring Street and Whitestone require the consent of members to admit new members.[23] If Kriss and Satter became members by operation of their employment agreements, they would have had to consent to Ejekam's admission to membership, but the TAC fails to plead that either did. With regard to Spring Street, any purported transfer of membership to Ejekam was invalid because Section 13 of the operating agreement states that only family members or Bayrock Group affiliates may become members.

### 4. Even if the agreements did convey membership interests, neither Kriss nor Ejekam were entitled to distributions from the FL Loan.

Even if Plaintiffs were members, there is no breach of contract by Bayrock's failure to pay them distributions from the FL Loan because the FL Loan did not result in any distributions. Contrary to Plaintiffs' conclusory claims that it was a sale, the FL Loan was in fact a loan. In determining whether a transaction was a loan or is actually disguised equity, courts look at eleven factors:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; [and] (11) the presence or absence of a sinking fund to provide repayments.

---

[23] *See* Section 15, Spring Street Operating Agreement Section, attached as Exhibit H to the Simonchyk Declaration, Section 18, Whitestone Operating Agreement Section, attached as Exhibit I to the Simonchyk Declaration.

*In re Pers. Commc'n Devices, LLC*, 528 B.R. 229, 238 (Bankr. E.D.N.Y. 2015).

Consideration of the factors points to the conclusion that this was a loan as a matter of law. The operative agreement is in fact, termed a "Loan Agreement" and among other provisions, it provides that this is an "Agreement to Make the Loan" (Section 1) and sets forth the "Terms of the Loan" (Section 2). The FL Loan had a fixed maturity date and set forth schedules for repayment and payment of interest, as well as a source of repayment.[24] Nothing in the FL Loan Agreement or other supporting documents suggests that the FL Loan is anything other than a loan. Accordingly, the breach of contract claim based on the FL Loan should be dismissed. *See In re BH S & B Holdings LLC*, 420 B.R. 112, 160 (Bankr. S.D.N.Y. 2009), *aff'd as modified*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011) (dismissing with prejudice claim for recharacterization of loan as equity when majority of factors pointed to finding that it was a loan and complaint could not plead facts that would support recharacterization because they were contradicted by loan documents or other allegations in the complaint).

In support of their conclusory claim to the contrary, Plaintiffs allege vaguely that "other aspects of the transaction, including but not limited to the extensive term of the loan and the repayment provisions, reveal that for all intents and purposes, the FL Group Investment effected a sale of membership profit interests in Merrimac, Camelback, Whitestone and Spring Street…" (TAC ¶ 215.) The TAC provides no basis for the allegation that the term of the loan and the repayment provisions would make this loan an effective sale. The TAC in fact admits its pleading deficiency here, stating that "Plaintiffs intend to seek discovery that will provide a more precise measurement of the membership profit interests transferred by the FL Group Investment." (TAC Fn. 19.) Particularly after *Twombly* and *Iqbal*, Plaintiffs may not use discovery as a fishing expedition to seek support for insufficient allegations. Plaintiffs' pleading

---

[24] *See* FL Loan Agreement Schedule 2(a), attached as Exhibit F to the Simonchyk Declaration

deficiencies are particularly glaring because, as the TAC alleges, Kriss was the Director of Finance for Bayrock and was intimately involved in implementing the FL Loan. The fact that Kriss, with his knowledge of the deal and its structure, cannot manage to plausibly allege why it is not a loan is further evidence of the implausibility of the allegation. Accordingly, the TAC fails to plead a breach of Plaintiffs' agreements with any Bayrock entities.

### B. The TAC Fails to State Claims for Tortious Interference with Contract.

A claim for tortious interference requires 1) a valid contractual agreement between parties, 2) defendants' knowledge of the contractual agreement, 3) interference causing breach of contract that was intentional, 4) causing damages. *Foster v. Churchill*, 87 N.Y.2d 744, 749-50, 665 N.E.2d 153, 156 (1996). The TAC alleges that Arif, Satter, Schwarz, the Salomon Defendants, Dogan, Pisem, and Roberts and Holland interfered with Kriss and Ejekam's agreements with Bayrock entities by their actions in completing the FL Loan. First, the claims for tortious interference fail because as explained above, there was no breach of Kriss's and Ejekam's agreements with Bayrock. Second, the claims fail because to plead interference, a complaint must plead that Defendants induced the counterparty to the agreement to breach the agreement. *Museum Boutique Intercontinental, Ltd. v. Picasso*, 886 F. Supp. 1155, 1161-62 (S.D.N.Y. 1995). There is no allegation, much less a plausible one, that Defendants named in this cause of action took any action to induce Bayrock entities to breach their agreements. Third, the TAC fails to plead intent; it is devoid of any plausible allegations that the Defendants named in this cause of action believed that the FL Loan somehow breached Plaintiffs' employment agreements. Finally, there are no damages because, as explained above, their agreements did not entitle Kriss and Ejekam to memberships or distributions.

### C. The TAC Fails to State a Claim for Breach of Fiduciary Duty.

The claim for breach of fiduciary duty against Arif, Satter, Schwarz and Bayrock Group should be dismissed because these Defendants do not owe fiduciary duties to Kriss and Ejekam.[25] To establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the misconduct. *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009). Plaintiffs claim that these Defendants owe them fiduciary duties because they were allegedly members of Bayrock entities. As explained above, Plaintiffs were not members of any Bayrock entities. Furthermore, the breach of fiduciary claims are duplicative of Plaintiffs' breach of contract claim, which is based on the same alleged facts. *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 106 (S.D.N.Y. 2013) (dismissing breach of fiduciary duty claim as duplicative of breach of contract claim because "[b]oth claims are premised upon the same facts and seek the same damages for the alleged conduct.") As for the breach of fiduciary duty claim based on the Satter Payments, the TAC also fails to allege, much less plausibly, how the Satter Payments breached any fiduciary duty to Plaintiffs.

### D. The TAC Fails to State Claims for Breach of Aiding and Abetting Breach of Fiduciary Duty.

Under New York law, the claim of aiding and abetting breach of fiduciary requires "the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance." *Weshnak v. Bank of Am., N.A.*, 451 F. App'x 61, 61-62 (2d Cir. 2012) (citation omitted). "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Kaufman v. Cohen*, 307 A.D.2d 113,126 (1st Dep't 2003) (citations omitted). As

---

[25] These Defendants will also file an individual brief with additional arguments specific to individual Defendants as to why the claims for breach of fiduciary duties fail against them.

explained above, there was no primary violation as there was no breach of fiduciary duty. Nor does Plaintiffs' two-paragraph cause of action for aiding and abetting breach of fiduciary duty plausibly allege the "substantial assistance" or actual knowledge required.

### E. The TAC Fails to State Claims for Fraudulent Inducement.

To state a claim for fraudulent inducement, Plaintiffs must allege (1) a false representation of material fact, (2) known by the speaker to be untrue, (3) made with the intention of inducing reliance and forbearance from further inquiry, (4) that is justifiably relied upon, and (5) results in damages. *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 32 Misc. 3d 758, 773, 927 N.Y.S.2d 517, 530 (Sup. Ct.) *on reconsideration*, 33 Misc. 3d 1208(A), 939 N.Y.S.2d 742 (Sup. Ct. 2011) *rev'd*, 102 A.D.3d 488, 956 N.Y.S.2d 891 (2013). First, the fraudulent inducement claims here should be dismissed because they fail to identify with particularity a false representation of material fact made by the Defendants that induced Plaintiffs' reliance. Second, the claim should be dismissed because a claim based on the allegation that Defendants never intended to honor their contracts cannot be the basis for a fraudulent inducement claim. *767 Third Ave. LLC v. Greble & Finger, LLP*, 8 A.D.3d 75, 76 (1st Dep't 2004) ("It is well settled that a cause of action for fraud does not arise where the only fraud alleged merely relates to a party's alleged intent to breach a contractual obligation."). Finally, the claim should be dismissed because the damages claimed – lost professional opportunities or potential higher salary – are too speculative for a fraudulent inducement claim. *See Geary v. Hunton & Williams*, 257 A.D.2d 482, 482 (1st Dep't 1999) (fraudulent inducement claim dismissed where damages asserted was lost earning potential if plaintiff had accept a job with different employer because damages were too speculative).

**F.     The TAC Fails to State a Claim for Unjust Enrichment.**

Under New York law, a plaintiff seeking damages for unjust enrichment must allege (1) that the defendants were enriched or benefitted, (2) at plaintiff's expense, and (3) that equity and good conscience require restitution. *Jupiter Print Pack India Ltd. v. Anand Printing Mach., Inc.*, No. 12 CIV. 322 KBF, 2015 WL 996391, at *3 (S.D.N.Y. Mar. 5, 2015), *citing Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001).

Here, the claim for unjust enrichment should be dismissed because it is duplicative of the breach of contract claim.  A cause of action for unjust enrichment is duplicative of a cause of action for breach of contract when both arise from the same subject matter and are governed by an enforceable contract. *Bettan v. Geico Gen. Ins. Co.*, 296 A.D.2d 469, 470 (2d Dep't 2002) (dismissing unjust enrichment claim as duplicative). The unjust enrichment claim here is based on the Defendants' alleged failure to grant Plaintiffs memberships in Bayrock entities and failure to pay them distributions they allege they were due as members.  (TAC ¶ 312.)  Accordingly, the unjust enrichment claim is duplicative of the breach of contract claim and should be dismissed on that basis.

**G.     The TAC Fails to State Claims for Conversion or Aiding and Abetting Conversion.**

The TAC alleges that all the Defendants exercised unauthorized dominion over Plaintiffs' personal property through the Satter Payments, the FL Loan and transfers of the "$50 million proceeds from FL Group Investment."[26]   (TAC ¶ 290.)   The claim for conversion should be dismissed because a conversion claim cannot be used to enforce a purported obligation to pay money, such as this. *Ehrlich v. Howe,* 848 F. Supp. 482, 492 (S.D.N.Y. 1994) ("An action for conversion is insufficient as a matter of law unless it is alleged that the money converted was in

---

[26] The claim for conversion based on the Satter Payments should be dismissed because the Satter Payments were actually a loan to which Satter was entitled to take pursuant to his employment agreement.

specific funds of which claimant was the owner and entitled to immediate possession."). The claim for aiding and abetting conversion fails because the conversion claim fails, and because the TAC fails to plausibly plead substantial assistance.

### H. The TAC Fails to State a Claim for Alter Ego/Piercing the Corporate Veil.

A party seeking to pierce the corporate veil must generally show that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Matter of Morris*, 82 N.Y.2d at 141 (1993). The TAC fails to plead either of these elements, as the allegations of "complete domination" are wholly conclusory and thus fail under *Twombly* and *Iqbal*.[27] (*See* TAC ¶¶ 306-09 (stating in conclusory form that Arif, Satter and Schwarz "dominated and controlled" Bayrock entities, "disregard…the corporate form", "intermingled their personal assets", and "have not observed proper corporate formalities")); *see In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 385, 426 (S.D.N.Y.2003) (""[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability".). The TAC also fails to allege with particularity that such domination was used to commit a fraud against Plaintiffs. Accordingly, this claim should be dismissed.

---

[27] Although allegations concerning the domination element of the two-part test are subject to the basic pleading standard of Rule 8, a plaintiff's allegations concerning the Defendants' fraudulent acts are subject to the heightened pleading standard of Rule 9(b). *Ningbo Products Imp. & Exp. Co. v. Eliau*, No. 11 CIV. 650 PKC, 2011 WL 5142756, at *6 (S.D.N.Y. Oct. 31, 2011).

**CONCLUSION**

Accordingly, Defendants in this matter respectfully requests that the Court dismiss the

Third Amended Complaint with prejudice.

Dated: New York, New York
      April 15, 2016

SATTERLEE STEPHENS BURKE & BURKE LLP

By: /s/ Walter A. Saurack
      Walter A. Saurack
230 Park Avenue, Suite 1130
New York, New York 10169
212. 818.9200

*Attorneys for Bayrock Group LLC, Bayrock Ocean Club
LLC, Bayrock Merrimac LLC, Bayrock Camelback LLC,
Bayrock Whitestone LLC, Bayrock Spring Street LLC,
Tefvik Arif and Julius Schwarz*

MOSES & SINGER LLP

By:
      Robert S. Wolf
      Robert B. McFarlane
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
212.554.7800

*Attorneys for Felix Satter*

BEYS LISTON MOBARGHA & BERLAND LLP

By:
      Michael Beys
825 Third Avenue
2nd Floor
New York, NY 10022
646.755.3600

*Attorneys for Felix Satter and Salvatore Lauria*

35

LANDMAN CORSI BALLAINE & FORD P.C.

By: _____
        Stephen Jacobs
120 Broadway
New York, NY 10271
212.238.4800

*Attorneys for Alex Salomon, Jerry Weinrich, and Salomon & Co., P.C.*


STORCH AMINI & MUNVES PC

By: _____
        John W. Brewer
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY 10017
212.490.4100

*Attorneys for Elliot Pisem and Roberts & Holland LLP*


DOAR RIECK KALEY & MACK

By: _____
        John Kaley
217 Broadway
Suite 707,
New York, NY 10007
212.619.3730

*Attorneys for Mel Dogan*

36

Stephen Jacobs
120 Broadway
New York, NY 10271
212.238.4800

*Attorneys for Alex Salomon, Jerry Weinrich, and Salomon & Co., P.C.*

STORCH AMINI & MUNVES PC

By:_____
      John W. Brewer
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY 10017
212.490.4100

*Attorneys for Elliot Pisem and Roberts & Holland LLP*

DOAR RIECK KALEY & MACK

By:_____
      John Kaley
217 Broadway
Suite 707,
New York, NY 10007
212.619.3730

*Attorneys for Mel Dogan*

Stephen Jacobs
120 Broadway
New York, NY 10271
212.238.4800

*Attorneys for Alex Salomon, Jerry Weinrich, and Salomon & Co., P.C.*

STORCH AMINI & MUNVES PC

By:_____
     John W. Brewer
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY 10017
212.490.4100

*Attorneys for Elliot Pisem and Roberts & Holland LLP*

DOAR RIECK KALEY & MACK

By_____
     John Kaley
217 Broadway
Suite 707,
New York, NY 10007
212.619.3730

*Attorneys for Mel Dogan*

2393048v.7