UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JODY KRISS and MICHAEL CHU'DI EJEKAM,<br><br>             Plaintiffs,<br><br>             v.<br><br>TEVFIK ARIF; FELIX SATTER (aka FELIX SATER); SALVATORE LAURIA; JULIUS SCHWARZ; ALEX SALOMON; JERRY WEINREICH; MEL DOGAN; ELLIOT PISEM; BAYROCK GROUP LLC; BAYROCK OCEAN CLUB LLC; BAYROCK MERRIMAC LLC; BAYROCK CAMELBACK LLC; BAYROCK WHITESTONE LLC; BAYROCK SPRING STREET LLC; SALOMON & CO., P.C.; ROBERTS & HOLLAND LLP; and JOHN DOES 1-100,<br><br>             Defendants. | No. 10-CV-3959 (LGS) (FM) |

## SUPPLEMENTAL BRIEF IN SUPPORT OF
## MOTION TO DIMISS THIRD AMENDED COMPLAINT
## BY DEFENDANTS ELLIOT PISEM AND ROBERTS & HOLLAND LLP

**STORCH AMINI & MUNVES PC**
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
212.490.4100 (t) | 212.490.4208 (f)
*Attorneys for Elliot Pisem and Roberts & Holland LLP*

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...........................................................................................1

PLAINTIFFS' CURRENT ALLEGATIONS REGARDING R&H ..............................................2

FACTS RELEVANT TO THE UNTIMELINESS OF PLAINTIFFS'
CLAIMS AGAINST R&H AND UNTIMELY SERVICE OF PROCESS....................................4

ARGUMENT .............................................................................................................7

    I.       THE CURRENT COMPLAINT'S LIABILITY THEORY
            AGAINST R&H DOES NOT RELATE BACK TO THE
            ORIGINAL 2010 COMPLAINT AND IS THUS TIME-BARRED............................7

    II.      SERVICE OF PROCESS WAS UNTIMELY............................................................9

    III.   THE THIRD AMENDED COMPLAINT FAILS TO STATE A
            CLAIM AGAINST R&H AND FAILS TO PLEAD FRAUD WITH
            PARTICULARITY WITH RESPECT TO R&H ......................................................11

CONCLUSION............................................................................................................15

i

REDACTED COPY

# **TABLE OF AUTHORITIES**

**Cases**                                                                                       **Page(s)**

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
   483 U.S. 143 (1987) ...................................................................................................7

*Arco Capital Corp. v. Deutsche Bank AG*,
   949 F. Supp. 2d 532 (S.D.N.Y. 2013) ...........................................................7 n. 11

*Azrielli v. Cohen Law Offices*,
   21 F.3d 512 (2d Cir. 1994) ...........................................................................12 n. 18

*Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.*,
   832 F. Supp. 585 (E.D.N.Y. 1993) ..........................................................12 n. 19, 14

*Burda Media, Inc. v. Viertel*,
   417 F.3d 292 (2d Cir. 2005) ...........................................................................9

*First Cap. Asset Mgt., Inc. v. Satinwood, Inc.*,
   385 F.3d 158 (2d Cir. 2004) ...........................................................................12

*Frasca v. United States*,
   921 F.2d 450 (2d. Cir. 1990) .......................................................................9-10 n. 15

*Gelb v. Fed. Reserve Bank of New York*,
Case No. 12-cv-4880 ALC, 2013 WL 3783724 (S.D.N.Y. July 19, 2013)……………..9-10 n. 15

*Hahn v. Office & Prof'l Employees Int'l Union, AFL-CIO*,
   107 F. Supp. 3d 379 (S.D.N.Y. 2015) ...........................................................9

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*,
   955 F.Supp. 248 (S.D.N.Y.1997) ..................................................................12 n. 19

*In re Parmalat Sec. Litig.*,
   479 F. Supp. 2d 332 (S.D.N.Y. 2007) ...........................................................14 n. 22

*Khan v. Khan*,
   360 F. App'x 202 (2d Cir. 2010) ...................................................................9

**REDACTED COPY**

*Lippe v. Bairnco Corp*,
    225 B.R. 846 (S.D.N.Y. 1998) ................................................................................11

*Madanes v. Madanes*,
    981 F. Supp. 241 (S.D.N.Y. 1997) .........................................................................12

*Martin Hilti Family Trust v. Knoedler Gallery, LLC*,
    Case No. 13-cv-0657 PGG, 2015 WL 5773895 (S.D.N.Y. Sept. 30, 2015) .....................7 n. 12

*Nat'l Dev. Co. v. Triad Holding Corp.*,
    930 F.2d 253 (2d Cir.1991) ....................................................................................9

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987) .................................................................................................9

*Pierre ex rel. Pierre v. Dep't of Educ.*,
    Case No. 07–cv-6270(DLC), 2008 WL 2369224 (S.D.N.Y. June 10, 2008) ..............9

*Romano v. Kazacos*,
    609 F.3d 512 (2d Cir. 2010) ...............................................................................4 n. 6

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
    119 F.3d 91 (2d Cir. 1997) .................................................................................12 n. 18

*Slayton v. Am. Exp. Co.*,
    460 F.3d 215 (2d Cir. 2006) ...................................................................................8

*Smith v. Bray*,
    Case No. 13-cv-07172(NSR)(LMS), 2014 WL 5823073 (S.D.N.Y. Nov. 10, 2014) ...............9

*Taylor v. Westor Capital Grp.*,
    943 F. Supp. 2d 397 (S.D.N.Y. 2013) ...............................................................9 n. 14

*Toner v. Suffolk Cty. Water Auth.*,
    220 F.R.D. 20 (E.D.N.Y. 2004) .............................................................................9

*Turkish v. Kasenetz*,
    964 F. Supp. 689 (E.D.N.Y. 1997) .........................................................................12

REDACTED COPY

*United States v. Baylor Univ. Med. Ctr.*,
469 F.3d 263 (2d Cir. 2006) ...........................................................................8 n. 13

*United States v. Blackmon*,
839 F.2d 900 (2d Cir. 1988) .........................................................................14

*Universitas Educ., LLC v. Bank*,
Case No. 15-cv-5643 (SAS), 2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015)....................7 n. 12

*VKK Corp. v. Nat'l Football League*,
187 F.R.D. 498 (S.D.N.Y. 1999)......................................................................7

*Weizmann Inst. of Sci. v. Neschis*,
229 F. Supp. 2d 234 (S.D.N.Y. 2002) ..............................................................7 n. 12

*Weksler v. Weksler*,
81 A.D.3d 401, 918 N.Y.S.2d 11 (1st Dep't 2011)............................................7 n. 12

*Zaffuto v. Peregrine Health Mgmt.*,
280 F.R.D. 96 (W.D.N.Y. 2012) .....................................................................4 n. 6

*Zherka v. Ryan*,
52 F. Supp. 3d 571 (S.D.N.Y. 2014).................................................................9


## Statutes and Rules

18 U.S.C. § 2315............................................................................................13 n. 20
CPLR 214.......................................................................................................7
Fed. R. Civ. P. (4)(m)...................................................................................1, 5
Fed. R. Civ. P. 9(b) ....................................................................................1, 13
Fed. R. Civ. P. 12(b)(5)..........................................................................1, 4 n. 6, 9
Fed. R. Civ. P. 12(b)(6)..............................................1, 6 n. 10, 7 n. 11, 9 n. 14
Fed. R. Civ. P. 15(c)(1)(B) ........................................................................7, 8
Fed. R. Civ. P. 15(c)(1)(C) ..........................................................................8

REDACTED COPY

Defendants Roberts & Holland LLP and Elliot Pisem (collectively, "R&H")[1] respectfully submit this supplemental brief in further support of their motion (docket item 330) to dismiss the Third Amended Complaint ("TAC") with prejudice as against them pursuant to Rules 4(m), 9(b), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## PRELIMINARY STATEMENT

The Joint Brief has already explained why the TAC fails to state a claim against any of the defendants, but there are additional reasons why it fails to state a claim against R&H.  Before even reaching the merits, though, plaintiffs' claims are grossly untimely.  Plaintiffs did not allege until 2015 their current liability theory against R&H which, as it relates to events in 2007, is barred by the statute of limitations and does not relate back to the 2010 filing date of the original complaint, whose liability theory against R&H has now been abandoned.  Moreover, no service of process on R&H was made for over five and a half years after this lawsuit was commenced, and the record does not show any legally-sufficient justification for that delay.

As to the merits, the RICO claims against R&H fail for numerous additional reasons, including the absence of any sufficient allegation that R&H, which served as outside counsel for certain of the corporate defendants, "operated" or "managed" the alleged RICO enterprise.  Because unlike the other defendants R&H is alleged to have been involved only in a single

---

[1] Roberts & Holland LLP is a law firm and Mr. Pisem is a member of the New York bar who is a partner of that firm.  TAC ¶¶ 24, 32.  They will be treated collectively in this brief as if they were a single defendant, as the firm is essentially alleged in the TAC to be liable for all of Mr. Pisem's alleged acts and omissions and vice versa.

[2] All arguments made in the joint brief previously submitted on behalf of all defendants (docket item 331, the "Joint Brief") and its accompanying declarations are incorporated herein by reference, as are all arguments applicable to R&H made in the other supplemental briefs being submitted on behalf of various other defendants.  All defined terms used herein are used with the same meanings given to them in the Joint Brief unless otherwise specified.

REDACTED COPY

transaction at the very end of the multi-year timeline the TAC addresses, the essential "pattern" element of any RICO claim is likewise lacking.  The conspiracy and pendent state-law claims also fail for the reasons given in the Joint Brief and additional ones set forth below.

## PLAINTIFFS' CURRENT ALLEGATIONS REGARDING R&H

Taking the factual allegations of the TAC (cited in this section by paragraph number) at face value for purposes of this motion only, R&H allegedly first became "employed by or associated with the Enterprise" in 2007, although all other defendants are alleged to have become associated with the Enterprise no later than 2005.  ¶ 51.  R&H goes entirely unmentioned for a 50-page stretch of the TAC between paragraphs 56 and 211.  Indeed, R&H is alleged only to have been involved in the FL Loan (as defined in the Joint Brief) to the extent that it is alleged to have "provid[ed] legal advice, communicating with counsel representing FL Group and negotiating and drafting the documents that embodied the" FL Loan, and to have "drafted documents and/or deal terms that concealed or disavowed the membership interests of Plaintiffs . . . and provided legal advice with respect to such documents and terms."  ¶ 211; *see also* ¶ 242 (alleging R&H, together with other defendants, "devised the structure of the [FL Loan], conducted the negotiations and drafted transaction documents for the [FL Loan] and/or drafted other documents facilitating the" FL Loan).[3]  Significantly, however, the TAC specifically alleges (¶ 206) that during the

---

[3] Paragraph 211 separately alleges inaction: R&H allegedly failed to "demand any pre-transaction transfer of membership interests from Plaintiffs ... to Bayrock," failed to attempt to obtain consents from Plaintiffs to the FL Loan, and failed to advise various other defendants that consummation of the FL Loan would allegedly be "wrongful, illegal, and/or criminal."

Separately, certain other defendants allegedly caused R&H to be paid some unspecified portion of the $50 million in proceeds from the FL Loan.  ¶ 217.  There is no allegation that the amount paid was different in nature or amount from what a comparable law firm would typically charge for ordinary legal services in connection with a comparable transaction.  *See also* ¶¶ 220 (F&L "received substantial compensation for [its] work on the" FL Loan, some portion of which included funds received by Bayrock and/or its affiliates from FL); 241 (R&H served as "attorneys hired by

REDACTED COPY

negotiations leading up to the FL Loan, "the parties – including FL Group – were aware of the terms of the equity compensation agreements of" Plaintiffs and Woodring that allegedly gave rise to those alleged interests.  Neither FL Group nor anyone else is alleged to have detrimentally relied on any inaccurate statement or material omission in any document R&H had anything to do with.

R&H is nowhere alleged to have operated, managed, or directed the affairs of the alleged "Enterprise."  The charts in paragraphs 243 and 248 make clear that R&H is not alleged to have had anything whatsoever to do with the vast majority of the alleged predicate acts.  The only predicate acts in which R&H is alleged to have participated are the "Fraud[s]" and certain of the "NSPA Violations" against Kriss, Ejekam, and non-party Woodring.  But it is clear that all six of these alleged predicate acts are, at least as regards R&H, simply different characterizations of the consummation of the single unified FL Loan to the alleged detriment of the plaintiffs.[4]  Indeed, although the gravamen of all of the claims regarding the FL Loan is that it was allegedly inconsistent with the plaintiffs' rights under their various alleged "equity compensation" agreements with Bayrock, the plaintiffs' consent to which was allegedly originally induced by fraud, the TAC specifically alleges (¶¶ 170, 175, 188) that Bayrock and its principals never intended to honor those agreements when they were first entered into in 2004 and 2005 – in other words, long before R&H is alleged to have been on the scene.  As to the FL Loan itself, R&H  is alleged as to the "Frauds" simply to have "devised [the FL Loan's] structure" allegedly knowing that "said structure would harm" the interests of the plaintiffs and to have "caused documents relating to the structure" to be sent through the mail and/or the wires, and as to the "NSPA

---

Bayrock Group, who . . . received generous compensation for following and implementing the orders of" Bayrock's principals).

[4] R&H is not alleged to have entered into a conspiracy to commit any predicate acts other than the same six, which again are all different characterizations of the same FL Loan.  ¶ 253.

REDACTED COPY

Violations" to have "approved, drafted and/or executed transaction documents" in connection with the FL Loan allegedly knowing that certain other defendants were thereby "stealing or wrongfully converting" the plaintiffs' rights.  (¶ 248)[5]

## FACTS RELEVANT TO THE UNTIMELINESS OF PLAINTIFFS' CLAIMS AGAINST R&H AND UNTIMELY SERVICE OF PROCESS[6]

All of the alleged acts and omissions of R&H claimed in the TAC to give rise to liability occurred no later than the closing of the FL Loan in May 2007 (TAC ¶ 214), and all of Plaintiffs' potential causes of action against R&H thus accrued no later than the date of that closing.  This action was commenced with the filing of the original complaint on May 10, 2010 (docket item 1) (the "OC"), which was ordered sealed on May 14, 2010 (docket items 2, 3), only four days after the plaintiffs had filed it unsealed.[7]

But service of process was not first made on R&H until December 8, 2015 (docket items 225, 232 (proofs of service))—over five and a half years later.  This Court entered a series of orders (docket items 5, 6, 7, 10, 11, 13, 17, 18, 22, 23, 26, 27, 29) beginning in August of 2010 stating that for unspecified "good cause" the plaintiffs' time to serve process would be extended beyond

---

[5] See also ¶¶ 272, 273, 281, 282 (R&H "approved, drafted and/or executed transaction documents" and "devised the structure for" for the FL Loan allegedly knowing of the prior contractual rights of the plaintiffs with which the transaction was allegedly inconsistent).

[6] "Where a defendant moves for dismissal under… Rule[] 12(b)(5) (insufficient service of process), the court may consider materials outside the pleadings in deciding the motion." *Zaffuto v. Peregrine Health Mgmt.*, 280 F.R.D. 96, 98 (W.D.N.Y. 2012) (*citing Romano v. Kazacos,* 609 F.3d 512, 520 (2d Cir. 2010)).

[7] A copy of the OC, without its attachments, was emailed to R&H shortly after it was filed in 2010 by defendant Julius Schwarz, general counsel of defendant Bayrock, presumably as a courtesy or "heads-up" alerting R&H to the commencement of the action.  *See* attachment to docket item 33 (Schwarz Declaration dated November 17, 2010, originally filed in Eastern District of New York proceedings in which plaintiffs were also involved).  Several days later, Mr. Schwarz advised R&H of this Court's order prohibiting further dissemination of the OC.  *Id.*

**REDACTED COPY**

the default period (at the time 120 days after filing) provided by Fed. R. Civ. P. 4(m).  Each order

provided a new specific deadline by which service was to be made.  The last such extension, issued

on December 17, 2012, purported to extend that deadline to April 1, 2013, and indicated that the

plaintiffs should not expect any further extensions.  Docket item 29.  At no point during the years

covered by these extensions did the plaintiffs in fact attempt to serve process on R&H, and there

is no indication at least in the unsealed filings on the docket that they ever sought clarification

from the Court that such service would not run afoul of the orders prohibiting "dissemination" of

the OC, since, as the plaintiffs were aware, R&H had already been informally provided a copy by

Bayrock's general counsel before those orders had been issued.

Plaintiffs and the Court contemplated a forthcoming amendment of the OC as early as late

2010.  See Docket item 9.  But it was not until 2013 (docket item 39) that the plaintiffs filed a First

Amended Complaint (the "FAC"), which it filed under seal, and which has remained under seal to

this day.  At that time, the Court issued various orders (docket items 32, 34, 38) purporting to

instruct the plaintiffs not to serve the FAC on the previously unserved defendants (including R&H)

until further order of the Court.  These orders did not purport to be made pursuant to the extension

provisions of Rule 4(m), nor did they recite any other rule or statute on which they were based.

Another two and a half years then passed until the Court on November 9, 2015 (docket item 198)

affirmatively directed the plaintiffs to serve the Second Amended Complaint ("SAC") "promptly."

Service on R&H was then finally made, as noted above, on December 8, 2015.

[REDACTED]

[REDACTED] [8]

---

[8] See http://www.robertsandholland.com/firm-overview, stating in part "Roberts & Holland is the
largest law firm in the United States engaged primarily in the practice of tax law. Our clients and
their advisors, aware that we limit our practice to tax and related matters, believe we have the

**REDACTED COPY**



But by the time Plaintiffs' new counsel filed the SAC, that claim had disappeared

without a trace.[9]  Instead, the SAC asserted against R&H a new and different liability theory

(carried forward into the TAC), falsely claiming that R&H had served as Bayrock's general

transactional counsel on the FL Loan –



broadest concentration of tax expertise of any law firm and are uniquely qualified to provide the
professional services and technical support they need."

[9]

[10]

*See* Exhibit A to Declaration of John W. Brewer,
at § 18.

REDACTED COPY

## ARGUMENT

### I.   THE CURRENT COMPLAINT'S LIABILITY THEORY AGAINST R&H DOES NOT RELATE BACK TO THE ORIGINAL 2010 COMPLAINT AND IS THUS TIME-BARRED[11]

Plaintiffs' alleged claims against R&H accrued no later than May of 2007.  The RICO claims are subject to a four-year limitations period.  *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987).  The state-law claims are subject to the three-year limitations period of CPLR 214.[12]  The liability theory the TAC asserts against R&H was first set forth in the SAC, filed in late 2015 over eight years after the claims allegedly arose.  It is thus unquestionably time-barred unless it relates back to the original May 2010 filing of the OC, which asserted a different and since-abandoned liability theory against R&H.

The plaintiffs bear the burden of establishing relation back.  *See VKK Corp. v. Nat'l Football League*, 187 F.R.D. 498, 500 (S.D.N.Y. 1999).  We are unaware of any authority permitting relation back under Fed. R. Civ. P. 15(c)(1)(B) when, although a defendant was named in the original caption, a new liability theory is advanced over five years after filing and the

---

[11] *See Arco Capital Corp. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 543 (S.D.N.Y. 2013) (court may consider statute of limitations on 12(b)(6) motion to dismiss "when the circumstances are sufficiently clear on the face of the complaint").

[12] *See*, *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 252 (S.D.N.Y. 2002) (tortious interference with contract); *Universitas Educ., LLC v. Bank*, Case No. 15-cv-5643 (SAS), 2015 WL 9304551, at *2 (S.D.N.Y. Dec. 21, 2015) (conversion and aiding and abetting conversion); *Weksler v. Weksler*, 81 A.D.3d 401, 402, 918 N.Y.S.2d 11, 14 (1st Dep't 2011) (damages claim for aiding and abetting breach of fiduciary duty); *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, Case No. 13-cv-0657 PGG, 2015 WL 5773895, at *26 (S.D.N.Y. Sept. 30, 2015) (unjust enrichment).  To the extent the plaintiffs argue that the TAC can be construed as seeking equitable relief and not money damages, the alternative six-year limitations period for the breach of fiduciary duty and unjust enrichment claims is no more forgiving, as all their claims accrued in 2007 such that they would be equally time-barred by 2015.

REDACTED COPY

defendant in question had never been served with the prior complaint(s) and was thus not participating in the case.[13]

Moreover, because R&H is now for the first time being accused of the acts and omissions the OC had instead accused ████████ of, the TAC "changes the party . . . against whom a claim is asserted" (Rule 15(c)(1)(C)) and is thus subject to that rule, under which, in addition to compliance with Rule 15(c)(1)(B), plaintiffs must establish both that they were mistaken about which party to sue and that the newly-charged defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Plaintiffs cannot meet this test, and the TAC does not even make a cursory attempt to plead compliance with it.  Even if only Rule 15(c)(1)(B), applies, however, the Second Circuit has held that relation back is proper only when "the amended complaint does not allege a new claim but renders prior allegations more definite and precise."  *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006).  "In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations will not relate back."  *Id.*  Here, the TAC's allegations about R&H's role and actions in connection with the FL Loan do not make the OC's allegations "more definite and precise," but instead involve an "entirely distinct set" of allegations not raised against R&H in the OC, with the allegations that had been made against R&H in the OC abandoned rather than clarified.  There is accordingly no relation back, and the claims regarding R&H in the TAC must be dismissed as time-barred.

---

[13] Indeed, here the OC was filed on an unsealed basis only because of the plaintiffs' misconduct and was sealed almost immediately thereafter, and the FAC was filed under seal and has never been unsealed.  When the prior pleading being amended is sealed rather than public, the usual relation-back rules do not apply, not least because of the obvious unfairness of depriving a defendant of a statute of limitations defense when it was unable to defend against secret allegations contained in a never-served sealed document.  *See United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 270 (2d Cir. 2006).

REDACTED COPY

## II.      SERVICE OF PROCESS WAS UNTIMELY[14]

Timely service of process on a defendant is a prerequisite for the Court's jurisdiction over that defendant.  *See Zherka v. Ryan*, 52 F. Supp. 3d 571, 576 (S.D.N.Y. 2014) (*citing Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987)).  That a defendant may have received actual notice of the lawsuit through informal means does not excuse the need for legally sufficient formal service of the summons and complaint.  *See*, *e.g.*, *Pierre ex rel. Pierre v. Dep't of Educ.*, Case No. 07–cv-6270(DLC), 2008 WL 2369224, at *2 (S.D.N.Y. June 10, 2008) ("the fact that the defendants had actual notice of this action… does not cure the defective service") (*citing Nat'l Dev. Co. v. Triad Holding Corp.,* 930 F.2d 253, 256 (2d Cir.1991)); *see also Smith v. Bray*, Case No. 13-cv-07172(NSR)(LMS), 2014 WL 5823073, at *5 (S.D.N.Y. Nov. 10, 2014) (collecting cases holding same).

When service is inadequate (including inadequate because untimely), a motion to dismiss under Rule 12(b)(5) is appropriate.  *See*, *e.g.*, *Hahn v. Office & Prof'l Employees Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 381 (S.D.N.Y. 2015) (granting motion to dismiss for failure to serve process pursuant to Rules 12(b)(5) and 4(m)).  Moreover, in the context of such a motion, "the plaintiff bears the burden of establishing that service was sufficient."  *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (*citing Burda Media, Inc. v. Viertel,* 417 F.3d 292, 298 (2d Cir. 2005)).  Such dismissal should be with prejudice given that the claims are now time-barred.  *See*, *e.g.*, *Toner v. Suffolk Cty. Water Auth.*, 220 F.R.D. 20, 21-2 (E.D.N.Y. 2004).[15]

---

[14] The Court need not necessarily address this issue given the numerous other bases for dismissal on the merits under Rule 12(b)(6).  *See Taylor v. Westor Capital Grp.*, 943 F. Supp. 2d 397, 400 (S.D.N.Y. 2013) (collecting cases holding that dismissal pursuant to Rule 12(b)(6) obviates need to address adequacy of service of the complaint).

[15] *See also Hahn*, 107 F.Supp.3d at 386 (declining to authorize service of amended complaint outside the time limit of Rule 4(m) when claims were time-barred and did not relate back to original complaint); *Gelb v. Fed. Reserve Bank of New York*, Case No. 12-cv-4880 ALC, 2013

REDACTED COPY

Here, there is no legitimate explanation for the five and a half year delay in serving process on R&H. The plaintiffs may argue that they did not need to attempt service, and/or were not even allowed to try, in light of this Court's orders. But the lengthy series of orders purporting to extend the time to make service under Rule 4(m) eventually expired on April 1, 2013, more than two and a half years before service was made, and no attempt was made to serve R&H by that date. Moreover, from November 2010 forward, the plaintiffs were aware that Mr. Schwartz had passed on a courtesy copy of the OC to R&H before the order sealing the OC had been issued. The only plausible justification for the extensions of time (since there could have been no practical difficulty in serving R&H) would have been the perception that the OC should not be disseminated further while the issues raised by the plaintiffs' improper inclusion in it of misappropriated privileged and/or confidential material were addressed. But that was no basis for delaying service on a named defendant who had already received a copy – a fact the plaintiffs knew but the Court apparently did not.[16] The plaintiffs cannot justify their inaction by claiming to have relied in good faith on orders of this Court that they knew or should have known were based on a misapprehension of the material facts.

After April 1, 2013, no further extensions of time under Rule 4(m) were granted. The orders purporting to instruct the plaintiffs not to effect service did not purport to be issued under Rule 4(m), and in any event on their face do not "extend the time for service for an appropriate

---

WL 3783724, at *1 (S.D.N.Y. July 19, 2013) (*citing Frasca v. United States,* 921 F.2d 450, 453 (2d. Cir. 1990) ("that Plaintiff's claims will effectively be time barred does not alter the Court's analysis").

[16] While the various orders extending the time to make service under Rule 4(m) generally include a "good cause having been shown" recital, the public docket does not show any motion papers or letter applications submitted by plaintiffs requesting the extensions or attempting to show good cause for them, so we are unable to be certain of the Court's rationale for those extensions and are likewise unable to ascertain definitively what relevant facts the Court may or may not have been aware of.

REDACTED COPY

period."  With all due respect for the Court and the difficult situation it was trying to manage as a result of the misconduct of the plaintiffs' then-counsel, we are aware of no authority for the proposition that a federal court may indefinitely suspend a plaintiff's obligation to make service on an unserved defendant without that defendant's consent.[17]

### III.    THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST R&H AND FAILS TO PLEAD FRAUD WITH PARTICULARITY WITH RESPECT TO R&H

The Joint Brief explains why the TAC fails to state a RICO claim against any of the defendants.  We focus here only on additional grounds why it fails to state a RICO claim against R&H.  First of all, unlike the other defendants, R&H is not alleged to have had any involvement prior to the planning and closing of the FL Loan in 2007.  But the "pattern" element of a RICO claim requires that a plaintiff "must allege that *each* defendant committed two" predicate acts, *Lippe v. Bairnco Corp*, 225 B.R. 846, 860 (S.D.N.Y. 1998) (Chin, J.) (emphasis added), and the TAC does not make that allegation with respect to R&H.  Nor can the plaintiffs avoid this fatal flaw by the pleading trick of characterizing the closing of the FL Loan as three separate frauds (plus three separate NSPA violations) when it was a single unified transaction with three different alleged "victims."  When multiple predicate acts alleged are all simply different facets of a "single

---

[17] In any event, the orders instructing the plaintiffs not to serve the FAC were a self-inflicted wound caused by their own lengthy course of litigation misconduct and delay.  Even when the plaintiffs belatedly advised this Court that R&H had earlier received a copy of the OC (docket item 33), it was in the context of an objectively ridiculous argument that the FAC should be unsealed despite apparently being full of the same stolen information as the OC.  Sensible counsel would under the circumstances have asked the Court for leave to serve the sealed FAC on the remaining defendants with appropriate conditions to avoid further disclosure.  Plaintiffs did not do so.

REDACTED COPY

scheme to defraud," the pattern requirement is not satisfied.  *First Cap. Asset Mgt., Inc. v.*

*Satinwood, Inc*., 385 F.3d 159, 182 (2d Cir. 2004).[18]

      The RICO claim separately fails because R&H's alleged conduct in connection with the

FL Loan amounted to nothing more than the traditional role of acting as outside counsel.  Courts

have consistently held that RICO claims against outside counsel cannot be made because acting in

that role does not constitute the essential element of "operation or management" of the RICO

enterprise or "directing the enterprise's affairs."  *See, e.g.*, *Turkish v. Kasenetz*, 964 F. Supp. 689,

694 (E.D.N.Y. 1997) ("Generally, an attorney's provision of legal services does not constitute

'operation or management' of the alleged enterprise."); *Madanes v. Madanes*, 981 F. Supp. 241,

256-57 (S.D.N.Y. 1997) (collecting cases and noting lack of RICO liability even when defendants'

attorney allegedly counseled client to act fraudulently and/or drafted documents intended to

conceal client's fraud).[19]  Here, as set forth at length at pp. 2-4 above, *all* of R&H's alleged acts

and omissions specified in the TAC fall squarely within the traditional role of outside counsel –

advising on transaction structure and negotiating and drafting deal documentation.  Plaintiffs

complain that R&H failed to cause Bayrock to honor its alleged contractual obligations to them

and/or that R&H did not advise Bayrock to structure the RH Loan in a fashion advantageous to

---

[18] *See also Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) ("courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO").

[19] *See also Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994); *Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.*, 832 F. Supp. 585, 592 (E.D.N.Y. 1993) (finding attorney did not "participate in the 'conduct' of an enterprise and did not violate § 1962(c), even though he may have intentionally assisted a scheme to defraud."); *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison,* 955 F.Supp. 248, 254 (S.D.N.Y.1997) ("The provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself.").

REDACTED COPY

them, but that does not even state a fraud claim against Bayrock (Joint Brief at pp. 13-15), much less against R&H.

Indeed, no predicate act by R&H is alleged, even without reaching the "pattern" and "operation and management" issues, because nothing about R&H's alleged involvement could possibly have constituted wire or mail fraud.[20]   Even construed charitably, plaintiffs' "fraud" theory seems to be that plaintiffs were defrauded by being induced to enter into their employment agreements despite Bayrock's alleged intent not to make the payments those agreements would require as and when they fell due.  TAC ¶¶ 170, 175, 188.  But R&H is not alleged to have even been on the scene when those agreements were allegedly fraudulently induced between 2004 and 2006, much less to have had any involvement in the alleged misrepresentations and omissions that allegedly induced plaintiffs to enter them.   R&H is not alleged to have made any fraudulent statements to anyone.   The most plaintiffs allege is that R&H was involved in ("draft[ing] documents and/or deal terms that concealed or disavowed the membership interests of Plaintiffs." (TAC ¶ 211).  But it is not alleged that anyone was ever deceived by them, especially since FL Group is alleged to have been on full notice of Plaintiffs' alleged membership interests.[21]

The Joint Brief addresses (at pp. 11-12) the plaintiffs' failure to plead fraud with the particularity required by Fed. R. Civ. P. 9(b).  We add only that the TAC fails to specify the title,

---

[20] As to the NSPA claims, not only are there no "securities" involved (Joint Brief at 14, n. 11), no allegation is made that R&H "receive[d], possess[ed], conceal[ed], store[d], barter[ed], [sold], or dispose[d] of" the non-existent securities, so the TAC fails to plead any violation of 18 U.S.C. § 2315 by R&H.

[21] We incorporate by reference the arguments on the TAC's failure to plead scienter made in the supplemental brief being filed by the Salomon Defendants and note that the TAC pleads no motive for R&H to have acted with fraudulent intent.

REDACTED COPY

date, signer(s), and/or addressee(s) of *any* allegedly misleading or incomplete documents R&H is alleged to have been involved with drafting.

As to the conspiracy claim, the Joint Brief (at pp. 24-25) explains its inadequacy (including that no conspiracy can exist between a corporate entity like Bayrock and its own agents such as R&H).[22]   However, it should additionally be noted that R&H is not alleged to have joined the "conspiracy" until 2007 and could thus in any event have no liability on a conspiracy theory for the predicate acts (essentially all of those other than the ones related to the FL Loan) that were allegedly committed prior to that date.  *See United States v. Blackmon*, 839 F.2d 900, 908-09 (2d Cir. 1988) (no vicarious liability for acts of co-conspirators committed prior to defendant joining conspiracy).

Of the state-law claims, half of them (counts five, six, seven, eight, thirteen, and fifteen) are not even asserted against R&H.  As to the remainder, the Joint Brief explains why no claim for tortious interference, conversion, unjust enrichment, or aiding and abetting is alleged against any of the defendants, including R&H.  However, it should be emphasized that the tortious interference claim, in particular, makes no sense at all when asserted against R&H acting in its capacity as Bayrock's counsel.  A lawyer has no tort liability for his client's alleged failure to honor a prior contract unless it can be plausibly alleged that the lawyer "intentionally used his position of trust improperly to persuade [client], against [client's] better judgment, to breach" the underlying contract.  *Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.*, 832 F. Supp. 585, 592 (E.D.N.Y. 1993).  No such allegation is made here.  Even if an underlying breach was plausibly alleged here (which it is not), R&H's role was not to serve as guarantor of Bayrock's

---

[22] "Courts have generally held that outside counsel acting within the scope of their agency fall within the intracorporate conspiracy doctrine."  *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 345, n. 74 (S.D.N.Y. 2007).

REDACTED COPY

prior contractual obligations, and it owed plaintiffs no duty to ensure Bayrock's compliance with

whatever those obligations might be.[23]

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Joint Brief and all separate briefs

filed by other defendants to the extent applicable, R&H's motion should be granted, and all claims

asserted against R&H in the TAC dismissed with prejudice.

Dated: New York, New York
April 28, 2016

**STORCH AMINI & MUNVES PC**

By: _____

John W. Brewer
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 490-4100
*Attorneys for Defendants Roberts & Holland LLP
and Elliot Pisem*

---

[23] Indeed, the plaintiffs' complaints that R&H allegedly advised on how to "structure" the FL Loan without promoting their interests underscore the absurdity of their claim. A party to an existing contract providing for payment obligations under certain future conditions has every right to attempt to structure future transactions so as to avoid triggering a payment obligation under the prior contract and to seek the advice of counsel in doing so. Either the attempt succeeds (in which case there is no liability under the earlier contract) or it does not (in which case there is), but in neither instance is the counsel asked for structuring advice potentially liable to the counterparty claiming payment under the earlier contract.

15