UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| KRISS, ET AL., | Case No. 10 Civ. 3959 (LGS) (FM) |
| --- | --- |
| *Plaintiffs* | |
| v. | |
| BAYROCK GROUP LLC, ET AL., | RESPONSE TO NON-PARTY BRIAN VODICKA'S MOTION TO UNSEAL |
| *Defendants.* | |

This memorandum is submitted on behalf of Defendant Felix Sater ("Mr. Sater") in response to Non-Party Brian Vodicka's Motion to Unseal (the "Motion"). Mr. Sater incorporates by reference the legal arguments raised by the Bayrock Defendants in their response to the Motion [ECF 383]. For the reasons set forth herein, the Motion should be denied.

## PRELIMINARY STATEMENT

Movant Brian Vodicka ("Vodicka"), a recurring stand-in and compatriot of Plaintiffs' former counsel, Frederick Oberlander ("Oberlander") and Richard Lerner ("Lerner"), seeks to "blow open, and end, the courts' illegal concealment of cases." (Motion at ¶8). Like his legal "heroes," Oberlander and Lerner, Vodicka is a self-appointed Inspector General using fabricated allegations of judicial cronyism to gain access to stolen documents. However, Vodicka is no First Amendment Robin Hood. In reality, like Oberlander and Lerner, Vodicka is an aggrieved serial Plaintiff who seeks to leverage sealed and confidential documents to gain an upper-hand in litigation. Indeed, just days prior to the filing of the instant motion, on March 4, 2016, Vodicka affixed a redacted version of the Original Complaint (ECF 1, the "OC") to a motion to vacate a final judgment against him. *See Vodicka et al v. Barlin et al*, 10-CV-00076 (W.D.TX.) Dkt. 735-2. This brazen, "shoot first, ask questions later" approach is a hallmark of Oberlander and Lerner, whom Vodicka refers to as "heroes of justice." (Vodkica's Motion at [FN2]). For the reasons set forth herein, Vodicka's motion should be denied.

1

### *Recent Findings by Judge Cogan Related to Vodicka's Motion to Unseal*

On March 3, 2016, in response to a motion to intervene and unseal by the Associated Press, Judge Cogan of the Eastern District of New York Ordered the Government to Show Cause why the documents in the related case *In Re Motion for Civil Contempt by John Doe*, 12-MC-557 (BMC) (E.D.N.Y.), should not be unsealed. Exhibit A, March 3rd Order. In the Order, Judge Cogan expressed frustration as to why Oberlander and Lerner have not yet been criminally prosecuted by the Department of Justice, stating "the confidentiality of the documents that relate to the identity and cooperation of individuals is, at times, essential to preserving the informant's safety." Id. at 3. Judge Cogan further stated that "the Government appears to take lightly the risk of harm created by failing to protect Doe." Id. at 5. On March 28, 2016, Judge Cogan granted Vodicka's motion to intervene and scheduled a public hearing on his motion.

In response to Judge Cogan's Order to Show Cause, on April 25, 2016, the U.S. Attorney's Office for the Eastern District of New York ("USAO-EDNY") submitted a list of documents that referenced information derived from the PSR or other sealed documents. *See* Exhibit B, Ltr. to Judge Cogan dated 4/25/2016. USAO-EDNY opposed the unsealing of these documents, stating that disclosure of such documents "would represent a substantial probability of prejudice to a compelling interest of the defendant government or third party, such as the integrity of law enforcement investigations, danger to persons, national security concerns and privacy interests." Id. Mr. Sater joined in, and adopted the position of the USAO-EDNY in requesting that those documents remain sealed. Additionally, the U.S. Attorney's Office for the Northern District of New York ("USAO-NDNY") submitted a letter requesting the continued sealing of certain additional documents, as they related to an ongoing criminal investigation.

At the public hearing on the unsealing motions on May 10, 2016, Judge Cogan first described the nature of the documents at issue, particularly Mr. Sater's presentence investigation

report ("PSR"). As Judge Cogan explained:

> There are certain documents in federal court that are routinely sealed whether for short periods of time as to certain nonparties or even as to the parties themselves. As it relates to the case here, both according to the rules and the statute, the presentence report, what we call the PSR, that is invariably sealed in the case. The information contained in that report is placed there by the Probation Department after its own investigation and its conversations with the defendant in a particular case and the defendant's attorney, of course.
>
> The report is prepared by Probation as an arm of the court. The report is for the Court's benefit. And sometimes there are portions of a presentence investigation report like the recommendation that even the defendant is not permitted to see and the government is not permitted to see. That is up to the Court to determine that.
>
> The reason for this is that you often have concerns about safety, particularly when you are dealing with cooperating witnesses. You also have concerns about compromising what may be ongoing government investigations. And it is also quite clear that if defendants understood that what they were telling the Probation Department was going to be made public, then they would not tell as much. And as sentencing judges, I and my colleagues would have a very difficult time in applying 18 U.S.C. Section 3553(a) to determine what the appropriate sentence is. So it is common to the point of being universal that presentence reports are required to be sealed.

Exhibit C at 4:10-5:12.

Judge Cogan then recounted the sealing history of the documents in the case, noting that the threat of danger inherent in disclosing the details of Mr. Sater's cooperation are so grave, that the Second Circuit "enjoined Mr. Oberlander from even using his own name in these proceedings because his name became synonymous with the disclosure of the information." Id. at 7:21-24. Judge Cogan then explained his prior decision to seal the entire docket to prevent bootstrapping:

> I was faced with what has been called…a camel's-nose-under-the-tent strategy, whereby releasing certain sealed information it would be okay to release all the sealed information because the deed had already been done. And I wasn't going to make the Court a party to that, so I directed that everything on the docket be sealed.

Id. at 8:17-23.

Ultimately, Judge Cogan ordered that 38 documents concerning Mr. Sater's cooperation or USAO-NDNY's ongoing investigation – the same 38 documents identified by USAO-EDNY and

USAO-NDNY in their letters to the Court – be kept sealed. With regard to those 38 documents, Judge Cogan found that they "continue to reflect and would deter cooperation and might jeopardize ongoing government investigations," further holding that the "38 documents that I am leaving under seal do, in fact, have concerns that outweigh the public's qualified right of access. They do pose potential danger. They do potentially complicate or impede government investigations." Id. at 11:24-12:1; 21:8-12.

## FACTUAL BACKGROUND

The facts of this case have been extensively briefed by the parties and described in several opinions by the Court. *See, e.g.*, March 23, 2015 Opinion & Order, [ECF 126] (the "Sanctions Order"), adopting Judge Maas's January 14, 2015 Report and Recommendation [ECF 97]; May 29, 2014 Memorandum Decision and Order [ECF 68]. In brief summary, the two sealed documents at issue here – the May 10, 2010 OC, and the FAC, which was never actually filed – are based almost entirely on information derived from highly confidential documents that were stolen from Mr. Sater by Oberlander in 2010,[1] including, *inter alia*, Mr. Sater's PSR, his confidential financial affidavit, his proffer agreements, and a sealed criminal complaint. These sensitive documents were filed as exhibits to the OC, and serve, inextricably, as the basis for both the OC and FAC.

Through the obsessive efforts of Oberlander, Lerner, and now Vodicka, certain information contained in these documents has been leaked to the public, including the fact that Mr. Sater was a government cooperator. Extensive litigation has ensued in the Eastern District, the Second Circuit, and even the U.S. Supreme Court, regarding Oberlander and Lerner's brazen unsealing efforts. For his part, Vodicka has been used intermittently as a nominee for Oberlander and Lerner, first linked to them in January 2012, and then making at least two motions to unseal documents

---

[1] Lerner became Oberlander's lawyer and confederate as of June, 2010, with the commencement of proceedings before Judge Glasser in the Eastern District of New York. They have been co-counsel in virtually all aspects of litigation since then, and have been together referred for criminal prosecution *twice*.

4

related to Mr. Sater. *See* Exhibit D, Miami Herald Article dated January 29, 2012; *In re Motion for Civil Contempt by John Doe*, 12-mc-557 (BMC) (E.D.N.Y.) Dkt. No. 64-4; *Vodicka v. United States*, 15-mc-242 (JG) (E.D.N.Y.).

As recognized by numerous courts, Oberlander and Lerner have made a practice of leaking information to the public (through public court filings, tips to the press, or otherwise) and bootstrapping on these disclosures as the basis for more unsealing. *See, e.g.*, *Roe v. United States*, 428 F. App'x 60, 65 (2d Cir. 2011) ("It seems obvious that Oberlander is seeking to fatally undermine the purpose of the injunctions by publicizing information that would render them ineffective."). For these efforts, Oberlander and Lerner, Vodicka's legal heroes, have *twice* been referred by Judge Cogan to the Department of Justice for criminal investigation. By filing the instant Motion, Vodicka takes a page out of Oberlander and Lerner's playbook, blithely endangering Mr. Sater's life as a means to gain an upper-hand in a litigation. For the reasons set forth below, Vodicka's Motion fails.

## **ARGUMENT**

**I. THE ORIGINAL COMPLAINT AND FIRST AMENDED COMPLAINT SHOULD REMAIN SEALED**

**1. Documents Referencing the Contents of Mr. Sater's PSR Have Been Ordered Sealed by Judge Glasser, Judge Cogan, and the Second Circuit**

Mr. Sater's PSR is referenced throughout, and is almost entirely the subject of, the OC and FAC. Numerous courts, including the Second Circuit Court of Appeals and various District Courts, have *explicitly* found that the PSR and information derived therefrom should be sealed, based on United States v. Charmer Industries, Inc. 711 F.2d. 1164 (2d Cir. 1983). For the sake of Mr. Sater's safety, which has been recognized as a basis for the continued sealing of the PSR and other documents by Judge Glasser, Judge Cogan, and the Second Circuit Court of Appeals, the Original Complaint, First Amended Complaint, and all of their exhibits, must remain sealed.

By way of a procedural background, following the sealing of the OC by Judge Buchwald, Judge Leo Glasser of the Eastern District of New York held a series of hearings regarding how Oberlander obtained the documents attached to the OC. With regard to the PSR and cooperation agreements, in particular, Judge Glasser observed the extreme sensitive nature of the documents, noting the danger, not only to Mr. Sater, but to national security if they were ever divulged:

> Those two documents, among others, which were sealed, were documents [that] if divulged … may seriously jeopardize not only the life of the person who was the subject of those documents [Mr. Sater]. In this case [they] might also significantly affect matters of national interest.

Exhibit E, June 14, 2010 Hrg. Tr. in 98-cr-1101 (E.D.N.Y.) at p. 4.

On June 21, 2010, Judge Glasser issued an unambiguous Order enjoining dissemination of the PSR and demanding its return, stating:

> With respect to the presentence report, I have absolutely no hesitation enjoining any further dissemination and I'll direct the presentence report to be returned. To the extent that you have it in your possession, return it immediately… to the United States Attorney's Office.

Exhibit F, June 21, 2010 Hrg. Tr. in 98-cr-1101 (E.D.N.Y.) at p. 91-92.

Judge Glasser later found that "those documents contained information which is highly, highly sensitive" which if disseminated would cause "irreparable harm, which is imminent to Mr. John Doe ... [and] would put Mr. John Doe's safety at risk." Exhibit G, July 20, 2010 Tr. at 26-27.

Following a series of appeals by Oberlander and Lerner, on February 14, 2011, the Second Circuit directed Chief Judge Dearie of the Eastern District to appoint a District Judge to "implement[] and oversee[] compliance with [the Second Circuit's] orders and the orders previously entered by Judge Glasser," which led to the appointment of Judge Brian M. Cogan. Exhibit H, Mandate dated 2/14/2011. Subsequently, by Order dated June 29, 2011, the Second Circuit permanently enjoined dissemination of the PSR and remanded to the Eastern District of New York "with instructions to … issue a final determination regarding whether the dissemination

of other (non-PSR) sealed documents in [Mr. Sater's] criminal case, particularly those that refer to Does' cooperation, should be enjoined." Roe v. United States, 428 Fed. App'x 60, 2011 WL 2559016, at *5 (2d Cir. June 29, 2011) (mandate issued December 20, 2011). The Second Circuit specifically noted Judge Glasser's finding of potential physical danger to Mr. Sater if the PSR were disseminated, noting that the details of Mr. Sater's government cooperation are "of dubious utility [] except as a tool to intimidate and harass [Mr. Sater] by subjecting him to danger." Id. at *7. The Second Circuit Ordered Judge Cogan to "retain jurisdiction for the limited purpose of enforcing [its] February 14, 2011 mandate - that is, to ensure the parties' compliance with the orders of this Court and any that have been, or may hereafter be, entered by Judge Glasser." Id.

As this Court is aware, over the course of the next several months, Oberlander and Lerner defied the Second Circuit's warnings and improperly leaked sealed information concerning Mr. Sater to the press, prompting Judge Cogan to refer Oberlander and Lerner to the Department of Justice for the first time.[2] As a result of Oberlander and Lerner outing Mr. Sater as a government cooperator, Judge Glasser issued two more sealing orders regarding Mr. Sater's criminal case, detailing exactly which documents in Mr. Sater's criminal case should remain sealed and which could be unsealed. *See In re Applications to Unseal 98 CR 1101 (ILG)*, No. 13-2373-cv, Dkt. 161-1 at 3 (2d Cir. June 5, 2014). In particular, Judge Glasser ordered "the PSR, information sourced from the PSR, and the details of the cooperation agreement must remain sealed." Exhibit A, March 3rd Order". Judge Glasser cited Charmer Industries for the proposition that, absent "compelling demonstration that disclosure of the report is required to meet the ends of justice," disclosure should not be authorized. 711 F.2d. at 1175. Judge Glasser set forth the Court's reasoning for the

---

[2] Oberlander and Lerner would *again* be referred for criminal prosecution by Judge Cogan on or about July 1, 2015, for much the same conduct.

7

ongoing sealing of the PSR and documents that disclose the contents of the PSR, namely, the safety of Mr. Sater and integrity of law enforcement investigations.

On appeal, the Second Circuit upheld Judge Glasser's sealing order in its entirety. *See In re Applications to Unseal 98 CR 1101 (ILG)*, No. 13-2373-cv, Dkt. 161-1 (2d Cir. June 5, 2014). In their summary affirmance, the Second Circuit held as follows:

> Judge Glasser's sealed order lays out the District Court's basis for ongoing sealing—generally, safety of persons or property; integrity of government investigation and law enforcement interests; and protection of cooperator's anonymity
>
> …
>
> Here, the District Court laid out each document that was to remain sealed in a series of tables and noted for each the basis for continued sealing. Where possible, it limited the sealing to redactions on certain pages. We have reviewed the District Court's sealed order. Given the extent and gravity of Sater's cooperation, we conclude that these findings are sufficient.

Id. at 3.

Attempts by Oberlander and Lerner to appeal the Second Circuit's holdings to the Supreme Court have been unsuccessful, and resulted in the imposition of filing sanctions.

## 2. The OC and FAC Impermissibly Rely on the PSR and its Contents

Here, the basis for the continued sealing of the OC and FAC, as recognized by Judge Glasser, Judge Cogan, and the Second Circuit, is Mr. Sater's continued safety and wellbeing. Indeed, disclosure of documents concerning the details of Mr. Sater's cooperation with the government, including his PSR and its contents, would represent "a substantial probability of prejudice to a compelling interest of the defendant government or third party," such as the integrity of law enforcement investigations, danger to Mr. Sater, national security concerns and privacy interests. *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995); *see also United States v. Aref*, 533 F.3d 72, 83-83 (2d Cir. 2008); *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995). As the Second Circuit has observed, the details of Mr. Sater's government cooperation are "of dubious

8

utility [] except as a tool to intimidate and harass [Mr. Sater] by subjecting him to danger." *Roe*, 2011 WL 2559016, at *7.

Moreover, this Court has already determined that the sealing of the OC and FAC were justified. Both documents improperly disclose and rely upon purloined, highly-sensitive information from Mr. Sater's sealed criminal case. Oberlander and Lerner's hysterical efforts to expose Mr. Sater's government cooperation should not disturb those findings, nor should Vodicka's Motion, which fails to make a compelling demonstration that disclosure of the OC or FAC is required to meet the ends of justice, as required by <u>Charmer Industries</u>.

Moreover, neither the OC nor the FAC were ever the operative complaint in this case. With regard to the OC, that document and its exhibits were immediately ordered sealed by Judge Buchwald and prohibited from being served or disseminated, a prohibition that was later upheld by the Second Circuit Court of Appeals. With regard to the FAC, that document was never publicly filed, as Plaintiffs were never able to make a requisite showing that it did not impermissibly rely on privileged, sealed and/or confidential information. Ultimately, Plaintiffs were only permitted to publicly file a complaint – their Third Amended Complaint – after they terminated Oberlander and Lerner. To afford the public a "right of access" to the OC or the FAC now, two documents that have not seen the light of day, would be to permit an attorney to "unseal" stolen documents simply by uploading them to PACER and bootstrapping onto that filing. Such a precedent cannot be established here.

At the hearing on May 10, 2016, Judge Cogan explicitly recognized Oberlander and Lerner's "practice of republication by which they bootstraped their own disclosures as a reason for making more disclosures." <u>Exhibit C</u>, 05/10/16 Conf. Tr. at 7:14-17. This tactic, used by Vodicka to justify his public filing of the OC in Texas, and by Oberlander and Lerner to justify countless other improper leaks, is not a basis to unseal the documents in this case. Vodicka and his legal

heroes cannot justify endangering Mr. Sater's life (as they seek to do here) by bootstrapping on their own disclosures and manufacturing a First Amendment right where none exists. Judge Cogan, in ruling that all documents referencing the contents of Mr. Sater's Presentence Investigation Report ("PSR") should remain sealed, observed that "it is common to the point of being universal that presentence reports are required to be sealed." Id. at 5:11-12. Nothing in Vodicka's Motion suggests that this case should be any different.

Finally, Vodicka opportunistically cites the presidential candidacy of Donald Trump as a basis for unsealing the documents in this case. Mr. Sater's alleged association with a presidential candidate is not so compelling an interest to unearth documents that have been sealed by multiple courts on the basis of Mr. Sater's safety. By contrast, Mr. Sater's safety *is* a very compelling counter-interest to the unsealing of such documents, as recognized by numerous Courts, including the Second Circuit. In sum, Vodicka does not demonstrate, based on the presidential candidacy of Donald Trump or for any other reason, that the disclosure of such information is required to meet the ends of justice.

## **CONCLUSION**

Based on the foregoing, Mr. Sater respectfully requests that the Court deny non-party Brian Vodicka's Motion.

Dated: May 16, 2016
       New York, New York

MOSES & SINGER LLP

   /S/
Robert S. Wolf, Esq.
405 Lexington Avenue
New York, New York 10174
P: (212) 554-7825
*Attorney for Felix Sater*