```
                                                                        1

 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - X
 3
                                    :    12-MC-00557(BMC)
 4                                  :
                                    :
 5   IN RE MOTION FOR CIVIL         :    U.S. Courthouse
     CONTEMPT BY JOHN DOE           :    Brooklyn, New York
 6                                  :
                                    :
 7                                  :    Tuesday, May 10, 2016
                                    :    2:15 p.m.
 8
     - - - - - - - - - - - - - - - X
 9
                      TRANSCRIPT OF MOTION HEARING
10                BEFORE THE HONORABLE BRIAN M. COGAN
                     UNITED STATES DISTRICT JUDGE
11

12                   A P P E A R A N C E S:

13   For the Petitioner:       BEYS, LISTON, MOBARGHA & BERLAND,
                                LLP
14                              825 Third Avenue, Second Floor
                                New York, New York 10022
15                              BY:  MICHAEL P. BEYS, ESQ.

16                              and

17                              MOSES & SINGER LLP
                                405 Lexington Avenue
18                              New York, New York 10174
                                BY:  ROBERT S. WOLF, ESQ.
19                                   ROBERT B. McFARLANE, ESQ.

20
     For Mr. Oberlander:        BLANK ROME LLP
21                              Chrysler Building
                                405 Lexington Ave
22                              New York, NY 10174
                                BY:  JEFFREY C. HOFFMAN, ESQ.
23

24   For Mr. Lerner:            RICHARD E. LERNER, ESQ., pro se
                                1375 Broadway, 3rd Floor
25                              New York, New York 10018


                       JOSHUA B. EDWARDS, RDR, CRR
                         OFFICIAL COURT REPORTER
```

2

| | | |
|---|---|---|
| 1 | Also Present: | ROBERT L. CAPERS, ESQ. |
| | | United States Attorney |
| 2 | | 271 Cadman Plaza East |
| | | Brooklyn, New York 11201 |
| 3 | | BY:  EVAN NORRIS, ESQ. |
| | | KARTHIK SRINIVASAN, ESQ. |
| 4 | | Assistant U.S. Attorneys |
| 5 | | |
| 6 | | RICHARD S. HARTUNIAN, ESQ. |
| | | United States Attorney |
| 7 | | 445 Broadway, Room 218 |
| | | James T. Foley U.S. Courthouse |
| 8 | | Albany, New York 12207 |
| | | BY:  RICHARD D. BELLISS, ESQ. |
| 9 | | Assistant U.S. Attorney |
| 10 | | and |
| 11 | | 100 South Clinton Street |
| | | Federal Building, Room 900 |
| 12 | | Syracuse, New York 13261 |
| | | BY:  STEPHEN C. GREEN, ESQ. |
| 13 | | Assistant U.S. Attorney |
| 14 | | |
| 15 | For the Associated Press: | LEVINE SULLIVAN KOCH & SCHULZ, LLP |
| | | 321 West 44th Street, Suite 1000 |
| 16 | | New York, New York 10036 |
| | | BY:  KATHERINE BOLGER, ESQ. |
| 17 | | |
| 18 | | |
| | Court Reporter: | JOSHUA B. EDWARDS, RDR, CRR |
| 19 | | 225 Cadman Plaza East |
| | | Brooklyn, New York 11201 |
| 20 | | joshua_edwards@nyed.uscourts.gov |

21  Proceedings recorded by mechanical stenography; transcript produced by Computer-Assisted Transcription.

22

23

24

25

1     THE COURTROOM DEPUTY:  In re motion for civil
2  contempt, docket number 12-MC-557.  Counsel, please state your
3  appearances starting with the movant.
4     MS. BOLGER:  Your Honor, my name is Katherine Bolger
5  from the law firm of Levine, Sullivan, Koch & Schulz on behalf
6  The Associated Press.
7     THE COURT:  Okay.
8     MR. HOFFMAN:  Good afternoon, Your Honor, Jeff
9  Hoffman, Blank Rome for Mr. Oberlander.
10     MR. LERNER:  Richard Lerner, pro se.
11     MR. BEYS:  Your Honor, I think the movant you were
12  referring to is John Doe.  I am Mike Beys with the firm of
13  Beys, Liston, Mobargha & Berland for Mr. Doe who everybody now
14  knows is Felix Sater.  And I'm joined by co-counsel Robert
15  Wolf with the firm of Moses & Singer, Robert McFarlane with
16  Moses & Singer.  Good afternoon, Your Honor.
17     MR. NORRIS:  Your Honor, and from the U.S.
18  Attorney's Office in the Eastern District of New York, Evan
19  Norris and Karthik Srinivasan.  We are joined today by our
20  colleagues from the Northern District of New York, Stephen
21  Green and Richard Bellis.  Good afternoon.
22     THE COURT:  Good afternoon, everybody.  All right,
23  here is what is on my agenda today.  I have motions to unseal
24  by the intervenors, the Associated Press and someone named
25  Mr. Modica.  Is he here?  He didn't come?

1  MR. HOFFMAN:  I think he's --
2  THE COURT:  Modica, he is not here?
3  MR. HOFFMAN:  He's not here.
4  THE COURT:  I am going to first make a few rulings
5  on the issue of unsealing certain documents, and then once I
6  do that, I will give anybody from the public who might be here
7  and wants to be heard an opportunity to try to convince me
8  that I should do something other than what I am inclined to
9  do.
10  By way of background, let me just note that there
11  are certain documents in federal court that are routinely
12  sealed whether for short periods of time as to certain
13  nonparties or even as to the parties themselves.  As it
14  relates to the case here, both according to the rules and the
15  statute, the presentence report, what we call the PSR, that is
16  invariably sealed in the case.  The information contained in
17  that report is placed there by the Probation Department after
18  its own investigation and its conversations with the defendant
19  in a particular case and the defendant's attorney, of course.
20  The report is prepared by Probation as an arm of the
21  court.  The report is for the Court's benefit.  And sometimes
22  there are portions of a presentence investigation report like
23  the recommendation that even the defendant is not permitted to
24  see and the government is not permitted to see.  That is up to
25  the Court to determine that.

*Proceedings* 5

         The reason for this is that you often have concerns about safety, particularly when you are dealing with cooperating witnesses.  You also have concerns about compromising what may be ongoing government investigations. And it is also quite clear that if defendants understood that what they were telling the Probation Department was going to be made public, then they would not tell as much.  And as sentencing judges, I and my colleagues would have a very difficult time in applying 18 U.S.C. Section 3553(a) to determine what the appropriate sentence is.

         So it is common to the point of being universal that presentence reports are required to be sealed.  There are occasions when they can be unsealed, but it is a strong showing that has to be made to the Court that there is some compelling interest that overrides the statutory default of having them sealed.

         There are many other documents, especially when you are dealing with cooperators, that routinely get sealed.  When the government gives me a 5K1.1 letter that is a motion advising me of the kind of cooperation that the defendant has given, that is almost invariably sealed.  The government in those letters requests sealing and the Court makes findings that, because of the nature of the information, the threat to continuing investigations or the cooperator's safety is always at issue.

*Proceedings* 6

1        And then there are a bunch of other matters that
2   always get sealed like the sentencing memoranda that might
3   refer to the 5K1 letter and the presentence investigation
4   report.  Those don't get sealed all the time.  Sometimes they
5   are; sometimes they are not.  Again, it is the interest of the
6   public in having its qualified right of access versus the
7   interest of the government in continuing investigation, and
8   the interest in the defendant of not being physically harmed.
9        Now, with that background, let me talk to you a
10  little bit about how we got here.  I have the contention, I
11  have had it throughout the case from Mr. Oberlander and
12  Mr. Lerner that everything should be unsealed without
13  individual consideration given as to each document.
14       Here is how we came to this place.  I was designated
15  by the Circuit a Special Master in this case.  The Second
16  Circuit had enjoined all parties and all persons acting in
17  concert from publicly distributing or revealing in any way to
18  any person in any form documents that were subject to sealing.
19       My mandate in the case is pretty limited, which is I
20  have to implement and oversee the injunctions that the Circuit
21  issued and that Judge Glasser also issued and I think at this
22  point I have issued some of my own injunctions in furtherance
23  of theirs.
24       During the course of the proceedings before me or
25  leading up to them, people, allegedly Mr. Lerner and

1  Mr. Oberlander, got access to or retained copies of the PSR or
2  other documents useful or used in Mr. Sater's proceeding where
3  he was a cooperating witness.  That led to civil contempt
4  motions by Mr. Sater and the criminal contempt referrals by me
5  to the Eastern District Prosecutor's Office, which then I
6  understand has referred those for its own reasons to the
7  Northern District office.
8         Based on what was placed before me, it seemed to me
9  that Mr. Sater had made at least a prima facie case that
10 Mr. Lerner and Mr. Oberlander had violated the injunctions and
11 that the parties' use of the dockets with these papers were
12 being filed could exacerbate the issue of releasing sealed
13 information to the public.
14         Now, Mr. Lerner and Mr. Oberlander as alleged by
15 Mr. Sater had made a practice of republication by which they
16 bootstrapped their own disclosures as a reason for making more
17 disclosures.  And their point and the point they made to me
18 and they are still making it to me was that since the
19 information is already public, what is the harm in letting it
20 out again or even embellishing it with additional details.
21         The Second Circuit, however, recognized the danger
22 of this when it enjoined Mr. Oberlander from even using his
23 own name in these proceedings because his name became
24 synonymous with the disclosure of the information.  So I
25 couldn't have the parties filing things on the docket in front

1  of me that were open to the public which would do the very
2  harm that the Second Circuit's injunction was meant to
3  prevent.
4          And specifically what the Circuit held was this,
5  "Roe," referring to Mr. Oberlander, "is an attorney at law
6  whose identity is known to all participants in this litigation
7  and who has been given the name Richard Roe" -- I'm sorry;
8  that's Mr. Sater -- "as a legal placeholder because the
9  disclosure of his true identity in this litigation may for the
10 time being lead to the improper disclosure of the materials at
11 issue."
12         Now, the Circuit was prescient in using the phrase
13 "for the time being," for as Mr. Beys just made clear, we all
14 know who we are talking about and there is no point not using
15 the names Sater or Oberlander or Lerner in this case because
16 we all know who they are.
17         But what I was faced with was what has been called,
18 at least the allegations were that there was a
19 camel's-nose-under-the-tent strategy, whereby by releasing
20 certain sealed information it would be okay to release all the
21 sealed information because the deed had already been done.
22 And I wasn't going to make a Court a party to that, so I
23 directed that everything on the docket had to be sealed.  That
24 is how we got here.
25         Now, at the present time, there are two separate

1   issues before me in this case.  The first issue is the pending
2   contempt motion brought by Mr. Sater and a potential
3   indictment or information for criminal contempt.  The contempt
4   proceedings go to the issue of whether Mr. Oberlander and
5   Mr. Lerner violated the injunctions that Judge Glasser in the
6   Second Circuit issued.  I haven't found anything in those
7   allegations.  Like I said, there is a prima facie case, but I
8   have made no findings of fact as to whether that has occurred.
9           The second issue is whether the documents currently
10  under seal should remain under seal.  I feel like it bears
11  repeating, though, that these issues, contempt or under seal,
12  are two separate issues and how I come out on one will not
13  necessarily affect how I come out on the other.  So even if I
14  go ahead and I unseal the documents as the intervenors have
15  asked me to do, that does not in any way bear on what may be
16  found to be civil or criminal contempt by Mr. Oberlander or
17  Mr. Lerner, nor does it mean that the injunctions that are in
18  place are in any way vitiated by any unsealing that I might
19  order.
20          What I am not going to allow to happen is this
21  bootstrapping whereby unsealing, it becomes okay to talk about
22  them.  If they are unsealed because it is futile to keep them
23  sealed, that's fine.  But the injunctions remain in effect and
24  if there are violations by Mr. Oberlander and Mr. Lerner at
25  this point, then they will still be treated as contempts of

1  court and prosecuted accordingly.
2          Now, how are we going to go about this?  My analysis
3  of whether documents in the action are going to remain under
4  seal requires me to compare the information that is sealed
5  with the information that is currently in the public domain.
6  That is to say that the mere fact that the Second Circuit has
7  sealed documents or upheld Judge Glasser's sealing of
8  documents does not end the inquiry here.
9          The government and Mr. Sater may rely on the
10 interests that were cited at the time of those decisions and
11 say that those interests are still present and still outweigh
12 the public's qualified right of access.  But I am not going to
13 require them to prove the negative of that.  That is, they
14 don't have to prove that the parties who request continued
15 sealing are not required -- let me put it this way.
16         As the parties who are requesting continued sealing,
17 they do not have to prove that the circumstances have not
18 changed.  Rather, it is incumbent on those who seek the
19 unsealing, Mr. Oberlander and Mr. Lerner or any other party,
20 to show to me that those interests are no longer controlling
21 or no longer balance the way I originally did them.
22         I want to mention something at this point about
23 certain proceedings that are pending in Israel.  I understand,
24 and I don't know the details, but I know some of these
25 documents have not been disclosed in Israel in some fashion,

1  in some judicial or quasi-judicial proceeding.  I do not know
2  and I have not received any definitive legal showing that
3  those documents have been made public, and I am not going to
4  treat them like they have been made public in Israel when I
5  have not been shown that.
6          Now, having said that, keep in mind what I did hear
7  when I first sealed the docket was it was basically, I was not
8  going to rely on Mr. Oberlander and Mr. Lerner to file
9  documents that were redacted or that requested sealing,
10 because the concern was they were going to file documents that
11 disclosed the very matters they were enjoined from revealing.
12 I therefore sealed that docket.
13         But what I then did was I created a second docket,
14 and to the extent the parties' filings on the first docket did
15 not strike the balance that I found for keeping those matters
16 sealed, essentially protection of cooperators and threat to
17 potential government investigations, I then moved them over to
18 the public docket where they reside now in and anyone can get
19 access to those.
20         Having gone through all of the documents now on the
21 public and the private documents, there are something like, I
22 think it is about 280 documents that have been filed under
23 seal.  I am releasing all of those documents and making them
24 public except for 38 of them, which I find continue to reflect
25 and would deter cooperation and might jeopardize ongoing

government investigations.

And I just want to ask, I want to confirm for the record the Northern District has in effect received the referral orders for criminal contempt; is that right?

MR. GREEN:  That is correct, Your Honor.

THE COURT:  And I take it you are processing those in the ordinary course of your determination of what you are going to do about those, right?

MR. GREEN:  If the Court permits, I would prefer to just commit to the fact that the Northern District has received those referrals and is acting in accordance with the Court's referrals.

THE COURT:  That is what I meant to say, so that is fine, okay.

The only documents I am not unsealing are these. And everyone can get this transcript -- it is a list -- but you can order the transcript:  Attachment 3 to Document 1; Document 7 and Attachment 2 to Document 7; Attachment 1 to Document 21; Documents 23 through 26, 39, 47, 69, 76, 78, 84 and 85, 87; Attachments 1 and 5 to Document 91; Attachments 5 and 10 to Document 97; Attachments 1, 10 and 11 to Document 112; Attachments 1 and 5 to Document 146; Document 153; Attachment 1 to Document 160; and Documents 170 through 177.

Now, like I said, that is 38 out of about 280

1  THE COURT: You may be right and I will gladly go
2  back and look at those right after the conclusion of the
3  hearing and see if I was overinclusive. As you can tell,
4  there are, as I said, there are nearly 280 documents. It is
5  possible that those do not contain matters that should be
6  sealed.
7  But what I said was as to these documents, I may be
8  wrong, but my view was these documents, 38 documents that I am
9  leaving under seal do, in fact, have concerns that outweigh
10 the public's qualified right of access. They do pose
11 potential danger. They do potentially complicate or impede
12 government investigations.
13 Now, if I am wrong on that on a specific document, I
14 am happy to revisit it. That is why I am giving you time to
15 put in anything you want and if you put it in tomorrow, I will
16 look at it tomorrow. Now that you have identified 170 to 177,
17 I will look at it as soon as we are done with this hearing.
18 MS. BOLGER: Your Honor, I would reiterate, and you
19 know it, Your Honor, I wouldn't be here today, that the
20 presumption is openness. The presumption is not sealing.
21 THE COURT: It is.
22 MS. BOLGER: And so --
23 THE COURT: But I get, I want to go back to the
24 point you made about timing. You know, when I do a
25 sentencing, and I didn't sentence Mr. Sater, but it is true of