UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISS et al.

v.

BAYROCK GROUP LLC et al.

No. 10-cv-3959 (LGS)
No. 13-cv-3905 (LGS)

OPPOSITION TO THE REPRESENTATION OF INTERVENOR VODICKA; MOTION TO INTERVENE

## OUR CLIENTS[1] MOVE TO INTERVENE AS OF RIGHT TO PROTECT THE PUBLIC'S INTEREST IN ACCESS

In this case, presidential candidate Donald Trump is implicated in a conspiracy with members of Russian organized crime to violate racketeering laws by facilitating and profiting from the development and marketing of hotel condominiums by acts of bank fraud, real estate fraud, and tax fraud incident to a plan of money laundering designed to siphon profits from these activities out of the country to interests of Vladimir Putin.

By "implicate" we mean there is more than enough to justify empaneling federal and state grand juries to investigate his potential criminal culpability for such charges, and for perjury. Of course this is a civil case, and he's not a defendant, but the point is, either he knowingly facilitated a criminal enterprise or he made tens of millions of dollars by lending his name to it without a clue what he was lending it to, sort of like getting paid for letting a brothel advertise him as its piano player to attract customers while now all of a sudden insisting that he never knew what was going on with them upstairs.

---

[1] Due to Mr. Sater's propensity to launch campaigns of threatened violence and economic destruction against anyone who takes a position hostile to him, and this court's continued refusal to do anything to stop it, we request leave to file appearances on behalf of our clients *sub nominis* Jane Doe 1, 2 & 3.

This proceeding will address the two remaining problems standing between 300 million Americans and the truth. The first problem is that those involved, including those who kept the metaphorical ledgers for the madam, who came forward to blow the whistle, are still, as they have been for years, threatened not to tell what they know, told that "if they know what's good for them they'll keep quiet and not talk to the press."

The second is that those threats are being made by federal and state judges.

By way of background, federal prosecutors and courts of the Eastern District hide the criminal cases of favored defendants, buying their cooperation and testimony with the promise of sentences whereby they can evade millions in restitution liability and the concealment of their cases so they can evade all other collateral responsibility for their crimes. Of course defense counsel know the truth, as do defendants informed on, but in this system everyone shuts up and goes along because, after all, the trains do run on time, even if they're headed to the moral decadence.

In this case though, they and the courts met with those who would not shut up. But even that was not enough, for had it not been for the media the implication of the presumptive Republican nominee in criminal activity would have gone undetected.

It was the media, the Associated Press, which first told the world what had gone on with the underlying crimes by putting the initial complaint in this case on its servers and disseminating the links to half the population of the world, which otherwise might have stayed unknown forever. Certainly it would have if the court had had its way, as it has been, and remains, under illegal seal for over six years.[2]

---

[2] (Mr. Sater apparently thought it was a good idea to file a copy of it publicly in Israel notwithstanding that he had been ordered not to disseminate it by this and other courts; as a result, it began to circulate, eventually picked up by *The New York Times*, *The Miami Herald*, *The Wall Street Journal*, *The Washington Post*, *The Washington Examiner*, *Politico*, *Harpers*, ABC News, NBC News, *The Telegraph*, and the *Associated Press*. We know they each obtained it because they each called for comment months ago.)

2

It was the media, the AP again, that found proof, besides documents we made public which the courts refuse to acknowledge, that the courts and government have wrought fraud by pretending to justify threats of prosecution against us if we speak by claiming that Sater's life would be in danger if his co-defendants knew he had cooperated when, the AP revealed, defense counsel in the case he cooperated in admit that the government told them during the case that Sater was an informant against their clients.

It was the media, this time ABC News, which obtained and published to the world the first published photos of Trump and Sater together and the now-famous "business card" that listed Sater as a "Senior Trump Adviser" with an office near Donald's in Trump Tower, and which obtained and published the statement of Trump attorney Alan Gartner that at some time Trump knew of Sater's conviction but kept associating with him.

It was the media, this time *The Washington Post*, that reported that despite Trump's comments that he never forgets anyone and his testimony under oath that he wouldn't recognize Sater if he saw him, Trump had called him as a witness in a civil suit to testify to Trump's net worth and Sater had testified in other Trump cases as well.

And, finally, it was the media, this time *The Telegraph*, that brought it all home, not only adding to the evidence of Trump's perjury the fact that Trump was able to call Sater out of a large crowd to the podium at a ceremony but also confirming Gartner's apparent admission that Trump knew of Sater's conviction by December 2007.

And that is a big deal, for to the extent Trump knew of Sater's conviction yet stayed partnered with him through Bayrock, earning in kind fees worth tens of millions of dollars at the time for the use of his name, and certainly to the extent if any that he earned commissions on sales of condominiums at Trump SoHo, all while knowing that Sater was a convicted felon and significant owner in and managing director in the projects, Trump should have to explain to the country how it never occurred to him despite his self-proclaimed real estate and business genius that the $300M in loans procured for Trump SoHo

had to have been procured by the fraudulent concealment of Sater's conviction and the sales had to have been procured by the fraudulent omission of his ownership and management in Bayrock, let alone his conviction, from offering documents, and why, if he did know, or was reckless in not knowing, he isn't liable for all the crimes at Bayrock that were part of the overall racketeering.

After all, Sater himself admitted at his supposedly public sentencing in 2009 that he defrauded the banks by hiding his conviction from them[3]; who would believe he would admit that to a federal judge (Glasser, J.), two EDNY Assistant United States Attorneys (Kaminsky and Miller), and four FBI agents *in open court* yet wouldn't admit it to his friend and partner Donald Trump; after all, *The Washington Post* reports, Sater would routinely stick his head into Trump's office to chat; how could that not have come up, and if it was admitted in open court, how could Trump not have found out anyway?[4]

The point is, this is developing to be one of the most important examples of the values of the First Amendment right of access to courts and the compelling interest in freedom of core, protected political speech in history, for if the courts had had their way the release of that complaint to the media, without which none of this would have been so widely known, would have been a crime of contempt punishable by perhaps decades in prison, based on court orders issued without the vaguest hint of due process.

---

[3] *See* Sater's sentencing transcript, U.S. v. Sater, 98-cr-1101 (EDNY), ECF 202.

[4] Of course, there's always the chance he wasn't really sentenced in open court at all. That would explain why he would have taken the risk of admitting that bank fraud, which ordinarily one wouldn't do in public. And it would confirm the statement Loretta Lynch made through one of her staff to the Second Circuit Court of Appeals in 2011 that there had never been any public confirmation of Sater's conviction. The problem is, the sentencing judge (Glasser, J.) and the EDNY together sent an *ex parte* letter in 2013 to the United States Supreme Court asking them not to grant our petition for certiorari from an earlier ruling because, Judge Glasser said, while we were complaining about court secrecy, in fact Sater had been sentenced in open court. *And if that's not true, then a sitting federal judge perpetrated a fraud on the Supreme Court of the United States with the collusion of the Eastern District to cover this up.* That should be unthinkable, but that would explain why, when they learned we had a copy of that *ex parte* communication, they threatened us if we didn't return or destroy it; who threatens someone for revealing the statement of a judge that something took place in open court unless it didn't?

But it's all public now, so one can circulate and disseminate it with impunity?

No. It's not. *Despite being told in undisclosed ex parte communications we know of anyway* that the complaint was made public in Israel by Sater a year ago, and that it was blasted into cyberspace by the Associated Press, disseminated to half the population of the world, this court is still, going into what is now its seventh year, maintaining that complaint under seal. And related courts are still threatening criminal prosecution of anyone who knows of that sealing order if they disseminate it (though the same courts have already held that disseminating what's public is not covered by their orders and that disseminating what was obtained before the case started can't be enjoined at all.)

So before the court is a motion to unseal that complaint and other documents on the docket of *Kriss v. Bayrock Group LLC* ("*Kriss I*"), 10-cv-3959, brought by Brian Vodicka, *pro se*, by letter motion, by order of this court was granted leave to intervene for purposes of so moving.

And before the court are two responses in opposition filed by the Bayrock defendants and by defendant Sater respectively.

On May 26, 2016 *The Telegraph* and *Associated Press* filed what the court deemed to be a motion to intervene for purposes of moving to unseal the complaint.

Yet despite all that the media have accomplished in getting to the truth, as we've only partially set forth above (or, we suppose a cynic might say, because of it), on May 27, 2016 the court denied them leave to intervene, apparently on the ground that Mr. Vodicka could and would by himself adequately represent the public interests in access.

Mr. Vodicka cannot adequately represent the public interest in access in a case this important, especially given the years of documents unlawfully sealed, papers kept off the docket, and, now, undisclosed *ex parte* communications related to unsealing.

We represent clients who as members of the public share First Amendment and common law rights of access to documents on that docket and on the docket of *Kriss v.*

*Bayrock Group LLC* ("Kriss II"), 13-cv-3905. Our clients object to having adjudication of these rights depend on Mr. Vodicka, because of (1) his lack of knowledge of the case; (2) his lack of financial ability to perform to the extent which may be necessary, including appeals, extraordinary writs, and any hearings; and (3) his lack of experience in the field, *a fortiori* given that he is *pro se*, *a foritissimo* considering the grave public importance of the matter. Although undoubtedly well-meaning, he is not an appropriate class representative, and it would be error to find that he is, let alone without a hearing on the issue.

This leaves us no choice but to move to intervene, which in an access matter is as of right unless someone already in the case will adequately represent the intervenor's interests. With the court's refusal to allow media to intervene, that leaves our clients. Of course counsel not only have the financial and legal ability, counsel has a knowledge of the case exceeding any of the parties and the court; we know the content of those documents under seal unlawfully and so would not be "shooting darts at a dartboard in the dark[5]; we know the content of those documents the court ordered filed off the docket but never actually sealed at all, just concealed; and we know the existence of, and some of the content of, the undocketed *ex parte* communications the court has been receiving that are related to the unsealing yet which the court seems to have failed to disclose.

Having failed to allow media to intervene, failure to allow our clients to intervene will be error of constitutional magnitude, for in but one example, the papers filed by Bayrock and Sater in opposition to unsealing are a fraud on the court to the degree that their filings were acts of contempt and obstruction, yet Mr. Vodicka never exposed this.

We remind the court that rights of access are for the public to *oversee* its courts. As the papers filed by Bayrock and Sater are instruments of crime this proceeding is defiled. It would be transparent error to refuse intervention by those more capable than Vodicka of

---

[5] Of course we also have standing to intervene in our own behalf. In fact, we have parochial interests that could never be adequately represented by strangers to the case. We will address that at the hearing.

6

exposing the fraud, lest the proceedings be tainted by the structural error of failing to correct the crime. This is not an intervention to move for criminal contempt, though that is a public right too; it is an intervention to ensure that the court may "hold the balance, nice, clear, and true," notwithstanding their attempts to unbalance it.

## THE FIRST AMENDMENT COMPELS THE UNSEALING OF BOTH THE INITIAL AND FIRST AMENDED COMPLAINTS

A few months ago the Second Circuit held that the First Amendment provides a public right of access to all civil pleadings, most especially complaints, and that this right attaches the moment it is filed, even if it's never used in the case.

* * * * *

The initial complaint was filed on May 10, 2010 and put under seal on May 14, 2010 by the judge initially assigned (Buchwald, J.). Simultaneously with placing it under seal she ordered it redacted of certain portions which quoted from allegedly sealed documents in Sater's criminal case and further ordered that the redacted version should be transmitted to the clerk within five days for upload to ECF (at that time initiating complaints were filed on paper with the clerk and then emailed in PDF to the clerk who then uploaded). A few days later she gave plaintiffs an indefinite abeyance from the upload.[6]

The complaint, exactly as originally filed, was deemed served on Mr. Sater and all the Bayrock defendants on October 29, 2010 pursuant to Fed. R. Civ. Pro. § 4(d). Courtesy notice of such given Judge Buchwald; it's one of many documents the court has failed to

---

[6] On May 13, 2010, the day before the sealing order, Judge Buchwald issued a TRO banning dissemination of the complaint pending further order, which of course occurred the next day. We note this only because that TRO was, by this court's own subsequent rulings, quite void, since a federal court lacks the equity authority to enjoin the extra-judicial dissemination of information obtained prior to the commencement of a case; at most Judge Buchwald could have ordered the caption removed. That's beside the complete absence of requisite procedural due process for a prior restraint. *See* this court's order of February 1, 2010 (correctly holding courts lack the power to enjoin such dissemination).

docket over the years. From that time until April 1, 2013, plaintiffs received continuing extensions of time to file and serve an amended complaint.

On April 1, 2013 plaintiffs submitted a First Amended Complaint (FAC) to chambers by email with a request that it be filed under temporary seal so that Sater could review it for compliance with various court orders before it was publicly filed. The FAC is practically identical to the initial complaint, with perhaps 20 changes amounting in all to about 2,000 words out of 60,000, most of which merely removed what little of the initial complaint was still under seal in other courts. It is for all other purposes *identical*. The court granted that request and directed Sater to respond

On April 18, 2013, Sater responded by undocketed letter referenced on ECF 34, stating that he had no objection to the public filing of the FAC.

**Please note again this FAC is virtually identical to the initial complaint he now says will get him killed, yet three years ago he had no trouble with its filing.**

However, the complaint remained under seal because Bayrock complained that it contained privileged and confidential information. Nevertheless, by order of the court the complaint was formally filed in July 2013, again under seal, and the Bayrock defendants were formally served with it that same day, and acknowledged such service.

Months later, on September 11, 2013, again by order of the court, this time Magistrate Maas, to whom had been assigned pretrial matters, the FAC was served on Sater.

So to begin with, the statements in Sater's papers in opposition that neither the initial complaint nor the FAC had ever become "operative," whatever that means, are both irrelevant, because the First Amendment attached immediately upon their filing, and untrue because whatever "operative" means in his head it must certainly mean "it's been served on you." Who argues that a complaint filed and served on him by order of the court is somehow "inoperative?"

8

Furthermore, the statement on Page 9 of Sater's opposition, that the "[initial] complaint had been prohibited from being served" is a rank fraud, as by Judge Buchwald's May 14, 2010 order plaintiffs were free to redact and serve at any time. Also fraudulent is the statement that the anti-dissemination order had been upheld by the Second Circuit. It was never appealed from because as a TRO it died in 14 days and in any event was superseded by the sealing order the next day. Please be clear here. With anything else in any other case counsel might be entitled to the benefit of the doubt that this was mere error. Not here, we shall further show.

Furthermore, Sater's papers portray Vodicka's filing in Texas as the only reason for unsealing. Their failure to state that they themselves filed the initial complaint, redacted as they saw fit, publicly in Israel and, after belatedly attempting to seal it, were rebuffed by every court in that country, culminating in an order by the Supreme Court of Israel that the complaint would forever stay public on court dockets because Sater filed it there publicly and then let it sit for months meant the "train had left the station," is beyond a Rule § 60(b) fraud and into the territory of obstruction and criminal contempt for filing fraudulent papers.

How can we be so assertive? Because the AP wrote to Sater through counsel in November 10, 2015, warning him that they were about to publish the complaint and pointedly asking him if there was anything in it that would pose a personal risk to him. It seems quite apparent he never told them there was, for they published the whole thing. Will the court please realize that this man is standing before you today, or will be, telling the court that publication of the complaint will put his life in danger while not mentioning that before the AP blasted it to half the known world he could have told them what would endanger him but apparently did not; that he hasn't told you that the AP did publish it worldwide; or that he filed it in Israel; or that on April 18, 2013 he approved its public filing here.

9

**Finally, his claim that it's entirely based on the PSR is rank fraud as, for one thing, the PSR was written in June 2004 and almost all allegations in the complaint are for acts that occurred later than that.**

Bayrock's submission is hardly any better and in many ways far worse. For one thing, on page 5 it repeats the allegation that the complaints disclosed purloined "privileged and confidential" information. No such findings were ever made. Not one. Never. The court in applying the sanction to strike made clear it was solely being done for the failure of counsel to supply a provenance. Counsel for Bayrock cannot point to one single ruling anywhere as to confidentiality or privilege. But it doesn't matter.

That's because on or about November 17, 2015, Bayrock and Sater appeared together before a Tel Aviv district court requesting a gag order barring dissemination of the complaint Sater had filed there, apparently to be effective against the world, Sater because once again the very same complaint he himself had made public there[7] and had no problem with making public here in 2013 all of a sudden will kill him (though again he lost his voice when the AP asked him if that was true) but Bayrock…

**Bayrock filed a petition for a gag order of its own, claiming that the complaint contained privileged and confidential communications, or rather the affiant thought it did, for the affiant there, under oath, was Mr. Saurack, who somehow now can't sign his submission under oath here. And that's not a surprise because his submission to this court makes no mention of his filing for an injunction in Israel, or that he specifically told the Israeli court that he wanted an injunction there so that he could have**

---

[7] Bayrock says it was by accident; that of course is incompetent, they cannot know, and in any event the complaint he filed was redacted, which hardly sounds like it was an accident, something like "oops, my magic marker dropped and accidentally redacted a few dozen paragraphs after which my gum stuck to the pages and all 168 of them accidentally got attached to a document I filed in court

10

the order domesticated and enforced here to stop publication, and that he was sufficiently expert in the law of international comity that he could assure the court that such judgments of Israeli courts were routinely enforced by American courts.

Incredibly, he won a 7-day TRO. No counsel there understood how, since the Supreme Court there had ordered the documents public forever, but the district court issued a TRO to the effect that notwithstanding the document was public, no one could disseminate it pending further order. However, that court then gave Bayrock 10 days to proceed to prove the confidentiality and privileged nature of the content and…

Bayrock whiffed. It walked away. In fact it was ordered to pay $6000 shekels to its opponent for doing so.

<u>If it is not a criminal fraud on this court and an obstruction of justice to omit from a filing that not only asks for continued sealing but also asks for a declaratory ruling that there has been no waiver the fact that counsel and his client had appeared before another court of what they are estopped to deny was competent jurisdiction, asked for the same thing, had an opportunity for a hearing, and then walked away with an order to pay fees for doing so, then frankly all hope is lost.</u>

And to add insult, Sater's filing in tandem noted that if Bayrock didn't bring the proceeding here, it would likely be a waiver of their rights.

Last, on a more prosaic level, Bayrock claims that the court should follow *Pullman v. Alpha Media,* which held that where a sealed document (a settlement agreement, not a First Amendment document) had leaked onto a blog, that didn't trigger the "it's public so it can't be sealed" rule because that wasn't really "public."

This is frivolous. Pullman expressly held that "really public" meant, for example, coverage by the New York Times. This court cannot possibly imagine that Bayrock is unaware fhat the AP story it mentions was republished by 1200 newspapers, countless other

media outlets, and within days had links to it, and the complaint which they put on their servers, by some 15,000 to 60,000 other websites.

Moreover, if Bayrock wishes to put into dispute whether that circulation was sufficiently wide as to be public (again if that's not frivolous), Pullman holds that we must (as we have) demand at the district court level the ability to introduce evidence which we can subpoena from the AP and a few of the websites linking to it, such as the Denver Post, Bloomberg, the New York Post, and so on as to the number of "hits." Of course that's just going to get even more publicity. It's up to him.

Of course, you wouldn't know any of this from Bayrock's papers,, as Bayrock, like Sater, failed to disclose any of the above besides mentioning something about an AP story, and again it would be fraud in any other case that Bayrock mentions something about the complaint having been placed on "one website" and then removed at their demand from there while not mentioning it remains and so far as we know will forever remain public on the AP server websites.

Nor would you know that *The Telegraph* has just written four consecutive articles detailing the allegations of criminal financial fraud in the complaint to a global circulation of 25 million, yet counsel for Bayrock was informed the story was coming and asked for comments before he filed his papers here, and indeed is quoted in it.[8]

---

[8] This is a sampling of articles covering the complaint:

Trump picked stock fraud felon as senior adviser

http://bigstory.ap.org/article/29c255c0b69a48258ecae69a61612537/trump-picked-stock-fraud-felon-senior-adviser

"Exclusive: Donald Trump signed off deal designed to deprive US of tens of millions in tax," May 25, 2016

http://www.telegraph.co.uk/news/2016/05/25/exclusive-donald-trump-signed-off-deal-designed-to-deprive-us-of/

"Hillary Clinton campaign hits out at Donald Trump over Telegraph tax," May 26, 2016

http://www.telegraph.co.uk/news/2016/05/26/hillary-clinton-campaign-hits-out-at-donald-trump-over-telegraph/

"Donald Trump exclusive: Russian mob-linked fraudster a 'key player' in presidential hopeful's business ventures," May 26, 2016

In sum, it would be hard to imagine a document more public than this, which makes keeping it sealed impossible as it would not be effective in remedying anything, and both Bayrock and Sater should be forced to live by the preclusive effect of the orders of the courts of Israel which they recognized to be enforceable here, that, as the Supreme Court of that nation put it, as to confidentiality, privilege, safety, etc., "the train has left the station."

In closing, we ask the court to note the very recent ruling of a federal court in finding a common law right of access to documents filed in discovery in the Trump University cases, *Trump v. Cohen*, 13-cv-2915 (San Diego) and *Trump University LLC*, let alone a First Amendment right, because that court:

(1) Acknowledged that the public's interest in the involvement of Trump in allegations of fraud is of incalculable public concern;

(2) Held that, as here, generalized allegations of privilege are never sufficient;

(3) Held that, as here, generalized allegations of confidentiality are never sufficient;

(4) Held that, because the 2009 playbook alleged to be confidential was substantially similar to the 2010 playbook and that had been put online by *Politico*, there was no lawful basis to keep the 2009 playbook under seal; this is the same as the situation here with the initial and FAC complaints almost identical.

And we ask the court to note again that the burden is on Sater and Bayrock to establish a compelling interest by clear and convincing evidence.

*****

---

http://www.telegraph.co.uk/news/2016/05/26/exclusive-russian-mob-linked-fraudster-a-key-player-in-donald-tr/

"What other secrets lie in Donald Trump's tax affairs?" May 28, 2016

http://www.telegraph.co.uk/news/2016/05/28/what-other-secrets-lie-in-donald-trumps-tax-affairs/

13

We certify that the above is true and correct to the best of our knowledge, and that the attached are true and correct copies of filings in Israel, the significance of which will be discussed at the hearing.

Dated: New York, New York
       May 31, 2016

/s/ Frederick M. Oberlander, Esq.
The Law Office of Frederick M. Oberlander, P.C.
Counsel for Jane Does intervenors
28 Sycamore Lane (Box 1870)
Montauk, New York 11954
(212) 826-0357
Fred55@aol.com

Of Counsel:
/s/ Richard E. Lerner, Esq.